**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Federal Deposit Insurance Corporation, in its Capacity as Receiver for NextBank, N.A., <br><br>        Plaintiff, <br><br>        -against- <br><br> The Bank of New York, as Indenture Trustee of the NextCard Credit Card Master Note Trust, <br><br>        Defendant. | Case No.  06-1975 |

## MOTION TO DISMISS BY DEFENDANT THE BANK OF NEW YORK, AS INDENTURE TRUSTEE OF THE NEXTCARD CREDIT CARD MASTER NOTE TRUST

Pursuant to Federal Rule of Civil Procedure 12(b)(1), Defendant The Bank of New York, as Indenture Trustee of the NextCard Credit Card Master Note Trust, moves this Court to dismiss the Complaint for lack of subject matter jurisdiction on the ground that a prior action involving the same controversy is pending in the New York State Supreme Court for New York County, that Court having already acquired jurisdiction over the *res* in controversy.  Furthermore, all indispensable parties have been named in that action, and this Court is unable to accord complete relief to all interested persons given the absence of an indispensable party to this proceeding.

The Bank of New York, as Indenture Trustee of the NextCard Credit Card Master Note Trust, supports its motion with the contemporaneously-filed Memorandum of Law.

Respectfully submitted this 20th day of November, 2006,

/s Paul F. Brinkman___

H. Stephen Harris, Jr.
D.C. Bar No. 481092
John L. Douglas
D.C. Bar No. 479569
Paul F. Brinkman
D.C. Bar No. 441681

Alston & Bird LLP
1201 W. Peachtree St.
Atlanta, GA 30309
Tel.: (404) 881-7000
Fax: (404) 881-7777

Alston & Bird LLP
The Atlantic Building
950 F Street, N.W.
Washington, D.C.  20004
Tel: (202) 756-3300
Fax: (202) 756-3333


Counsel for Defendant The Bank of New York, as Indenture
Trustee of the NextCard Credit Card Master Note Trust

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Federal Deposit Insurance Corporation, in its Capacity as Receiver for NextBank, N.A., <br><br> Plaintiff, <br><br> -against- <br><br> The Bank of New York, as Indenture Trustee of the NextCard Credit Card Master Note Trust, <br><br> Defendant. | Case No. 06-1975 |

**DEFENDANT THE BANK OF NEW YORK, AS INDENTURE TRUSTEE'S
RESPONSE TO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING
ORDER AND A PRELIMINARY AND PERMANENT INJUNCTION,
AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT BANK OF NEW YORK'S MOTION TO DISMISS**

### I.    Introduction

Defendant, The Bank of New York, as Indenture Trustee of the NextCard Credit

Card Master Note Trust ("BONY") respectfully submits this Response to the Plaintiff's

Motion for Temporary Restraining Order and Preliminary and Permanent Injunction filed

by Plaintiff, the Federal Deposit Insurance Corporation in its capacity as Receiver for

NextBank, N.A. (the "FDIC Receiver"), and this Memorandum of Points and Authorities

in support of the motion to dismiss filed herewith by BONY.

As demonstrated below, this Court must dismiss this action because the Supreme

Court of the State of New York for the County of New York, prior to the filing of this

action, had assumed jurisdiction in an *in rem* interpleader case involving the same

controversy, and the granting of effective relief in either action requires possession or

control of the same *res*.[1]  The New York court is also the only court with jurisdiction over all interested persons, including the Noteholders.  Further, by virtue of the New York citizenship and residence of BONY and two of the three Noteholders that directed BONY to take the actions that are the subject of the FDIC Receiver's complaint in this new action (namely, First Millennium, Inc., Millennium Partners, L.P. and RMK Advantage Fund, hereinafter the "Directing Noteholders"), the fact that the FDIC maintains offices in New York City, and the fact that the documents at issue are governed by New York law, the New York court is the most appropriate forum, and perhaps the only appropriate forum, in which to adjudicate this dispute fully and properly.

In addition, this case should be dismissed because, in the absence of the Noteholders as parties, any issuance of an injunction by this Court would subject BONY to inconsistent obligations, and complete relief cannot be accorded to the parties to this action.

In any event, the FDIC Receiver's motion for a temporary restraining order and preliminary injunction must be denied because the FDIC Receiver has failed to make the showing necessary to permit issuance of injunctive relief.  As shown below, 18 U.S.C. § 1821(d)(19), which the FDIC Receiver argues relieves it of its obligation, under *Fed. R.*

---

[1]    That action is styled The Bank of New York, in its capacity as Indenture Trustee of the NextCard Credit Card Master Note Trust, Interpleader Plaintiff, against First Millennium, Inc., Millennium Partners, L.P., RMK Advantage Fund, and Federal Deposit Insurance Corporation, Interpleader Defendants, Supreme Court of the State of New York, County of New York, filed November 16, 2006, Index No. 650234/2006  (the "New York Interpleader Action").   A true and correct copy of the Complaint filed in the New York Interpleader Action is submitted herewith as Exhibit A.  Not only was the New York Interpleader Action filed prior to this action, but it has also been formally served on November 20, 2006.  The affidavit of that service is submitted herewith as Exhibit B.

*Civ. P.* 65, to demonstrate irreparable harm to obtain a TRO or preliminary injunction, applies only to cases alleging or showing a fraudulent transfer. The FDIC Receiver has made no such allegation or showing of any fraudulent transfer here.

The FDIC Receiver has also not carried its burden of showing that other interested persons will not suffer substantial harm if the Court grants the FDIC Receiver's request. Indeed, the absence of the Noteholders as parties in this action precludes this Court's proper consideration of that factor and underscores the reasons why dismissal of this case is required as a matter of law, in light of the New York court's exclusive jurisdiction in a case in which all persons with an interest in the *res* at issue are parties within that court's jurisdiction.

## II.  Background

As the Court is aware, BONY serves as the Indenture Trustee of the NextCard Credit Card Master Note Trust (the "Trust"). The Master Indenture between the Trust (the separate legal entity that issued the Notes) and BONY, dated as of December 11, 2000 (the "Master Indenture") creates fiduciary duties owed by BONY to the Noteholders. Section 5.12 of the Master Indenture provides that a majority of the Noteholders may direct the time, method and place of conducting any legal proceeding "for any remedy available to the Indenture Trustee with respect to the Notes or exercising any trust or power conferred on the Indenture Trustee with respect to the Notes" where an Event of Default has occurred.   Section 5.05(a)(i) of the Master Indenture also provides for the Indenture Trustee to institute proceedings "for the collection of all amounts then payable on the Notes . . . ."

On or about November 9, 2006, BONY received from the Directing Noteholders Directions to Indenture Trustee and Indemnification Regarding (a) Notice of Event of Default and Acceleration and (b) Exercise of Remedies Under Master Indenture Section 5.05 (the "Instruction Letter"). The Instruction Letter directed BONY, *inter alia*, to: (a) execute the Notice and deliver the Notice to the Trust Administrator and others as required by its terms; (b) continue to hold the Collateral and collection of proceeds therefrom; and (c) promptly after the delivery of the Notice, to commence an action in the Supreme Court of the State of New York sitting in New York County, against the Trust to obtain a judgment from the Trust for the full unpaid principal and interest due on the Notes. Initially, BONY rejected the instructions in their initial form, in light of this Court's prior decision.

The reputable law firm of Vedder, Price, Kaufman & Kammholz, P.C., however, delivered to counsel for BONY, a lengthy letter asserting that this Court's prior decision did not preclude the actions directed by the Directing Noteholders in the instructions (the "Vedder Letter," attached as Exhibit C). In the Vedder Letter, the Directing Noteholders' counsel stressed that their instructions were strictly against the Notes and the Trust directly, not against NextBank or the FDIC Receiver. Specifically, in the Vedder Letter, the Noteholders stated that:

- The Trust is "not a party" to the prior action in this Court;

- The prior action did "not address the liability of the [Trust] in any way";

- In this Court's corrected decision, it "neither ruled that the [Trust] was not a separate legal entity, nor ruled that the separate existence of the [Trust]

should be disregarded with respect to its obligations under the [Master] Indenture";

- This court also did not "hold that an Early Amortization Event did not occur in February 2002";

- "Nowhere in [this Court's corrected decision] did the court rule that the Early Amortization Event in February 2002 was not enforceable against the [Trust]";

- "Nowhere in the [this Court's corrected decision] did the [C]ourt rule that any of the provisions of the [Master] Indenture could not be enforced against the [Trust]";

- "At no point in [this Court's corrected decision] did the [C]ourt rule that remedies could not be taken against the Collateral";

- "Nothing in [this Court's corrected decision] excused the Trust from making principal repayments under the Early Amortization waterfall starting in February 2002"; and

- "Nothing in [this Court's corrected decision] excuses the [Trust] from the Event of Default arising from the non-payment of principal caused by the delay in honoring the Early Amortization Period in February 2002."

Summing up, the Vedder Letter states that "[n]othing in [this Court's corrected decision] affects in any way the liability of the [Trust] or the remedies that can be taken against the [Trust].  [That decision] stands only for the proposition that the Early Amortization Period clause was unenforceable against the FDIC (standing in the shoes of NextBank) and that the FDIC is not liable for conversion."   The Directing Noteholders

also provided indemnification to BONY for following the instructions in the Instruction Letter.

BONY carefully considered this Court's corrected decision, the contents of the Vedder Letter, and the fiduciary obligations of BONY to the Noteholders under the Master Indenture, and concluded, in good faith, that it was obligated to follow the Directing Noteholders' instructions with regard to the issuance of the Notice and the non-disbursement of any funds from the Collections Account on November 15, 2006. Accordingly, on November 14, 2006, following BONY's receipt of the Instruction Letter and the Vedder Letter, BONY issued the Notice of Default Under Master Indenture and Notice of Acceleration for Both Series 2000-1 Notes and Series 2001-1 Notes (the "Notice"), substantially in the form attached as Exhibit 1 to the Declaration of Scott H. Christensen in Support of the FDIC Receiver's Motion for a Temporary Restraining Order and a Preliminary and Permanent Injunction submitted in this action ("Christensen Declaration"), and served that Notice promptly upon the FDIC Receiver and all other interested persons.

Early on November 15, 2006, an FDIC employee contacted directly two employees of BONY, attempting to obtain information about these disputed matters. Counsel for BONY subsequently telephoned counsel for the FDIC Receiver and explained the conflicting claims asserted against BONY by the FDIC Receiver and the Directing Noteholders. On the afternoon of November 15, counsel for BONY received from counsel for the FDIC Receiver a letter, via email attachment, threatening, *inter alia*, that "[i]f BONY or the Noteholders attempt to take further action on the Notice of

Default or otherwise take funds not due to them, the FDIC Receiver [would] seek judicial intervention, as well as attorneys' fees and costs for having to take such action."

