## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Federal Deposit Insurance Corporation, in
its Capacity as Receiver for NextBank,
N.A.,

        Plaintiff,

        -against-

The Bank of New York, as Indenture
Trustee of the NextCard Credit Card
Master Note Trust,

        Defendant.

Case No. 06-1975

**DEFENDANT THE BANK OF NEW YORK, AS INDENTURE TRUSTEE'S
RESPONSE TO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING
ORDER AND A PRELIMINARY AND PERMANENT INJUNCTION,
AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT BANK OF NEW YORK'S MOTION TO DISMISS**

### I.    Introduction

Defendant, The Bank of New York, as Indenture Trustee of the NextCard Credit

Card Master Note Trust ("BONY") respectfully submits this Response to the Plaintiff's

Motion for Temporary Restraining Order and Preliminary and Permanent Injunction filed

by Plaintiff, the Federal Deposit Insurance Corporation in its capacity as Receiver for

NextBank, N.A. (the "FDIC Receiver"), and this Memorandum of Points and Authorities

in support of the motion to dismiss filed herewith by BONY.

As demonstrated below, this Court must dismiss this action because the Supreme

Court of the State of New York for the County of New York, prior to the filing of this

action, had assumed jurisdiction in an *in rem* interpleader case involving the same

controversy, and the granting of effective relief in either action requires possession or

control of the same *res*.[1]   The New York court is also the only court with jurisdiction over all interested persons, including the Noteholders.  Further, by virtue of the New York citizenship and residence of BONY and two of the three Noteholders that directed BONY to take the actions that are the subject of the FDIC Receiver's complaint in this new action (namely, First Millennium, Inc., Millennium Partners, L.P. and RMK Advantage Fund, hereinafter the "Directing Noteholders"), the fact that the FDIC maintains offices in New York City, and the fact that the documents at issue are governed by New York law, the New York court is the most appropriate forum, and perhaps the only appropriate forum, in which to adjudicate this dispute fully and properly.

In addition, this case should be dismissed because, in the absence of the Noteholders as parties, any issuance of an injunction by this Court would subject BONY to inconsistent obligations, and complete relief cannot be accorded to the parties to this action.

In any event, the FDIC Receiver's motion for a temporary restraining order and preliminary injunction must be denied because the FDIC Receiver has failed to make the showing necessary to permit issuance of injunctive relief.  As shown below, 18 U.S.C. § 1821(d)(19), which the FDIC Receiver argues relieves it of its obligation, under *Fed. R.*

---

[1]      That action is styled The Bank of New York, in its capacity as Indenture Trustee of the NextCard Credit Card Master Note Trust, Interpleader Plaintiff, against First Millennium, Inc., Millennium Partners, L.P., RMK Advantage Fund, and Federal Deposit Insurance Corporation, Interpleader Defendants, Supreme Court of the State of New York, County of New York, filed November 16, 2006, Index No. 650234/2006  (the "New York Interpleader Action").   A true and correct copy of the Complaint filed in the New York Interpleader Action is submitted herewith as Exhibit A.  Not only was the New York Interpleader Action filed prior to this action, but it has also been formally served on November 20, 2006.  The affidavit of that service is submitted herewith as Exhibit B.

ADMIN/20048154v1

*Civ. P.* 65, to demonstrate irreparable harm to obtain a TRO or preliminary injunction, applies only to cases alleging or showing a fraudulent transfer. The FDIC Receiver has made no such allegation or showing of any fraudulent transfer here.

The FDIC Receiver has also not carried its burden of showing that other interested persons will not suffer substantial harm if the Court grants the FDIC Receiver's request. Indeed, the absence of the Noteholders as parties in this action precludes this Court's proper consideration of that factor and underscores the reasons why dismissal of this case is required as a matter of law, in light of the New York court's exclusive jurisdiction in a case in which all persons with an interest in the *res* at issue are parties within that court's jurisdiction.

