**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Federal Deposit Insurance Corporation, in its Capacity as Receiver for NextBank, N.A., <br><br> Plaintiff, <br><br> -against- <br><br> The Bank of New York, as Indenture Trustee of the NextCard Credit Card Master Note Trust, <br><br> Defendant. | Case No. 06-1975 |

**DEFENDANT THE BANK OF NEW YORK'S SUPPLEMENTAL**
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**DEFENDANT THE BANK OF NEW YORK'S MOTION TO DISMISS**

**I.    Introduction**

Defendant, The Bank of New York, as Indenture Trustee of the NextCard Credit

Card Master Note Trust ("BNY"), respectfully submits this Supplemental Memorandum

of Points and Authorities in support of the motion to dismiss previously filed by BNY

pursuant to Fed. R. Civ. P. 12(b) and 19.

As demonstrated below, this case should be dismissed in favor of the jurisdiction

of the United States District Court for the Southern District of New York, which obtained

jurisdiction when the Federal Deposit Insurance Corporation in its Capacity as Receiver

for NextBank, N.A. ("FDIC"), removed an earlier-filed interpleader action that BNY

brought in the New York state court.[1]

_____

[1]    The Bank of New York, in its capacity as Indenture Trustee of the NextCard Credit Card Master Note Trust, interpleader plaintiff, against First Millennium, Inc., Millennium Partners, L.P., RMK Advantage Fund and Federal Deposit Insurance Corporation, interpleader defendants, United States District

This case should be dismissed in favor of the New York Interpleader Action because: (i) this Court does not have jurisdiction over the other defendants in the New York Interpleader Action (the "Noteholders"), which are indispensable parties under Fed. R. Civ. P. 19; (ii) the United States District Court for the Southern District of New York (the "New York Court") is an adequate forum, because New York has the closest nexus to the funds at issue, the parties involved and the issues involved, and only the New York Court has jurisdiction over all indispensable parties and thus can afford complete relief; and (iii) it is undisputed that the New York Interpleader Action was filed prior to this case.

In addition, though the Court has suggested during colloquy in recent telephone conferences that BNY and the FDIC file motions for summary judgment at this time, and the FDIC's counsel has indicated that the FDIC intends to file such a motion on December 15, 2006, BNY respectfully submits that any consideration of summary judgment (or other decision on the merits of this case) is premature. The issue has not been joined. The time for BNY to answer the complaint has not run, even without consideration of the abeyance of that deadline pursuant to Fed. R. Civ. P. 12(a)(4) by virtue of BNY's filing of its motion to dismiss under Fed. R. Civ. P. 12(b). This Court should not countenance FDIC's obvious forum shopping and race to obtain a premature judgment.

Of equal importance, the issues in the New York Interpleader Action and this case have not been sufficiently developed to permit proper determination of the identity, *vel non*, of those issues with any issues decided by this Court in *Bank of New York v. FDIC*,

Court for the Southern District of New York, No. 06-CIV-23388-CSH (the "New York Interpleader Action").

___ F. Supp. 2d ___, No. 03-1221-ESH, 2006 WL 2772860, 2006 U.S. Dist. LEXIS 69130 (D.D.C. Sept. 27, 2006), *appeal docketed*, No. 06-5358 (D.C. Cir. Nov. 3, 2006)(the "Prior Decision").  Those issues will be developed by the Noteholders and the FDIC in the New York Interpleader Action, but cannot be developed properly in this action because the Noteholders are not parties.

Further, reliance on collateral estoppel by the FDIC in this Court – the same Court that decided the Prior Decision – is unsupported by precedent.  The collateral estoppel doctrine has been applied only by a second court determining whether the issues before it have been fully litigated and decided by another court's prior order.  The FDIC seeks to turn collateral estoppel on its head by improperly attempting to obtain a decision in a later-filed case that would interfere with the jurisdiction of the court in the first-filed case, rather than submitting its collateral estoppel argument in the court that properly has jurisdiction.

The case should also be dismissed because venue is improper in this district.  Though the FDIC asserts that venue is proper because a "substantial part of the events giving rise to the claim occurred in this judicial district," in fact the events giving rise to this case occurred in New York.

Finally, the schedule set by this Court for briefing, argument and decision of this case on the merits is not appropriate to a proper development and consideration of the issues.  Any concern about the possible disbursement of the funds at issue was mooted by BNY's Stipulation that no such disbursement will occur absent an order of this Court.  That Stipulation was requested by the Court, and agreed to by BNY, to obviate the need for any consideration of the FDIC's motions for a temporary restraining order and for a

ADMIN/20051726v1

preliminary injunction, and it resulted in the Court entering a minute order consolidating the hearing on the FDIC's application for a preliminary injunction with the trial on the merits, pursuant to Fed. R. Civ. P. 65(a)(2). No exigency remains other than the FDIC's wish that this Court act before the New York Court takes action in the New York Interpleader Action. It is improper for this Court to set that schedule based on its desire to reach a decision in this case before the New York Court reaches its decision in the New York Interpleader Action.