During a telephone conversation at approximately 11:00 a.m. on November 16, 2006, counsel for the FDIC Receiver again threatened to bring suit against BONY in the event BONY failed to rescind the Notice, release to the FDIC Receiver the funds in the Collections Account, and provide the FDIC with written assurance that BONY would otherwise take no actions pursuant to the Notice, all by the "close of business" on November 16, 2006.

On November 16, 2006, counsel for the Directing Noteholders also threatened vehemently that the Directing Noteholders would bring suit against BONY for breach of fiduciary duty if BONY failed to follow all the directions in the Instruction Letter, asserting further that the Noteholders would suffer irreparable harm if BONY rescinded the Notice, disgorged to the FDIC Receiver the funds in question, or otherwise failed to follow the terms of the Instruction Letter.

Later that afternoon, counsel for the Directing Noteholders sent an email to counsel for BONY reasserting certain of the points set forth in the Vedder Letter, and asserting that those Directing Noteholders were "very distressed to learn that [BONY] [was] contemplating violating the instruction letter . . . ." The email asserted that counsel for the Directing Noteholders had "reviewed the D.C. decision again and, again, there is nothing whatsoever in the D.C. decision that has been violated. Nor have any of the matters so directed in the Instruction Letter been addressed in the D.C. Suit. The D.C. action was a conversion action against the FDIC for the abuse of its status as servicer." According to counsel for the Directing Noteholders, "the FDIC was not a plaintiff in the

DC Suit, and did not obtain a declaratory judgment or injunction, but merely obtained a judgment that denied the Bank of New York's claim of liability and damages for conversion."   The email went on to assert that this Court's corrected decision "also did not deal with the [Trust's] liability whatsoever" and that it "did not say that there was no event of default" or "that the principal on the Notes should not have been paid by the issuer in accordance with their express terms."   The email also stated that this Court's corrected decision did not say that "the Notes were not now due or that the Notes shouldn't be accelerated as against the Issuer."   The email asserted that this Court's corrected decision "had nothing to do with the rights of the Indenture Trustee or the Noteholders against the collateral or the [Trust]."

In the same email, counsel to the Directing Noteholders went on to again threaten that, if BONY failed to bring a lawsuit in New York "as required in the Instruction Letter and/or decide[d] to release any of the moneys that it is REQUIRED to hold pursuant to the express directions of the majority of the Noteholders," the Directing Noteholders would "hold [BONY] liable."   The Noteholders' email went on to assert that any release of the Collateral by BONY, "when there are insufficient assets to repay all unpaid principal is a fundamental breach of the Indenture Trustee's duties to the Noteholders," citing Section 5.06 of the Master Indenture, and that "[s]uch breach is further heightened when [BONY had] an express direction from the majority of the Noteholders barring such action."   The email also stated that BONY has "no authority to rescind the acceleration [of the Notes]" but that "[o]nly a majority of the Noteholders may rescind the acceleration, pursuant to the terms of Master Indenture Section 5.03."   Counsel for

the FDIC Receiver went on to threaten to hold BONY "accountable for rescinding the notice of acceleration."

At the end of his email, counsel for the Directing Noteholders seemingly acknowledged the irreconcilably conflicting obligations bearing upon BONY, as Indenture Trustee, and stated that " . . . the Noteholders would understand that you may wish to bring a [sic] interpleader action in New York – and only in New York."

Also during the afternoon of November 16, 2006, BONY's counsel again requested that the FDIC Receiver's counsel explain clearly its position, and precisely what language in this Court's prior decision prohibited the actions directed in the Instruction Letter. Counsel for the FDIC Receiver said that he had not had time to consider what specific language might be applicable, but promised to review this Court's corrected decision and consider providing his explanation for his position. Counsel for BONY also requested that counsel for the FDIC Receiver provide his explanation in writing. Counsel for BONY also sought an assurance from counsel for the FDIC Receiver that the FDIC Receiver would refrain from taking any action in court, as it threatened to do at the close of business on that day.

The FDIC Receiver's counsel never provided any such assurance. The FDIC Receiver's counsel also never provided any such explanation, orally or in writing to BONY's counsel regarding any reasoned basis for the FDIC Receiver's assertion that the actions directed in the Instruction Letter were prohibited by this Court's prior decision.

On the evening of November 16, therefore, BONY had received no assurances from either party threatening it with imminent litigation. BONY was under an express threat of immediate litigation by the FDIC Receiver at the "close of business" on that

day, and a threat of imminent litigation by the Directing Noteholders if BONY failed, at the very least, to institute an interpleader action in New York, and only in New York. As noted above, Section 5.12 of the Master Indenture provides that a majority of the Noteholders may direct the time, method and place of conducting any legal proceeding "for any remedy available to the Indenture Trustee with respect to the Notes or exercising any trust or power conferred on the Indenture Trustee with respect to the Notes."

Thus, as the FDIC Receiver's "close of business" deadline loomed, BONY was still threatened with imminent litigation by both the Directing Noteholders and the FDIC Receiver. A majority of the Noteholders had directed BONY to file an interpleader action in New York. The time and place of such an action is unquestionably not an issue determined by this Court's corrected decision, and is governed solely by the Master Indenture. The FDIC Receiver has not argued to the contrary. As such, that direction as to time and place of the interpleader action was plainly lawful and binding upon BONY, and hence properly complied with by BONY.

In addition to the New York forum being required by the Directing Noteholders' direction pursuant to the terms of the Master Indenture, BONY filed in New York because: (a) the New York court clearly could exercise jurisdiction over all the persons with interest, including the Directing Noteholders (two of the three of which have their principal places of business in New York City); (b) the New York interpleader statute, unlike the federal interpleader statute, 28 U.S.C. § 1335(a)(2), does not require the plaintiff to deposit the money or property at issue into the registry of the court upon commencement of the action, which for practical reasons was impossible with regard to any federal court on the evening of November 16 when BONY was faced with the FDIC

- 10 -

Receiver's deadline; (c) the Master Indenture provides that the Master Indenture itself and "each Note" shall be construed in accordance with and governed by the laws of the State of New York; (d) The Bank of New York has its principal place of business in New York and took the actions at issue within the State of New York; (e) the *res* (the funds in the Collections Account) that are at issue in this matter are located in a bank account in the State of New York; and (f) the relevant records of The Bank of New York, and of two of the Directing Noteholders, related to this matter are located in the State of New York. BONY respectfully submits that the New York forum is not only the most appropriate and convenient forum, but that it is the *only* forum that can provide complete relief to all interested persons.

Without question, BONY had starkly conflicting obligations and faced grave and immediate risks and uncertainties by virtue of the strident threats from both the Directing Noteholders and the FDIC Receiver.  BONY therefore took the ordinary, reasonable and appropriate course of action provided in law for fiduciary stakeholders in such conflicting circumstances:  it filed an interpleader action, naming both the FDIC Receiver and the Directing Noteholders, assuring the New York court that BONY will maintain the status quo pending that court's determination of the parties' respective rights in the *res* at issue. BONY informed counsel for the FDIC Receiver and counsel for the Directing Noteholders promptly of its filing of the New York Interpleader Action and promptly served both with copies of the Summons and Complaint filed in the New York Interpleader Action.

- 11 -

### III.    Points and Authorities

#### A.  <u>The New York Court Has Exclusive Jurisdiction Over This Case</u>

This Court must dismiss this action because the Supreme Court of the State of New York for the County of New York, prior to the filing of this action, had assumed jurisdiction in an *in rem* interpleader case involving the same controversy, prior to the filing of this action.  This Court therefore lacks jurisdiction.  As the U.S. Supreme Court held in *Princess Lida of Thurn and Taxis v. Thompson*, 305 *U.S.* 456, 465-66 (1939):

> Where a federal action and a parallel state action involving the same controversy are both proceedings *in rem* or *quasi in rem*, so that the granting of effective relief requires possession or control of the *res*, the court which first assumes jurisdiction acquires exclusive jurisdiction and deprives the other court of power to decide the case. Certain it is, therefore, that if both courts were to proceed they would be required to cover the same ground. This of itself is not conclusive of the question of the District Court's jurisdiction, for it is settled that where the judgment sought is strictly *in personam*, both the state court and the federal court, having concurrent jurisdiction, may proceed with the litigation at least until judgment is obtained in one of them which may be set up as *res judicata* in the other.  On the other hand, if the two suits are *in rem*, or *quasi in rem*, so that the court, or its officer, has possession or must have control of the property which is the subject of the litigation in order to proceed with the cause and grant the relief sought the jurisdiction of the one court must yield to that of the other.  We have said that the principle

ADMIN/20048154v1

applicable to both federal and state courts that the court first assuming

jurisdiction over property may maintain and exercise that jurisdiction to

the exclusion of the other, is not restricted to cases where property has

been actually seized under judicial process before a second suit is

instituted, but applies as well where suits are brought to marshal assets,

administer trusts, or liquidate estates, and in suits of a similar nature

where, to give effect to its jurisdiction, the court must control the property.

The doctrine is necessary to the harmonious cooperation of federal and

state tribunals.

Similarly, as held in *PPG Industries, Inc. v. Continental Oil Co.*, 478 *F.*2d 674,

677 (5th Cir. 1973):

Where a federal action and a parallel state action involving the same controversy

are both proceedings *in rem* or *quasi in rem*, so that the granting of effective relief

requires possession or control of the *res*, the court which first assumes jurisdiction

acquires exclusive jurisdiction and deprives the other court of power to decide the

case.

See also *United States v. Bank of New York Trust Co.*, 296 *U.S.* 463, 477 (1936),

in which the U.S. Supreme Court held as follows:

The principle, applicable to both federal and state courts, that the court

first assuming jurisdiction over property may maintain and exercise that

jurisdiction to the exclusion of the other, is not restricted to cases where

property has been actually seized under judicial process before a second

suit is instituted.  It applies as well where suits are brought to marshal

- 13 -

assets, administer trusts, or liquidate estates, and in suits of a similar

nature, where, to give effect to its jurisdiction, the court must control the

property. *Farmers' Loan & Trust Co. v. Lake Street Elevated R. Co.*, 177

*U.S.* 51, 61, 20 *S.Ct.* 564.  If the two suits are *in rem* or *quasi in rem*, so

that the court must have possession or control of the *res* in order to

proceed with the cause and to grant the relief sought, the jurisdiction of

one court must of necessity yield to that of the other. *Penn General*

*Casualty Company v. Pennsylvania*, 294 *U.S.* 189, 195, 55 *S.Ct.* 386.  This

principle is applied in the discharge of the long-recognized duty of this

court to serve to conciliate the distinct and independent tribunals of the

States and of the Union, so that they may co-operate as harmonious

members of a judicial system coextensive with the United States.


There can be no question that an interpleader action is an *in rem* action.  *See* R.H.