## II.  Background

As the Court is aware, BONY serves as the Indenture Trustee of the NextCard Credit Card Master Note Trust (the "Trust"). The Master Indenture between the Trust (the separate legal entity that issued the Notes) and BONY, dated as of December 11, 2000 (the "Master Indenture") creates fiduciary duties owed by BONY to the Noteholders. Section 5.12 of the Master Indenture provides that a majority of the Noteholders may direct the time, method and place of conducting any legal proceeding "for any remedy available to the Indenture Trustee with respect to the Notes or exercising any trust or power conferred on the Indenture Trustee with respect to the Notes" where an Event of Default has occurred. Section 5.05(a)(i) of the Master Indenture also provides for the Indenture Trustee to institute proceedings "for the collection of all amounts then payable on the Notes . . . ."

On or about November 9, 2006, BONY received from the Directing Noteholders Directions to Indenture Trustee and Indemnification Regarding (a) Notice of Event of Default and Acceleration and (b) Exercise of Remedies Under Master Indenture Section 5.05 (the "Instruction Letter"). The Instruction Letter directed BONY, *inter alia*, to: (a) execute the Notice and deliver the Notice to the Trust Administrator and others as required by its terms; (b) continue to hold the Collateral and collection of proceeds therefrom; and (c) promptly after the delivery of the Notice, to commence an action in the Supreme Court of the State of New York sitting in New York County, against the Trust to obtain a judgment from the Trust for the full unpaid principal and interest due on the Notes. Initially, BONY rejected the instructions in their initial form, in light of this Court's prior decision.

The reputable law firm of Vedder, Price, Kaufman & Kammholz, P.C., however, delivered to counsel for BONY, a lengthy letter asserting that this Court's prior decision did not preclude the actions directed by the Directing Noteholders in the instructions (the "Vedder Letter," attached as Exhibit C). In the Vedder Letter, the Directing Noteholders' counsel stressed that their instructions were strictly against the Notes and the Trust directly, not against NextBank or the FDIC Receiver. Specifically, in the Vedder Letter, the Noteholders stated that:

- The Trust is "not a party" to the prior action in this Court;

- The prior action did "not address the liability of the [Trust] in any way";

- In this Court's corrected decision, it "neither ruled that the [Trust] was not a separate legal entity, nor ruled that the separate existence of the [Trust]

should be disregarded with respect to its obligations under the [Master] Indenture";

- This court also did not "hold that an Early Amortization Event did not occur in February 2002";

- "Nowhere in [this Court's corrected decision] did the court rule that the Early Amortization Event in February 2002 was not enforceable against the [Trust]";

- "Nowhere in the [this Court's corrected decision] did the [C]ourt rule that any of the provisions of the [Master] Indenture could not be enforced against the [Trust]";

- "At no point in [this Court's corrected decision] did the [C]ourt rule that remedies could not be taken against the Collateral";

- "Nothing in [this Court's corrected decision] excused the Trust from making principal repayments under the Early Amortization waterfall starting in February 2002"; and

- "Nothing in [this Court's corrected decision] excuses the [Trust] from the Event of Default arising from the non-payment of principal caused by the delay in honoring the Early Amortization Period in February 2002."

Summing up, the Vedder Letter states that "[n]othing in [this Court's corrected decision] affects in any way the liability of the [Trust] or the remedies that can be taken against the [Trust]. [That decision] stands only for the proposition that the Early Amortization Period clause was unenforceable against the FDIC (standing in the shoes of NextBank) and that the FDIC is not liable for conversion." The Directing Noteholders

also provided indemnification to BONY for following the instructions in the Instruction Letter.

BONY carefully considered this Court's corrected decision, the contents of the Vedder Letter, and the fiduciary obligations of BONY to the Noteholders under the Master Indenture, and concluded, in good faith, that it was obligated to follow the Directing Noteholders' instructions with regard to the issuance of the Notice and the non-disbursement of any funds from the Collections Account on November 15, 2006. Accordingly, on November 14, 2006, following BONY's receipt of the Instruction Letter and the Vedder Letter, BONY issued the Notice of Default Under Master Indenture and Notice of Acceleration for Both Series 2000-1 Notes and Series 2001-1 Notes (the "Notice"), substantially in the form attached as Exhibit 1 to the Declaration of Scott H. Christensen in Support of the FDIC Receiver's Motion for a Temporary Restraining Order and a Preliminary and Permanent Injunction submitted in this action ("Christensen Declaration"), and served that Notice promptly upon the FDIC Receiver and all other interested persons.