## II. Background

The pertinent background to consideration of this motion, through November 20, 2006, is set forth in BNY's prior submission in response to the FDIC's motion for injunctive relief in support of BNY's motion to dismiss, which is adopted herein by reference.

On November 20, 2006, this Court held a telephonic conference. Prior to that conference call, counsel for BNY had assured counsel for the FDIC that BNY would maintain possession of the funds in dispute pending an order of this Court. That assurance was reiterated by counsel for BNY during the telephone hearing. During that phone conference, the Court expressed a preference to avoid the need for a hearing, otherwise to take place on November 22, 2006, on the FDIC's motion for a temporary restraining order through a possible stipulation assuring the Court that BNY will not disburse the funds at issue absent an order of this Court.

Also on November 20, 2006, Interpleader Defendants First Millennium, Inc. and Millennium Partners, L.P. (collectively "Millennium") filed an Answer and a separate Motion for Summary Judgment in the New York Interpleader Action.

On November 21, the FDIC and BNY agreed to such a stipulation (the "Stipulation") pursuant to which BNY assured the Court that "funds in the possession, custody or control of BNY, as Indenture Trustee of the Trust will not be transferred or distributed in any way (other than the payment of the fees and expenses of The First National Bank of Omaha as Servicer) pending an Order from this Court regarding the distribution or transfer of such funds. . . ."   That Stipulation was filed with the Court on November 21, 2006.  A hearing on the motion for a temporary restraining order was thereby rendered unnecessary as requested by the Court.

Also on November 21, counsel for the parties had another telephone conference with the Court to inform the Court of the Stipulation.  During that conference, the Court expressed a preference for the possible consolidation of the hearing on the FDIC's motion for a preliminary injunction with the trial on the merits, pursuant to Fed. R. Civ. P. 65(a)(2).  The Court asked counsel for both parties to confer with their clients and obtain each party's views on the following questions:  (1) whether the Noteholders need to be joined in this action; and (2) whether the party will consent to the Rule 65(a)(2) consolidation.   The Court also indicated that such consolidation would result in a lengthier briefing schedule than had been contemplated to that date.

Also on November 21, the FDIC removed the New York state court interpleader action to the New York Court pursuant to 28 U.S.C. § 1446.

Following the telephone conference in which the Court posed the two questions recited above, counsel for the FDIC advised the Court that the FDIC does not believe that the Noteholders should be joined as parties and that the FDIC was willing to consent to the Rule 65(a)(2) consolidation.  Counsel for BNY conferred with BNY on those

- 5 -

questions and informed the Court that BNY believes that the Noteholders must be joined as parties, and that BNY is not willing to consent to the Rule 65(a)(2) consolidation.

On November 28, 2006, the Court entered a Minute Order advising counsel of the Court's intent to consolidate the preliminary injunction hearing and the merits trial pursuant to Rule 65(a), and denying as moot the FDIC's motion for preliminary injunction and temporary restraining order. The Court also directed the parties to consult and jointly propose a revised briefing schedule.

On November 29, counsel for the FDIC asked BNY to voluntarily dismiss the New York Interpleader Action.

On November 30, counsel for BNY informed counsel for the FDIC that BNY could not voluntarily dismiss the New York Interpleader Action because the Noteholders had already filed an answer and a motion for summary judgment. BNY therefore could not voluntarily dismiss that action absent a stipulation of dismissal from the Noteholders pursuant to Fed. R. Civ. P. 41(a)(1), which the Noteholders were not prepared to give. Counsel for BNY also noted that the FDIC was in as good a position as any party to seek dismissal of the case. In addition, counsel for BNY informed counsel for the FDIC that the Noteholders had instructed BNY to continue to pursue litigation in New York. BNY regards that instruction as a proper and binding direction from the Noteholders under the Master Indenture which BNY has a fiduciary duty to execute.

On November 30, at approximately 8:00 p.m., counsel for the FDIC served on counsel for BNY, via email, the FDIC's Emergency Motion to Stay Related Cases, in which it requested that this Court issue an injunction, pursuant to the All Writs Act, 28 U.S.C. § 1651(a) (2006), staying all other actions, and subsequently notified counsel for

BNY that counsel for the FDIC had left a message with this Court requesting a hearing on this "emergency" motion on the following day, December 1.

On December 1, this Court held another telephone conference with counsel for both parties. During that conference, the Court instructed the FDIC not to file any other emergency motions without first conferring with counsel for BNY and counsel for the Noteholders. During that conference, counsel for BNY noted that the alleged "emergency" necessitating the motion was merely an upcoming deadline for the FDIC's response to the Noteholders' motion for summary judgment in the New York Interpleader Action. Counsel for BNY noted that counsel for the FDIC had not requested an extension of that deadline from the FDIC and, according to a letter from counsel for the Noteholders, had also not requested an extension of that deadline from the Noteholders, prior to filing the emergency motion. The Court asked if BNY would agree to extend that deadline and counsel for BNY informed the Court that BNY would do so. The Court then directed counsel for BNY to contact counsel for the Noteholders, request that the Noteholders consent to a stay of the New York Interpleader Action, and call the Court's clerk to report on those consultations.