Graveson, *Conflict of Laws* 98 (7th ed. 1974) ("An action *in rem* is one in which the

judgment of the court determines the title to property and the rights of the parties, not

merely as between themselves, but also as against all persons at any time dealing with

them or with the property upon which the court had adjudicated").  Similarly it is clear

that this action in which the FDIC asks this Court to "restrain[] and enjoin[] from

distributing, encumbering, or relinquishing in any way assets that are in the possession,

custody or control of BONY" is a *quasi in rem* action under this Circuit's definition of a

"*quasi in rem* judgment," meaning "a judgment against a person with respect to property,

as distinguished from one against property only, or a person only."  *Boone v. Wachovia*

- 14 -

*Bank & Trust Co.*, 163 *F.*2d 809, 814 (D.C. Cir. 1947).   Accordingly, under the above-cited controlling authority, this Court must dismiss this action in deference to the exclusive jurisdiction of the Supreme Court of the State of New York.

### B. <u>The Case Must Be Dismissed Because the Noteholders Are Not Parties</u>

As a separate and independent ground for dismissal, the Court must dismiss this case because the Noteholders have not been joined as parties and are not within the jurisdiction of this Court.  The Noteholders are plainly persons with claims to, and interests in, the *res* at issue in this case, as recognized in the pleadings and submissions of the FDIC Receiver.   Any exercise of jurisdiction over, or issuance of any injunction regarding, the *res* by this Court in the absence jurisdiction over the Noteholders would fail to accord complete relief to the parties in this action, would impair or impede the Noteholders' ability to protect its asserted interest in the *res*, and would leave BONY subject to a substantial risk of incurring double or otherwise inconsistent obligations by reasons of the conflicting interests claimed by the Noteholders and the FDIC Receiver. *See Fed. R. Civ. P.* 19(a).

As the U.S. Supreme Court held in *United States v. Bank of New York Trust Co.*, 296 *U.S.* 463, 480 (1936):


> Even where [unlike here] the District Court has acquired
> jurisdiction prior to state proceedings, the character and adequacy of the
> latter proceedings in relation to the administration of assets within the
> state, and the status of those assets, may require in the proper exercise of
> the discretion of the federal court that jurisdiction should be relinquished

in favor of state administration.  [citations omitted]  In the instant cases not only had the state court first acquired jurisdiction [as in this case], but [also as in this case] there are numerous persons whose claims in relation to these funds are in course of adjudication.  Whether or not their claims are valid against the claim of ownership by the United States they are entitled to be heard and they are indispensable parties to any proceeding for the disposition of the property involved.  They have not been made parties to the present suits, and this fact in itself would be a sufficient reason for the District Court to refuse to proceed in their absence.  Only the stakeholders are defendants.  The adverse claimants are parties to the respective proceedings in the state court and from every point of view the principles governing the convenient and orderly administration of justice require that the jurisdiction of the state court should be respected.

For the same reasons, the prior filing of the New York Interpleader Action, the location of the funds at issue in the State of New York, and the absence of indispensable parties, namely the Noteholders, require that the jurisdiction of the New York Supreme Court be respected and this case be dismissed.   Such dismissal does not prejudice the FDIC Receiver, as it has an adequate remedy in the New York Interpleader Action.

## C.  The FDIC Receiver Has Not Made the Showing Required to Support Interim Injunctive Relief

Even if this Court had jurisdiction over this case, and even if all indispensable parties were before it, the FDIC Receiver's motion for a temporary restraining order and preliminary injunction must be denied because the FDIC Receiver has failed to make the

- 16 -

showing necessary for the issuance of a temporary restraining order or preliminary injunction.

1. The FDIC Receiver Must Show, But Has Not Shown, that the Requested Relief will not Cause Substantial Harm to Other Interested Persons

The FDIC Receiver acknowledges, but has not borne, its burden of showing that other interested persons will not suffer substantial harm if the Court grants the FDIC Receiver's requested injunctive relief. The [Proposed] Temporary Restraining Order submitted with the FDIC's motion seeks a TRO prohibiting BONY from "distributing, encumbering, or relinquishing in any way assets that are in the possession, custody or control of BONY" and from "proceeding in any manner that will change the status quo between the parties prior to the resolution of the FDIC Receiver's motion for preliminary and permanent injunction." Such an order would clearly cause BONY substantial harm by prohibiting it from complying with any order to be issued by the New York court in the New York Interpleader Action, and, again, placing BONY under inconsistent obligations.[2]

Further, the FDIC Receiver ignores entirely potential harm to the Noteholders as other interested persons. That potential harm underscores the indispensability of the Noteholders and requires denial of the motion for a temporary restraining order in the absence of those indispensable parties. It also illustrates why their absence necessitates dismissal of this case as a matter of law, in light of the New York court's exclusive

---

[2] The [Proposed] Temporary Restraining must be rejected in all events because it does not identify the "assets" to be restrained. If entered in its current form, the order could be construed to prevent BONY from doing anything with ANY assets it holds, regardless of whether the FDIC Receiver has any interest in them.

jurisdiction in a case in which all persons with an interest in the *res* at issue are parties within that court's jurisdiction.

### 2.   The FDIC Receiver Must Show, But Has Not Shown at Least Some Injury to Itself that will Result from Denial of the Requested Injunctive Relief

As discussed below, the FDIC Receiver asserts that it is relieved, by virtue of a specific statutory provision, from its normal obligation of showing irreparable harm as a prerequisite to obtaining the injunctive relief it seeks.  As explained below, BONY submits that the FDIC Receiver's reliance on that statute in these circumstances is misplaced.  Even if that statute were applicable here, however, the law is clear that the absence of at least "some injury" is a sufficient basis for denying a motion for a preliminary injunction.  *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 *F*.3d 738, 746 (D.C. Cir. 1995); *Getty Images News Services Corp. v. Dept. of Defense*, 193 *F.Supp*.2d 112, 122 (D.D.C. 2002).

The FDIC Receiver has not shown that it faces any injury from the denial of the requested injunctive relief.  Indeed, BONY has assured the New York court that it will maintain control of the *res* at issue and will follow that court's decision as to the disposition of the *res* among all the interested persons.  The FDIC Receiver is at no risk of any harm, imminent or otherwise from the denial of the requested injunctive relief

### 3.  12 U.S.C. § 1821(d)(19)(2001) Does Not Absolve the FDIC Receiver of its Burden to Show Irreparable Harm in this Action

The FDIC argues that it is relieved, by virtue of 12 U.S.C. § 1821(d)(19), of its obligation to demonstrate irreparable harm.  It is not surprising that the FDIC Receiver

ADMIN/20048154v1

should search diligently to avoid that requirement, because there is plainly no irreparable

harm resulting to the FDIC Receiver from BONY's retention of the funds pending the

New York court's determination of the FDIC Receiver's and the Noteholders' interests

(or lack of interests) in the *res* at issue. The FDIC relies principally on the interpretation

of this statutory provision in *FDIC v. Cafritz*, 762 *F. Supp.* 1503, 1506 (D.D.C. 1991).

That reliance is misplaced.

      First, if the statute did in fact relieve the FDIC of an obligation to show

irreparable injury, "Congress still intends that [the RTC or FDIC, as the case may be] be

required to make some showing of injury prior to obtaining relief." *Resolution Trust

Corp. v. Cruce*, 972 *F.*2d 1195, 1200 (10th Cir. 1992) (quoting legislative history of this

provision). Here, the FDIC Receiver has made – and can make – absolutely no showing

of any harm whatsoever.

      Second, there are conflicting opinions as to whether 12 U.S.C. §§ 1821(d)(17)

(regarding "fraudulent transfers"), (18) and (19) are to be construed together such that the

FDIC is relieved of its Rule 65 burden of showing irreparable harm only in cases where

fraudulent conveyance is alleged. *Cafritz* involved an allegedly fraudulent transfer; this

action involves no such allegations. *Cf. FDIC v. Floyd*, 827 *F. Supp.* 409 (N.D. Tex.

1993) (requiring a showing of fraudulent conduct before the FDIC could rely upon

1821(d)(18) and (19)); *FDIC v. Garner*, 125 *F.*3d 1272, 1279 (9th Cir. 1997) (holding

that the FDIC can apply the Act's injunctive relief provisions in the absence of

allegations of fraud). This appears to be an issue of first impression in the D.C. Circuit.

BONY submits that the more logical and natural reading of those three sections is

consistent with the holding in *Floyd*. As such, the FDIC Receiver is subject, in this non-

fraudulent conveyance case, to the law in this Circuit applicable to all other motions for

interim injunctive relief:  "The second factor to be considered on a motion for a

preliminary injunction is whether a plaintiff will suffer irreparable injury if the injunction

is not granted." *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 *F*.3d 738, 746

(D.C. Cir. 1995).

      The FDIC Receiver has not, and cannot, bear this burden of showing irreparable

harm.  It is axiomatic that speculative injury will not support emergency injunctive relief,

and that the threat of irreparable injury must be real and imminent. *Wisconsin Gas Co. v.

FERC*, 758 *F*.2d 669, 674 (D.C. Cir. 1985).  Nor does the prospect of litigating these

issues in New York satisfy this burden.  "The expenses and effort involved in the defense

of litigation do not constitute 'irreparable injury' that may justify a preliminary

injunction." *UST, Inc. v. United States*, 831 *F*.2d 1028, 1032 (Fed. Cir. 1987) (citations

omitted).[3]

      Accordingly the FDIC Receiver, by having failed to demonstrate irreparable harm

(or even allege it), has failed to support its motion for interim injunctive relief.

### D.  <u>The New York Interpleader Action Is Not Barred by Claim Preclusion</u>

      The FDIC Receiver's claim preclusion argument is without merit, as it does not

satisfy even one of the three requirements for claim preclusion to apply.  "For claim

preclusion based on a judgment in which the claim was not litigated, there must be (1) an

---

[3]    See also *Spencer Trask Software and Information Services, LLC v. RPost Intern.
Ltd.*, 190 *F.Supp.*2d 577, 580 (S.D.N.Y. 2002) ("The standard for granting a temporary
restraining order and a preliminary injunction pursuant to Rule 65 of the Federal Rules of
Procedure are identical." )

identity of parties or their privies, (2) a final judgment on the merits of the prior claim,

and (3) the second claim must be based on the same transactional facts as the first and

should have been litigated in the prior case." *Sharp Kabushiki Kaisha v. Thinksharp,*

*Inc*., 448 *F*.3d 1368, 1370 (Fed. Cir. 2006).

First, there is no "identity of parties or their privies" between the prior and current

action. The Noteholders were not a party to the prior litigation before this Court; they are

a party to the New York Interpleader Action. Moreover, the FDIC Receiver does not and

cannot assert that BONY was the privy of the Noteholders in the prior action.