Early on November 15, 2006, an FDIC employee contacted directly two employees of BONY, attempting to obtain information about these disputed matters. Counsel for BONY subsequently telephoned counsel for the FDIC Receiver and explained the conflicting claims asserted against BONY by the FDIC Receiver and the Directing Noteholders. On the afternoon of November 15, counsel for BONY received from counsel for the FDIC Receiver a letter, via email attachment, threatening, *inter alia*, that "[i]f BONY or the Noteholders attempt to take further action on the Notice of

Default or otherwise take funds not due to them, the FDIC Receiver [would] seek judicial intervention, as well as attorneys' fees and costs for having to take such action."

During a telephone conversation at approximately 11:00 a.m. on November 16, 2006, counsel for the FDIC Receiver again threatened to bring suit against BONY in the event BONY failed to rescind the Notice, release to the FDIC Receiver the funds in the Collections Account, and provide the FDIC with written assurance that BONY would otherwise take no actions pursuant to the Notice, all by the "close of business" on November 16, 2006.

On November 16, 2006, counsel for the Directing Noteholders also threatened vehemently that the Directing Noteholders would bring suit against BONY for breach of fiduciary duty if BONY failed to follow all the directions in the Instruction Letter, asserting further that the Noteholders would suffer irreparable harm if BONY rescinded the Notice, disgorged to the FDIC Receiver the funds in question, or otherwise failed to follow the terms of the Instruction Letter.

Later that afternoon, counsel for the Directing Noteholders sent an email to counsel for BONY reasserting certain of the points set forth in the Vedder Letter, and asserting that those Directing Noteholders were "very distressed to learn that [BONY] [was] contemplating violating the instruction letter . . . ." The email asserted that counsel for the Directing Noteholders had "reviewed the D.C. decision again and, again, there is nothing whatsoever in the D.C. decision that has been violated. Nor have any of the matters so directed in the Instruction Letter been addressed in the D.C. Suit. The D.C. action was a conversion action against the FDIC for the abuse of its status as servicer." According to counsel for the Directing Noteholders, "the FDIC was not a plaintiff in the

DC Suit, and did not obtain a declaratory judgment or injunction, but merely obtained a judgment that denied the Bank of New York's claim of liability and damages for conversion." The email went on to assert that this Court's corrected decision "also did not deal with the [Trust's] liability whatsoever" and that it "did not say that there was no event of default" or "that the principal on the Notes should not have been paid by the issuer in accordance with their express terms." The email also stated that this Court's corrected decision did not say that "the Notes were not now due or that the Notes shouldn't be accelerated as against the Issuer." The email asserted that this Court's corrected decision "had nothing to do with the rights of the Indenture Trustee or the Noteholders against the collateral or the [Trust]."

In the same email, counsel to the Directing Noteholders went on to again threaten that, if BONY failed to bring a lawsuit in New York "as required in the Instruction Letter and/or decide[d] to release any of the moneys that it is REQUIRED to hold pursuant to the express directions of the majority of the Noteholders," the Directing Noteholders would "hold [BONY] liable." The Noteholders' email went on to assert that any release of the Collateral by BONY, "when there are insufficient assets to repay all unpaid principal is a fundamental breach of the Indenture Trustee's duties to the Noteholders," citing Section 5.06 of the Master Indenture, and that "[s]uch breach is further heightened when [BONY had] an express direction from the majority of the Noteholders barring such action." The email also stated that BONY has "no authority to rescind the acceleration [of the Notes]" but that "[o]nly a majority of the Noteholders may rescind the acceleration, pursuant to the terms of Master Indenture Section 5.03." Counsel for

the FDIC Receiver went on to threaten to hold BONY "accountable for rescinding the notice of acceleration."

At the end of his email, counsel for the Directing Noteholders seemingly acknowledged the irreconcilably conflicting obligations bearing upon BONY, as Indenture Trustee, and stated that " . . . the Noteholders would understand that you may wish to bring a [sic] interpleader action in New York – and only in New York."