As directed, counsel for BNY promptly consulted with counsel for the Noteholders, who stated that they needed to consult with their client regarding any stay of the New York Interpleader Action. On the evening of December 1, counsel for BNY reported to the Court on its consultation with the Noteholders' counsel, as described above. The Court then asked the FDIC's counsel if it planned to contact the Noteholders' counsel to request an extension of the briefing deadline in the New York Interpleader Action, and a stay of that action. The Court also suggested that the FDIC consider filing

- 7 -

a motion to stay the New York Interpleader Action in that action. Counsel for the FDIC replied that he would contact the Noteholders' counsel. The Court indicated that, absent an agreement on an extension of the briefing schedule, it intended to hold a live hearing on the FDIC's All Writs Act motion to stay the New York Interpleader Action on the afternoon of December 5, 2006.

During that conference, the Court turned to the schedule for briefing and argument of this case. The Court asked if BNY intended to supplement its prior briefing. Counsel for BNY reminded the Court that BNY had only two and a half days after the the FDIC filed its Complaint and its motion for injunctive relief, to prepare BNY's responses to the FDIC's motions, to prepare and brief BNY's motion to dismiss and to prepare for the initial telephonic hearing on November 20. Accordingly, counsel for BNY stated that BNY believed it was reasonable that BNY be provided a reasonable time to prepare its initial brief, as part of the single round of briefing leading to the trial on the merits of this action. The Court instructed counsel for BNY that BNY's brief was due on December 6, that the FDIC's subsequent brief (which, presumably will be in support of an as-yet-to-be-filed motion for summary judgment) will be due on December 15, and that BNY's reply brief will be due on midday on December 21, if filed by hand and delivered in hard copy form to the Court's chambers. The Court denied counsel for BNY's request to extend until December 8 the time for BNY's brief, which would have given BNY and the FDIC equal amounts of time to prepare their respective initial briefs. The Court also stated that it would be willing to give the parties a great deal of time if the New York Interpleader Action were stayed. The Court also indicated that it was contemplating scheduling trial for the second week in January, 2007. The Court asked the parties to

report back on Monday, December 4, 2006 regarding whether an extension of the FDIC's briefing deadline in the New York Interpleader Action had been agreed upon among the Noteholders, the FDIC and BNY.

Subsequently on the evening of December 1, during a telephone conference among the Court's clerk, counsel for the FDIC and counsel for BNY, counsel for the FDIC reported to the clerk that counsel for the Noteholders had refused to agree to an acceptable extension of the New York briefing schedule, and had also refused to stay the New York action unless the FDIC was willing to agree to stay this action and submit the question of whether the Prior Decision controls this dispute to the New York Court.

On December 4, prior to the planned telephone conference with the Court, counsel for BNY filed with the Court a copy of a letter sent via email by counsel for the Noteholders to counsel for the FDIC relating the substance of their consultations regarding a requested extension or stay in the New York Interpleader Action.

Also prior to that telephone conference, on December 4, the FDIC filed in the New York Interpleader Action a motion for extension of time for the FDIC to file its response to the Noteholders' summary judgment motion in that action, and either a motion to dismiss or an answer, and a motion to stay the New York Interpleader Action until after resolution of the "issues before" this Court, along with supporting memoranda and declarations. Counsel for the FDIC, at the request of this Court, submitted copies of those papers to this Court's clerk via email.

During the December 4 telephone conference among the Court and counsel for the FDIC and BNY, the Court informed counsel for BNY that the D.C. district courts do not permit filing of letters between counsel. Counsel for the FDIC

confirmed its filing of its motion for a stay and extension of time in the New York Interpleader Action and represented to the Court that it is the practice of New York courts to set the return date on a motion for an Order to Show Cause and that, for this reason, counsel for the FDIC was uncertain as to when the New York Court would consider those motions.

During this conference, the Court again asked if BNY would be filing a motion for summary judgment.  Counsel for BNY stated that BNY believes it is premature for summary judgment motions.  The Court stated that if BNY does not file a motion for summary judgment on December 6, it will not get another chance to do so.  The Court then suggested to counsel for the FDIC that the FDIC file a motion for summary judgment on December 15 (at the time its first brief is due under the Court's previously set briefing schedule).

Counsel for the FDIC then asked if the Court was going to issue the requested All Writs Act injunction staying the New York Interpleader Action.  The Court stated that it was not going to do so, and cancelled the hearing previously set for December 5.

The Court went on to set trial of this action for 2:00 p.m. on January 11, 2007.

On December 6, 2006, the New York Court requested that counsel for the parties to the New York Interpleader Action (including the FDIC, the Noteholders and BNY) participate in a telephone conference to discuss the FDIC's motions for an extension of time and a stay.

### III.    Points and Authorities

A.    **The Court Should Dismiss this Action in Favor of the Action Pending Before the New York Court**

     a.    **The Court Should Dismiss the Present Action in Favor of the New York Action Because the Noteholders Are Indispensable Parties That Cannot Be Joined**

          i.    **Fed. R. Civ. P. 19(a) requires that the Noteholders be joined**.