Second, there was no final judgment on the merits in the prior litigation regarding

the matters that the FDIC Receiver claims are subject to the Settlement Agreement

regarding settled Counts 1-5 and the Counterclaims pled, but never decided, in the prior

litigation.

Third, the New York Interpleader Action is not based on the same transactional

facts as the prior FDIC v. BONY action and could not have been litigated in that action,

since the New York Interpleader Action was filed based on a set of circumstances that

did not even exist at the time of the prior action before this court, namely the Instruction

Letter from the Directing Noteholders to BONY and the direction therein to assert claims

to the Collections Account against the Trust, not against the FDIC Receiver. See also the

arguments asserted by counsel for the Directing Noteholders, in the Vedder Letter, as to

why the transactional facts and issues giving rise to the New York Interpleader Action are

distinct from the issues litigated in the prior action before this Court, and why this

Court's corrected decision did not decide those issues.

The doctrine of claim preclusion "holds that a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action." *Drake v. F.A.A.*, 291 *F*.3d 59, 66 (D.C. Cir. 2002) (internal quotation and citation omitted). A final judgment on the merits precludes the parties or their privies from relitigating both issues that were raised as well as issues that could have been raised in the prior action. *Ibid.* (citation omitted). "Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit." *Sharp,* 448 *F*.3d 1368, 1370.

The FDIC Receiver seems to argue that BONY should have raised the claims of the Noteholders that gave rise to the New York Interpleader Action (despite their unforeseeability), and that, for that reason, the New York Interpleader Action is barred by claim preclusion. Again, the FDIC misconstrues the governing case law. "For claim preclusion based on a judgment in which the claim was not litigated, there must be (1) an identity of parties or their privies, (2) a final judgment on the merits of the prior claim, and (3) the second claim must be based on the same transactional facts as the first and should have been litigated in the prior case." *Sharp*, 448 *F*.3d 1368, 1370.

**IV.    Conclusion**

For the foregoing reasons, and based on the above-cited authorities, BONY

respectfully submits that this Court must dismiss this case and/or deny the injunctive

relief requested by the FDIC Receiver.

Respectfully submitted this 20th day of November, 2006,

/s Paul F. Brinkman____

H. Stephen Harris, Jr.
D.C. Bar No. 481092
John L. Douglas
D.C. Bar No. 479569
Paul F. Brinkman
D.C. Bar No. 441681

Alston & Bird LLP
1201 W. Peachtree St.
Atlanta, GA 30309
Tel.: (404) 881-7000
Fax: (404) 881-7777

Alston & Bird LLP
The Atlantic Building
950 F Street, N.W.
Washington, D.C.  20004
Tel: (202) 756-3300
Fax: (202) 756-3333

Counsel for Defendant The Bank of New York, as
Indenture Trustee of the NextCard Credit Card Master
Note Trust

- 23 -

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Federal Deposit Insurance Corporation, in its Capacity as Receiver for NextBank, N.A.,<br><br>          Plaintiff,<br><br>          -against-<br><br>The Bank of New York, as Indenture Trustee of the NextCard Credit Card Master Note Trust,<br><br>          Defendant. | Case No.  06-1975 |

**DECLARATION OF H. STEPHEN HARRIS IN SUPPORT**
**OF MOTION TO DISMISS**

H. Stephen Harris, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury as follows:

1.      I am a member of the law firm of Alston & Bird LLP, counsel to defendant The Bank of New York, as Indenture Trustee of the NextCard Credit Card Master Note Trust (hereinafter, "BONY").  I make this declaration of my own personal knowledge in support of defendant' motion to dismiss.

2.      The statements of fact in the Background section of defendant The Bank of New York, as Indenture Trustee's Response to Plaintiff's Motion for a Temporary Restraining Order and a Preliminary and Permanent Injunction, and Memorandum of Points and Authorities in Support of Defendant Bank of New York's Motion to Dismiss, are based upon my personal knowledge and are true and correct.

I declare, under penalty of perjury, that the foregoing is true and correct.

Executed in Atlanta, Georgia, on November 20, 2006

/s H. Stephen Harris, Jr.___

H. Stephen Harris, Jr.

- 2 -

**CERTIFICATE OF SERVICE**

I, Paul F. Brinkman, certify that a true and accurate copy of the foregoing documents were served by hand delivery and by E-mail on November 20, 2006, upon:

Dennis S. Klein
Scott H. Christensen
HUGHES HUBBARD & REED LLP
1775 I Street, N.W.
Washington, DC  20006

/s Paul F. Brinkman

# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

|  |  |  |
|---|---|---|
| THE BANK OF NEW YORK, in its capacity as Indenture Trustee of the NextCard Credit Card Master Note Trust, | : : : : | Index No. |
| Interpleader Plaintiff, | : : : | Summons |
| - against - | : : : | |
| FIRST MILLENNIUM, INC., MILLENNIUM PARTNERS, L.P., RMK ADVANTAGE FUND, and FEDERAL DEPOSIT INSURANCE CORPORATION, | : : : : | Date Index No. Purchased: 11/16/06 |
| Interpleader Defendants. | : : | |

To the above named Defendant(s)

First Millennium, Inc., 666 5th Avenue, 8th Floor, New York, NY 10103

Millennium Partners, L.P., 666 5th Avenue, 8th Floor, New York, NY 10103

RMK Advantage Fund, 1100 Ridgeway Loop Road, Suite 510, Memphis, TN 38120

Federal Deposit Insurance Corporation, Regional Counsel, 20 Exchange Place, 4th Floor, New York, NY 10005,

    You are hereby summoned to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiffs' attorney within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

The basis of venue is the residence of plaintiff, which is 101 Barclay Street, New York, NY 10007-2119.

Dated:  New York, New York
        November 16, 2006

ALSTON & BIRD LLP

Michael E. Johnson
Birgit Kurtz
90 Park Avenue
New York, New York
(212) 210-9400

*Attorneys for Interpleader Plaintiff*
*The Bank of New York, in its capacity as*
*Indenture Trustee of the NextCard Credit*
*Card Master Note Trust*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

THE BANK OF NEW YORK, in its capacity as
Indenture Trustee of the NextCard Credit Card Master
Note Trust,

                      Interpleader Plaintiff,

                      - against -

FIRST MILLENNIUM, INC., MILLENNIUM
PARTNERS, L.P., RMK ADVANTAGE FUND, and
FEDERAL DEPOSIT INSURANCE
CORPORATION,

                      Interpleader Defendants.

      :        **INTERPLEADER**
      :        **COMPLAINT**

      :        Index No._____

---

        Plaintiff The Bank of New York, in its capacity as Indenture Trustee of the NextCard

Credit Card Master Note Trust, by its attorneys, Alston & Bird LLP, as and for its Interpleader

Complaint, alleges:

## INTRODUCTION

        1.      This is an interpleader action brought in accordance with CPLR 1006 for the

purpose of obtaining adjudication of the respective rights of the Interpleader Defendants with

respect to certain assets held by the Interpleader Plaintiff.  Interpleader Plaintiff, which serves as

indenture trustee, faces competing claims to the assets by the Interpleader Defendants and cannot

determine, without hazard to itself, how to proceed.

## PARTIES

        2.      Interpleader Plaintiff The Bank of New York, in its capacity as Indenture Trustee

of the NextCard Credit Card Master Note Trust, ("BNY") is a New York banking corporation

with its principal place of business in New York, New York. BNY is the indenture trustee under the Indenture, as defined below.

      3.      Interpleader Defendant First Millennium, Inc. is, upon information and belief, a New York corporation with its principal place of business in New York, New York.

      4.      Interpleader Defendant Millennium Partners, L.P. is, upon information and belief, a limited partnership organized under the laws of the State of New York, with its principal place of business in New York, New York.

      5.      Interpleader Defendant RMK Advantage Fund is, upon information and belief, a limited partnership organized under the laws of the State of Tennessee, with its principal place of business in Memphis, Tennessee.

      6.      Interpleader Defendants First Millennium, Inc., Millennium Partners, L.P. and RMK Advantage Fund (collectively, the "Noteholders") hold a majority of the outstanding Notes that are the subject of the Indenture, as defined below.

      7.      Interpleader Defendant Federal Deposit Insurance Corporation ("FDIC") is a federal regulatory agency with an office located in New York, New York, which serves as the receiver for non-party NextBank, N.A ("NextBank").

## BACKGROUND

      8.      Interpleader Plaintiff BNY is a party to a master indenture agreement, dated as of December 11, 2000, as supplemented by indenture supplements (the "Indenture"). Pursuant to the Indenture, certain asset-backed notes (the "Notes") were issued that are secured by a portfolio of credit card receivables. The credit cards were issued by non-party NextBank.

      9.      Pursuant to the terms of the Indenture, BNY holds certain collateral that is the subject of the instant dispute (the "Collateral"). The Collateral consists of credit card

2

receivables, proceeds received from credit card receivables, funds in accounts referred to as the "Spread Accounts," and certain other assets.

10.    The Noteholders have notified BNY that, as a result of NextBank's entry into receivership and certain subsequent events, BNY is now obligated, pursuant to the terms of the Indenture, to turn over to them (and other holders of Notes) certain Collateral and take certain other actions with respect to the Collateral for their benefit (the "Instructions").

11.    The Noteholders have taken the position that BNY's failure to turn Collateral over to them or follow the Instructions will constitute a breach of BNY's obligations pursuant to the Indenture. The Noteholders have further notified BNY that they will consider instituting legal proceedings against BNY if it does not follow the Instructions concerning the Collateral.

12.    The FDIC has disputed the Noteholders' claims to the Collateral and the Noteholders' Instructions. The FDIC has further informed BNY that, in accordance with the terms of the Indenture and a decision rendered by the United States District Court for the District of Columbia, in an action entitled *Bank of New York v. FDIC*, ___ F. Supp. 2d ___, No. 03-1221, 2006 WL 2772860 (D.D.C. Sept. 27, 2006) (the "District Court Decision"), BNY must turn certain Collateral over to the FDIC and cannot take actions with respect to the Collateral pursuant to the Noteholders' Instructions. The FDIC has taken the position that, if BNY turns Collateral over to the Noteholders and follows the Instructions with respect to the Collateral, BNY might be acting in contempt of the District Court Decision, and the FDIC has indicated that it is considering legal action.

13.    The Noteholders have disputed the FDIC's claims to the Collateral and the FDIC's efforts to cause BNY not to follow their Instructions concerning the Collateral.

3

14.    Interpleader Plaintiff BNY faces competing claims to the Collateral and cannot determine, without hazard to itself, how it should proceed with respect to the Collateral it holds.

15.    Interpleader Plaintiff BNY is ready and willing to deliver the Collateral to such person or persons as the Court shall direct.