Also during the afternoon of November 16, 2006, BONY's counsel again requested that the FDIC Receiver's counsel explain clearly its position, and precisely what language in this Court's prior decision prohibited the actions directed in the Instruction Letter. Counsel for the FDIC Receiver said that he had not had time to consider what specific language might be applicable, but promised to review this Court's corrected decision and consider providing his explanation for his position. Counsel for BONY also requested that counsel for the FDIC Receiver provide his explanation in writing. Counsel for BONY also sought an assurance from counsel for the FDIC Receiver that the FDIC Receiver would refrain from taking any action in court, as it threatened to do at the close of business on that day.

The FDIC Receiver's counsel never provided any such assurance. The FDIC Receiver's counsel also never provided any such explanation, orally or in writing to BONY's counsel regarding any reasoned basis for the FDIC Receiver's assertion that the actions directed in the Instruction Letter were prohibited by this Court's prior decision.

On the evening of November 16, therefore, BONY had received no assurances from either party threatening it with imminent litigation. BONY was under an express threat of immediate litigation by the FDIC Receiver at the "close of business" on that

- 9 -

day, and a threat of imminent litigation by the Directing Noteholders if BONY failed, at the very least, to institute an interpleader action in New York, and only in New York. As noted above, Section 5.12 of the Master Indenture provides that a majority of the Noteholders may direct the time, method and place of conducting any legal proceeding "for any remedy available to the Indenture Trustee with respect to the Notes or exercising any trust or power conferred on the Indenture Trustee with respect to the Notes."

Thus, as the FDIC Receiver's "close of business" deadline loomed, BONY was still threatened with imminent litigation by both the Directing Noteholders and the FDIC Receiver. A majority of the Noteholders had directed BONY to file an interpleader action in New York. The time and place of such an action is unquestionably not an issue determined by this Court's corrected decision, and is governed solely by the Master Indenture. The FDIC Receiver has not argued to the contrary. As such, that direction as to time and place of the interpleader action was plainly lawful and binding upon BONY, and hence properly complied with by BONY.

In addition to the New York forum being required by the Directing Noteholders' direction pursuant to the terms of the Master Indenture, BONY filed in New York because: (a) the New York court clearly could exercise jurisdiction over all the persons with interest, including the Directing Noteholders (two of the three of which have their principal places of business in New York City); (b) the New York interpleader statute, unlike the federal interpleader statute, 28 U.S.C. § 1335(a)(2), does not require the plaintiff to deposit the money or property at issue into the registry of the court upon commencement of the action, which for practical reasons was impossible with regard to any federal court on the evening of November 16 when BONY was faced with the FDIC

Receiver's deadline; (c) the Master Indenture provides that the Master Indenture itself and "each Note" shall be construed in accordance with and governed by the laws of the State of New York; (d) The Bank of New York has its principal place of business in New York and took the actions at issue within the State of New York; (e) the *res* (the funds in the Collections Account) that are at issue in this matter are located in a bank account in the State of New York; and (f) the relevant records of The Bank of New York, and of two of the Directing Noteholders, related to this matter are located in the State of New York. BONY respectfully submits that the New York forum is not only the most appropriate and convenient forum, but that it is the *only* forum that can provide complete relief to all interested persons.

Without question, BONY had starkly conflicting obligations and faced grave and immediate risks and uncertainties by virtue of the strident threats from both the Directing Noteholders and the FDIC Receiver. BONY therefore took the ordinary, reasonable and appropriate course of action provided in law for fiduciary stakeholders in such conflicting circumstances: it filed an interpleader action, naming both the FDIC Receiver and the Directing Noteholders, assuring the New York court that BONY will maintain the status quo pending that court's determination of the parties' respective rights in the *res* at issue. BONY informed counsel for the FDIC Receiver and counsel for the Directing Noteholders promptly of its filing of the New York Interpleader Action and promptly served both with copies of the Summons and Complaint filed in the New York Interpleader Action.