Rule 19(a) requires that a person be joined as a party, if it is feasible to do so, where "(1) complete relief cannot be accorded in its absence; or (2) the absentee's ability to protect its interests may be impaired by the disposition of the action; or (3) those already parties will be subject to a substantial risk of incurring inconsistent obligations because of the absence." *Cloverleaf Standardbred Owners Ass'n, Inc. v. Nat'l Bank of Washington*, 699 F.2d 1274, 1278-79 (D.C. Cir. 1983) (footnote omitted). Joinder is required if any one of these three criteria is present. *See* Fed. R. Civ. P. 19(a) (using the disjunctive "or"). In this case, joinder of the Noteholders is necessary because of the separate and independently sufficient grounds that (a) their interests could be impaired by the disposition of this action; and (b) there is a substantial risk that BNY will be subject to inconsistent obligations.

It cannot be disputed but that a ruling in favor of the FDIC in this action will have a direct adverse impact on the Noteholders' interest in the assets that are at issue. The FDIC claims that the funds being held by BNY must be paid to it as the holder of the "Transferor Interest" in the Trust. The Noteholders claim that those same assets, as well as amounts to be paid in the future by virtue of collections on the NextCard credit card accounts, must be held for their benefit as Collateral under the relevant terms of the

Master Indenture.  Quite obviously, a ruling by the Court in the FDIC's favor will

irreparably "impair" the Noteholders' ability to protect its interest in the assets.  *See* Fed.

R. Civ. P. 19(a)(2)(i).

The Noteholders should also be joined because disposition of this action in the

FDIC's favor could subject BNY to inconsistent obligations.  If FDIC prevails in this

action, the Collateral will be paid to the FDIC.  If the Noteholders prevail in the New

York Court, they will be entitled to those same assets.  Indeed, it is precisely because

BNY faced competing claims to the Collateral that it commenced the interpleader case in

New York state court, naming the respective claimants as interpleader defendants.  If this

Court could acquire jurisdiction over the Noteholders, their joinder would clearly be

required.  *See Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 108,

88 S. Ct. 733, 737 (1968) (assuming a person falls within the category of "persons to

joined if feasible" where there existed "at least the possibility that a judgment might

impede [the person's] ability to protect his interest, or lead to later relitigation by him").

**ii.    The Noteholders cannot be joined as parties.**

This Court may join the Noteholders under Fed. R. Civ. P. 19(a) only if they are

"subject to service of process."  The Noteholders are not subject to service of process in

this district, and the Court therefore lacks personal jurisdiction over them.

As pled in BNY's complaint in the New York Interpleader Action, two of the

three Directing Noteholders are incorporated in New York and have their principal places

of business there.  The other, RMK, upon information and belief, maintains a permanent

business presence in New York and has continuous and purposeful contacts with New

York through its business in New York.  In communications with counsel for BNY,

counsel for the Noteholders has indicated that the Noteholders are not subject to personal jurisdiction in this district, and BNY is unaware of any contacts the Noteholders have with this district that would properly subject them to jurisdiction here.[2]  Counsel for the FDIC also reported to this Court that counsel for the Noteholders had informed counsel for the FDIC that this Court does not have jurisdiction over the Noteholders.

If the Noteholders cannot be joined as parties, the Court must proceed to analyze whether dismissal of the action is necessary pursuant to Fed. R. Civ. P. 19(b).  *See* Fed. R. Civ. P. 19(b) ("If a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable."); *In re Cambridge Biotech Corp.*, 186 F.3d 1356, 1372 (Fed. Cir. 1999) ("Whether a party is 'indispensable to an adjudication is determined by performing a two-step analysis under Rule 19. . . .  The first step requires the court to inquire under Rule 19(a) whether the party should be joined if feasible, i.e., is the party 'necessary.'  If the party is necessary, . . . but it is not feasible to join that party, the court proceeds to step two, set forth in Rule 19(b).") (citations omitted).

   iii. **This action should be dismissed in favor of the New York action because the Noteholders are indispensable to affording complete, final, and just relief.**

Because the Noteholders are necessary parties over whom the Court does not have personal jurisdiction, Fed. R. Civ. P. 19(b) requires an analysis whether the action must be dismissed because the Noteholders are "indispensable."  *See* Fed. R. Civ. P. 19(b). Rule 19(b) sets forth a four-factor test for determining whether an absent party is

---

[2] The FDIC's choice not to name the Noteholders as defendants in the complaint the FDIC filed in this action suggests it recognizes the Noteholders are not subject to service of process in this district.

indispensable:  "first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment . . . the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder."  *Id*. This case should be dismissed because the Noteholders are plainly indispensable based on the application of the four factors.