16.    The above-entitled action is not brought by collusion with any of the Interpleader Defendants.

### PLEA FOR RELIEF

**WHEREFORE,** Interpleader Plaintiff BNY demands judgment:

1.    That Interpleader Defendants and each of them be restrained by injunction from commencing or prosecuting any action or proceeding against Interpleader Plaintiff in relation to the Collateral.

2.    That Interpleader Defendants be required to interplead together concerning their respective claims to the Collateral.

3.    That Interpleader Plaintiff's costs and disbursements, including legal fees and expenses, be paid out of the Collateral.

4.    That Interpleader Plaintiff have such other and further relief as the court may deem just, proper and equitable, including reasonable attorneys' fees.

4

Dated: New York, New York
      November 16, 2006

ALSTON & BIRD LLP

Michael E. Johnson
Birgit Kurtz
90 Park Avenue
New York, New York
(212) 210-9400

*Attorneys for Interpleader Plaintiff*
*The Bank of New York, in its capacity as*
*Indenture Trustee of the NextCard Credit*
*Card Master Note Trust*

# Search Results

| Claim/Index Number | Case Caption | Court Filed | Filing Date | Filing User |
|---|---|---|---|---|
| 650234/2006 | The Bank of New York, in its capacity as Indenture Trustee of the NextCard Credit Card Master Note Trust vs First Millennium, Inc. et al | New York County Supreme Court | 11/16/06 | BIRGIT KURTZ |

Search Again

# EXHIBIT B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

THE BANK OF NEW YORK, in its capacity as
Indenture Trustee of the NextCard Credit Card Master
Note Trust,

                    Interpleader Plaintiff,

                    - against -                                    Index No.  650234-06

FIRST MILLENNIUM, INC., MILLENNIUM
PARTNERS, L.P., RMK ADVANTAGE FUND, and
FEDERAL DEPOSIT INSURANCE                              **AFFIDAVIT OF**
CORPORATION,                                          **SERVICE**

                    Interpleader Defendants.

STATE OF NEW YORK   )
                             S.S.:
COUNTY OF NEW YORK)

        KIM FITZGERALD, being duly sworn, deposes and says:
        I am not a party to the action, am over 18 years of age, and am employed by
Alston & Bird LLP, attorneys for Interpleader Plaintiff.
        That on the 20th day of November 2006, at approximately 8:50 a.m., I served true
copies of the annexed Summons and Complaint and Notice Regarding Availability of
Electronic Filing upon the Federal Deposit Insurance Corporation at 20 Exchange Place,
4th Floor, New York, NY 10005, by personally delivering and leaving the same with
Barbara A. Monheit, Regional Counsel and Agent for Service of Process for the Federal
Deposit Insurance Corporation.
        Barbara A. Monheit is a white female, approximately 50 years of age, stands
approximately 5' 1" and weighs approximately 120 pounds with brown eyes and blond
hair.

*Kim Fitzgerald*
Kim Fitzgerald

Sworn to before me this 20th
Day of November, 2006

*Pamela L. Lewis*
Notary Public

PAMELA L. LEWIS
Notary Public, State of New York
No. 31-4610141
Qualified in New York County
Commission Expires ~~March 30,~~
April 30, 2007

ADMIN/20048156v1

Barbara A. Monheit
Regional Counsel
Legal

**FDIC** Federal Deposit Insurance Corporation
20 Exchange Place
New York, NY 10005
Tel: 917.320.2800
Fax: 917.320.2844
bmonheit@fdic.gov

# EXHIBIT C

# VEDDER PRICE

VEDDER, PRICE, KAUFMAN & KAMMHOLZ, P.C.
805 THIRD AVENUE
NEW YORK, NEW YORK 10022
212-407-7700
FACSIMILE: 212-407-7799

MICHAEL J. EDELMAN
212-407-6970
mjedelman@vedderprice.com

OFFICES IN CHICAGO, NEW YORK CITY, AND ROSELAND, NEW JERSEY

November 13, 2006

**VIA E-MAIL AND FIRST CLASS MAIL**

Gary D. Roth, Esq.
Alston & Bird LLP
90 Park Avenue
New York, New York 10016
e-mail: gary.roth@alston.com

> Re:    NextCard Credit Card Master Note Trust – Indenture Trustee's Refusal to Follow
>        the Directions is Unreasonable and Will Cause the Noteholders Irreparable Harm

Dear Gary:

As you know, we represent Millennium Partners, L.P. and First Millennium, Inc. (together, "Millennium"), which is the largest holder of Notes under that certain Master Indenture, dated as of December 11, 2000 (the "Master Indenture", and as amended and supplemented from time to time, the "Indenture"), between NextCard Credit Card Master Note Trust (the "SPV Issuer") and The Bank of New York, in its capacity as indenture trustee (the "Indenture Trustee"). As you know, Millennium and RMK Advantage Income Fund (together, the "Directing Noteholders") hold a majority of the outstanding Notes under each of the 2000-1 and 2001-1 Series of Notes issued under the Indenture. As you also know, the Directing Noteholders directed the Indenture Trustee to take certain actions to enforce the rights of the Noteholders pursuant to an instruction letter dated November 9, 2006 (the "Instruction Letter" and the directions therein, the "Directions").[1]

We write in response to your letter, dated November 10, 2006 (the "Refusal Letter"), wherein you state that Indenture Trustee "declines to accept the Instruction Letter or to accept the actions specified in the Directions . . . ." In sum, the Indenture Trustee's refusal to follow the express terms of the Instruction Letter violates the terms of the Indenture and constitutes an egregious breach of duty owed to the Noteholders, which will result in serious and significant damages to the Noteholders.

Although we have repeatedly asked you to provide the specific reasons why the Indenture Trustee is unwilling to act, you have refused to provide anything but a conclusory response.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Indenture.

NEWYORK/#170516.1

VEDDERPRICE

Gary Roth, Esq.
November 13, 2006
Page 2

Once again, in the Refusal Letter, you have given the following generalized platitudes to explain away the Indenture Trustee's refusal to accept the Instruction Letter:

(a) <u>Conflicts with Rule of Law from D.C. Opinion</u>. The Directions "conflict with the rule of law as evidenced by the [September 28, 2006] decision of the court in the action entitled *The Bank of New York v. Federal Deposit Insurance Company* in the United States District Court for the District of Columbia, Civil Action No. 03-1221 (ESH)" (the "<u>FDIC Suit</u>", and such September 28th decision, the (the "<u>D.C. Opinion</u>").

(b) <u>Conflicts with Terms of Master Indenture</u>. The "actions [specified in the Directions] conflict with the Master Indenture as they are not authorized or within the discretion or rights conferred upon the Indenture Trustee by the Master Indenture."

(c) <u>Indemnification is Not Satisfactory</u>. The indemnification provided in the Instruction Letter was not satisfactory.

Your refusal to provide concrete bases for why the Indenture Trustee is unwilling to act places an unfair burden upon the Noteholders – forcing Millennium to waste substantial resources to demonstrate how each and every request in the Instruction Letter is appropriate. In contrast to the generalized and unsupported rationales posited in your refusal letter, the Instruction Letter and the Directions comply with the terms of the Indenture and do not contravene any rule of law.

## A.    <u>General Provisions Regarding Directions</u>

The right to direct the Indenture Trustee is governed by Sections 5.12, 6.01 and 6.03(d) of the Master Indenture. Section 5.12 provides that a majority of the Outstanding Amount of the Notes of any affected Series "shall have the right to direct" the exercise of remedies by the Indenture Trustee unless the directions "conflict with the rule of law or with this Indenture", is "illegal" or will expose the Indenture Trustee to "personal liability". Section 6.03(d) further provides that the Indenture Trustee "shall be under no obligation to . . . honor the . . . direction of the Noteholders pursuant to this Indenture, unless such Noteholders shall have offered to the Indenture Trustee reasonable security or indemnity against the costs, expenses and liabilities which might be incurred by it in compliance with such . . . direction;" once such an indemnification is provided, however, the Indenture Trustee has a duty to perform the directions of the Noteholders. Section 6.01, however, provides that the Indenture Trustee is responsible for "its own negligent failure to act" – such as the refusal to follow a valid direction of the majority of the Noteholders. *See* Master Indenture, § 6.01(d). In contrast, the Indenture Trustee is relieved of liability "with respect to any action taken . . . by it in good faith in accordance with this Indenture and/or the direction of the majority of the Outstanding Amount of the Notes of each outstanding Series of Notes" relating to any remedy available under the Indenture. *See* Master Indenture, § 6.01(d)(iii).

VEDDERPRICE

Gary Roth, Esq.
November 13, 2006
Page 3

As you know, the Instruction Letter was issued by a majority of the Outstanding Amount for each Series of Notes. Further, as this letter will detail, (a) the Directions do not contravene, the D.C. Opinion (or any rule of law for that matter), (b) the Directions do not contravene any provision in the Indenture, (c) the Directions do not involve any illegalities, and (d) in light of the full indemnification provided by the Directing Noteholders, the Directions do not expose the Indenture Trustee to any personal liability. As such, the Indenture Trustee is duty-bound to comply with the terms of the Instruction Letter. In addition, the proper Instruction Letter shields the Indenture Trustee from any potential liability relating to the Indenture Trustee following the terms of the Instruction Letter pursuant to the express terms of Section 6.01 of the Master Indenture (which is binding upon NextBank and the FDIC).

**B.      Nothing in the Directions or the Instruction Letter Violates
Any "Rule of Law" Promulgated in the D.C. Opinion**

Contrary to the general unsubstantiated statement in the Refusal Letter, the Instruction Letter does not contravene any "rule of law" established in the D.C. Opinion. In the FDIC Suit, the SPV Issuer is neither the defendant nor even a named party – rather, the sole defendant is the FDIC. The primary theory pursued in the FDIC Suit was that FDIC did not have power to revoke the "*ipso facto*" clause in the Indenture because it was not a "party" to the Indenture. Accordingly, because (under this theory) the FDIC acted beyond its powers, causing it to receive Receivables distributions to which it was not entitled, the Indenture Trustee sued the FDIC for conversion and damages relating to such conversion.

Other than the direction regarding the appeal of the D.C. Opinion,[2] nothing in the Instruction Letter relates to the FDIC, NextBank, N.A. ("<u>NextBank</u>") or the FDIC Suit. Rather, the Instruction Letter and the Directions solely concern enforcement actions and rights against the SPV Issuer. In evaluating the unsubstantiated contention that the D.C. Opinion created a "rule of law" that the Instruction Letter violates, the following facts must be noted:

- The SPV Issuer is not a party to the FDIC Suit;
- The FDIC Suit does not address the liability of the SPV Issuer in any way;
- In the D.C. Opinion, the court neither ruled that the SPV Issuer was not a separate legal entity, nor ruled that the separate existence of the SPV Issuer should be disregarded with respect to its obligations under the Indenture;
- Neither did the court hold that an Early Amortization Event did not occur in February 2002;
- Nowhere in the D.C. Opinion did the court rule that the Early Amortization Event in February 2002 was not enforceable against the SPV Issuer;

---

[2]      It should be self-evident that the Indenture Trustee has the right to pursue an appeal of the D.C. Opinion, and that such appeal does not violate any "rule of law."