- 11 -

### III.    Points and Authorities

### A.  <u>The New York Court Has Exclusive Jurisdiction Over This Case</u>

This Court must dismiss this action because the Supreme Court of the State of New York for the County of New York, prior to the filing of this action, had assumed jurisdiction in an *in rem* interpleader case involving the same controversy, prior to the filing of this action.  This Court therefore lacks jurisdiction.  As the U.S. Supreme Court held in *Princess Lida of Thurn and Taxis v. Thompson*, 305 *U.S.* 456, 465-66 (1939):

> Where a federal action and a parallel state action involving the same controversy are both proceedings *in rem* or *quasi in rem*, so that the granting of effective relief requires possession or control of the *res*, the court which first assumes jurisdiction acquires exclusive jurisdiction and deprives the other court of power to decide the case. Certain it is, therefore, that if both courts were to proceed they would be required to cover the same ground. This of itself is not conclusive of the question of the District Court's jurisdiction, for it is settled that where the judgment sought is strictly *in personam*, both the state court and the federal court, having concurrent jurisdiction, may proceed with the litigation at least until judgment is obtained in one of them which may be set up as *res judicata* in the other.  On the other hand, if the two suits are *in rem*, or *quasi in rem*, so that the court, or its officer, has possession or must have control of the property which is the subject of the litigation in order to proceed with the cause and grant the relief sought the jurisdiction of the one court must yield to that of the other.  We have said that the principle

ADMIN/20048154v1

applicable to both federal and state courts that the court first assuming

jurisdiction over property may maintain and exercise that jurisdiction to

the exclusion of the other, is not restricted to cases where property has

been actually seized under judicial process before a second suit is

instituted, but applies as well where suits are brought to marshal assets,

administer trusts, or liquidate estates, and in suits of a similar nature

where, to give effect to its jurisdiction, the court must control the property.

The doctrine is necessary to the harmonious cooperation of federal and

state tribunals.

Similarly, as held in *PPG Industries, Inc. v. Continental Oil Co.*, 478 *F*.2d 674,

677 (5th Cir. 1973):

Where a federal action and a parallel state action involving the same controversy

are both proceedings *in rem* or *quasi in rem*, so that the granting of effective relief

requires possession or control of the *res*, the court which first assumes jurisdiction

acquires exclusive jurisdiction and deprives the other court of power to decide the

case.

See also *United States v. Bank of New York Trust Co.*, 296 *U.S.* 463, 477 (1936),

in which the U.S. Supreme Court held as follows:

The principle, applicable to both federal and state courts, that the court

first assuming jurisdiction over property may maintain and exercise that

jurisdiction to the exclusion of the other, is not restricted to cases where

property has been actually seized under judicial process before a second

suit is instituted.  It applies as well where suits are brought to marshal

- 13 -

assets, administer trusts, or liquidate estates, and in suits of a similar

nature, where, to give effect to its jurisdiction, the court must control the

property.  *Farmers' Loan & Trust Co. v. Lake Street Elevated R. Co.*, 177

*U.S.* 51, 61, 20 *S.Ct.* 564.  If the two suits are *in rem* or *quasi in rem*, so

that the court must have possession or control of the *res* in order to

proceed with the cause and to grant the relief sought, the jurisdiction of

one court must of necessity yield to that of the other.  *Penn General*

*Casualty Company v. Pennsylvania*, 294 *U.S.* 189, 195, 55 *S.Ct.* 386.  This

principle is applied in the discharge of the long-recognized duty of this

court to serve to conciliate the distinct and independent tribunals of the

States and of the Union, so that they may co-operate as harmonious

members of a judicial system coextensive with the United States.

There can be no question that an interpleader action is an *in rem* action.  *See* R.H.

Graveson, *Conflict of Laws* 98 (7th ed. 1974) ("An action *in rem* is one in which the

judgment of the court determines the title to property and the rights of the parties, not

merely as between themselves, but also as against all persons at any time dealing with

them or with the property upon which the court had adjudicated").  Similarly it is clear

that this action in which the FDIC asks this Court to "restrain[] and enjoin[] from

distributing, encumbering, or relinquishing in any way assets that are in the possession,

custody or control of BONY" is a *quasi in rem* action under this Circuit's definition of a

"*quasi in rem* judgment," meaning "a judgment against a person with respect to property,

as distinguished from one against property only, or a person only."  *Boone v. Wachovia*

*Bank & Trust Co.*, 163 *F.*2d 809, 814 (D.C. Cir. 1947).   Accordingly, under the above-cited controlling authority, this Court must dismiss this action in deference to the exclusive jurisdiction of the Supreme Court of the State of New York.