Applying the first factor, as shown above, a judgment in the FDIC Receiver's favor will clearly be prejudicial to the Noteholders.  The adjudication of the FDIC Receiver's claim to the assets held by BNY will necessarily have an impact on the Noteholders' ability to exercise their rights under the terms of the Master Indenture, and a ruling in the FDIC Receiver's favor will essentially foreclose the Noteholders' from perfecting those rights.  It is well-settled that a person is indispensable if its rights will effectively be adjudicated in the pending action.  *See Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 788 (D.C. Cir. 1983) (citing multiple cases holding that parties to an agreement or others having a substantial interest in it are indispensable in an action adjudicating rights under the agreement); *Adams v. Bell*, 711 F.2d 161, 171 (D.C. Cir. 1983) (""Under the first and second prongs of this test, when the relief requested must, to satisfy plaintiffs' claims, be in derogation of the rights of a person not before the court, that person is an indispensable party.""); *Scandinavian Satellite System, AS v. Prime TV Ltd.*, 146 F. Supp. 2d 6, 13 n. 9 (D.D.C. 2001) (Huvelle, J.) (rejecting in dicta argument that person is not indispensable where decision will necessarily adjudicate contract rights of that person), *rev'd on other grounds*, 291 F.3d 839 (D.C. Cir. 2002).

Although the Court may consider whether the absentee's "interests are adequately represented" by a party before the Court, *Cambridge Biotech*, 186 F.3d at 1373, it cannot be concluded that BNY serves that role here.  As described in BNY's prior submission to this Court, before BNY filed the interpleader action in the New York state court, BNY's issuance of a notice of default at the direction of the Noteholders  precipitated a dispute as to whether BNY was entitled to retain the funds currently in the BNY collections account and cease transferring future collections to the FDIC.  BNY was threatened with imminent litigation by both the Noteholders and the FDIC, which proved irresolvable through conferring with those parties.  BNY found (and finds) no clear or certain answers to the question of which of those parties is correct in its assertions regarding BNY's "required" course of action in consideration of the Prior Decision, the documents governing BNY's fiduciary responsibilities to the Noteholders, and applicable law. Consistent with the policies and purposes underlying interpleader actions, and rather than attempting to resolve the dispute between the Noteholders and the FDIC itself, BNY therefore commenced an interpleader action, specifically alleging that it could not continue to heed the Noteholders' instructions concerning the assets and was at risk of litigation from both the FDIC and the Noteholders should it follow the demands of either. The background of the filing of the New York interpleader action, in which BNY is directly adverse to the Noteholders (and the FDIC) demonstrates that BNY does not in any way control the Noteholders.   Accordingly, the first Rule 19(b) factor strongly favors dismissal, because a judgment in the FDIC's favor will clearly prejudice the Noteholders and because no party to this action adequately represents their interests.

The second 19(b) factor also weighs in favor of dismissal because there are no protective measures that can be taken, short of denying the FDIC the relief it seeks, that will protect the Noteholders' interest.  In essence, this dispute boils down to a "zero sum game."  The Noteholders and the FDIC have made competing claims to the same *res*, and a disposition in the favor of one deprives the other of any real opportunity for recovery. If the FDIC is awarded the relief it seeks from this Court, the Noteholders will have no chance of recovery.  To protect the interests of all the persons with an interest in the *res*, the court that decides these issues must have jurisdiction over both these parties.

In considering the third factor, "whether a judgment rendered in the person's absence will be adequate," the Court must consider whether the relief granted will lead to further litigation, focusing on "the interest of the courts and the public in complete, consistent, and efficient settlement of controversies."  *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 111 (1968) ("We read the Rule's third criterion, whether the judgment issued in the absence of the nonjoined person will be 'adequate,' to refer to th[e] public stake in settling disputes by wholes, whenever possible …."). Where, as here, there is a "strong likelihood" that jurisdiction cannot be obtained over the absent parties and "piecemeal litigation" will result, the remedy is both inadequate and not in the interest of the public or the courts.  *See Cambridge Biotech*, 186 F.3d at 1373. Accordingly, a judgment rendered in the Noteholders' absence will be inadequate, further litigation is likely, and the third factor thus weighs in favor of dismissal.[3]

---

[3] As the D.C. Circuit has held, the fact that the FDIC Receiver might obtain complete relief does not outweigh other Rule 19(b) considerations pointing to a finding of indispensability. *See Wichita & Affiliated Tribes v. Hodel*, 788 F.2d 765, 777 (D.C. Cir. 1986) (holding that availability of complete relief for plaintiff "cannot be given dispositive weight when the efficacy of the judgment would be at the cost of the absent parties' rights to participate in litigation that critically affect their interests.").

Finally, the fourth factor, "whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder," is clearly satisfied in this case. *See Aguilar v. Los Angeles County*, 751 F.2d 1089, 1094 (9th Cir. 1985) (determining that the district court had adequate grounds to find that each of the factors in Rule 19(b) mandated dismissal, explaining, that plaintiffs "have an adequate alternative forum, state court, in which they can obtain relief [and that by] having to defend two separate lawsuits turning on the same issues, the [defendant] would be subjected to multiple litigation and possibly inconsistent obligations[;]" also noting "potential prejudice to [the plaintiffs' son], since he could be collaterally estopped from pursuing his state action if his parents' suit is allowed to proceed and is unsuccessful."). Here, there is an unquestionably adequate alternative forum, the New York Court, which has already exercised jurisdiction over all necessary and indispensable parties to this dispute, including the Noteholders. New York is also the jurisdiction with the closest nexus to the relevant parties and facts underlying this dispute, and is the situs of the *res*. Moreover, the FDIC may present to the New York Court its collateral estoppel argument based on this Court's Prior Decision. The New York Court thus affords the real parties in interest complete and final relief, and this action should be dismissed. *See McKenna v. Udall*, 418 F.2d 1171, 1174-75 (D.C. Cir. 1969) (holding that fourth factor, availability of alternative forum where all necessary parties can be heard, tips balance in favor of dismissal).