VEDDERPRICE

Gary Roth, Esq.
November 13, 2006
Page 4

- Nowhere in the D.C. Opinion did the court rule that any of the provisions of the Indenture could not be enforced against the SPV Issuer;
- At no point in the D.C. Opinion did the court rule that remedies could not be taken against the Collateral;
- Nothing in the D.C. Opinion excused the SPV Issuer from making principal repayments under the Early Amortization waterfall starting in February 2002; and
- Nothing in the D.C. Opinion excuses the SPV Issuer from the Event of Default arising from the non-payment of principal caused by the delay in honoring the Early Amortization Period in February 2002.

Nothing in the D.C. Opinion affects in any way the liability of the SPV Issuer or the remedies that can be taken against the SPV Issuer. The D.C. Opinion stands only for the proposition that the Early Amortization Period clause was unenforceable against the FDIC (standing in the shoes of NextBank) and that the FDIC is not liable for conversion. Accordingly, the statement in the Refusal Letter that the D.C. Opinion created a "rule of law" that is violated by the Instruction Letter lacks any foundation. Indeed, in several conference calls and e-mails, Alston & Bird admitted that pursuing remedies against the SPV Issuer was not precluded by the D.C. Opinion or the FDIC Suit.

## C.    Nothing in the Directions or the Instruction Letter Violates the Indenture

In the Refusal Letter, you next contend that the Directions contradict the terms of the Master Indenture. Once again, you have failed to explain how any of the Directions contravene the terms of the Master Indenture. In the Instruction Letter, the Directing Noteholders direct the Indenture Trustee to take the following Directions:

(i)     to Declare an Event of Default and accelerate the Notes;
(ii)    to Exercise Control over the Collateral and continue to hold the Collateral until the Notes are fully repaid
(iii)   to the extent necessary to carry-out the Directions, to revoke the power of the Servicer to make distributions other than as provided in the Instruction Letter
(iv)    to cause all moneys and proceeds from the SPV Issuer and from the Collateral to be applied in accordance with the Section 5.05(b) waterfall, including the payment of Indenture Trustee's fees and expenses;
(v)     after payment of the Indenture Trustee's fees and expenses, to hold all other collections in escrow pending certain events after which such collections shall be distributed under Section 5.05(b) of the Mater Indenture;
(vi)    to initiate suit against the SPV Issuer;
(vii)   to pursue the appeal of the D.C. Opinion;
(viii)  to distribute the Spread Accounts in accordance with the terms of the Indenture;

VEDDERPRICE

Gary Roth, Esq.
November 13, 2006
Page 5

|     |     |
|-----|-----|
| (ix) | to pursue the Issuer Suit and the Appeal of the D.C. Opinion in accordance with Directions from the Directing Noteholders; |
| (x) | to retain co-counsel to carry out the Directions; |
| (xi) | to send out a notice of election of remedies; and |
| (xii) | to organize a Noteholders' conference call. |

Contrary to the unsubstantiated allegation in the Refusal Letter, and as specifically addressed below, each of these Directions is supported by the terms of the Indenture.

(i)     **To Declare Event of Default and Accelerate the Notes**.  The Direction to declare an Event of Default and to accelerate the Notes fully comports with the terms of the Indenture.  Pursuant to Section 5.01(a) of the Master Indenture, NextBank's entry into a receivership would constitute a Trust Redemption Event, which in turn would trigger the commencement of the Early Amortization Period.  *See* Master Indenture, § 5.01(a).  During an Early Amortization Period, the SPV Issuer is required to commence making payments of principal on the Notes.  *See* Indenture Supplement, § 4.04(c).  The SPV Issuer's failure to pay the principal of the Notes when due and payable constitutes an Event of Default under Section 5.02 of the Master Indenture.  Under the Master Indenture, after an Event of Default under Section 5.02, the Holders of Notes representing not less than a majority of the Outstanding Amount of the Notes may declare an immediate acceleration of maturity on the Notes, as set forth in Section 5.03 of the Master Indenture.  Once accelerated, all "unpaid principal of the Notes, together with accrued and unpaid interest thereon through the date of acceleration, shall automatically become . . . due and payable."  *See* Master Indenture, § 5.03.  In addition, Section 5.04 provides that the Indenture Trustee can demand immediate full payment of any defaulted principal payment.

In the instant case, all of the requirements necessary for declaring an Event of Default and accelerating the Notes of each Series have occurred:

- NextBank entered into receivership on February 7, 2002, which constituted a Trust Redemption Event and triggered the commencement of the Early Amortization Period.
- Contrary to the express terms of the Indenture, the SPV Issuer failed to pay the principal that came due commencing in February 2002, which failure has caused certain principal not be repaid.
- The SPV Issuer's failure to pay any principal on the Notes when due and payable constitutes an Event of Default under Section 5.02 of the Master Indenture.
- The Directing Noteholders, as the holders of a majority of the outstanding Notes under each Series, are entitled to accelerate the Notes and so instructed the Indenture Trustee.

NEWYORK/#170516.1

VEDDERPRICE

Gary Roth, Esq.
November 13, 2006
Page 6

- The acceleration of the Notes causes the full unpaid principal amount of $55,622,500 on the 2000-1 Series Notes and $56,486,500 on the 2001-1 Series Notes to become immediately due and payable.

Accordingly, the Directing Noteholders' direction to declare an Event of Default and acceleration of the Notes is in compliance with the express terms of the Master Indenture. As an express result of this Direction, and in accordance with the terms of Section 5.03 of the Master Indenture (and the corresponding provisions in each of the Notes), the "unpaid principal of the Notes" – which is now in excess of $112 million in the aggregate – together with accrued interest thereon is now due and payable.

(ii)    **To Exercise Control over the Collateral and Continue to Hold the Collateral until the Notes are Fully Repaid.**  In the Instruction Letter, the Directing Noteholders directed that the Indenture Trustee exercise control over the Collateral (the Receivables) and continue to hold the Collateral until the Notes are fully repaid.  This action is expressly countenanced and authorized under Sections 5.02(a)(ii), 5.06, 5.12 and 8.01 of the Master Indenture.  Section 5.06 expressly contemplates that the Indenture Trustee may take action to maintain possession and control of the Collateral after an Event of Default, regardless of the occurrence of the final maturity date, in an amount sufficient to pay the principal and interest on the Notes.  Further, Section 8.01 provides that the "Indenture Trustee may demand payment or delivery of, and shall receive and collect, directly and without intervention or assistance of any . . . intermediary, all money and other property payable to or receivable by the Indenture Trustee pursuant to [the] Indenture."  In addition, a majority of Noteholders can direct that the Indenture Trustee take such actions to take control over the receipt of the proceeds of the Receivables.  *See* Master Indenture, § 8.01.  In turn, Section 5.02(a)(ii) of the Master Indenture specifically authorizes that after an Event of Default and acceleration, the Indenture Trustee may take any "appropriate action to protect and enforce the rights and remedies of the Indenture Trustee and the Holders of the Notes of the affected Series."  Finally, as set forth above, Section 5.12 gives the Noteholders the right to direct the Indenture Trustee as to how to exercise remedies against the SPV Issuer and the Collateral.  In addition, the exercise of control over the Collateral after an Event of Default and acceleration is consistent with the granting clause and Section 8.02 of the Master Indenture, which contemplate that the Collateral will be used to protect the payment of principal of and interest due on the Notes.

With respect to the direction to continue to hold and collect proceeds from the Collateral until the all principal and interest on the Notes have been repaid in full, such direction comports with numerous provisions in the Indenture. *See, e.g.,* Master Indenture § 5.03 (after acceleration, all unpaid principal and interest on the Notes becomes due), § 5.05(b) (distribution waterfall after acceleration requires all interest and principal due to be repaid), § 5.06 (Indenture Trustee should retain Collateral sufficient for payment in full of principal and interest on the Notes), § 5.08 (Noteholders have unconditional right to receive full payment of principal and interest due on the

VEDDERPRICE

Gary Roth, Esq.
November 13, 2006
Page 7

Notes). As you will note, we expressly made the Indenture Trustee's ability to continue to hold and collect the Receivables in escrow subject to further order from a court of competent jurisdiction. This clause was inserted at the request of Indenture Trustee itself, so that the Indenture Trustee would not be faced with a conflict between a Direction and a court order.

Based upon the foregoing, the Indenture Trustee has authority to exercise control over the Collateral until all principal and interest due on the Notes have been repaid in full. Accordingly, this Direction fully comports with the terms of the Indenture.

(iii)    **To the Extent Necessary to Carry Out the Directions, to Revoke the Power of Servicer to Make Distributions Other Than as Provided in the Instruction Letter**. To ensure that the Servicer would respect the Indenture Trustee's exercise of control over the Collateral and to make distributions as required pursuant to Section 5.05(b) of the Master Indenture, the Directing Noteholders instructed the Indenture Trustee to revoke the power of the Servicer to make distributions not in compliance with the Instruction Letter (which in turn provides that distributions be made in accordance with Section 5.05(b) of the Master Indenture), which distribution scheme (as discussed below) is required by the terms of the Indenture). Pursuant to Sections 8.01 and 8.03 of the Master Indenture, the Indenture Trustee has the power to revoke the Servicer's authority to receive and distribute the proceeds of the Receivables and other Collateral. Accordingly, this Direction fully comports with the terms of the Indenture.

(iv)    **To Cause All Moneys and Proceeds from the SPV Issuer and from the Collateral to Be Applied in Accordance with the Section 5.05(b) Waterfall, including the Payment of Indenture Trustee's Fees and Expenses**. Pursuant to the Instruction Letter, the Directing Noteholders have directed that the Indenture Trustee make all future distributions from collections on the Receivables, whether through the proceeds of Receivables taken into control by the Indenture Trustee or as a result of Proceedings initiated by the Indenture Trustee, in accordance with Section 5.05(b) of the Master Indenture. Section 5.05(b) of the Master Indenture provides the waterfall for collections received by the Indenture Trustee after an acceleration of the Notes. The Section 5.05(b) waterfall basically provides for payments in the following order: first, payment of the Indenture Trustee's fees and expenses;[3] second, to the various classes of Notes, in order of priority; and finally, the remainder (if any) is turned over to the transferor (NextBank/the FDIC receiver).