### B.  The Case Must Be Dismissed Because the Noteholders Are Not Parties

As a separate and independent ground for dismissal, the Court must dismiss this case because the Noteholders have not been joined as parties and are not within the jurisdiction of this Court.  The Noteholders are plainly persons with claims to, and interests in, the *res* at issue in this case, as recognized in the pleadings and submissions of the FDIC Receiver.   Any exercise of jurisdiction over, or issuance of any injunction regarding, the *res* by this Court in the absence jurisdiction over the Noteholders would fail to accord complete relief to the parties in this action, would impair or impede the Noteholders' ability to protect its asserted interest in the *res*, and would leave BONY subject to a substantial risk of incurring double or otherwise inconsistent obligations by reasons of the conflicting interests claimed by the Noteholders and the FDIC Receiver. *See Fed. R. Civ. P.* 19(a).

As the U.S. Supreme Court held in *United States v. Bank of New York Trust Co.*, 296 *U.S.* 463, 480 (1936):


Even where [unlike here] the District Court has acquired jurisdiction prior to state proceedings, the character and adequacy of the latter proceedings in relation to the administration of assets within the state, and the status of those assets, may require in the proper exercise of the discretion of the federal court that jurisdiction should be relinquished

- 15 -

in favor of state administration.  [citations omitted]  In the instant cases

not only had the state court first acquired jurisdiction [as in this case], but

[also as in this case] there are numerous persons whose claims in relation

to these funds are in course of adjudication.  Whether or not their claims

are valid against the claim of ownership by the United States they are

entitled to be heard and they are indispensable parties to any proceeding

for the disposition of the property involved.  They have not been made

parties to the present suits, and this fact in itself would be a sufficient

reason for the District Court to refuse to proceed in their absence.  Only

the stakeholders are defendants.  The adverse claimants are parties to the

respective proceedings in the state court and from every point of view the

principles governing the convenient and orderly administration of justice

require that the jurisdiction of the state court should be respected.

For the same reasons, the prior filing of the New York Interpleader Action, the

location of the funds at issue in the State of New York, and the absence of indispensable

parties, namely the Noteholders, require that the jurisdiction of the New York Supreme

Court be respected and this case be dismissed.   Such dismissal does not prejudice the

FDIC Receiver, as it has an adequate remedy in the New York Interpleader Action.

### C.  The FDIC Receiver Has Not Made the Showing Required to Support Interim Injunctive Relief

Even if this Court had jurisdiction over this case, and even if all indispensable

parties were before it, the FDIC Receiver's motion for a temporary restraining order and

preliminary injunction must be denied because the FDIC Receiver has failed to make the

showing necessary for the issuance of a temporary restraining order or preliminary injunction.

1. The FDIC Receiver Must Show, But Has Not Shown,
that the Requested Relief will not Cause
Substantial Harm to Other Interested Persons

The FDIC Receiver acknowledges, but has not borne, its burden of showing that other interested persons will not suffer substantial harm if the Court grants the FDIC Receiver's requested injunctive relief.  The [Proposed] Temporary Restraining Order submitted with the FDIC's motion seeks a TRO prohibiting BONY from "distributing, encumbering, or relinquishing in any way assets that are in the possession, custody or control of BONY" and from "proceeding in any manner that will change the status quo between the parties prior to the resolution of the FDIC Receiver's motion for preliminary and permanent injunction."  Such an order would clearly cause BONY substantial harm by prohibiting it from complying with any order to be issued by the New York court in the New York Interpleader Action, and, again, placing BONY under inconsistent obligations.[2]

Further, the FDIC Receiver ignores entirely potential harm to the Noteholders as other interested persons.  That potential harm underscores the indispensability of the Noteholders and requires denial of the motion for a temporary restraining order in the absence of those indispensable parties.  It also illustrates why their absence necessitates dismissal of this case as a matter of law, in light of the New York court's exclusive

---

[2] The [Proposed] Temporary Restraining must be rejected in all events because it does not identify the "assets" to be restrained.  If entered in its current form, the order could be construed to prevent BONY from doing anything with ANY assets it holds, regardless of whether the FDIC Receiver has any interest in them.

jurisdiction in a case in which all persons with an interest in the *res* at issue are parties within that court's jurisdiction.