Because a weighing of the four Rule 19(b) considerations makes clear that the Noteholders are indispensable parties, this litigation should be dismissed in favor of the action pending in the New York Court, which has jurisdiction over all parties and which may afford them complete and final relief.

- 17 -

### b.  The New York Court Is an Adequate Forum,
### Has Jurisdiction Over All Parties,
### and Can Afford Complete Relief

This dispute should be heard by the New York Court, where all parties are present, and complete relief can be afforded.  It is undisputed that the New York Court has jurisdiction over not only the parties to this case, but also the Noteholders.  The New York forum thus affords the Noteholders the opportunity to present their own arguments as to why their instructions to BNY concerning the assets are proper.  The New York Court is therefore in the best position to determine the respective rights of the FDIC and the Noteholders in the assets held by BNY.

The FDIC will not be prejudiced if this action proceeds before the New York Court.  All arguments it seeks to make in this Court can be pursued in the New York Court.  To the extent the FDIC wishes to argue that the doctrines of claim or issue preclusion dictate the outcome of the dispute over these assets, those doctrines can properly be invoked in the New York Court.

Finally, the New York Court is the most logical forum because it has the closest nexus to the parties and assets in dispute.  BNY is based in New York City, and the FDIC maintains an office there.  The funds currently in dispute are in a BNY bank account in New York, not in Washington, D.C.

### c.  This Action Should be Dismissed in Favor of the Action Pending Before
### the New York Court Pursuant to the First-Filed Rule

The D.C. Circuit has long held that dismissal is appropriate where a dispute is already the subject of an earlier filed litigation in another district.  *See, e.g., Washington Metropolitan Area Transit Auth. v. Ragonese*, 617 F.2d 828, 830 (D.C. Cir. 1980) ("[w]here two cases between the same parties on the same cause of action are

- 18 -

commenced in two different Federal courts, the one which is commenced first is to be allowed to proceed to its conclusion first. . . .") (quoting *Speed Prods. Co. v. Tinnerman*, 171 F.2d 727, 729 (D.C. Cir. 1948) (alteration in original). The "first-filed rule" is supported by considerations of comity and efficiency. *See id; see also United Trans. Union v. National Mediation Bd.*, No. 93-0428 (HHG), 1993 WL 764220 (D.D.C. June 8, 1993) (dismissing litigation where prior action involving same subject matter was pending on appeal in another district); *Action for Childrens Television v. FCC*, 827 F. Supp. 4, 15 (D.D.C. 1992) ("Considerations of comity preclude this court from resolving that claim when the same claimant could raise it simultaneously in front of another court of equal authority.").

The FDIC's litigation in this district should be dismissed because it constitutes forum-shopping in contravention of the first-filed rule. BNY commenced its interpleader action in New York state court on November 16, 2006. As the FDIC candidly acknowledges, it received notice that BNY had commenced its action in New York on the evening of November 16. One day after learning that BNY had commenced litigation in New York, on November 17, the FDIC filed the instant lawsuit. The first-filed rule supports dismissal of this action in favor of the New York Court.

Equitable considerations further support dismissal of this action in favor of the litigation first filed in New York.[4] The New York Court, unlike this Court, has jurisdiction over all parties with an interest in the disputed assets. Moreover, because BNY commenced the litigation in New York as an interpleader, BNY – which, as

---

[4] Some courts analyze equitable considerations in determining whether the first-filed rule requires dismissal of an action. *See, e.g., Pumpelly v. Cook*, 106 F.R.D. 238, 239-240 (D.D.C. 1985) (dismissing in favor of first filed action because "the equities favor an approach that would permit the entire dispute to be adjudicated in the Eastern District of Virginia" because that district was more convenient for the witnesses and parties).

Indenture Trustee, stands in the position of stakeholder – has the opportunity to seek an order from the New York Court dismissing it from the case. *See* 28 U.S.C. § 2361. The New York Court, unlike this Court, thus has the ability effectively to consider full and fair litigation between the two real parties in interest, without one of them being absent, and without BNY being kept in the middle.

As noted above, the funds at issue in this case are located in New York. To the extent discovery is necessary, New York is as convenient, if not more convenient, than the District of Columbia because BNY and two of the three Noteholders have their principal places of business in New York City. The New York Interpleader Action was filed under the New York interpleader statute, and the documents related to the NextCard transactions are governed by New York law.