In a recent telephone call, you asked whether the distribution scheme under Section 5.05(b) only applies to collections from law suits. It clearly does not. The distribution waterfall applies to all collections pursuant to Article V of the Indenture. Section 5.05(b) provides:

---

[3]    This first distribution level would provide the basis for paying the $600,000 of fees and expenses of the Indenture Trustee's counsel discussed below.

NEWYORK/#170516.1

VEDDER PRICE

Gary Roth, Esq.
November 13, 2006
Page 8

> If the Indenture Trustee **collects any money or property pursuant to this Article V** following the acceleration of maturities of the Notes . . ., it shall pay the money or property in the following order: . . . .

*See* Master Indenture, § 5.05(b)    Accordingly, distribution pursuant to the waterfall provision of Section 5.05(b) is proper when collections of interest and principal from Receivables is the collection of "money or property pursuant to [ ] Article V".

If distributions under 5.05(b) were meant to apply solely to collections from law suits, the phrase in Section 5.05(b) would not have been "pursuant to Article V", but would have been limited to "Proceedings" or "Sections 5.04 or 5.05(a)(i)".   Article V of the Master Indenture deals not only with the commencement of Proceedings (§§ 5.04 and 5.05(a)(i)), but many other types of rights and remedies, including the initiation of any remedy (§5.05(a)), actions to take control of the Collateral (§5.06), the acceleration of the Notes (§5.03), and Noteholders' directions regarding remedies and powers of the Indenture Trustee (§5.12).   At a minimum, collections are not limited to proceeds from a suit, but for collections arising from any right or remedy directed by the Noteholders.   One of the remedies available to the Noteholders is to exercise control over the Collateral, which control over Collateral can be invoked through Sections 5.05(a)(ii), 5.06 and 5.12 of the Master Indenture.   After the Indenture Trustee takes control of the Receivables (as has been directed by the Noteholders), proceeds from the Receivables will be subject to the distribution waterfall of Section 5.05(b) – indeed, such proceeds will be "money or property [collected by the Indenture Trustee] pursuant to this Article V" of the Master Indenture.   Accordingly, the Directing Noteholders' Direction to make future distributions from the moneys and proceeds of the Receivables collected by the Indenture Trustee is not only a reasonable interpretation of the Master Indenture, but such distribution is required by the express mandate of Section 5.05(b) thereof.   Accordingly, this Direction fully comports with the terms of the Indenture.

   (v)    **After Payment of the Indenture Trustee's Fees and Expenses, To Hold All Other Collections in an Escrow Account Pending Certain Events, after Which Collections to Be Distributed under Section 5.05(b).**   The Directing Noteholders also directed that after the fees and expenses (including attorneys' fees) of the Indenture Trustees are paid (including the $600,000 discussed below), that all further proceeds from the Receivables should be held in an Escrow Account pending (a) further order of a court of competent jurisdiction, (b) receipt of further directions from the Directing Noteholders (which directions of course would have to be in compliance with the terms of the Master Indenture and applicable law), or (c) collection of amounts sufficient to satisfy in full all of the Notes.   This Direction does not change who is entitled to receive distributions or how much such parties receive, but just the timing of when the Indenture Trustee makes distributions under  the Section 5.05(b) waterfall to the "SECOND" and lower distribution levels.   The Directing Noteholders inserted this Direction at the request of the Indenture Trustee's counsel, who asked that proceeds from the Receivables not be distributed

VEDDERPRICE

Gary Roth, Esq.
November 13, 2006
Page 9

immediately to the Noteholders – which delay would give a court of competent jurisdiction an opportunity to review the Noteholders' entitlement to such funds if so requested by an interested party.[4]    The Directing Noteholders also believe that this Direction fully comports with the requirements of Master Indenture Sections 5.05(a)(ii) (remedies power), 5.06 (collateral preservation power) and 8.01 of the Master Indenture (right to hold collections by the Indenture Trustee in trust for the Noteholders, for application as provided in the Indenture). Accordingly, this Direction fully comports with the terms of the Indenture.

      (vi)    **To Initiate Suit against the SPV Issuer**. In the Instruction Letter, the Directing Noteholders directed that the Indenture Trustee commence a suit against the SPV Issuer (the "Issuer Suit"). The Directing Noteholders also requested that the Indenture Trustee seek such declaratory and other injunctive relief in such suit as deemed necessary or advisable in the collection of the sums due and owing to the Noteholders.

      Under the terms of the Indenture, the acceleration notice causes all "unpaid principal" and "unpaid interest" on the Notes to become immediately due and payable. *See* Master Indenture, § 5.03. Upon the failure of the SPV Issuer to repay the demanded amount, Section 5.04(b) provides that the Indenture Trustee may institute and prosecute a suit, and seek enforcement and collection of a judgment, against the SPV Issuer for such sums so due and unpaid. In addition, Section 5.04(c) provides that the Indenture Trustee may seek specific performance or other relief in the suit against the SPV Issuer to assist in the enforcement of rights by the Indenture Trustee and the Noteholders under the Indenture. Section 5.05(a)(i) also authorizes the Indenture Trustee to initiate a suit against the SPV Issuer for collection of amounts due and payable on the Notes.

      Here, pursuant to the Instruction Letter, all of the unpaid principal and interest on the Notes is accelerated and is due and payable. Initiation of a suit against the SPV Issuer is expressly contemplated under the terms of the Master Indenture to seek collection of amounts due on the Notes. Accordingly, this Direction fully comports with the terms of the Indenture.

      (vii)    **To Pursue the Appeal of the D.C. Opinion**. The Directing Noteholders have requested that the Indenture Trustee pursue the appeal of the D.C. Opinion (the "Appeal"). Having brought the FDIC Suit, and having expressly recognized the propriety of pursuing such Appeal in numerous correspondences and in several direction letters accepted (and drafted and/or revised) by the Indenture Trustee, the Indenture Trustee cannot now argue that pursuit of the Appeal is improper under the terms of the Indenture.

      In the Refusal Letter, you also state that in the instruction letter dated October 27, 2006, Millennium agreed that the Indenture Trustee can dismiss the Appeal unless the Indenture

---

[4]    To the extent that the Indenture Trustee wishes to rescind this suggestion, the Instruction Letter can be so modified.

NEWYORK/#170516.1

VEDDERPRICE

Gary Roth, Esq.
November 13, 2006
Page 10

Trustee receives confirmation of arrangements satisfactory to the Indenture Trustee regarding the payment of the $600,000 over-spending by the Indenture Trustee.[5]  This assertion is wholly unsupported.  As set forth below, the $600,000 deficit spending was unauthorized and, as such, if the Indenture Trustee dismisses the Appeal based upon fees and expenses incurred beyond the authority conferred under the August 2005 Instruction Letter (as defined below), such dismissal would constitute a direct breach of its duties to the Noteholders.  Furthermore, as set forth above, the Directing Noteholders have provided arrangements for the full payment of such expenses, and the Indenture Trustee's refusal to accept such payment mechanisms is patently unreasonable.

(viii)  **To Distribute the Spread Accounts in Accordance with the Terms of the Indenture**.  The Directing Noteholders also directed that the Indenture Trustee "distribute the amounts held in the Spread Accounts in accordance with the terms of the Indenture."  Under the Indenture, the Indenture Trustee possesses "all right, title and interest" in the funds held in the Spread Accounts and the proceeds thereof.  *See* Indenture Supplement, § 4.11(a).  Following the occurrence of an Event of Default and acceleration of the Notes, the Spread Accounts are required to be liquidated, with the funds distributed first to Class C Noteholders to fund any shortfall of amounts due to such Noteholders under Section 5.02 of the Indenture Supplement.  This Direction does nothing more than direct the Indenture Trustee to implement the mandatory terms of the Indenture relating to the distribution of the funds in the Spread Accounts after an Event of Default and acceleration of the Notes.  Accordingly, this Direction fully comports with the terms of the Indenture.

(ix)  **To Pursue the Issuer Suit and the Appeal of the D.C. Opinion in Accordance with Directions from Directing Noteholders**.  The Instruction Letter includes a provision in which the Directing Noteholders, as the parties who are responsible for the indemnification provided to the Indenture Trustee under the Instruction Letter, are granted the right to direct the prosecution of the Appeal and the Issuer Suit or, if no such direction is given, that such suits may be pursued as determined in the reasonable discretion of the Indenture Trustee.  This type of direction has been accepted in the past by the Indenture Trustee with respect to the FDIC Suit and is common for litigations that are authorized by directing noteholders under indentures.  Accordingly, this Direction fully comports with the terms of the Indenture.

(x)  **To Retain Co-Counsel for Carrying Out Directions**.  Pursuant to the Instruction Letter, the Directing Noteholders have directed that the Indenture Trustee retain Vedder, Price as co-counsel for the Indenture Trustee in effecting the Directions.  Under the terms of the Master Indenture, the Directing Noteholders have a right "to direct the time, manner

---

[5]    Millennium only accepted this provision in the October 27th Instruction Letter when the Indenture Trustee – in complete dereliction of its duties – informed Millennium that it would not file the notice of appeal without such provision, which demand was made literally two hours before the deadline for such filing.  To prevent irreparable harm to all Noteholders that would have occurred if the notice of appeal had not been filed, Millennium agreed to this last minute ultimatum by the Indenture Trustee.

VEDDERPRICE

Gary Roth, Esq.
November 13, 2006
Page 11

and place of any Proceeding for any remedy available to the Indenture Trustee with respect to the Notes or exercising any power conferred on the Indenture Trustee with respect to the Notes . . . " *See* Master Indenture § 5.12. Requiring an indenture trustee to retain an additional co-counsel selected by directing noteholders is a common direction that is put into place for litigations that are authorized by directing noteholders under indentures. Such a Direction is not only reasonable and within the rights granted to the Directing Noteholders under the Indenture, but is a practical necessity to ensure the successful pursuit of the remedies directed by the Directing Noteholders. Accordingly, this Direction fully comports with the terms of the Indenture.

(xi)    **To Send Out a Notice of Election of Remedies and To Organize a Noteholders' Conference Call.** Pursuant to the Instruction Letter, the Directing Noteholders have requested that the Indenture Trustee send out a notice of the election of remedies and schedule a Noteholders' conference call. These actions are fully within rights of the Indenture Trustee under the Indenture. In addition, the Directing Noteholders included these provisions at the express request of the Indenture Trustee. Accordingly, these Directions fully comport with the terms of the Indenture.

**D.    In Accordance with Past Practices, the Indemnification Provided is Appropriate**

In the Refusal Letter, you have also stated that the indemnification provided by the Directing Noteholders is not reasonably satisfactory to the Indenture Trustee. Such contention lacks credibility. As you know, Millennium has a net worth of billions of dollars – a fact which Millennium has confirmed to you through requested disclosures of financial information – which fully protects the Indenture Trustee from any risk of personal liability. Further, the Indenture Trustee has accepted the same form of Indemnification repeatedly in the past. Accordingly, your contention that the indemnification is not satisfactory lacks credibility.