>    2.  The FDIC Receiver Must Show, But Has Not Shown
>        at Least Some Injury to Itself that will
>        Result from Denial of the Requested Injunctive Relief

As discussed below, the FDIC Receiver asserts that it is relieved, by virtue of a specific statutory provision, from its normal obligation of showing irreparable harm as a prerequisite to obtaining the injunctive relief it seeks.  As explained below, BONY submits that the FDIC Receiver's reliance on that statute in these circumstances is misplaced.  Even if that statute were applicable here, however, the law is clear that the absence of at least "some injury" is a sufficient basis for denying a motion for a preliminary injunction.  *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 *F*.3d 738, 746 (D.C. Cir. 1995); *Getty Images News Services Corp. v. Dept. of Defense*, 193 *F.Supp.*2d 112, 122 (D.D.C. 2002).

The FDIC Receiver has not shown that it faces any injury from the denial of the requested injunctive relief.  Indeed, BONY has assured the New York court that it will maintain control of the *res* at issue and will follow that court's decision as to the disposition of the *res* among all the interested persons.  The FDIC Receiver is at no risk of any harm, imminent or otherwise from the denial of the requested injunctive relief

>    3.  12 U.S.C. § 1821(d)(19)(2001) Does Not
>        Absolve the FDIC Receiver of its Burden
>        to Show Irreparable Harm in this Action

The FDIC argues that it is relieved, by virtue of 12 U.S.C. § 1821(d)(19), of its obligation to demonstrate irreparable harm.  It is not surprising that the FDIC Receiver

should search diligently to avoid that requirement, because there is plainly no irreparable

harm resulting to the FDIC Receiver from BONY's retention of the funds pending the

New York court's determination of the FDIC Receiver's and the Noteholders' interests

(or lack of interests) in the *res* at issue.  The FDIC relies principally on the interpretation

of this statutory provision in *FDIC v. Cafritz*, 762 *F. Supp.* 1503, 1506 (D.D.C. 1991).

That reliance is misplaced.

  First, if the statute did in fact relieve the FDIC of an obligation to show

irreparable injury, "Congress still intends that [the RTC or FDIC, as the case may be] be

required to make some showing of injury prior to obtaining relief."  *Resolution Trust

Corp. v. Cruce*, 972 *F*.2d 1195, 1200 (10th Cir. 1992) (quoting legislative history of this

provision).   Here, the FDIC Receiver has made – and can make – absolutely no showing

of any harm whatsoever.

  Second, there are conflicting opinions as to whether 12 U.S.C. §§ 1821(d)(17)

(regarding "fraudulent transfers"), (18) and (19) are to be construed together such that the

FDIC is relieved of its Rule 65 burden of showing irreparable harm only in cases where

fraudulent conveyance is alleged.  *Cafritz* involved an allegedly fraudulent transfer; this

action involves no such allegations.  *Cf.  FDIC v. Floyd*, 827 *F. Supp.* 409 (N.D. Tex.

1993) (requiring a showing of fraudulent conduct before the FDIC could rely upon

1821(d)(18) and (19)); *FDIC v. Garner*, 125 *F*.3d 1272, 1279 (9th Cir. 1997) (holding

that the FDIC can apply the Act's injunctive relief provisions in the absence of

allegations of fraud).  This appears to be an issue of first impression in the D.C. Circuit.

BONY submits that the more logical and natural reading of those three sections is

consistent with the holding in *Floyd*.  As such, the FDIC Receiver is subject, in this non-

- 19 -

fraudulent conveyance case, to the law in this Circuit applicable to all other motions for interim injunctive relief: "The second factor to be considered on a motion for a preliminary injunction is whether a plaintiff will suffer irreparable injury if the injunction is not granted." *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 *F*.3d 738, 746 (D.C. Cir. 1995).

The FDIC Receiver has not, and cannot, bear this burden of showing irreparable harm. It is axiomatic that speculative injury will not support emergency injunctive relief, and that the threat of irreparable injury must be real and imminent. *Wisconsin Gas Co. v. FERC*, 758 *F*.2d 669, 674 (D.C. Cir. 1985). Nor does the prospect of litigating these issues in New York satisfy this burden. "The expenses and effort involved in the defense of litigation do not constitute 'irreparable injury' that may justify a preliminary injunction." *UST, Inc. v. United States*, 831 *F*.2d 1028, 1032 (Fed. Cir. 1987) (citations omitted).[3]

Accordingly the FDIC Receiver, by having failed to demonstrate irreparable harm (or even allege it), has failed to support its motion for interim injunctive relief.