### d. **This Action Should be Dismissed for Improper Venue**

The FDIC pled that "Venue in the United States District Court for the District of Columbia is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this claim occurred in this judicial district." Complaint ¶ 3. The recitation of facts in the Complaint, however, demonstrates that the FDIC alleges the claim arose because BNY issued a Notice of Default, withheld funds and filed an interpleader action in New York state court, and because the Noteholders sent a separate Notice of Default. Complaint ¶¶ 40-43. All of those events took place in New York. All, or at least the vast majority, of the events creating this current dispute took place outside this district. Any notion that FDIC policy decisions that took place in Washington can be relied upon to salvage venue is wrong. For this reason, this case should be dismissed pursuant to Fed. R. Civ. P. 12(b)(3). *Cameron v. Thornburgh*, 983

F.2d 253, 257 (D.C. Cir. 1993) (holding that unsubstantiated assumption that policy decisions made in Washington ultimately affected plaintiff's treatment in Indiana did not make venue proper in the D.C. District under § 1391(b)(2) where "events and omissions" relevant to the case took place predominantly in Terre Haute, making proper venue the Southern District of Indiana).  *See also Daniel v. American Bd. of Emergency Medicine*, 428 F.3d 408 (2d Cir. 2005).

For each of the foregoing reasons, this action should be dismissed in favor of the New York Interpleader Action.

### B.  A Motion for Summary Judgment
### Would Be Premature
### At This Stage of the Case

In telephonic conferences with the Court, the FDIC has indicated that it is prepared to move for summary judgment, pursuant to Fed. R. Civ. P. 56, at this stage of the litigation, in spite of the fact that there has been no discovery and the time for BNY to answer the Complaint has not yet expired.[5]  And the Court has invited BNY to file its own motion for summary judgment at this time, stating that, if it does not do so, it will not get another chance to do so.  Even if it were proper for the Court to retain jurisdiction of this case, the record at present is simply insufficiently developed to permit the proper briefing, argument, consideration or granting of a motion for summary judgment.

In the first count of its Complaint in this action, the FDIC seeks an order (presumably a declaratory judgment, though not denominated as such) that the Master Indenture's *ipso facto* clause is unenforceable.  In the second and third counts, the FDIC

---

[5] Pursuant to Fed. R. Civ. P. 12(a), BNY's answer to the FDIC's complaint in this action would have been due on December 6, even without consideration of BNY's filing of its motion to dismiss.  Of course, BNY did file a motion to dismiss pursuant to Fed. R. Civ. P. 12(b), which defers the deadline for BNY's answer until 10 days after notice of any denial of the motion, pursuant to Fed. R. Civ. P. 12(a)(4)(A).

ADMIN/20051726v1

seeks an order requiring BNY to pay over to it certain funds it characterizes as the Transferor Interest, which are being held by BNY in accordance with the terms of the Master Indenture and at the instruction of the Noteholders.  For each of its claims, the FDIC presumably intends to rely on the Court's Prior Decision.

It is not clear from the record in this action, however, that the Court's Prior Decision controls the current dispute.  To grant summary judgment on the basis of collateral estoppel, it is well-settled that the record must clearly establish an identity of issues in the two actions.  *See, e.g., Saper v. Long*, 121 F. Supp. 65 (S.D.N.Y. 1954) (denying summary judgment where record left it "far from clear" that the issue in the instant litigation had been litigated and decided in the prior action).  Here, because the Noteholders with their competing claims to the assets are absent, the record in this case is devoid of evidence of the precise issue forming the basis of the instant dispute.[6]

By filing this unnecessary and duplicative action in this forum rather than litigating the issues in an appropriate forum in which all interested persons are present to develop the issues and litigate them fully, the FDIC has significantly complicated the process of determining the similarity or dissimilarity of issues for purposes of collateral estoppel and will prevent any such proper determination unless this case is dismissed in favor of the New York Interpleader Action.

As currently postured, this case would present a strange, and apparently unprecedented attempted invocation of the collateral estoppel doctrine.  In the typical

---

[6]     BNY sought to inform the Court generally of some of the bases upon which the Noteholders are expected to assert that this dispute was not decided by the Prior Decision, by submitting letters that counsel for the Noteholders sent to BNY prior to the filing of the New York Interpleader Action (submitted with BNY's prior submission in support of its motion to dismiss), as well as recent correspondence from the Noteholders' counsel to the FDIC's counsel (submitted separately to the court within the past week).  The Court has now instructed BNY not to submit any such letters.  Accordingly, the Court is aware generally that the Noteholders do assert that the Prior Decision does not control this dispute, but those arguments cannot be developed properly (or at all) in this Court absent joinder of the Noteholders.