**E.    Holding the Directions Hostage to the Repayment of Unauthorized Legal Fees and Expenses Amounts to a Breach of the Trustee's Duties to the Noteholders**

In your e-mail of November 2, 2006, referenced in the Refusal Letter, you also demand that as part of the indemnification Millennium fully indemnify the $600,000 of legal fees incurred primarily by Alston & Bird in pursuing the FDIC Suit. As we have repeatedly informed you, this "demand" is patently unreasonable. Indeed, this demand appears to be the true reason why you have "decline[d] to accept the Instruction Letter".

Apparently, Alston & Bird spent in excess of $600,000 above the fund established to finance prosecution of the FDIC Suit in the instruction letter delivered in August 2005 (the "August 2005 Instruction Letter"). In the August 2005 Instruction Letter, a majority of the Noteholders directed the Indenture Trustee to:

VEDDERPRICE

Gary Roth, Esq.
November 13, 2006
Page 12

> "proceed to litigate/and or settle [the FDIC Suit], as currently pled in the
> Count 6 [of the FDIC Suit], and any possible appeal thereof to the United
> States Court of Appeals for the District of Columbia Circuit, including
> taking discovery, preparing the record, briefing and arguing related
> motions and the submission of Count 6 to these Courts in due course, and
> all other actions necessary to the litigation or settlement of Count 6 in the
> ordinary course."

As part of the process of establishing the fund under the August 2005 Instruction Letter,
Millennium requested that Alston & Bird estimate the total amount of fees needed to fund the
litigation of the FDIC Suit and the appeal thereof. We received an estimate that the total cost of
the litigation (including the appeal) would be less than $700,000. Being responsible, Millennium
built in a reserve of approximately160% of the stated amount – amounting to in excess of $1.1
million – which funds were set aside in an expense account (the "Expense Account") by the
Indenture Trustee to fund the FDIC Suit and any appeal thereof. The August 2005 Instruction
Letter further states, as was accepted by the Indenture Trustee and Alston & Bird, that:

> It is anticipated that the Expense Account will be sufficient to cover the
> fees and expenses associated with pursuing Count 6 (including the costs
> and expenses of any appeal). If inadequate, the Indenture Trustee agrees
> that it shall seek further direction from the August 2005 Directing
> Noteholders before incurring fees and expenses related to Count 6 in
> excess of the amounts deposited in the Expense Account.

As you know, the Indenture Trustee exceeded its fee and expense estimate for pursuing Count 6
by not just a little, but by well over double over its original estimate. In fact, the August 2005
Directing Noteholders were not even approached for further instructions until the fees and costs
had exceeded the Expense Account by over $400,000. As such, the $600,000 in fees is not only
in excess of the Expense Account, but is an unauthorized expense pursuant to the express terms
of the August 2005 Instruction Letter. Further, the egregiousness of the expense overrun is
highlighted by the fact that the cap was exceeded after only a portion of the litigation had been
completed – only the liability stage of the FDIC Suit has concluded, and no Expense Account
amounts were spent in the damage stage or the Appeal.

As expenses unauthorized by the August 2005 Instruction Letter, the August 2005
Directing Noteholders have no responsibility to fund such *ultra vires* fees and expenses. Indeed,
the demand by the Indenture Trustee to include such overrun fees and expenses in the Instruction
Letter is egregious. The current Instruction Letter primarily relates to matters unrelated to the
FDIC Suit – and compelling the Directing Noteholders to condition taking such actions against
the SPV Issuer and the Collateral has no justification. Nowhere in the Indenture are Noteholders
required to include in an indemnification in a new instruction letter for obligations unrelated to

VEDDERPRICE

Gary Roth, Esq.
November 13, 2006
Page 13

such instructions – especially, as in the instant case, for overrun expenses that were not authorized.

Accordingly, the refusal by the Indenture Trustee to honor the Directions and the Instruction Letter based upon concerns regarding the unauthorized $600,000 of expenses amounts to a patent breach of duties to the Noteholders. This refusal is also unreasonable in that the Instruction Letter provides both a definitive means for the payment of such $600,000 of fees and an express authorization to make such payments from the proceeds of the Receivables. Why is the Indenture Trustee threatening the Noteholders for solving a problem that the Noteholders had no part in creating?

**F.      Requirement to Deliver Unqualified Opinion is Patently Unreasonable**

The requirement that the Directing Noteholders provide an "unqualified opinion" is patently unreasonable – such an opinion is not a requirement for Noteholders to give directions under the Indenture and cannot be given in accordance with accepted opinion practice regarding the exercise of remedies. The sole requirements placed upon Noteholders in directing the Indenture Trustee is to provide the Indenture Trustee with "reasonable security or indemnity against the costs, expenses and liabilities which might be incurred by it in compliance with such . . . direction." *See* Master Indenture, §6.03(d). As set forth above, the Directing Noteholders have provided sufficient indemnification to the Indenture Trustee. The requirement that the Noteholders be compelled to deliver an "unqualified opinion" directly contravenes the express provisions of the Indenture.

Further, as we have also mentioned to you, it is beyond accepted opinion practice to give an unqualified opinion – as you requested – with respect to remedies. Such a request asks for an opinion in contravention to accepted practices as enunciated by the Tribar Opinion Committee on Third-Party Legal Opinions. No law firm could give such an opinion – and your insistence upon delivery of such an "unqualified opinion" demonstrates the patent unreasonableness of the Indenture Trustee's position.

In sum, not only is the giving of an "unqualified opinion (or for that matter, any opinion) beyond the requirements of the Indenture, such an opinion cannot reasonably be requested. As such, the Indenture Trustee's requirement for an "unqualified opinion" amounts to a breach of duty by the Indenture Trustee and contravenes the duties imposed upon the Indenture Trustee under the Indenture.

Although not required by the Indenture, but to move matters forward, Millennium has authorized us to make the following statement. Although this letter does not constitute a legal opinion as to any of the issues addressed herein, the Indenture Trustee can consider this letter as "advice from counsel" within the meaning of Section 5.12(a) of the Master Indenture.

VEDDERPRICE

Gary Roth, Esq.
November 13, 2006
Page 14

**G.  Importance of Directions and Irreparable Material Harm
    that the Trustee's Actions Will Inflict upon the Noteholders**

The failure by the Indenture Trustee to follow the Directions set forth in the Instruction Letter will cause severe and irreparable harm to the Noteholders. As you know, there are only three sources of recovery for the Noteholders to receive payment on the unpaid principal and interest due on Notes – which obligations now exceeds $112 million in face principal amount:

(i)   the approximately $22.8 million held in the Spread Accounts;
(ii)  collection on the Collateral (comprised of the Receivables) – which has a value in excess of $70 million; and
(iii) the FDIC Suit, which is subject to the Appeal.

The failure by the Trustee to implement the Directions will irreparably harm the value of the Collateral and the prosecution of the Appeal. As you know, with the final maturity date for the Notes rapidly approaching – next month (December 15, 2001) for the 2000-1 Series and on April 15, 2007 for the 2001-1 Series – the failure by the Indenture Trustee to undertake the Directions may result in the Collateral being released to the Transferor – thereby by itself causing over $70 million of damages to the Noteholders. Further, the Collateral is dissipating each month. As set forth in the Instruction Letter, the Notes should be accelerated and the value of the Collateral must be held for the benefit of the Noteholders to satisfy the outstanding amounts due on the Notes. If the Indenture Trustee fails to accelerate the Notes, take immediate control of the Collateral and use the proceeds to repay the Notes, the Indenture Trustee will be breaching its duties to the Noteholders and be causing the Noteholders damages in excess of $70 million.

With respect to obtaining a recovery against the FDIC for conversion of Collateral, the Appeal must be pursued. The failure by the Indenture Trustee to pursue the Appeal will cause the irreparable loss of any rights to seek recovery against the FDIC.

In sum, Millennium believes that it (and all of the Noteholders) will receive full or close to full recovery on the Notes if the Indenture Trustee takes the Directions. Millennium believes that the Indenture Trustee should be responsible for any unpaid principal and interest on the Notes if the Indenture Trustee fails to follow the Instruction Letter -- and Millennium may pursue remedies against the Indenture Trustee for such failure.

**H.  Summary**

We have carefully reviewed each of the provisions of the Indenture, the pleadings in the FDIC Suit, and the D.C. Opinion. We strongly believe that the Directions described above are, at the very least, reasonable interpretations of the documents. In addition to the reasonableness of the positions stated, the Indenture Trustee is fully protected by the Indemnification provided in the Instruction Letter. Accordingly, we strongly believe that, and in accordance with Section

NEWYORK/#170516.1

VEDDERPRICE

Gary Roth, Esq.
November 13, 2006
Page 15

5.12(a) of the Indenture, the Instruction Letter and the Directions therein (a) fully comport with, and do not contravene, the Indenture, (b) are in compliance with the "rule of law", including with respect to the D.C. Opinion and FDIC Suit, and (c) do not constitute any illegal action. Further, given the broad indemnifications provided to the Indenture Trustee in the Instruction Letter, the indemnification provided to the Indenture Trustee is reasonable and proper. In this regard, even if any of the reasons posited herein are incorrect – which we believe is not the case -- the Directing Noteholders have provided indemnity against the "costs, expenses and liabilities which might be incurred" by the Indenture Trustee as a result of its actions taken under the terms of the Instruction Letter, as is required pursuant to Section 6.03(d) of the Master Indenture. Accordingly, the Indenture Trustee is protected against risk of personal liability. Further, the Instruction Letter and the Directions therein will protect all Noteholders from suffering imminent, irreparable injury through the loss of their Collateral and the rights to pursue the FDIC.

In sum, contrary to the unsupported allegations in the Refusal Letter, there is no basis for the Indenture Trustee to refuse to honor the Instruction Letter or to immediately undertake the Directions. Indeed, given the proximity to the November 15th distribution date, we urge the Indenture Trustee to act immediately. Failure by the Indenture Trustee to so act will be in direct contravention of its duties to the Noteholders and expose the Noteholders to approximately $90 million of irreparable injury. Once again, it is imperative for the Indenture Trustee to take immediate action to prevent irreparable harm to the Noteholders caused by an unreasonable breach of duty by the Indenture Trustee.

We hope that this letter clarifies matters for the Indenture Trustee and prevents any further misunderstandings. We look forward to working with you in implementing the Directions in a consensual manner – after all, our interests should be aligned here.

Very truly yours,

Michael J. Edelman

cc:     The Directing Noteholders
        H. Stephen Harris, Esq.
        John Douglas, Esq.
        Ms. Loretta Lundberg
        Robert E. Bailey, Esq.
        Douglas Lipke, Esq.

NEWYORK/#170516.1