### D. <u>The New York Interpleader Action Is Not Barred by Claim Preclusion</u>

The FDIC Receiver's claim preclusion argument is without merit, as it does not satisfy even one of the three requirements for claim preclusion to apply. "For claim preclusion based on a judgment in which the claim was not litigated, there must be (1) an

---

[3]    See also *Spencer Trask Software and Information Services, LLC v. RPost Intern. Ltd.*, 190 *F.Supp.*2d 577, 580 (S.D.N.Y. 2002) ("The standard for granting a temporary restraining order and a preliminary injunction pursuant to Rule 65 of the Federal Rules of Procedure are identical." )

identity of parties or their privies, (2) a final judgment on the merits of the prior claim, and (3) the second claim must be based on the same transactional facts as the first and should have been litigated in the prior case." *Sharp Kabushiki Kaisha v. Thinksharp, Inc*., 448 *F*.3d 1368, 1370 (Fed. Cir. 2006).

First, there is no "identity of parties or their privies" between the prior and current action. The Noteholders were not a party to the prior litigation before this Court; they are a party to the New York Interpleader Action. Moreover, the FDIC Receiver does not and cannot assert that BONY was the privy of the Noteholders in the prior action.

Second, there was no final judgment on the merits in the prior litigation regarding the matters that the FDIC Receiver claims are subject to the Settlement Agreement regarding settled Counts 1-5 and the Counterclaims pled, but never decided, in the prior litigation.

Third, the New York Interpleader Action is not based on the same transactional facts as the prior FDIC v. BONY action and could not have been litigated in that action, since the New York Interpleader Action was filed based on a set of circumstances that did not even exist at the time of the prior action before this court, namely the Instruction Letter from the Directing Noteholders to BONY and the direction therein to assert claims to the Collections Account against the Trust, not against the FDIC Receiver. See also the arguments asserted by counsel for the Directing Noteholders, in the Vedder Letter, as to why the transactional facts and issues giving rise to the New York Interpleader Action are distinct from the issues litigated in the prior action before this Court, and why this Court's corrected decision did not decide those issues.

The doctrine of claim preclusion "holds that a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action." *Drake v. F.A.A.*, 291 *F*.3d 59, 66 (D.C. Cir. 2002) (internal quotation and citation omitted). A final judgment on the merits precludes the parties or their privies from relitigating both issues that were raised as well as issues that could have been raised in the prior action. *Ibid.* (citation omitted). "Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit." *Sharp,* 448 *F*.3d 1368, 1370.

The FDIC Receiver seems to argue that BONY should have raised the claims of the Noteholders that gave rise to the New York Interpleader Action (despite their unforeseeability), and that, for that reason, the New York Interpleader Action is barred by claim preclusion. Again, the FDIC misconstrues the governing case law. "For claim preclusion based on a judgment in which the claim was not litigated, there must be (1) an identity of parties or their privies, (2) a final judgment on the merits of the prior claim, and (3) the second claim must be based on the same transactional facts as the first and should have been litigated in the prior case." *Sharp*, 448 *F*.3d 1368, 1370.

## IV.    Conclusion

For the foregoing reasons, and based on the above-cited authorities, BONY respectfully submits that this Court must dismiss this case and/or deny the injunctive relief requested by the FDIC Receiver.

Respectfully submitted this 20th day of November, 2006,


/s Paul F. Brinkman

H. Stephen Harris, Jr.
D.C. Bar No. 481092
John L. Douglas
D.C. Bar No. 479569
Paul F. Brinkman
D.C. Bar No. 441681

Alston & Bird LLP
1201 W. Peachtree St.
Atlanta, GA 30309
Tel.: (404) 881-7000
Fax: (404) 881-7777

Alston & Bird LLP
The Atlantic Building
950 F Street, N.W.
Washington, D.C.  20004
Tel: (202) 756-3300
Fax: (202) 756-3333


Counsel for Defendant The Bank of New York, as Indenture Trustee of the NextCard Credit Card Master Note Trust

- 23 -