- 22 -

case, a party to a second litigation asks the court to determine that an issue in that litigation was previously determined in an earlier litigation. *Cf. Commissioner v. Sunnen*, 333 U.S. 591, 601-602 (1948) ("Before a party can invoke the collateral estoppel doctrine…, the legal matter raised in the second proceeding must involve the same set of events or documents and the same bundle of legal principles that contributed to the rendering of the first judgment."). In this case, rather than litigating the collateral estoppel issue in the second court (here, the New York Court), the FDIC has returned to the *first* court seeking the estoppel order. Counsel for BNY has been unable to find any precedent or support for this unorthodox approach. If the Court is prepared to allow the FDIC to forum shop its collateral estoppel ruling to this Court, a decision on summary judgment must be deferred until an adequate record has been developed in the New York Court to establish the identity of issues (or lack thereof) between the current dispute and the one that formed the basis of the earlier litigation.

Respectfully, BNY submits that the schedule the Court has set for briefing, argument and decision of this case on the merits is incompatible with proper development and consideration of the complex issues involved. As noted above, those issues simply have not been sufficiently developed for proper consideration of the merits, and can only be developed in the New York Interpleader Action, because of the indispensability of the Noteholders as parties.

The FDIC sought to persuade this Court to invoke the All Writs Act, 28 U.S.C. § 1651(a) (2006) to issue an order staying the New York Interpleader Action. Based on a telephone conference with the Court and counsel for the FDIC on the afternoon of December 4, 2006, BNY believes that the Court has denied that motion, presumably

- 23 -

because the Court recognizes that this would be an improper attempt to interfere with another court's jurisdiction solely for the purpose of seeking to be the first court to decide. As the Second Circuit noted in *Retirement Systems of Alabama v. J.P. Morgan Case & Co.*, 386 F.3d 419 (2d Cir. 2004):

> [W]e note that a federal district court, even assuming it has some interest in avoiding delay in its own proceedings, has no interest — no interest that can be vindicated by the exercise of the federal injunction power — in being the *first* court to hold a trial on the merits. We have held that a district court may not issue an injunction simply to be the first court to reach a judgment and thereby avoid issues of collateral estoppel. . . .

Similarly, it is improper for this Court to ignore the need to allow the Noteholders and the FDIC to develop the issues in this dispute fully and fairly before considering the merits in this action.

### IV.    Conclusion

The FDIC claims that the Prior Decision controls this dispute. The Noteholders claim that it does not. BNY does not know which position is correct. BNY respectfully submits that the answer to that question cannot be known absent proper development of the issues, and that proper development of the issues can occur only through the full and fair litigation of the issues in an action in which both the FDIC and the Noteholders are parties. For the foregoing reasons, and based on the above-cited authorities, BNY respectfully submits that this Court must dismiss this case in favor of the first-filed interpleader action pending in the United States District Court for the Southern District of New York.

Respectfully submitted this 6th day of December, 2006,


/s H. Stephen Harris, Jr._____

H. Stephen Harris, Jr.
D.C. Bar No. 481092
John L. Douglas
D.C. Bar No. 479569
Paul F. Brinkman
D.C. Bar No. 441681

Alston & Bird LLP
1201 W. Peachtree St.
Atlanta, GA 30309
Tel.: (404) 881-7000
Fax: (404) 881-7777

Alston & Bird LLP
601 Pennsylvania Ave. NW
North Bldg., 10th Floor
Washington, DC 20004
Tel.: (202) 756-3300
Fax: (202) 756-3333

Counsel for Defendant The Bank of New York,
as Indenture Trustee of the NextCard Credit Card
Master Note Trust

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Federal Deposit Insurance Corporation, in its Capacity as Receiver for NextBank, N.A.,<br><br>    Plaintiff,<br><br>     -against-<br><br>The Bank of New York, as Indenture Trustee of the NextCard Credit Card Master Note Trust,<br><br>    Defendant. | Case No. 06-1975 |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 6, 2006, I caused to be served true and correct copies of the herein Supplemental Memorandum of Points and Authorities in Support of Defendant the Bank of New York's Motion to Dismiss by (i) depositing said copies in the United States mail, with adequate first class postage affixed thereon, properly addressed to FDIC counsel of record in this action, Scott H. Christensen, at the address of Hughes Hubbard & Reed LLP, 1775 I Street, N.W., Washington, D.C. 20006-2401, and to Tom M. Reeves, at the address of Federal Deposit Insurance Corporation, 550 17th Street, N.W., Room VS-D-7068, Washington, D.C. 20429, and by (ii) emailing the same to Scott H. Christensen at the address of christen@hugheshubbard.com and to Tom M. Reeves at the address of TReeves@FDIC.gov.

Respectfully submitted this 6th day of December, 2006,


      /s H. Stephen Harris, Jr._____

ADMIN/20051726v1

H. Stephen Harris, Jr.
D.C. Bar No. 481092
John L. Douglas
D.C. Bar No. 479569
Paul F. Brinkman
D.C. Bar No. 441681

Alston & Bird LLP
1201 W. Peachtree St.
Atlanta, GA 30309
Tel.: (404) 881-7000
Fax: (404) 881-7777

Alston & Bird LLP
601 Pennsylvania Ave. NW
North Bldg., 10th Floor
Washington, DC 20004
Tel.: (202) 756-3300
Fax: (202) 756-3333

Counsel for Defendant The Bank of New York,
as Indenture Trustee of the NextCard Credit Card
Master Note Trust