UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FEDERAL DEPOSIT INSURANCE
CORPORATION, in its Capacity as
Receiver for NextBank, N.A.,

                                    Plaintiff,

        v.

THE BANK OF NEW YORK, as Indenture
Trustee of the NextCard Credit Card Master
Note Trust,

                                    Defendant.

Case No. 06-CV-1975-ESH

Hon. Ellen Segal Huvelle

## THE FDIC RECEIVER'S MOTION FOR JUDGMENT

Pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, Plaintiff Federal

Deposit Insurance Corporation, in its capacity as Receiver for NextBank, N.A. (the "FDIC

Receiver"), by its undersigned counsel, hereby moves this Court for finings of fact, conclusions

of law, and entry of a final judgment in favor of the FDIC Receiver.  The grounds for this motion

are set forth in the accompanying Memorandum of Points and Authorities in Support of the

FDIC Receiver's Motion for Judgment, the Statement of Material Facts in Support of the FDIC

Receiver's Motion for Judgment, Exhibits attached to the Declaration of Scott H. Christensen in

Support of the FDIC Receiver's Motion for Judgment; all papers filed with the Court in this civil

action and *Bank of New York v. FDIC*, No. 03-1221-ESH (D.D.C.); and such other matters as

may properly be brought to the Court's attention in connection with this Motion.

Dated:  December 15, 2006

                        Respectfully submitted,

Of Counsel:

                        Dennis S. Klein, D.C. Bar No. 361457

Tom M. Reeves (KS Sup. Ct. No. 7259)
  Counsel
Federal Deposit Insurance Corporation
550 17th Street, N.W., Room VS-D-7068
Washington, D.C. 20429
Telephone:  (703) 562-2433
Facsimile:  (703) 562-2475
E-mail:  TReeves@FDIC.gov

Scott H. Christensen, D.C. Bar No. 476439
HUGHES HUBBARD & REED LLP
1775 I Street, N.W.
Washington, D.C. 20006-2401
Telephone:  (202) 721-4600
Facsimile:  (202) 721-4646


Attorneys for Plaintiff Federal Deposit
Insurance Corporation, in its Capacity as
Receiver for NextBank, N.A.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on December 15, 2006, true and accurate copies of foregoing The FDIC Receiver's Motion for Judgment and [Proposed] Order were served by mail upon:

> John L. Douglas
> H. Stephen Harris, Jr.
> Alston & Bird LLP
> One Atlantic Center
> 1201 West Peachtree Street
> Atlanta, Georgia 30309-3424

> Paul F. Brinkman
> Alston & Bird LLP
> 601 Pennsylvania Avenue, N.W.
> North Building, 10th Floor
> Washington, D.C.  20004-2601

Scott H. Christensen

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FEDERAL DEPOSIT INSURANCE
CORPORATION, in its Capacity as
Receiver for NextBank, N.A.,

Plaintiff,

v.

THE BANK OF NEW YORK, as Indenture
Trustee of the NextCard Credit Card Master
Note Trust,

Defendant.

Case No. 06-CV-1975-ESH

Hon. Ellen Segal Huvelle

## [PROPOSED] ORDER

The Motion for Judgment and in Opposition to Defendant's Motion to Dismiss filed by the Federal Deposit Insurance Corporation, in its capacity as Receiver for NextBank, N.A. (the "FDIC Receiver"), having been reviewed by this Court, and this Court being fully advised in the premises,

IT IS HEREBY ORDERED that Defendant's Motion for Judgment is GRANTED.

IT IS FURTHER ORDERED that, within five calendar days of this Order, BONY distribute to the FDIC Receiver the net cash distributable to the Transferor as described under "Transferor Allocations/Distributions" on the monthly distribution statements, consisting of the Transferor share of finance charge collections, the interest earned on the Collections Account, the Transferor share of principal collections, minus the Transferor allocated servicing fees, plus interest.

1

IT IS FURTHER ORDERED that BONY shall pay the FDIC Receiver's attorneys' fees and costs incurred in connection with prosecuting this action and defending the interpleader action pending in the Southern District of New York, in an amount to be determined.

IT IS FURTHER ORDERED that BONY is permanently enjoined from distributing the Transferor Interest to anyone but the FDIC Receiver and from interfering with the FDIC Receiver's rights to the Receivables.

IT IS FURTHER ORDERED that BONY is permanently enjoined from distributing to the Noteholders any funds from the Trust except the interest owed monthly, as drawn on the Spread Accounts, and the amounts in the Spread Account when they surrender their Notes upon termination of the transaction.

IT IS FURTHER ORDERED that BONY issue, within five calendar days of this Order, a notice to all Noteholders holding Series 2000-1 notes that they must surrender their notes within thirty (30) days.

IT IS FURTHER ORDERED that Motion to Dismiss filed by the Bank of New York, as Indenture Trustee of the NextCard Credit Card Master Note Trust, is denied.

SO ORDERED.

Dated: _____                    _____
                                         HON. ELLEN SEGAL HUVELLE
                                         UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FEDERAL DEPOSIT INSURANCE
CORPORATION, in its Capacity as
Receiver for NextBank, N.A.,

Plaintiff,

v.

THE BANK OF NEW YORK, as Indenture
Trustee of the NextCard Credit Card Master
Note Trust,

Defendant.

Case No. 06-CV-1975-ESH

Hon. Ellen Segal Huvelle

**MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF THE FDIC RECEIVER'S MOTION FOR JUDGMENT
AND IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Of Counsel:

Tom M. Reeves (KS Sup. Ct. No. 7259)
  Counsel
Federal Deposit Insurance Corporation
550 17th Street, N.W., Room VS-D-7068
Washington, D.C. 20429
Telephone:  (703) 562-2433
Facsimile:  (703) 562-2475
E-mail:  TReeves@FDIC.gov

Dennis S. Klein, D.C. Bar No. 361457
Scott H. Christensen, D.C. Bar No. 476439
HUGHES HUBBARD & REED LLP
1775 I Street, N.W.
Washington, D.C. 20006-2401
Telephone:  (202) 721-4600
Facsimile:  (202) 721-4646

Attorneys for Plaintiff Federal Deposit
Insurance Corporation, in its Capacity as
Receiver for NextBank, N.A.

<u>**TABLE OF CONTENTS**</u>

<u>Page</u>

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION .................................................................................................................1

STATEMENT OF FACTS ....................................................................................................2

    BONY Represents the Noteholders ...............................................................................2

    The Notes and Noteholders............................................................................................3

    The Transaction Documents ..........................................................................................3

    The Transferor Interest and the Collateral ....................................................................4

    The Claims Process........................................................................................................4

    The BONY Sues the FDIC Receiver on Behalf of the Noteholders...............................6

    The November 23, 2004 Decision on Count Two ..........................................................7

    The July 27, 2005 Settlement Agreement......................................................................7

    BONY and the Noteholders Agree On Litigating Count Six ...........................................8

    The September 27, 2006 Order and Judgment on Count Six ...........................................9

    BONY Colludes to Seize the FDIC Receiver's Funds ...................................................9

        The November 9, 2006 Instructions......................................................................9

        The November 10, 2006 BONY Letter..............................................................10

        The November 13, 2006 Opinion Letter............................................................11

        BONY Follows The Noteholders' Instructions ..................................................12

    The Case Before This Court .........................................................................................13

    The New York Case......................................................................................................14

ARGUMENT .......................................................................................................................16

I.      BONY IS LIABLE FOR TAKING THE FDIC RECEIVER'S FUNDS .........................16

    A.      BONY Violated This Court's Orders and Breached the Settlement
            Agreement.............................................................................................................18

DC 561972_1.DOC

## <u>TABLE OF CONTENTS</u>
(continued)

<u>Page</u>

B.    BONY Converted the FDIC Receiver's Funds......................................................19

C.    BONY Should Be Permanently Enjoined..........................................................21

II.    BONY'S MOTION TO DISMISS SHOULD BE DENIED ...........................................22

A.    The New York Litigation is Barred By Res Judicata ............................................23

B.    The Statute of Limitations Has Run on the Interpleader Action ..........................26

C.    Venue Is Proper Before This Court ....................................................................28

D.    The First-Filed Action Was Before This Court ....................................................29

E.    The Noteholders Are Not Necessary Parties .......................................................30

F.    Judgment Should Be Granted for the FDIC Receiver ..........................................31

CONCLUSION......................................................................................................................32

## <u>TABLE OF AUTHORITIES</u>

Page(s)

### CASES

*Adair v. United States*, No. 93-5334, 1994 WL 189128 (D.C. Cir. 1994) ....................................23

*Advantage Health Plan, Inc. v. Knight*, 139 F. Supp. 2d 108 (D.D.C. 2001)...............................26

*American Civil Liberties Union v. Mineta*, 319 F. Supp. 2d 69 (D.D.C. 2004) ...........................22

*American Express Travel Related Services, Co. v. Bank One-Dearborn, N.A.*, No. 05-
    1900, 2006 WL 2457067 (6th Cir. Aug. 24, 2006)...................................................................31

*Amoco Production Co. v. Village of Gambell*, 480 U.S. 531 (1987)............................................22

*Bailey v. DiMario*, 925 F. Supp. 801 (D.D.C. 1995) ...................................................................24

*Bank of New York v. FDIC*, 453 F. Supp. 2d 82 (D.D.C. 2006)........................................... *passim*

*Biton v. Palestinian Interim Self-Government Authority*, 412 F. Supp. 2d 1 (D.D.C. 2005) ........24

*Broadcast Music, Inc. v. CBS Inc.*, 424 F. Supp. 799 (S.D.N.Y. 1976) ........................................22

*Century International Arms, Ltd. v. Federal State Unitary Enterprise State
    Corp. "Rosvoorouzheinie,"* 172 F. Supp. 2d 79 (D.D.C. 2001)........................................ 24, 26

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ..........................................25, 31

*Colavito v. New York Organ Donor Network, Inc.*, ___ N.E.2d ___, 2006 WL 3625060
    (N.Y. Dec. 14, 2006)................................................................................................................20

*Columbia Plaza Corp. v. Security National Bank*, 525 F.2d 620 (D.C. Cir. 1975)......................29

*Consolidated Edison Co. of New York v. Bodman*, 449 F.3d 1254 (D.C. Cir. 2006)...................24

*Corcoran v. Chesapeake & Ohio Canal Co.*, 94 U. S. 741 (1876)........................................26, 31

*Elwell v. Fosdick*, 134 U.S. 500 (1890) .................................................................................25, 30

*Federation Internationale De Football Association v. Nike, Inc.*, 285 F. Supp. 2d 64
    (D.D.C. 2003) .....................................................................................................................29-30

*Furia v. Furia*, 498 N.Y.S.2d 12 (N.Y. App. Div. 1986) ............................................................19

*Gimenez v. City of Newark*, No. 06-0526, 2006 WL 3019685 (D.N.J. Oct. 24, 2006) ................23

*Gullo v. Veterans Cooperative Housing Association*, 269 F.2d 517 (D.C. Cir. 1959).............6, 23

DC 561972_1.DOC

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Hall v. Clinton*, 285 F.3d 74 (D.C. Cir. 2002) ............................................................24

*Kersh Lake Drainage Dist. v. Johnson*, 309 U.S. 485 (1940) ...............................25, 30

*Merkl v. Brynelson*, No. 94-3728, 1997 WL 767791 (7th Cir. Dec. 10, 1997) ............23

*NextWave Personal Communications Inc. v. FCC*, 254 F.3d 130 (D.C. Cir. 2001).....................24

*Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979)...................................................24

*Ramah Navajo School Board, Inc. v. Babbitt*, 87 F.3d 1338 (D.C. Cir. 1996).........................30-31

*Republic of Haiti v. Duvalier*, 626 N.Y.S.2d 472 (N.Y. App. Div. 1995)....................20

*Richter v. Jerome*, 123 U.S. 233 (1887) ................................................................25, 30

*Santiago Otero v. Quirindongo Echevarria*, No. 05-1443, 2005 WL 2671048
    (D.P.R. Oct. 19, 2005) .............................................................................................23

*Thayer/Patricof Education Funding, L.L.C. v. Pryor Resources, Inc.*, 196 F. Supp. 2d 21
    (D.D.C. 2002) ......................................................................................................29-30

*United States v. Anderson*, No. 05-14848, 174 Fed. Appx. 509, 510, 2006 WL 858519
    (11th Cir. Apr. 4, 2006) ...........................................................................................23

*United Transp. Union v. Nat'l Mediation Bd.*, No. 93-0428-HHG, 1993 WL 764220
    (D.D.C. 1993) ...........................................................................................................30

*Yamaha Corp. of Am. v. United States*, 961 F.2d 245 (D.C. Cir. 1992), *cert. denied*,
    506 U.S. 1078 (1993)................................................................................................24

## STATUTES AND RULES

12 U.S.C.§ 1821(d)(3)(B) ................................................................................................4

12 U.S.C. § 1821(d)(6) ...................................................................................1, 6, 27, 29

12 U.S.C. § 1821(d)(13)(D).............................................................................................27

Fed. R. Civ. P. 19 ...........................................................................................................30

Fed. R. Civ. P. 56 ...........................................................................................................31

Fed. R. Civ. P. 52(a) ...................................................................................................2, 31

Fed. R. Civ. P. 65(a) ...................................................................................................2, 31

## TABLE OF AUTHORITIES
(continued)

Page(s)

Local Rule 7.1 ................................................................................................................2

### MISCELLANEOUS

Restatement (Second) of Judgments § 41(1)(a) (2006) ................................................26

2 New York Pattern Jury Instructions—Civil § 4:1 (2d ed. 2006) ..............................19

John L. Douglas, General Counsel, *Self-Help Liquidation of Collateral by Second Claimants in Insured Depository Institution Receiverships*, FDIC Interpretive Ltr., No. FDIC-89-49, 1989 WL 609503 (Dec. 15, 1989) ............................................21

John L. Douglas, et al., *The Management and Liquidation of Failed Financial Institutions Under the Financial Institutions Reform, Recovery and Enforcement Act of 1989*, Practicing Law Institute, 625 PLI/Comm 399, 409 (June 8-9, 1992)........1, 21, 28-29

## <u>INTRODUCTION</u>

In *Bank of New York v. FDIC*, No. 03-1221 ("*NextBank I*"), this Court

- held that the Transferor Interest belongs to the FDIC Receiver and dismissed the Noteholders' claim for the Transferor Interest;

- dismissed all other claims and counterclaims after the Noteholders, BONY, and the FDIC Receiver settled all remaining claims except Count Six; and

- granted judgment on Count Six against BONY on the Noteholders' claim that the FDIC Receiver took "assets of the Trust" because the FDIC Receiver did not "begin the Amortization Period" upon its appointment as Receiver in February 2002.

Less than two months after this Court entered the judgment and a few weeks after filing an appeal, BONY and the Noteholders seized the Transferor Interest and sought to distribute the seized funds to the Noteholders based on the assertion that early amortization should have occurred upon the appointment of the FDIC Receiver in February 2002.  BONY violated this Court's orders and final judgment, converted funds owed to the FDIC Receiver, and breached the settlement agreement in collusion with vigilante Noteholders who decided they would attempt to take by fiat what they lost in over three years of litigation.  It is hard to imagine how BONY and the Noteholders could be in more blatant violation of this Court's orders.

In an end run around this Court's decisions, BONY offered the seized funds to a state court in New York and still claims that the New York court has jurisdiction over the funds. BONY now asks this Court to dismiss this action in favor of the New York action.  The statute of limitations under banking law has run on that interpleader action.  *See* 12 U.S.C. § 1821(d)(6). BONY relied on that law as the basis for this Court's jurisdiction in *NextBank I*, and BONY's own attorneys have written articles explaining why jurisdiction in New York would be improper. *See* John L. Douglas, et al., *The Management and Liquidation of Failed Financial Institutions*

1

*Under the Financial Institutions Reform, Recovery and Enforcement Act of 1989*, Practicing Law

Institute, 625 PLI/Comm 399, 409 (June 8-9, 1992) (copyright by Alston & Bird LLP).

Judgment should be granted in favor of the FDIC Receiver and against BONY,

and BONY's motion to dismiss should be denied.[1]

## STATEMENT OF FACTS[2]

**BONY Represents the Noteholders**

BONY is the "indenture trustee for the interests of investors who purchased asset-

backed securities from a trust established by the now-defunct NextBank, N.A." *Bank of New*

*York v. FDIC*, 453 F. Supp. 2d 82, 84 (D.D.C. 2006); *see id*. at 86 (BONY "represents the

interests of the Noteholders"); *see id*. at 89 ("the Noteholders whose interests [BONY] now

represents purchased notes from 'Series 2000-1' and 'Series 2001-1'"). BONY and the

Noteholders agreed in the Master Indenture that (1) BONY would represent the Noteholders in

any legal action, (2) the Noteholders need not be parties to any such action, and (3) the

Noteholders could not file any action related to the Notes unless they satisfied very specific

requirements that are not satisfied here. (Ex. 3, § 5.04(f), (g), at FDIC00176; *id*. § 5.07, at

FDIC00178-79.)[3]

---

[1] Because this Court has consolidated the preliminary injunction hearing and the merits trial pursuant to Rule 65(a)(2) of the Federal Rule of Civil Procedure, the FDIC Receiver is submitting the documentary evidence in support of findings of fact, conclusions of law, and entry of a final judgment pursuant to Rule 52(a).

[2] These facts also are set forth in the FDIC Receiver's separate Statement of Material Facts submitted pursuant to Local Rule 7.1.

[3] References to "Ex. ___" are to exhibits attached to the Declaration of Scott H. Christensen in Support of Defendant's Motion for Judgment filed December 15, 2006.

**The Notes and Noteholders**

The Noteholders purchased particular series of Notes and particular classes of Notes within each series.[4]  *See* 453 F. Supp. 2d at 89.  The different classes of Notes represent degrees of risk that the Notes would not be repaid.  *See id.*  All series have been paid in full and suffered no loss except for two series:  the Series 2000-1 Notes and the Series 2001-1 Notes.  *See id.* at 91.  All classes of notes within these two series have been paid in full and suffered no loss except for the two riskiest classes, Classes C and D.  *See id.*

**The Transaction Documents**

In the **Trust Agreement**, NextBank created the NextCard Credit Card Master Note Trust (the "Trust") to hold the credit card receivables and to pay the Noteholders interest and ultimately principal on the Notes.  *See* 453 F. Supp. 2d at 87.  NextBank was the "Owner" of the Trust, and as such, held an "undivided beneficial interest in the Trust Assets" including the credit card receivables.  *See id.*  The Trust was a shell entity with no employees or infrastructure of any kind and was entirely dependent on NextBank and its personnel to carry out its operations.  *See id.*

Following the creation of the Trust, NextBank, BONY, and the Trust entered into the **Master Indenture**, in which the Trust authorized the issuance and sale of Notes secured by and paid from the credit card receivables transferred to the Trust.  *See* 453 F. Supp. 2d at 87. The Master Indenture contained an *ipso facto* automatic acceleration clause that is triggered by a "redemption event," a term that includes the appointment of the FDIC as Receiver.  *See id.* Section 5.01 of the Master Indenture provides that, upon the FDIC's appointment as Receiver, an

---

[4]     The Noteholders instructing BONY in this case are Millennium Partners, L.P., First
        Millennium, Inc., and RMK Advantage Income Fund.

early amortization period would begin, which would require an automatic accelerated repayment of principal on the Notes.  *See id*.

Under the **Administration Agreement**, NextBank was responsible for carrying out the Trust's duties under the other Transaction Documents.  *See id*.

**The Transferor Interest and the Collateral**

The Transaction Documents divide the Trust assets into two categories:  one owned by NextBank, and one to which the Noteholders were given a contractual right.

The portion of the payments allocated to NextBank itself was known as the Transferor Interest.  (*See* Ex. 1 at FDIC00391, FDIC00414, FDIC00472; Ex. 2 at FIDC00872, FDIC00893, FDIC00950; *see* Ex. 3 at FDIC00140-41 ("Granting Clauses").)  The Transferor Interest was NextBank's ownership interest in the Trust; it is "[t]he interest in the assets not allocated to any series of notes."  (Ex. 1 at FDIC00391; Ex. 2 at FDIC00872; *see* Ex. 1 at FDIC00472; Ex. 2 at FDIC00950.)

The funds to which BONY and the Noteholders have a contractual right is defined as the "Collateral," which "exclud[es] the Transferor Interest and all amounts distributable to the Holders of any Certificates pursuant to the terms of any Transaction Document."  (Ex. 3 at FDIC00141 (emphasis added).)  Any obligation "to make payments of principal of, and interest on and other amounts with respect to, the Notes is limited by recourse only to the Collateral."  (*Id.* (emphasis added).)  The Collateral alone secures the obligation of the Trust to pay the Noteholders.  (*See id.* § 8.02, at FDIC00189.)

**The Claims Process**

On July 10, 2002, the FDIC Receiver advised BONY that it was repudiating some of the transaction contracts and that BONY might wish to file a claim as a result.  (Ex. 8.)  *See* 12 U.S.C. § 1821(d)(3)(B).  On October 8, 2002, BONY filed claims on behalf of the Noteholders

4

seeking recovery of funds from the FDIC Receiver as a result of actions taken in the

receivership.  (Ex. 9.)  Among other claims, BONY asserted that (1) the FDIC Receiver had no

right to the "Transferor Interest," as defined in the transaction documents; (2) the FDIC Receiver

owed BONY all of its attorneys' fees; and (3) the FDIC Receiver improperly prevented early

amortization.  (*See id.*)

      The claim related to early amortization was filed by BONY on behalf of

Noteholder CSFB.  According to that claim:

> The Indenture Trustee files this proof of claim in
> connection with the FDIC's failure to begin an amortization period
> upon its appointment as receiver of NextBank. As a direct result,
> the Trust has been injured in an amount not less than
> $245,154,649, plus interest.  * * *
>
> Under Section 5.01(a) of the Indenture, the appointment of
> the FDIC as receiver for NextBank constituted a Trust Redemption
> Event.  Section 5.01 of the Indenture provides that, upon the
> occurrence of a Trust Redemption Event, an Amortization Period
> shall commence, and payment on the Notes shall thereafter be
> made in accordance with the terms of the Indenture Supplements.
> However, the FDIC delayed the commencement of an
> Amortization Period until at least July 2002.  As a result, the FDIC
> used collections received on the Trust Receivables to purchase
> additional Trust Receivables instead of applying these collections
> to pay down the outstanding principal of the Notes.  In addition,
> this failure to amortize has resulted in a greater allocation of losses
> to the Notes than would have otherwise occurred under the terms
> of the Indenture.  * * *
>
> As a result, the FDIC owes the Trust at least $245,154,649,
> plus interest, in connection with this claim.

(Ex. 9 at 1, 4, 5.)

      On April 11, 2003, the FDIC Receiver denied most of the claims.  (Ex. 10.)  The

FDIC Receiver explained the effect of its disallowance on the claims process:

> Pursuant to 12 U.S.C. § 1821(d)(6), if BONY does not agree with
> any disallowance, BONY has the right to filed suit on its claim . . .
> in the United States District (or Territorial) Court for the District

within which the failed institution's principal place of business was located or the <u>United States District Court for the District of Columbia</u>, within sixty (60) days from the date of this notice.

THE FAILURE TO FILE SUIT . . . BEFORE THE END OF THE SIXTY (60) DAY PERIOD WILL RESULT IN THE CLAIM BEING FOREVER BARRED AND YOU WILL HAVE NO FURTHER RIGHTS OR REMEDIES WITH RESPECT TO YOUR CLAIM.

(Ex. 10 at 2-3 (emphasis added).) *See* 12 U.S.C. § 1821(d)(6)(A) & (B).

**The BONY Sues the FDIC Receiver on Behalf of the Noteholders**

BONY, on behalf of all Noteholders, filed the first lawsuit in this matter on June 5, 2003 in this Court. *Bank of New York v. FDIC*, No. 03-1221-ESH (D.D.C.) ("*NextBank I*").[5] BONY filed in the United States District Court for the District of Columbia, because it was one of only two federal courts that could entertain a case against the FDIC Receiver under 12 U.S.C. § 1821(d)(6),[6] which BONY cited as the basis for the jurisdiction in its Complaint (Ex. 11 ¶¶ 2, 3; *see id.* ¶ 41).

In *NextBank I*, BONY sought the right to the Transferor Interest (Count Two), payment of attorneys' fees (Count Four), and payment of principal to the Trust for not permitting the transaction to go into early amortization in February 2002 (Count Six). In Count Six, BONY alleged as follows:

74. The FDIC ignored the commencement of an Amortization Period and continued to act as if an Amortization Period had not commenced until at least July 2002. The FDIC had no right to interfere with the property and the economic and

---

[5] The FDIC Receiver requests that this Court take judicial notice of these prior proceedings and its orders and judgment. *See Gullo v. Veterans Cooperative Housing Association*, 269 F.2d 517, 517 (D.C. Cir. 1959) (per curiam).

[6] The only other federal court that would have had jurisdiction is the District of Arizona, where NextBank had its principal place of business.

contractual rights of third parties in relation to assets which are separate and apart from the receivership estate. Distributions to Noteholders should have been made in accordance with the terns of the Master Indenture. The FDIC failed to apply these collections to pay down the outstanding principal of the Notes, as required by the Master Indenture. In addition, this failure to amortize has resulted in a greater allocation of losses to the Notes than would have otherwise occurred under the terms of the Master Indenture.

75. As a result of its failure to begin the Amortization Period at the proper time, the FDIC wrongfully took and converted the assets of the Trust, without proper or just compensation, in violation of (i) the property rights of third persons, that is, the Noteholders and the Indenture Trustee, on their behalf, and (ii) the perfected first priority security interest of the Indenture Trustee on behalf of the Noteholders to such assets to secure repayment of the Notes. Accordingly, the FDIC owes the Trust in excess of $800 million in connection with this claim.

(Ex. 11 at 15-17.)

**The November 23, 2004 Decision on Count Two**

On November 23, 2004, this Court reconsidered Judge Jackson's order denying the FDIC Receiver's motion to dismiss Count Two. This Court granted reconsideration and dismissed Count Two, holding that it was "absolutely clear error" for Judge Jackson to have denied that motion. (Ex. 12 at 53.) This Court concluded that there is nothing in the transaction documents that gives BONY or the Noteholders the right to the Transferor Interest, and the simple fact that the FDIC Receiver repudiated the Master Indenture did not give BONY or the Noteholders a right that they did not have before. (*See id*.) The Transferor Interest excludes the Collateral, and BONY and the Noteholders have a right only to the Collateral. (*See id*. & at 23.)

**The July 27, 2005 Settlement Agreement**

On July 27, 2005, the parties settled all of BONY's claims and the FDIC Receiver's counterclaims except for BONY's Count Six. The settlement agreement provided that "the balance of the retained collections representing the Transferor Interest . . . shall be

released to the FDIC Receiver." (Ex. 13 at 1, ¶ 1.) "The Noteholders signing below agree, as representative of the Noteholders, to strongly and promptly recommend this settlement to the Noteholders in order for the Indenture Trustee to obtain approval by the requisite majority Noteholders on or prior to 1 August 2005." (*Id.* ¶ 2.) Upon approval by the Noteholders, "all Claims in the Complaint, other than Count 6, and all Counterclaims are hereby fully released, and the parties agree to take all necessary actions to dismiss such Claims (other than Count 6) and Counterclaims with prejudice." (*Id.*) On August 2, 2005, BONY notified the mediator that it had "all the approvals needed for the settlement." (Ex. 14.)

Millennium Partners L.P. and its counsel participated in the mediation at the federal court in the District of Columbia and signed the settlement agreement. The agreement was signed by Philip M. Schockling on behalf of Millennium Partners LP, Michael Mittleman on behalf of CS First Boston LLC, Loretta A. Lundberg on behalf of BONY, and Ralph Malami and Tom M. Reeves on behalf of the FDIC Receiver. (Ex. 13 at 1.)

Following the settlement, the FDIC Receiver started receiving monthly payment of the Transferor Interest as required under the settlement agreement and the contract documents. On September 15, 2005, for example, the FDIC Receiver received payment of $1,928,992.64 of the Transferor Interest for the month of August 2005. (Ex. 15.) The Noteholders also continued to receive the monthly principal and interest payments to which they were entitled. *See* 453 F. Supp. 2d at 91. The Noteholders stopped receiving principal in the April 17, 2006 monthly distribution when the "Invested Amount" went to zero, as provided in the Master Indenture and Indenture Supplements. (Ex. 15.)

**BONY and the Noteholders Agree On Litigating Count Six**

Following the settlement agreement, BONY and the Noteholders entered into an agreement with BONY to pay BONY attorneys' fees to litigate Count Six. In August 2005, a

majority of the Noteholders directed BONY to "proceed to litigate/and or settle [the FDIC Suit], as currently pled in the Count 6." (Ex. 16 at 12.)  The Noteholders created a $1,100,000 account to fund the litigation based on Alston & Bird's estimate that it would require $700,000 to fully litigate the matter.  (*Id*.)  BONY and the Noteholders agreed that "the Expense Account will be sufficient to cover the fees and expenses associated with pursuing Count 6 (including the costs and expenses of any appeal)."  (*Id*.)  If the Noteholders' account was inadequate, however, BONY agreed to "seek further direction" from the Noteholders "before incurring fees and expenses related to Count 6 in excess of the amounts deposited in the Expense Account."  (*Id*.)

BONY exceeded the limits of the Noteholders' Expense Account by over $600,000, spending over $1.7 million to litigate Count Six from August 2005 through the final judgment in September 2006.  The Noteholders told BONY that they considered the overruns to be "*ultra vires* fees and expenses" that are "egregious" and "unauthorized."  (*Id*.)

**The September 27, 2006 Order and Judgment on Count Six**

On September 27, 2006, this Court granted judgment on Count Six in favor of the FDIC and against BONY.  *Bank of New York v. FDIC*, 453 F. Supp. 2d 82 (D.D.C. 2006).  BONY, on behalf of the Noteholders, filed a notice of appeal on October 27, 2006, and filed a docketing statement and related documents in the United States Court of Appeals for the District of Columbia on December 4, 2006.  *Bank of New York v. FDIC*, No. 06-5358 (D.C. Cir.).

**BONY Colludes to Seize the FDIC Receiver's Funds**

**The November 9, 2006 Instructions**

In a November 9, 2006 instruction letter, a majority of outstanding Noteholders "irrevocably" directed BONY to take the following actions:

- execute a Notice of Default "on or prior to November 14, 2006" (Ex. 17 ¶ i)

- exercise control over the "Collateral," (*id*. ¶ ii(a))

- "revoke the power of the Servicer to make distributions other than as specifically authorized in this Instruction Letter," (*id*. ¶ ii(c))

- "cause all moneys and proceeds received from the [Trust] or from the Collateral" to be paid as if an early amortization had occurred until there is "full repayment" of the Notes; this must occur as soon as (1) the New York court authorizes it; (2) the Noteholders direct; (3) "receipt of collection of the amounts needed to fully satisfy all outstanding Notes," (*id*. ¶ ii(d))

- "on or prior to November 17, 2006, commence an action in the Supreme Court of the State of New York sitting in New York County . . ., which action will seek (i) to obtain a judgment against the Issuer for the full unpaid principal and interest due on the accelerated Notes, (ii) . . . to obtain a declaratory judgment authorizing the payment of all amounts due to the Series C and Series D Noteholders . . .; and (iii) to obtain any other injunctive relief . . . for the continuation of the existence of [the Trust] and the Collateral and the continuation of the distributions . . . until all unpaid principal and interest have on the Notes under all Series have been repaid in full," (*id*. ¶ iii(b))

- "pursue the appeal . . . of the decision of the court in the action entitled The Bank of New York v. Federal Deposit Insurance Company in the United States District Court for the District of Columbia, Civil Action No. 03-1221 (ESH)," (*id*. ¶ iv).

(Ex. 17 at 1-4.)  The majority Noteholders further instructed BONY that the first payments following BONY's seizure of funds were to be (1) payment of $600,000 to BONY's counsel for the overruns in *Bank of New York v. FDIC*, No. 03-1221-ESH, and (2) payment of "reasonable fees and expenses" incurred in the appeal and the New York litigation.  (Ex. 17 at 2.)

### The November 10, 2006 BONY Letter

In a letter dated November 10, 2006, BONY wrote the Noteholders that it "declines to accept the Instruction Letter or to accept the actions specified in the Directions . . . ." (Ex. 16 at 1.)  BONY explained that the Noteholders' directions "conflict with the rule of law as evidenced by the [September 27, 2006] decision of the court in the action entitled *The Bank of New York v. Federal Deposit Insurance Company* in the United States District Court for the

District of Columbia, Civil Action No. 03-1221 (ESH)."  (*Id*. at 2.)  Furthermore, the "actions

[specified in the Directions] conflict with the Master Indenture as they are not authorized or

within the discretion or rights conferred upon the Indenture Trustee by the Master Indenture."

(*Id*.)

### The November 13, 2006 Opinion Letter

In an opinion letter from Vedder Price dated November 13, 2006, counsel for the

Noteholders asserted that "all of the requirements necessary for declaring an Event of Default

and accelerating the Notes of each Series have occurred":

> NextBank entered into receivership on February 7, 2002, which
> constituted a Trust Redemption Event and triggered the
> commencement of the Early Amortization Period.
>
> Contrary to the express terms of the Indenture, the [Trust] failed to
> pay the principal that came due commencing in February 2002,
> which failure has caused certain principal not be repaid.
>
> The [Trust]'s failure to pay any principal on the Notes when due
> and payable constitutes an Event of Default under Section 5.02 of
> the Master Indenture.
>
> The Directing Noteholders, as the holders of a majority of the
> outstanding Notes under each Series, are entitled to accelerate the
> Notes and so instructed the Indenture Trustee.
>
> The acceleration of the Notes causes the full unpaid principal
> amount of $55,622,500 on the 2000-1 Series Notes and
> $56,486,500 on the 2001-1 Series Notes to become immediately
> due and payable.

(Ex. 16 at 5-6.)

Vedder Price asserted that the Noteholders' instructions were consistent with this

Court's orders and judgment.  "Other than the direction regarding the appeal of the D.C.

Opinion, nothing in the Instruction Letter relates to the FDIC, NextBank, N.A., ('NextBank') or

the FDIC Suit," namely *Bank of New York v. FDIC*, No. 03-1221-ESH (D.D.C.)  (Ex. 16 at 3.)

According to the Vedder Price opinion letter:

- "The [Trust] is not a party to the FDIC Suit;"

- "The FDIC Suit does not address the liability of the [Trust] in any way;"

- "In the D.C. Opinion, the court neither ruled that the [Trust] was not a separate legal entity, nor ruled that the separate existence of the [Trust] should be disregarded with respect to its obligations under the Indenture;"

- "Neither did the court hold that an Early Amortization Event did not occur in February 2002;"

- "Nowhere in the D.C. Opinion did the court rule that the Early Amortization Event in February 2002 was not enforceable against the [Trust];"

- "Nowhere in the D.C. Opinion did the court rule that any of the provisions of the Indenture could not be enforced against the [Trust];"

- "At no point in the D.C. Opinion did the court rule that remedies could not be taken against the Collateral;"

- "Nothing in the D.C. Opinion excused the [Trust] from making principal repayments under the Early Amortization waterfall starting in February 2002; and"

- "Nothing in the D.C. Opinion excuses the [Trust] from the Event of Default arising from the non-payment of principal caused by the delay in honoring the Early Amortization Period in February 2002."

(Ex. 16 at 3-4.)  The Noteholders sought to redefine the technical term "Collateral," as defined in the Master Indenture, to include all of the "Receivables" and the Transferor Interest along with it.  (Ex. 16 at 6.)

### BONY Follows The Noteholders' Instructions

On November 14, 2006, BONY sent the FDIC Receiver the "Notice of Default under Master Indenture and Notice of Acceleration for Both Series 2000-1 Notes and Series

2001-1 Notes." BONY alleged that actions taken by the FDIC Receiver when it was appointed receiver on February 7, 2002 triggered the default. "NextBank, N.A.'s entry into receivership on February 7, 2002 constituted a Trust Redemption Event which triggered the commencement of the Early Amortization Period, whereupon the [Trust] was required to commence making payments of principal on the Notes . . . for each of the Series 2000-1 Notes and Series 2001-1 Notes." (Ex. 19 at 2.) According to the Notice of Default, the Trust

> failed to make distributions . . . following the commencement of the February 7, 2002 receivership for the four monthly distributions commencing on February 15, 2002 for each of the Series 2000-1 Notes and Series 2001-1 Notes. The [Trust's] failure to honor its contractual repayment obligations has caused it to fail to make payments of principal due to the Noteholders of the Series 2000-1 Notes and Series 2001-1 Notes, which failure continues through the date hereof. Such failure to pay principal of the Notes when due and payable constitutes an Event of Default under Section 5.02 of the Master Indenture for each of the Series 2000-1 Notes and Series 2001-1 Notes.

(Ex. 19 at 2.)

On November 15, 2006, the FDIC Receiver's counsel sent a letter to BONY's counsel, with a copy to the Noteholders' counsel, explaining that the Notice of Default had no effect for reasons explained in *Bank of New York v. FDIC*, 453 F. Supp. 2d 82 (D.D.C. 2006). (Ex. 20.)

On November 16, 2006 (at 8:23 p.m.), the Noteholders issued their own purported "Notice of Default under Master Indenture and Notice of Acceleration for Both Series 2000-1 Notes and Series 2001-1 Notes." (Ex. 21.)

**The Case Before This Court**

BONY is still holding the FDIC Receiver's Transferor Interest payment of $3,626,534.39 that it should have received on November 15, 2006. (Ex. 28) So, the FDIC Receiver filed this lawsuit on November 17, 2006 and sought a temporary restraining order that

13

would prevent improper distribution of funds in violation of the settlement agreement and the orders and the judgment in the three-year-old litigation. *See FDIC v. Bank of New York*, No. 06-1975-ESH (D.D.C.) ("*NextBank II*"). That case was assigned to this Court as a related case. That afternoon, this Court scheduled a telephone conference with counsel for 12:45 p.m. on November 20, 2006. As this Court requested at that conference, the FDIC Receiver's counsel sent the Noteholders' counsel notice by overnight courier that the suit had been filed and a copy of the papers filed with that Court.

On November 21, 2006, BONY stipulated that this Court had jurisdiction over the funds in question. BONY signed a stipulation filed with the court that funds in BONY's "possession, custody, or control . . . will not be transferred or distributed in any way (other than payment of the fees and expenses of The First National Bank of Omaha as Servicer) pending an order from this Court regarding the distribution or transfer of such funds." (Ex. 22)

**The New York Case**

On November 16, 2006, Vedder Price suggested in an email to BONY's counsel that BONY "bring a [sic] interpleader action in New York—and only in New York." (BONY Opening Br. at 9.) On November 16, 2006 (at approximately 10:35 p.m.), BONY's counsel emailed the FDIC Receiver's counsel a "courtesy copy" of the interpleader complaint filed electronically by BONY in *Bank of New York v. First Millennium, Inc.*, No. 650234/2006 (N.Y. Sup. Ct.). (Ex. 23.) BONY sought relief including that the FDIC Receiver and the Noteholders "be restrained by injunction from commencing or prosecuting any action or proceeding against" BONY "in relation to the Collateral" and that BONY's "costs and disbursements, including legal fees and expenses, be paid out of the Collateral." (*Id*. at 4.) BONY also sought to redefine the technical term "Collateral" to include the Transferor Interest that BONY seized. (*Id*. ¶ 9.)

On November 21, 2006, the Millennium Noteholders moved for summary judgment in New York state court. The Noteholders made no mention this action or the related action, *Bank of New York v. FDIC*, No. 03-1221, in their voluminous papers. In fact, the Noteholders, in a sworn affidavit in support of their motion for summary judgment stated that they "know of no defense of any other party that would entitle such party superior rights to the Noteholders in the assets that are the subject to this interpleader." (Schockling Aff. ¶ 39 (Ex. 24.)) That affidavit was signed by Philip Schockling, who participated in the mediation in *Bank of New York v. FDIC*, No. 03-1221 and signed the settlement agreement. (Ex. 13.)

On November 21, 2006, the FDIC Receiver removed the New York state action to federal court. *Bank of New York v. First Millennium Partners, Inc.*, No. 06-13388 (S.D.N.Y.). (Ex. 25.) That case is now pending before the Honorable Charles S. Haight, Jr. of the United States District Court for the Southern District of New York. The FDIC Receiver's motion to stay that case is scheduled to be heard by Judge Haight on December 21, 2006. (Ex. 26)

In spite of having told this Court that it would not oppose the FDIC Receiver's request for a stay, BONY filed an opposition to the FDIC Receiver's motion for a stay on December 14, 2006. (Ex. 27.) BONY stated in that opposition brief that Noteholders First Millennium, Inc., Millennium Partners, L.P. and RMK Advantage Fund "directed BNY to hold certain Trust assets, including credit card receivables and proceeds thereof (the 'Collateral'), which required that BNY cease making payments of proceeds of the Collateral to the FDIC." (*Id*. at 3.) "BNY concluded that it was obligated by virtue of its fiduciary duties to the Directing Noteholders to heed their instructions with respect to the delivery of the notice of default and the taking control of the Collateral." (*Id*. at 3-4.)

In spite of BONY having assured this Court that it would not transfer or distribute the funds it seized "pending an order from this Court regarding the distribution or transfer of such funds," BONY stated that the New York court—not this Court—has jurisdiction over the funds and that this Court must merely distribute the funds as the New York court orders. According to BONY,

> in the Stipulation BNY did *not* concede that the DC Court has "jurisdiction over the funds in question." . . . Instead, at the suggestion of the DC Court, in order to avoid the need for the DC Court to hear arguments and rule on the application for a temporary restraining order, BNY agreed not to transfer or distribute funds associated with the Collateral pending further order from the DC Court. In entering into the DC Stipulation, BNY contemplated that (and still contemplates that), once [the New York] Court (which has had jurisdiction over the funds as a matter of law since the commencement of this interpleader case, and hence prior to the execution of the Stipulation) decided the dispute between the Directing Noteholders and FDIC, the DC Court would simply order that the funds be distributed in a manner that comported with [the New York] Court's ruling.

(*Id.* at 5-6 (emphasis in original).)

In spite of appealing to its "fiduciary duties" to act on behalf of the Noteholders, BONY asserted that it "cannot fairly be expected to litigate the Directing Noteholders' claims" and that because the Noteholders are not parties before this Court, "their claim to the Collateral proceeds thus cannot be heard by the DC Court." (Ex. 27 at 13.) Moreover, BONY claims that "a final judgment in the DC Court might not be binding upon the Directing Noteholders" (*Id.*)

## ARGUMENT

### I.
### BONY IS LIABLE FOR TAKING THE FDIC RECEIVER'S FUNDS

After this Court entered judgment against BONY in the lawsuit it brought on behalf of the Noteholders over three years ago, BONY and the Noteholders seized the Transferor Interest and claim rights to the Receivables on the very rationale that this Court rejected. BONY

and the Noteholders claim that the appointment of the FDIC Receiver on February 7, 2002

triggered an accelerated repayment of principal from the Trust to the Noteholders.  Among other

things, they are trying to use the money seized by BONY to cover overruns of attorneys' fees

incurred suing the FDIC Receiver.

This Court decided over two years ago that the Transferor Interest belongs to the

FDIC Receiver and that BONY and the Noteholders have no right to those funds.  BONY and

the Noteholders had a fair and full opportunity to litigate their claim.  On November 23, 2004,

the Court decided as a matter of law based on the contract documents under which BONY sued

that the Transferor Interest belongs to the FDIC Receiver.

The Noteholders, BONY, and the FDIC Receiver settled all other claims and

counterclaims except for BONY's claim that early amortization should have begun upon the

appointment of the FDIC Receiver (Count Six).  Among other things, the FDIC Receiver settled

BONY's claim for litigation expenses by agreeing to pay over $1.9 million.  BONY and the

Noteholders released all claims except for Count Six and they were dismissed with prejudice.

Because they settled the claim against the FDIC Receiver for attorneys' fees, BONY and the

Noteholders had to set up an expense account to fund the remaining litigation of Count Six.

In the litigation on Count Six, BONY asked this Court "to find that the FDIC

receiver unlawfully converted monies to which the Noteholders were entitled by operation of

Article V, § 5.01 of the Master Indenture, when the FDIC refused to honor the early amortization

provision of the Master Indenture upon being appointed as NextBank's receiver on February 7,

2002." 453 F. Supp. 2d at 91.  This Court declined to do so.  To the contrary, this Court held that

"there is no requirement that the FDIC honor an ipso facto clause providing for accelerated

payments upon the appointment of a receiver." *Id*. at 97.  In other words, NextBank's entry into

receivership was not a "Trust Redemption Event" under Section 5.01 of the Master Indenture

that was enforceable against the FDIC Receiver.  As a result, the FDIC Receiver was not

required to transfer to the Trust any funds other than those required during a revolving period.

*See id.* at 87.

BONY and the Noteholders are now claiming that the Trust owes the Noteholders

the principal that this Court ruled the FDIC Receiver did not owe to the Trust.  This Court held

that the FDIC Receiver was not obligated to accelerate repayment of principal to the Trust

because the FDIC Receiver's statutory powers rendered the contract provision unenforceable.

Because the Trust cannot pay what it does not have, the Noteholders instructed BONY to seize

the FDIC Receiver's funds.  BONY's actions violate this Court's orders, breach the settlement

agreement, convert the FDIC Receiver's funds, and should be enjoined.

**A.      BONY Violated This Court's Orders and Breached the Settlement
         Agreement**

On November 23, 2004, this Court ruled unequivocally that under the Master

Indenture the Transferor Interest was the property of the FDIC Receiver.  When BONY refused

to pay the Transferor Interest to the FDIC Receiver on November 15, 2006, BONY breached

both its obligations under the transaction documents and the settlement agreement among the

FDIC Receiver, the Noteholders, and BONY.  The elements of a claim for breach of contract

under New York law[7] are (1) an agreement between the plaintiff and defendant, (2) performance

by the plaintiff, (3) breach by the defendant and (4) damages resulting from the breach.  *See*

---

[7]     New York law governs the construction of the Master Indenture and Indenture Supplements.
        (*See* Ex. 3 § 12.13.)

*Furia v. Furia*, 498 N.Y.S.2d 12, 13 (N.Y. App. Div. 1986); *see also* 2 New York Pattern Jury Instructions—Civil § 4:1, at 594 (2d ed. 2006).

There is no dispute that the Court concluded the Transferor Interest is the FDIC Receiver's property under the Master Indenture. (Ex. 12 at 53.) There is no dispute that BONY, the Noteholders, and the FDIC Receiver entered into a binding settlement agreement. (Ex. 13.) There also is no dispute that the FDIC Receiver performed all of its obligations under the settlement agreement. BONY had been performing its obligations under the settlement agreement and the Master Indenture until it breached those agreements by seizing the Transferor Interest and refusing to pay it to the FDIC Receiver on November 15, 2006. BONY admits that it "cease[d] making payments of proceeds of the Collateral to the FDIC." (Ex. 27 at 3.) The FDIC Receiver is suffering damage from BONY's breach: By the time this case is scheduled for oral argument, BONY will have withheld approximately $12 million of the FDIC Receiver's funds. BONY's breach of the agreements is not in dispute.

Every day the FDIC Receiver incurs more damages. At the time the FDIC Receiver filed its Complaint, BONY was holding $3,626,534 of the FDIC Receiver's funds. By this time this brief was filed, that amount will have increased by approximately another $4 million. By the time this Court hears oral argument on the FDIC Receiver's motion, the amount will have increased about another $4 million. The FDIC Receiver asks that this Court award these amounts that are due and being held by BONY in violation of this Court's orders and the parties' settlement agreement. The FDIC Receiver also requests interest on the funds being held.

**B.     BONY Converted the FDIC Receiver's Funds**

BONY's conversion of the Transferor Interest cannot legitimately be disputed. "A conversion takes place when someone, intentionally and without authority, assumes or

exercises control over personal property belonging to someone else, interfering with that person's right of possession." *Colavito v. New York Organ Donor Network, Inc.*, ___ N.E.2d ___, 2006 WL 3625060 (N.Y. Dec. 14, 2006). "Two key elements of conversion are (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights." *Id.* (internal citations omitted); *see Republic of Haiti v. Duvalier*, 626 N.Y.S.2d 472, 475 (N.Y. App. Div. 1995).

There is no dispute that the FDIC Receiver owns and has a right to the Transferor Interest. Again, this Court decided that issue on November 23, 2004. There is no dispute that the Transferor Interest is in the unauthorized possession of BONY. BONY seized the money at the Noteholders' instructions in an attempt to recoup by taking what they failed to win in three years of litigation. Again, BONY admits that it "cease[d] making payments of proceeds" to the FDIC Receiver after "taking control" of those funds. (Ex. 27 at 3-4.) There is no dispute that BONY has acted to exclude the rights of the FDIC Receiver. BONY stipulated that it is holding the Transferor Interest until this Court orders otherwise. (Ex. 22.) BONY's conversion of the FDIC Receiver's funds is not in dispute.

By the time this Court hears oral argument on the FDIC Receiver's motion, BONY will have withheld approximately $12 million belonging to the FDIC Receiver. The FDIC Receiver asks that this Court award these amounts plus interest. Furthermore, the FDIC Receiver has incurred substantial attorneys' fees litigating these two actions. The FDIC Receiver asks that the Court award these fees and associated costs. *See* 28 U.S.C. § 1927 (2006).[8]

---

[8]   The New York action is a model of unreasonable and vexatious litigation in an attempt to obtain a ruling by another judge that is contrary to this Court's earlier decisions.

(Footnote continued on next page)

## C.    BONY Should Be Permanently Enjoined

BONY should be permanently enjoined from distributing the Transferor Interest to anyone but the FDIC Receiver and from distributing to Noteholders anything but the interest owed monthly, as drawn on the Spread Accounts, and the amounts in the Spread Account when the Noteholders turn in their Notes at termination of the transaction.  For entering a permanent injunction, courts consider "(1) success on the merits, (2) whether the plaintiffs will suffer irreparable injury absent an injunction, (3) whether, balancing the hardships, there is harm to defendants or other interested parties, and (4) whether the public interest favors granting the

---

(Footnote continued from previous page)

- BONY's counsel himself issued the FDIC's opinion that a secured creditor cannot use self help when there is a default "through an ipso facto provision in the contract" because "[t]he appointment of a receiver is not a default enforceable against the FDIC."  John L. Douglas, General Counsel, *Self-Help Liquidation of Collateral by Second Claimants in Insured Depository Institution Receiverships*, FDIC Interpretive Letter, No. FDIC-89-49, 1989 WL 609503 (Dec. 15, 1989); *see* 453 F. Supp. 2d at 97.

- BONY's counsel told the Noteholders that *NextBank I* barred BONY from following the Noteholders' instructions to seize the FDIC Receiver's funds. (*See* Ex. 16 at 1-2.)

- BONY's counsel has written why there is no jurisdiction before the New York court.  *See* John L. Douglas, et al., *The Management and Liquidation of Failed Financial Institutions Under the Financial Institutions Reform, Recovery and Enforcement Act of 1989*, Practicing Law Institute, 625 PLI/Comm 399, 409 (June 8-9, 1992) (copyright by Alston & Bird LLP).

- BONY's counsel stipulated that this Court would decide "the distribution or transfer" of the funds BONY seized (Ex. 22) and stated to this Court that BONY would not oppose a stay of the New York action.

Not only has BONY now opposed the stay, but BONY has told the New York court that it "has had jurisdiction over the funds as a matter of law since the commencement of this interpleader case, and hence prior to the execution of the Stipulation" and that this Court does not have jurisdiction over the funds.  (Ex. 27 at 5-6.)

injunction." *American Civil Liberties Union v. Mineta*, 319 F. Supp. 2d 69, 87 (D.D.C. 2004); *see Amoco Production Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987) ("The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success.").

The FDIC Receiver has already succeeded on the merits in *NextBank I* and has proved above that BONY breached the transaction documents and the settlement agreement and converted the FDIC Receiver's funds. The FDIC Receiver is suffering irreparable injury absent an injunction by having to relitigate what its already won. *See Broadcast Music, Inc. v. CBS Inc.*, 424 F. Supp. 799, 802 (S.D.N.Y. 1976) ("The waste inherent in the enormously expensive relitigation of matters which have been definitively determined constitutes irreparable injury in itself.") The FDIC Receiver also may not be able to recover any funds improperly distributed to the Noteholders. There is no harm to BONY or the Noteholders in the FDIC Receiver obtaining the funds that this Court has held rightfully belong to the FDIC Receiver. And the public interest favors granting the injunction to avoid interference with the FDIC Receiver's statutory duties as receiver for failed banks.

BONY should be ordered to distribute to the FDIC Receiver the Transferor Interest and should be enjoined from interfering with the FDIC Receiver's rights to the Receivables. Furthermore, BONY should be enjoined from distributing to the Noteholders anything but the funds from the Spread Accounts.

## II.
## BONY'S MOTION TO DIMISS SHOULD BE DENIED

BONY's claim that this case should be dismissed in favor of the New York litigation is flawed on multiple levels. First, the New York litigation is barred by both the

doctrines of claim preclusion and issue preclusion.  Second, no court has jurisdiction to hear

BONY's claims in the New York interpleader action as a matter of law.  Third, even if a court

did have jurisdiction, venue would be proper only before this Court or in the District of Arizona

as a matter of law.  Fourth, the Noteholders are not necessary or indispensable to this litigation

because BONY represents their interests.  Finally, the FDIC Receiver's motion for judgment is

timely and properly granted in favor of the FDIC Receiver for all the reasons set forth above.

## A.    The New York Litigation is Barred By Res Judicata

The New York litigation brought by BONY and the Noteholders is barred by the

doctrine of res judicata.  Res judicata prevents repetitious litigation involving the same causes of

action or the same issues.  The doctrine usually is parsed into claim preclusion and issue

preclusion.  Here, both doctrines bar BONY and the Noteholders from relitigating in New York.[9]

Under the claim preclusion doctrine, "[a] claim is precluded as a result of a

previous action if (1) the earlier judgment is final and on the merits; (2) the parties are the same

or in privity; and (3) the claims asserted by plaintiffs were relevant to the cause of action in the

---

[9]    BONY argues that this Court's own decision is not res judicata.  (BONY Supp. Br. at 22).
The argument is absurd.  *See United States v. Anderson*, No. 05-14848, 174 Fed. Appx. 509,
510, 2006 WL 858519, at *1 (11th Cir. Apr. 4, 2006) ("when the same motion was made in
the same court regarding a matter that was finally disposed of in a prior proceeding between
the same parties, dismissal based on the doctrine of claim preclusion was appropriate");
*Merkl v. Brynelson*, No. 94-3728, 1997 WL 767791, at *1 (7th Cir. Dec. 10, 1997) (the same
action before the "same court" involving the "same defendants" barred by res judicata);
*Adair v. United States*, No. 93-5334, 1994 WL 189128, at *1 (D.C. Cir. 1994) (per curiam);
*Gimenez v. City of Newark*, No. 06-0526, 2006 WL 3019685, at *1 (D.N.J. Oct. 24, 2006)
("res judicata bars parties from bringing the same law suit against the same parties in
different courts, and also as here, in the same court"); *Santiago Otero v. Quirindongo
Echevarria*, No. 05-1443, 2005 WL 2671048, at *2 (D.P.R. Oct. 19, 2005) ("all elements of
the *res judicata* doctrine have been met. A final judgment on the merits was issued by this
same Court in an earlier suit . . ."); *see also Gullo v. Veterans Cooperative Housing
Association*, 269 F.2d 517 (D.C. Cir.1959) (per curiam) (district court may take judicial
notice of prior proceeding in same court and apply res judicata ).

prior proceeding, whether or not those claims were raised at trial." *Century International Arms, Ltd. v. Federal State Unitary Enterprise State Corp. "Rosvoorouzheinie,"* 172 F. Supp. 2d 79, 95 (D.D.C. 2001); *see Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5 (1979); *NextWave Personal Communications Inc. v. FCC*, 254 F.3d 130, 143 (D.C. Cir. 2001).  Issue preclusion, also known as collateral estoppel, "prevents a party from relitigating an issue of fact or law when (1) the issue was actually litigated, and (2) determined by a valid, final judgment on the merits, (3) after a full and fair opportunity for litigation by parties or the privies, (4) under circumstances where the determination was essential to the judgment, not merely dictum." *Century International Arms*, 172 F. Supp. 2d at 97 n.20; *see Consolidated Edison Co. of New York v. Bodman*, 449 F.3d 1254, 1260 (D.C. Cir. 2006) ("because the Claimants had 'one fair and full opportunity to prove a claim and [have] failed in that effort,' they may not re-litigate the claim a second time"); *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992), *cert. denied*, 506 U.S. 1078 (1993).  Issue preclusion "'is intended to protect the parties from the burden of relitigating the same issue following a final judgment and to promote judicial economy by preventing needless litigation.'  Its objective is 'judicial finality.'" *Consolidated Edison*, 449 F.3d at 1258 (internal citations omitted); *see Hall v. Clinton*, 285 F.3d 74, 80-81 (D.C. Cir. 2002); *Yamaha Corp.*, 961 F.2d at 254; *Biton v. Palestinian Interim Self-Government Authority*, 412 F. Supp. 2d 1, 4-5 (D.D.C. 2005); *Bailey v. DiMario*, 925 F. Supp. 801, 810-11 (D.D.C. 1995).  BONY's interpleader action is barred by both doctrines.

BONY's interpleader action is based on the premise that the Noteholders have a claim for the Transferor Interest from the Trust because early amortization should have started when the FDIC Receiver was appointed in February 2002.  But this was the precise issue in *NextBank I.*  In *NextBank I*, the Court held that only the FDIC Receiver has rights to the

Transferor Interest and that "there is no requirement that the FDIC honor an ipso facto clause providing for accelerated payments upon the appointment of a receiver." 453 F. Supp. 2d at 97. The determination of these claims, accordingly, was essential to the Court's judgment. Although BONY suggests that the grounds upon which BONY has seized the FDIC Receiver's funds is separate from the claims made in *NextBank I*, their position is contradicted by the claims themselves. Moreover, even if this were a new claim (and it is not) BONY's arguments should have been advanced in *NextBank I* because BONY and the Noteholders seek a redetermination of entitlements and obligations that were necessarily decided as part of the original suit.

There is no question that BONY and the Noteholders had a full and fair opportunity to litigate these claims before this Court for over three years and that this Court's judgment in *NextBank I* is final and on the merits. Furthermore, there is no question that the parties before this Court and in New York are the same or in privity. *See, e.g., Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284 (9th Cir. 1992) (Chemical Bank was in privity with bondholders because it was authorized to litigate claims on behalf of the bondholders and acted as a representative of their interests). The relationship between a trustee and the bondholders it represents is a classic example of privity in American law. *See Kersh Lake Drainage Dist. v. Johnson*, 309 U.S. 485, 491 (1940) ("It has been held that bondholders are not necessary parties to and are bound by the decree-even if adverse to their interests-in litigation wherein an indenture trustee under a bond issue is a party and exercises in good faith and without neglect his contractual authority to represent and assert the lien securing the issue."); *Elwell v. Fosdick*, 134 U.S. 500, 512 (1890) ("The trustee represented the bond-holders, not only in the proceedings which resulted in the entry of the decree, so that the bondholders were not necessary parties, but he also bound them by his release of errors."); *Richter v. Jerome*, 123 U.S. 233, 246 (1887) ("If

the trustee acts in good faith, whatever binds it in any legal proceedings it begins and carries on to enforce the trust, to which they are not actual parties, binds them.  Whatever forecloses the trustee, in the absence of fraud or bad faith, forecloses them.  This is the undoubted rule.");

*Corcoran v. Chesapeake & Ohio Canal Co.*, 94 U. S. 741, 745 (1876) ("It would be a new and very dangerous doctrine in the equity practice to hold that the *cestui que trust* is not bound by the decree against his trustee in the very matter of the trust for which he was appointed.");

Restatement (Second) of Judgments § 41(1)(a) (2006) ("A person who is not a party to an action but who is represented by a party is bound by and entitled to the benefits of a judgment as though he were a party.  A person is represented by a party who is . . . [t]he trustee of an . . . interest of which the person is a beneficiary.")  Here, BONY is contractually obligated to act on behalf of the Noteholders in any litigation involving the Trust.  (Ex. 3, § 5.04(g).)  In *NextBank I*, BONY did just that.  BONY brought *NextBank I* in this Court on behalf of the Noteholders, and the Noteholders are bound by this Court's decisions as a result:  "a decision on the merits against the agent is res judicata against the principal if the prior action concerned a matter within the scope of the agency."  *Century International Arms*, 172 F. Supp. 2d at 96; *see Advantage Health Plan, Inc. v. Knight*, 139 F. Supp. 2d 108, 111 (D.D.C. 2001).

BONY and the Noteholders cannot relitigate these issues in New York on the pretense that the Trust now owes the Noteholders the funds.  BONY and the Noteholders are barred by res judicata no matter how the doctrine is parsed.

**B.      The Statute of Limitations Has Run on the Interpleader Action**

No court has jurisdiction to consider the merits of BONY's interpleader action against the FDIC Receiver as any such action is barred under 12 U.S.C. § 1821(d)(13)(D) (2006).  There is no dispute that the interpleader action that BONY filed in New York is a proceeding in which BONY seeks a determination of rights with respect to the assets of a

depository institution, namely NextBank, based on actions by the FDIC Receiver. In cases involving such determinations, Congress has expressly limited the jurisdiction of the federal courts to judicial review of the FDIC Receiver's determination of claims, the statute of limitations on which ran over three years ago. § 1821(d)(6)(B) (2006). Any lawsuit must be filed "[b]efore the end of the 60-day period" beginning with "the date of any notice of disallowance" of a claim. § 1821(d)(6)(A). If a claimant fails to file suit before this statute of limitations runs, "the claim shall be deemed to be disallowed . . ., such disallowance shall be final, and the claimant shall have not further rights or remedies with respect to such claim. § 1821(d)(6)(B). Unless a claim has gone through the claims procedure, "no court shall have jurisdiction over" (i) "<u>any action seeking a determination of rights with respect to</u>" the assets of a failed bank for which the FDIC has been appointed receiver or (ii) "any claim relating to <u>any act or omission of . . . the [FDIC] as receiver</u>." § 1821(d)(13)(D)(i) (emphasis added).

       In the New York action, BONY is suing the FDIC Receiver in its capacity as "receiver for . . . NextBank, N.A." (Ex. 11 ¶ 7) and is seeking determination of the FDIC Receiver's rights to funds as a result of the FDIC Receiver's actions in February 2002. The period for such claims ended on October 8, 2002, as BONY recognized when it filed claims. [cite] BONY subsequently filed suit on behalf of the Noteholders in one of the only two federal courts it could, as BONY recognized in its Complaint. BONY's assertions now that "the only court with jurisdiction" is the New York court (BONY Opening Br. at 2), that the Noteholders "may direct the time, method and place of conducting any legal proceeding" (*id.* at 3), and that

"[t]he time and place of such an action . . . is governed solely by the Master Indenture" (*id.* at 10) are false and contrary to law.[10]

## C.    Venue Is Proper Before This Court

BONY contends that this proceeding should be dismissed in favor of the proceeding in New York because venue is not proper in this Court. BONY's argument fails both because venue is proper here and because venue over BONY's interpleader action is improper in New York.

As set forth in the FDIC Receiver's Complaint, venue in the United States District Court for the District of Columbia is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claim occurred in this judicial district. The key events giving rise to this action, contrary to BONY's assertion, are the proceedings in *NextBank I* that BONY itself initiated in this Court, the mediation, and the settlement agreement. Accordingly, venue is proper in this Court.

In contrast, the New York Court is an improper venue for BONY's interpleader action, which, even if it could be brought, could only have been filed in a federal court in either the District of Columbia or where NextBank, N.A. had its principal place of business (Arizona). *See* 12 U.S.C. § 1821(d)(6)(A). BONY is fully aware of this because it relied on this statute in its original Complaint. (Ex. 11 ¶¶ 2, 3, 41.) Moreover, BONY's attorneys agree that jurisdiction is so limited:

---

[10]    While BONY asserted in its opening brief that the New York state court has exclusive jurisdiction over the *res* in question, this argument is now moot. On November 21, 2006, BONY stipulated that this Court had jurisdiction over the funds and that nothing shall happen to them unless and until this Court rules on their disposition. (Ex. 22.)

> Claims against the FDIC as receiver must be submitted to the
> FDIC under the claims resolution process . . . . If the claim is
> disallowed, and the claimant desires judicial review of the
> determination, then an action must be filed either in the U.S.
> District Court where the financial institution's principal place of
> business is located or in the District Court for the District of
> Columbia. FDI Act, § 11(d)(6).

John L. Douglas, et al., *The Management and Liquidation of Failed Financial Institutions Under the Financial Institutions Reform, Recovery and Enforcement Act of 1989*, Practicing Law Institute, 625 PLI/Comm 399, 409 (June 8-9, 1992) (copyright by Alston & Bird LLP).  BONY's assertion that venue is proper in New York is false and contrary to law.

**D.     The First-Filed Action Was Before This Court**

BONY contends that this Court should dismiss this action because its interpleader action was filed less than one day before this action.  This position fails on several grounds.  First and foremost, BONY's contention suggests that this Court ignore that the "first-filed" case on these issues was filed by BONY itself in this Court in June 2003, *Bank of New York v. FDIC*, 03-1221-ESH (D.D.C.), and that BONY continues to litigate that case on appeal.

Even if the question were between the case BONY filed in New York in the middle of the night on November 16 and the case the FDIC Receiver filed in this Court on the afternoon of November 17, the "first-filed" rule is not subject to "mechanical application" and "should be ignored under some circumstances."  *Columbia Plaza Corp. v. Security National Bank*, 525 F.2d 620, 627 (D.C. Cir. 1975); *see Federation Internationale De Football Association v. Nike, Inc.*, 285 F. Supp. 2d 64, 67-68 (D.D.C. 2003); *Thayer/Patricof Education Funding, L.L.C. v. Pryor Resources, Inc.*, 196 F. Supp. 2d 21, 29-30 (D.D.C. 2002).  Such circumstances include where extensive proceedings have taken place in this jurisdiction, *see Columbia Plaza*, 525 F.2d at 628; where two suits were filed closely together in time and neither has progressed very far, *see Federation Internationale*, 285 F. Supp. 2d at 68; and where the first

suit is a preemptive strike to establish a preferred jurisdiction, *see Thayer/Patricof*, 196 F. Supp.

2d at 30.  Indeed, even BONY's cases support dismissing the New York action in favor of this

Court's proceedings.  *See, e.g., United Transp. Union v. Nat'l Mediation Bd.*, No. 93-0428, 1993

WL 764220, at *2 (D.D.C. June 8, 1993) (dismissing "an attempt to launch a collateral attack on

the pending Texas litigation" that was on appeal).

**E.    The Noteholders Are Not Necessary Parties**

BONY further argued that this Court must dismiss this proceeding because the

Noteholders are necessary parties who cannot be joined.  BONY's argument fails because the

Noteholders are not "necessary" to this action.

BONY asserts that under Rule 19 of the Federal Rules of Civil Procedure, the

Noteholders are necessary parties because the interests of the Noteholders are not protected.[11]

Nothing could be farther from the truth.  It is well-settled law that "bondholders are not

necessary parties to . . . litigation wherein an indenture trustee under a bond issue is a party and

exercises in good faith and without neglect his contractual authority to represent and assert the

lien securing the issue."  *Kersh Lake Drainage*, 309 U.S. at 491.  *See also Elwell v. Fosdick*, 134

U.S. at 512 ("The trustee represented the bond-holders . . ., so that the bondholders were not

necessary parties . . . ."); *Richter v. Jerome*, 123 U.S. at 246-47; *Ramah Navajo School Board,
Inc. v. Babbitt*, 87 F.3d 1338, 1351 (D.C. Cir. 1996) (non-party Native American tribes were not

---

[11]   BONY also argues that the Noteholders are necessary parties because BONY will be subject
to potentially conflicting obligations if the New York court were to rule in a manner contrary
to this Court.  This potential conflict is one of BONY's own making by filing in New York,
the only purpose of which was to avoid the clear order of this Court.  If BONY wishes to
avoid the potential conflict, it is free to seek dismissal from the New York court.  Moreover,
because the FDIC Receiver has requested the New York court to stay proceedings there, it is
unlikely that such a conflict will arise.

necessary parties because the federal government adequately represented their interests);

*American Express Travel Related Services, Co. v. Bank One-Dearborn, N.A.*, No. 05-1900, 2006

WL 2457067, at *3 (6th Cir. Aug. 24, 2006) (a non-party was not necessary to the litigation

because its interests were adequately represented by an existing party); *Class Plaintiffs*, 955 F.2d

at 1284.

    As "Indenture Trustee of the NextCard Credit Card Master Note Trust," BONY

has a contractual fiduciary obligation to represent the Noteholders.  (Ex. 3 § 5.04.)  The

Noteholders and BONY agreed in the Master Indenture—a contract that NextBank also entered

into—that the Noteholders could not sue in their own name, absent circumstances that are not

present here, and that BONY would represent them in any litigation.  Indeed, permitting the

Noteholders to litigate in their own name would violate the terms of the Master Indenture.

BONY has represented the Noteholders in over three years of litigation before this Court.  The

Noteholders were never absent in that litigation and are not absent in this litigation.  BONY's

claim that "no party to this action adequately represents [the Noteholders'] interests" (BONY

Supp. Br. at 15) is patently false—BONY represents the Noteholders' interests.

## F. Judgment Should Be Granted for the FDIC Receiver

    The FDIC Receiver's motion for judgment is proper.  This Court has consolidated

the preliminary injunction hearing and the merits trial pursuant to Rule 65(a)(2) of the Federal

Rule of Civil Procedure, and the FDIC Receiver is herein submitting the documentary evidence

for findings of fact, conclusions of law, and entry of a final judgment pursuant to Rule 52(a).  A

motion for summary judgment would without question be timely.  *See* Fed. R. Civ. P. 56(a) ("A

party seeking to recover upon a claim . . . may, at any time after the expiration of 20 days from

the commencement of the action . . . move . . . for a summary judgment in the party's favor upon

all or any part thereof.").  This Court has already "allow[ed] the Noteholders and the FDIC to

develop the issues in this dispute fully and fairly before considering the merits in this action."

(BONY Supp. Br. at 24.)  In light of the claims already determined before this Court, the FDIC

Receiver's motion should be granted.

## CONCLUSION

For the foregoing reasons, BONY's motion to dismiss should be denied and

judgment should be entered in favor of the FDIC Receiver and against BONY.

Dated:  December 15, 2006                     Respectfully submitted,

                                              _____
Of Counsel:                                   Dennis S. Klein, D.C. Bar No. 361457
                                              Scott H. Christensen, D.C. Bar No. 476439
Tom M. Reeves (KS Sup. Ct. No. 7259)          HUGHES HUBBARD & REED LLP
    Counsel                                   1775 I Street, N.W.
Federal Deposit Insurance Corporation         Washington, D.C. 20006-2401
550 17th Street, N.W., Room VS-D-7068         Telephone:  (202) 721-4600
Washington, D.C. 20429                        Facsimile:  (202) 721-4646
Telephone:  (703) 562-2433
Facsimile:  (703) 562-2475
E-mail:  TReeves@FDIC.gov

                                              Attorneys for Plaintiff Federal Deposit
                                              Insurance Corporation, in its Capacity as
                                              Receiver for NextBank, N.A.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on December 15, 2006, true and accurate

copies of foregoing Memorandum of Points and Authorities were served by mail upon:


John L. Douglas
H. Stephen Harris, Jr.
Alston & Bird LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309-3424


Paul F. Brinkman
Alston & Bird LLP
601 Pennsylvania Avenue, N.W.
North Building, 10th Floor
Washington, D.C.  20004-2601



Scott H. Christensen

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FEDERAL DEPOSIT INSURANCE
CORPORATION, in its Capacity as
Receiver for NextBank, N.A.,

                        Plaintiff,

            v.

THE BANK OF NEW YORK, as Indenture
Trustee of the NextCard Credit Card Master
Note Trust,

                        Defendant.

Case No. 06-CV-1975-ESH

Hon. Ellen Segal Huvelle

**STATEMENT OF MATERIAL FACTS IN SUPPORT OF
<u>THE FDIC RECEIVER'S MOTION FOR JUDGMENT</u>**

Of Counsel:

Tom M. Reeves (KS Sup. Ct. No. 7259)
  Counsel
Federal Deposit Insurance Corporation
550 17th Street, N.W., Room VS-D-7068
Washington, D.C. 20429
Telephone:  (703) 562-2433
Facsimile:  (703) 562-2475
E-mail:  TReeves@FDIC.gov

Dennis S. Klein, D.C. Bar No. 361457
Scott H. Christensen, D.C. Bar No. 476439
HUGHES HUBBARD & REED LLP
1775 I Street, N.W.
Washington, D.C. 20006-2401
Telephone:  (202) 721-4600
Facsimile:  (202) 721-4646

Attorneys for Plaintiff Federal Deposit
Insurance Corporation, in its Capacity as
Receiver for NextBank, N.A.

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

The Transaction ...................................................................................................1

    NextBank's Credit Card Business ...............................................................1

    The Notes and Noteholders.........................................................................1

    BONY Represents the Noteholders .............................................................2

    The Transferor Interest and the Collateral .................................................3

    The Transaction Documents .......................................................................4

    The Offering Memoranda ............................................................................5

    The Opinion Letters ....................................................................................5

The Receivership ...................................................................................................6

    The FDIC Is Appointed Receiver ................................................................6

    Early Amortization Occurs in July 2002 ....................................................8

    The Claims Process.....................................................................................9

The BONY Sues the FDIC Receiver on Behalf of the Noteholders...................11

    The November 23, 2004 Decision on Count Two ......................................13

    The July 27, 2005 Settlement Agreement.................................................13

    BONY and the Noteholders Agree On Litigating Count Six ......................15

    The September 27, 2006 Order and Judgment on Count Six .....................15

BONY Colludes to Seize the FDIC Receiver's Funds ......................................16

    The November 9, 2006 Instructions...........................................................16

    The November 10, 2006 BONY Letter.......................................................17

    The November 13, 2006 Opinion Letter....................................................17

    BONY Follows The Noteholders' Instructions .........................................19

The Case Before This Court ................................................................................20

DC 562165_1.DOC

## <u>TABLE OF AUTHORITIES</u>
(continued)

<u>Page(s)</u>

The New York Case.................................................................................................21

The Funds Seized...................................................................................................24

## STATEMENT OF FACTS[1]

**The Transaction**

### NextBank's Credit Card Business

1.      NextBank, N.A. ("NextBank") was a national banking association having

as its sole business the issuance of consumer credit cards, primarily through the internet.  *See* 453

F. Supp. 2d at 85.

2.      NextBank financed the credit card business by securitizing the monthly

payments due from the credit card holders, selling several series of Notes to investors, and using

the proceeds from the sale of Notes to fund payments to merchants for charges by credit card

holders.  *See* 453 F. Supp. 2d at 85.  The portion of the payments allocated to NextBank itself

was known as the Transferor Interest.  (*See* Ex. 1 at FDIC00391, FDIC00414, FDIC00472; Ex. 2

at FIDC00872, FDIC00893, FDIC00950; *see* Ex. 3 at FDIC00140-41 ("Granting Clauses").)[2]

### The Notes and Noteholders

3.      The Noteholders purchased particular series of Notes and particular

classes of Notes within each series.[3]  *See* 453 F. Supp. 2d at 89.  The different classes of Notes

represent degrees of risk that the Notes would not be repaid.  *See id*.  The Notes were repaid in

order of priority, with the Class A Noteholders being paid first, then the Class B Noteholders,

then the Class C Noteholders, and then the Class D Noteholders.  *See id*.  In exchange for the risk

of being paid principal after everyone else, and thus the risk of not being paid at all if there were

---

[1]     These facts also are set forth in the FDIC Receiver's separate Statement of Material Facts
    submitted pursuant to Local Rule 7.1.

[2]     References to "Ex. ___" are to exhibits attached to the Declaration of Scott H. Christensen in
    Support of Defendant's Motion for Judgment filed December 15, 2006.

[3]     The Noteholders instructing BONY in this case are Millennium Partners, L.P., First
    Millennium, Inc., and RMK Advantage Income Fund.

insufficient funds, the Class D Notes earned interest at a significantly higher rate than the Class A Notes. *See id.* All series have been paid in full and suffered no loss except for two series: the Series 2000-1 Notes and the Series 2001-1 Notes. *See id.* at 91. All classes of notes within these two series have been paid in full and suffered no loss except for the two riskiest classes, Classes C and D. *See id.*

### BONY Represents the Noteholders

4.      BONY is the "indenture trustee for the interests of investors who purchased asset-backed securities from a trust established by the now-defunct NextBank, N.A." 453 F. Supp. 2d at 84; *see id.* at 86 (BONY "represents the interests of the Noteholders"); *see id.* at 89 (BONY "now represents purchased notes from 'Series 2000-1' and 'Series 2001-1'").

5.      BONY and the Noteholders agreed in the Master Indenture that (1) BONY would represent the Noteholders in any legal action, (2) the Noteholders need not be parties to any such action, and (3) the Noteholders could not file any action related to the Notes unless they satisfied very specific requirements that are not satisfied here.

6.      Under the Master Indenture,

(f)      <u>All rights of action and of asserting claims under this Indenture, or under any of the Notes, may be enforced by the Indenture Trustee</u> without the possession of any of the Notes or the production thereof in any trial or other Proceedings relative thereto, and any such action or Proceedings instituted by the Indenture Trustee <u>shall be brought in its own name as trustee</u> of an express trust, and any recovery of judgment, subject to the payment of the expenses, disbursements and compensation of the Indenture Trustee, each predecessor Indenture Trustee and their respective agents and attorneys, <u>shall be for the benefit of the Holders of the Notes</u> of the affected Series as provided herein.

(g)      In any Proceedings brought by the Indenture Trustee (and also any Proceedings involving the interpretation of any provision of this Indenture to which the Indenture Trustee shall be a party), <u>the Indenture Trustee shall be held to represent all the Holders of</u>

<u>the Notes of the affected Series, and it shall not be necessary to
make any such Noteholder a party to any such Proceedings.</u>

(Ex. 3, § 5.04, at FDIC00176 (emphasis added).)

7.     BONY and the Noteholders further agreed that "[n]o Noteholder shall
have any right to institute any Proceedings, judicial or otherwise, with respect to this Indenture,
. . . or for any other remedy hereunder" unless BONY has failed to file the legal action requested
by the Noteholders "for sixty (60) days after its receipt of such request," among other
requirements.  (*Id*. § 5.07, at FDIC00178-79.)  None of the requirements that would allow the
Noteholders to sue is satisfied here.

**The Transferor Interest and the Collateral**

8.     The Transaction Documents divide the Trust assets into two categories:
the Transferor Interest, which is owned by NextBank, and the Collateral, to which the
Noteholders were given a contractual right.

9.     The Transferor Interest was NextBank's ownership interest in the Trust; it
is "[t]he interest in the assets not allocated to any series of notes."  (Ex. 1 at FDIC00391; Ex. 2 at
FDIC00872; *see* Ex. 1 at FDIC00472; Ex. 2 at FDIC00950.)

10.     The funds to which BONY and the Noteholders have a contractual right is
defined as the "Collateral," which "<u>exclud[es] the Transferor Interest</u> and all amounts
distributable to the Holders of any Certificates pursuant to the terms of any Transaction
Document."  (Ex. 3 at FDIC00141 (emphasis added).)  Any obligation "to make payments of
principal of, and interest on and other amounts with respect to, the Notes is <u>limited by recourse
only to the Collateral</u>."  (*Id*. (emphasis added).)  The Collateral alone secures the obligation of
the Trust to pay the Noteholders.  (*See id.* § 8.02, at FDIC00189.)

11.     Pursuant to the Trust Agreement, NextBank received a Transferor Certificate, which certified that NextBank was the "registered owner of an undivided beneficial interest in the assets of [the Trust], subject to the lien of the Notes as provided in the Master Indenture."  (Ex. 4 at B-1.)  The "lien of the Notes" on "undivided beneficial interest" in the Trust, refers to the Collateral as provided in the Master Indenture.

**The Transaction Documents**

12.     The structure of NextBank's financing was accomplished through an integrated set of "Transaction Documents":  including the Trust Agreement, the Master Indenture and Indenture Supplements, and the Administration Agreement.  *See* 453 F. Supp. 2d at 86-87.

13.     In the **Trust Agreement**, NextBank created the NextCard Credit Card Master Note Trust (the "Trust") to hold the credit card receivables and to pay the Noteholders interest and ultimately principal on the Notes.  *See* 453 F. Supp. 2d at 87.  NextBank was the "Owner" of the Trust, and as such, held an "undivided beneficial interest in the Trust Assets" including the credit card receivables.  *See id*.  The Trust was a shell entity with no employees or infrastructure of any kind and was entirely dependent on NextBank and its personnel to carry out its operations.  *See id.*

14.     Following the creation of the Trust, NextBank, BONY, and the Trust entered into the **Master Indenture**, in which the Trust authorized the issuance and sale of Notes secured by and paid from the credit card receivables transferred to the Trust.  *See id.*  Additional terms specific to particular series of Notes, were set forth in series-specific **Indenture Supplements**.  *See id.*

15.     The Master Indenture contained an *ipso facto* automatic acceleration clause that is triggered by a "redemption event," a term that includes the appointment of the

4

FDIC as Receiver.  *See* 453 F. Supp. 2d at 87.  Section 5.01 of the Master Indenture provides

that, upon the FDIC's appointment as Receiver, an early amortization period would begin, which

would require an automatic accelerated repayment of principal on the Notes.  *See id*.

      16.     Under the **Administration Agreement**, NextBank was responsible for

carrying out the Trust's duties under the other Transaction Documents.  *See id*.

### The Offering Memoranda

      17.     The Notes were offered for sale to the Noteholders through an Offering

Memorandum and Offering Memorandum Supplements for each series.  *See* 453 F. Supp. 2d at

88.  The "risk factors" listed in the Offering Memoranda explicitly warned potential Noteholders

that the FDIC could exercise its statutory powers to block early amortization.  *See id*  Thus, the

Offering Memoranda stated that "the FDIC may have <u>the power . . . to prevent</u> or require <u>the</u>

<u>commencement of an early amortization period</u>."  *Id*.  They also warned that "if the FDIC were

appointed as a receiver or conservator of the bank, certain administrative expenses of the

receiver or conservator may have priority over the interest of the trust in the receivables."  *Id*.

### The Opinion Letters

      18.     The Noteholders and BONY required opinion letters from NextBank's

counsel as to whether BONY's interest in receivables could be enforced against NextBank

should the FDIC be appointed as receiver for NextBank.  *See* 453 F. Supp. 2d at 88-89.

      19.     The opinions are based on the assumption that the Noteholders and BONY

would not attempt to foreclose on receivables based solely on insolvency or the appointment of a

receiver, *see id*. at 89, noting an opinion letter from the FDIC that declares unenforceable a

default caused *ipso facto* by the appointment of a receiver.  That FDIC opinion letter was issued

by John L. Douglas, BONY's counsel in this litigation.  According to the FDIC opinion letter:

> a secured creditor of an insured depository institution for which a
> receiver had been appointed could liquidate the creditor's properly
> pledged collateral by commercially reasonable "self-help"
> methods, provided that no involvement of the receiver was
> required <u>and that there was a default other than through an ipso
> facto provision in the contract</u>.  <u>The appointment of a receiver is
> not a default enforceable against the FDIC or the RTC under any
> contract except as specifically provided for in FIRREA</u>.

John L. Douglas, General Counsel, *Self-Help Liquidation of Collateral by Second Claimants in*

*Insured Depository Institution Receiverships*, FDIC Interpretive Letter, No. FDIC-89-49, 1989

WL 609503 (Dec. 15, 1989) (emphasis added).  *See* 453 F. Supp. 2d at 97.

**The Receivership**

**The FDIC Is Appointed Receiver**

       20.     On February 7, 2002, the Office of the Comptroller of the Currency

appointed the FDIC as Receiver for NextBank.  *See* Office of the Comptroller of the Currency,

"OCC Closes NextBank and Appoints FDIC Receiver," (Feb. 7, 2002) (available at

http://www.occ.treas.gov/ftp/release/2002-09.txt).

       21.     On February 8, 2002, the FDIC Receiver advised BONY that the FDIC

Receiver would enforce all terms of the Master Indenture except the automatic acceleration

provision, the *ipso facto* clause, and the credit card business would proceed just as it had before

NextBank's insolvency.  *See* 453 F. Supp. 2d at 89-90.  BONY did not object.

       22.     On February 12, 2002, the FDIC Receiver informed BONY in writing that

it would maintain the *status quo* and continue to enforce the Transaction Documents to keep the

credit card business functioning, declaring the *ipso facto* automatic acceleration clause

unenforceable under 12 U.S.C. § 1821(e)(12)(A).  *See* 453 F. Supp. 2d at 90.  The FDIC

Receiver explained that Section 1821(e)(12)(A) "provides that the FDIC as receiver with the

authority to enforce contracts entered into by a depository institution, even if such a contract

permits termination, acceleration or default solely by reason of insolvency or the appointment of

a receiver." (Ex. 5 at FDIC01187-88.) Because the automatic acceleration provision in the

Master Indenture is triggered "solely by reason of insolvency or the appointment of a receiver,"

it is "in direct contravention" of the applicable banking law. (*Id.* at FDIC01188.) Again, BONY

did not object.

23.    Instead, BONY wrote to the Noteholders on February 14, 2002 advising

them that the FDIC Receiver had stated that the *ipso facto* automatic acceleration provision was

unenforceable against the FDIC Receiver, as the Noteholders had been warned could happen

when they purchased the Notes:

> as disclosed in the Offering Memorandum Supplemental to the
> Offering Memorandum dated December 6, 2000, the FDIC may
> have the power to prevent the triggering of automatic default or
> acceleration provisions, such as the Early Amortization Period,
> regardless of the terms of the Transfer and Servicing Agreement,
> the Indenture, or the instructions of those authorized to direct the
> Indenture Trustee's actions. The Indenture Trustee is currently
> engaged in discussions with the FDIC and has been informed that,
> pursuant to the terms of the Financial Institutions Reform
> Recovery and Enforcement Act ("FIRREA"), the FDIC is
> exercising its power to prevent the triggering of automatic default
> or acceleration provisions, including those that relate to the
> commencement of an Early Amortization Period or the occurrence
> of an insolvency Event or a Servicer Default. Specifically, the
> section of FIRREA cited by the FDIC provides that the receiver
> may enforce any contract entered into by the depository institution
> "notwithstanding any provision of the contract providing for
> termination, default, acceleration, or exercise of rights upon, or
> solely by reason of, insolvency or the appointment of a conservator
> or receiver." 12 U.S.C. § 1821(e)(12)(A). Accordingly, the FDIC
> has taken the position that no Early Amortization Period may
> commence and no Insolvency Event or Servicer Default would
> occur.

(Ex. 6 at FDIC01190-91(emphasis added); *see* Ex. 7 at FDIC01192-93.); *see* 453 F. Supp. 2d at

90.

24.     Also on February 14, 2002, the FDIC General Counsel issued a statement to assure the market that the FDIC Receiver's exercise of power was focused on the automatic acceleration provision triggered only by the appointment of the FDIC as receiver:

> The FDIC, as receiver for NextBank, N.A., has advised the Bank of New York, as Trustee for the NextCard Credit Card Master Trust, that an automatic event, default, acceleration or early amortization based solely on insolvency or appointment of the FDIC as receiver is not enforceable against the FDIC.

453 F. Supp. 2d at 90.

25.     At the February 15, 2002 FDIC Board meeting, the Board noted that the FDIC Receiver had informed BONY "that the [FDIC Receiver] had the authority through the Financial Institutions Reform, Recovery and Enforcement Act of 1989 to avoid or declare unenforceable the early amortization trigger, which the Trustee does not appear to challenge." *See* 453 F. Supp. 2d at 90.

**Early Amortization Occurs in July 2002**

26.     The FDIC Receiver kept NextBank's credit card business running for several months, but the financial performance of the credit card portfolio continued to decline. On July 10, 2002, the FDIC Receiver notified BONY that the credit card portfolio failed to meet a financial performance threshold, which triggered early amortization based on portfolio performance, a trigger separate from and unrelated to the *ipso facto* clause. The FDIC Receiver then exercised another of its statutory powers—the power to repudiate contacts that are burdensome to the orderly administration of the failed bank's affairs, 12 U.S.C. § 1821(e)(1)— and formally repudiated the Master Indenture, Indenture Supplements, and related documents. (Ex. 8.)

27.     All Noteholders continued to be paid monthly interest as card holders paid down their credit card balances. The Class A and Class B Noteholders were fully repaid all

principal and interest, the Class C Noteholders were repaid approximately half of their principal,

and the Class C and D Noteholders continue to receive all interest.  *See* 453 F. Supp. 2d at 91.

**The Claims Process**

28.     On July 10, 2002, as a result of early amortization, the FDIC Receiver also

advised BONY that it was repudiating some of the transaction contracts and that BONY might

wish to file a claim as a result.

> You may determine that the Receiver's decision to disaffirm your
> contracts gives you a claim against the receivership estate.  If so,
> you must file the enclosed proof of claim form with the Receiver in
> accordance with the instructions contained in the enclosed "Notice
> of Creditor Claim" letter.  Please file any claims no later than
> ninety (90) days from July 10, 2002.

(Ex. 8.)  *See* 12 U.S.C.§ 1821(d)(3)(B).

29.     On October 8, 2002, BONY filed claims on behalf of the Noteholders

seeking recovery of funds from the FDIC Receiver as a result of actions taken in the

receivership:  "This Proof of Claim is filed pursuant to a notice sent by the FDIC to the Indenture

Trustee that all claims must be filed by the October 8, 2002 bar date."  (Ex. 9 at 5.)  Among other

claims, BONY asserted that (1) the FDIC Receiver had no right to the "Transferor Interest," as

defined in the transaction documents; (2) the FDIC Receiver owed BONY all of its attorneys'

fees; and (3) the FDIC Receiver improperly prevented early amortization.

30.     The claim related to early amortization was filed by BONY on behalf of

Noteholder CSFB.  According to that claim:

> The Indenture Trustee files this proof of claim in
> connection with the FDIC's failure to begin an amortization period
> upon its appointment as receiver of NextBank. As a direct result,
> the Trust has been injured in an amount not less than
> $245,154,649, plus interest.  * * *

> Under Section 5.01(a) of the Indenture, the appointment of
> the FDIC as receiver for NextBank constituted a Trust Redemption

Event.  Section 5.01 of the Indenture provides that, upon the occurrence of a Trust Redemption Event, an Amortization Period shall commence, and payment on the Notes shall thereafter be made in accordance with the terms of the Indenture Supplements. However, the FDIC delayed the commencement of an Amortization Period until at least July 2002.  As a result, the FDIC used collections received on the Trust Receivables to purchase additional Trust Receivables instead of applying these collections to pay down the outstanding principal of the Notes.  In addition, this failure to amortize has resulted in a greater allocation of losses to the Notes than would have otherwise occurred under the terms of the Indenture.  * * *

As a result, the FDIC owes the Trust at least $245,154,649, plus interest, in connection with this claim.

(Ex. 9 at 1, 4, 5.)

31.     On April 11, 2003, the FDIC Receiver denied most of the claims.  First, as to the Transferor Interest, the FDIC Receiver concluded that BONY "failed to provide proof satisfactory to the Receiver that the Receiver was not entitled to retain the claimed amounts." (Ex. 10 at 1.)  Second, the FDIC Receiver allowed over $100,000 in BONY's attorneys' fees but disallowed those after the FDIC Receiver no longer operated as servicer.  (*See id*. at 2.)  Third, as to BONY's claim that the FDIC Receiver failed to begin early amortization upon its appointment, the FDIC Receiver concluded that "BONY has failed to provide proof satisfactory to the Receiver with respect to either the substantive basis for the claim or the claimed amount of damages incurred."  (*Id*. at 3.)

32.     The FDIC Receiver explained the effect of its disallowance on the claims process:

Pursuant to 12 U.S.C. § 1821(d)(6), if BONY does not agree with any disallowance, BONY has the right to filed suit on its claim . . . in the United States District (or Territorial) Court for the District within which the failed institution's principal place of business was located or the United States District Court for the District of Columbia, within sixty (60) days from the date of this notice.

THE FAILURE TO FILE SUIT . . . BEFORE THE END OF THE
SIXTY (60) DAY PERIOD WILL RESULT IN THE CLAIM
BEING FOREVER BARRED AND YOU WILL HAVE NO
FURTHER RIGHTS OR REMEDIES WITH RESPECT TO
YOUR CLAIM.

(Ex. 10 at 2-3 (emphasis added).)  *See* 12 U.S.C. § 1821(d)(6)(A) & (B).

**The BONY Sues the FDIC Receiver on Behalf of the Noteholders**

33.    BONY, on behalf of all Noteholders, filed the first lawsuit in this matter

on June 5, 2003 in this Court.  *Bank of New York v. FDIC*, No. 03-1221-ESH (D.D.C.)

("*NextBank I*").[4]  BONY filed in the United States District Court for the District of Columbia,

because it was one of only two federal courts that could entertain a case against the FDIC

Receiver under 12 U.S.C. § 1821(d)(6),[5] which BONY cited as the basis for the jurisdiction in its

Complaint (Ex. 11 ¶¶ 2, 3; *see id.* ¶ 41).

34.    In *NextBank I*, BONY sought the right to the Transferor Interest (Count

Two), payment of attorneys' fees (Count Four), and payment of principal to the Trust for not

permitting the transaction to go into early amortization in February 2002 (Count Six).

35.    In Count Six, BONY alleged as follows:

**COUNT SIX**
(Conversion of Trust Assets for Failure to
Begin Amortization Period)

67.  Plaintiff repeats and realleges the allegations in
paragraphs 1 through 66 above as if fully set forth herein.

---

[4]    The FDIC Receiver requests that this Court take judicial notice of these prior proceedings
and its orders and judgment.  *See Gullo v. Veterans Cooperative Housing Association*, 269
F.2d 517, 517 (D.C. Cir. 1959) (per curiam).

[5]    The only other federal court that would have had jurisdiction is the District of Arizona, where
NextBank had its principal place of business.

68.  During the normal operation of the Trust, as provided in Article VIII of the Master Indenture and, specifically, Article IV of the Indenture Supplements, funds representing interest payable on the Notes are distributed by the Indenture Trustee to the Noteholders on a regular basis.

69.  As provided in Section 5.01 of the Master Indenture, the occurrence of certain events, including the appointment of the FDIC as receiver for NextBank on February 7, 2002, constitute a "Trust Redemption Event," requiring the commencement of an "Amortization Period."

70.  During an Amortization Period, as provided in the Indenture Supplements, principal, in addition to interest, is required to be paid to the Noteholders until the principal balance of the Notes is paid in full.

71.  The percentage of principal collections payable monthly to the Noteholders is fixed at the start of the Amortization Period.  In contrast, the percentage of losses allocable to the Noteholders during the Amortization Period decreases as their principal is paid down.

72.  Until February 7, 2002, the Trust was operating normally and was not in an early amortization period.

73.  Under Section 5.01(a) of the Master Indenture, the appointment of the FDIC as receiver for NextBank constituted a Trust Redemption Event.  Section 5.01 of the Master Indenture provides that, upon the occurrence of a Trust Redemption Event, an Amortization Period shall commence, and payment on the Notes shall thereafter be made in accordance with the terms of the Indenture Supplements.

74.  The FDIC ignored the commencement of an Amortization Period and continued to act as if an Amortization Period had not commenced until at least July 2002.  The FDIC had no right to interfere with the property and the economic and contractual rights of third parties in relation to assets which are separate and apart from the receivership estate.  Distributions to Noteholders should have been made in accordance with the terns of the Master Indenture.  The FDIC failed to apply these collections to pay down the outstanding principal of the Notes, as required by the Master Indenture.  In addition, this failure to amortize has resulted in a greater allocation of losses to the Notes than would have otherwise occurred under the terms of the Master Indenture.

75.  As a result of its failure to begin the Amortization
Period at the proper time, the FDIC wrongfully took and converted
the assets of the Trust, without proper or just compensation, in
violation of (i) the property rights of third persons, that is, the
Noteholders and the Indenture Trustee, on their behalf, and (ii) the
perfected first priority security interest of the Indenture Trustee on
behalf of the Noteholders to such assets to secure repayment of the
Notes.  Accordingly, the FDIC owes the Trust in excess of $800
million in connection with this claim.

(Ex. 11 at 15-17.)

### The November 23, 2004 Decision on Count Two

36.    On November 23, 2004, this Court reconsidered Judge Jackson's order

denying the FDIC Receiver's motion to dismiss Count Two.  This Court granted reconsideration

and dismissed Count Two, holding that it was "absolutely clear error" for Judge Jackson to have

denied that motion.  (Ex. 12 at 53.)

37.    This Court concluded that there is nothing in the transaction documents

that gives BONY or the Noteholders the right to the Transferor Interest, and the simple fact that

the FDIC Receiver repudiated the Master Indenture did not give BONY or the Noteholders a

right that they did not have before.  (*See id*.)  The Transferor Interest excludes the Collateral, and

BONY and the Noteholders have a right only to the Collateral.  (*See id*. & at 23.)

### The July 27, 2005 Settlement Agreement

38.    On July 27, 2005, the parties settled all of BONY's claims and the FDIC

Receiver's counterclaims except for BONY's Count Six.  The settlement agreement provided

that "the balance of the retained collections representing the Transferor Interest . . . shall be

released to the FDIC Receiver."  (Ex. 13 at 1, ¶ 1.)  "The Noteholders signing below agree, as

representative of the Noteholders, to strongly and promptly recommend this settlement to the

Noteholders in order for the Indenture Trustee to obtain approval by the requisite majority

Noteholders on or prior to 1 August 2005."  (*Id*. ¶ 2.)  Upon approval by the Noteholders, "all

Claims in the Complaint, other than Count 6, and all Counterclaims are hereby fully released, and the parties agree to take all necessary actions to dismiss such Claims (other than Count 6) and Counterclaims with prejudice." (*Id.*) On August 2, 2005, BONY notified the mediator that it had "all the approvals needed for the settlement." (Ex. 14.)

39.    Millennium Partners L.P. and its counsel participated in the mediation at the federal court in the District of Columbia and signed the settlement agreement. The agreement was signed by Philip M. Schockling on behalf of Millennium Partners LP, Michael Mittleman on behalf of CS First Boston LLC, Loretta A. Lundberg on behalf of BONY, and Ralph Malami and Tom M. Reeves on behalf of the FDIC Receiver. (Ex. 13 at 1.)

40.    Based on this settlement agreement, this Court dismissed all but Count Six on September 6, 2005.

41.    Following the settlement, the FDIC Receiver started receiving monthly payment of the Transferor Interest as required under the settlement agreement and the contract documents. On September 15, 2005, for example, the FDIC Receiver received payment of $1,928,992.64 of the Transferor Interest for the month of August 2005 as shown on the statement prepared by BONY:

| (e) | Transferor Allocations/Distributions | |
|---|---|---:|
| | Transferor share of Finance Charge Collections | 2,103,005.78 |
| | Interest earned on the Collections Account | |
| | Transferor share of Principal Collections | - |
| | Transferor allocated Servicing Fees | (174,013.14) |
| | Net cash distributable to the Transferor on the Distribution Date | 1,928,992.64 |

(Ex. 15.)

42.    The Noteholders also continued to receive the monthly principal and interest payments to which they were entitled. *See* 453 F. Supp. 2d at 91. The Noteholders stopped receiving principal in the April 17, 2006 monthly distribution when the "Invested

Amount" went to zero, as provided in the Master Indenture and Indenture Supplements.
(Ex. 15.)

### BONY and the Noteholders Agree On Litigating Count Six

43.     Following the settlement agreement, BONY and the Noteholders entered

into an agreement with BONY to pay BONY attorneys' fees to litigate Count Six.  In August

2005, a majority of the Noteholders directed BONY to "proceed to litigate/and or settle [the

FDIC Suit], as currently pled in the Count 6."  (Ex. 16 at 12.)  The Noteholders created a

$1,100,000 account to fund the litigation based on Alston & Bird's estimate that it would require

$700,000 to fully litigate.  *Id*.  BONY and the Noteholders agreed that "the Expense Account

will be sufficient to cover the fees and expenses associated with pursuing Count 6 (including the

costs and expenses of any appeal)."  (*Id*.)  If the Noteholders' account was inadequate, however,

BONY agreed to "seek further direction" from the Noteholders "before incurring fees and

expenses related to Count 6 in excess of the amounts deposited in the Expense Account."  (*Id*.)

44.     BONY exceeded the limits of the Noteholders' Expense Account by over

$600,000, spending over $1.7 million to litigate Count Six from August 2005 through the final

judgment in September 2006.  The Noteholders told BONY that they considered the overruns to

be "*ultra vires* fees and expenses" that are "egregious" and "unauthorized."  (*Id*.)

### The September 27, 2006 Order and Judgment on Count Six

45.     On September 27, 2006, this Court granted judgment on Count Six in

favor of the FDIC and against BONY.  *Bank of New York v. FDIC*, 453 F. Supp. 2d 82 (D.D.C.

2006).

46.     BONY, on behalf of the Noteholders, filed a notice of appeal on October

27, 2006, and filed a docketing statement and related documents in the United States Court of

Appeals for the District of Columbia on December 4, 2006. *Bank of New York v. FDIC*, No. 06-

5358 (D.C. Cir.).

**BONY Colludes to Seize the FDIC Receiver's Funds**

    **The November 9, 2006 Instructions**

           47.    In a November 9, 2006 instruction letter, a majority of outstanding

Noteholders "irrevocably" directed BONY to take the following actions:

- execute a Notice of Default "on or prior to November 14, 2006" (Ex. 17 ¶ i)

- exercise control over the "Collateral," (*id.* ¶ ii(a))

- "continue to hold the Collateral and collection of proceeds therefrom through . . . the date that all Notes are fully repaid in accordance with the provisions hereof without regard to the occurrence of any Final Maturity Date with respect to any Series," (*id.* ¶ ii(b))

- "revoke the power of the Servicer to make distributions other than as specifically authorized in this Instruction Letter," (*id.* ¶ ii(c))

- "cause all moneys and proceeds received from the [Trust] or from the Collateral" to be paid as if an early amortization had occurred until there is "full repayment" of the Notes; this must occur as soon as (1) the New York court authorizes it; (2) the Noteholders direct; (3) "receipt of collection of the amounts needed to fully satisfy all outstanding Notes," (*id.* ¶ ii(d))

- distribute to Noteholders the amounts held in the Spread Accounts, (*id.* ¶ v)

- "on or prior to November 17, 2006, commence an action in the Supreme Court of the State of New York sitting in New York County . . ., which action will seek (i) to obtain a judgment against the Issuer for the full unpaid principal and interest due on the accelerated Notes, (ii) . . . to obtain a declaratory judgment authorizing the payment of all amounts due to the Series C and Series D Noteholders . . .; and (iii) to obtain any other injunctive relief . . . for the continuation of the existence of [the Trust] and the Collateral and the continuation of the distributions . . . until all unpaid principal and interest have on the Notes under all Series have been repaid in full," (*id.* ¶ iii(b))

- "pursue the appeal . . . to the United States Court of Appeals for the District of Columbia of the decision of the court in the action entitled The Bank of New York v. Federal Deposit Insurance Company in the United States District Court for the District of Columbia, Civil Action No. 03-1221 (ESH)," (*id.* ¶ iv).

(Ex. 17 at 1-4.)

48.    The majority Noteholders further instructed BONY that the first payments following BONY's seizure of funds were to be (1) payment of $600,000 to BONY's counsel for the overruns in *Bank of New York v. FDIC*, No. 03-1221-ESH and (2) payment of "reasonable fees and expenses" incurred in the appeal and the New York litigation.  (Ex. 17 at 2.)

49.    The Noteholders agreed to indemnify BONY for following these directions.  (Ex. 17 at 4-5.)

### The November 10, 2006 BONY Letter

In a letter dated November 10, 2006, BONY wrote the Noteholders that it "declines to accept the Instruction Letter or to accept the actions specified in the Directions . . . ." (Ex. 16 at 1.)  BONY explained that the Noteholders' directions "conflict with the rule of law as evidenced by the [September 27, 2006] decision of the court in the action entitled *The Bank of New York v. Federal Deposit Insurance Company* in the United States District Court for the District of Columbia, Civil Action No. 03-1221 (ESH)."  (*Id.* at 2.)  Furthermore, the "actions [specified in the Directions] conflict with the Master Indenture as they are not authorized or within the discretion or rights conferred upon the Indenture Trustee by the Master Indenture." (*Id.*)

### The November 13, 2006 Opinion Letter

50.    In an opinion letter from Vedder Price dated November 13, 2006, counsel for the Noteholders asserted that "all of the requirements necessary for declaring an Event of Default and accelerating the Notes of each Series have occurred":

17

> NextBank entered into receivership on February 7, 2002, which constituted a Trust Redemption Event and triggered the commencement of the Early Amortization Period.
>
> Contrary to the express terms of the Indenture, the [Trust] failed to pay the principal that came due commencing in February 2002, which failure has caused certain principal not be repaid.
>
> The [Trust]'s failure to pay any principal on the Notes when due and payable constitutes an Event of Default under Section 5.02 of the Master Indenture.
>
> The Directing Noteholders, as the holders of a majority of the outstanding Notes under each Series, are entitled to accelerate the Notes and so instructed the Indenture Trustee.
>
> The acceleration of the Notes causes the full unpaid principal amount of $55,622,500 on the 2000-1 Series Notes and $56,486,500 on the 2001-1 Series Notes to become immediately due and payable.

(Ex. 16 at 5-6.)

51.     The Noteholders sought to redefine the technical term "Collateral," as defined in the Master Indenture, to include all of the "Receivables" and the Transferor Interest along with it.  (Ex. 16 at 6.)

52.     Vedder Price asserted that the Noteholders' instructions were consistent with this Court's orders and judgment.  "Other than the direction regarding the appeal of the D.C. Opinion, nothing in the Instruction Letter relates to the FDIC, NextBank, N.A., ('NextBank') or the FDIC Suit," namely *Bank of New York v. FDIC*, No. 03-1221-ESH (D.D.C.) (Ex. 16 at 3.)  According to the Vedder Price opinion letter:

- "The [Trust] is not a party to the FDIC Suit;"

- "The FDIC Suit does not address the liability of the [Trust] in any way;"

- "In the D.C. Opinion, the court neither ruled that the [Trust] was not a separate legal entity, nor ruled that the separate existence of

the [Trust] should be disregarded with respect to its obligations under the Indenture;"

- "Neither did the court hold that an Early Amortization Event did not occur in February 2002;"

- "Nowhere in the D.C. Opinion did the court rule that the Early Amortization Event in February 2002 was not enforceable against the [Trust];"

- "Nowhere in the D.C. Opinion did the court rule that any of the provisions of the Indenture could not be enforced against the [Trust];"

- "At no point in the D.C. Opinion did the court rule that remedies could not be taken against the Collateral;"

- "Nothing in the D.C. Opinion excused the [Trust] from making principal repayments under the Early Amortization waterfall starting in February 2002; and"

- "Nothing in the D.C. Opinion excuses the [Trust] from the Event of Default arising from the non-payment of principal caused by the delay in honoring the Early Amortization Period in February 2002."

(Ex. 16 at 3-4.)

**BONY Follows The Noteholders' Instructions**

53.     On November 14, 2006, BONY sent the FDIC Receiver the "Notice of Default under Master Indenture and Notice of Acceleration for Both Series 2000-1 Notes and Series 2001-1 Notes." BONY alleged that actions taken by the FDIC Receiver when it was appointed receiver on February 7, 2002 triggered the default. "NextBank, N.A.'s entry into receivership on February 7, 2002 constituted a Trust Redemption Event which triggered the commencement of the Early Amortization Period, whereupon the [Trust] was required to commence making payments of principal on the Notes . . . for each of the Series 2000-1 Notes and Series 2001-1 Notes." (Ex. 19 at 2.)

54.     According to the Notice of Default, the Trust

> failed to make distributions . . . following the commencement of
> the February 7, 2002 receivership for the four monthly
> distributions commencing on February 15, 2002 for each of the
> Series 2000-1 Notes and Series 2001-1 Notes.  The [Trust's]
> failure to honor its contractual repayment obligations has caused it
> to fail to make payments of principal due to the Noteholders of the
> Series 2000-1 Notes and Series 2001-1 Notes, which failure
> continues through the date hereof.  Such failure to pay principal of
> the Notes when due and payable constitutes an Event of Default
> under Section 5.02 of the Master Indenture for each of the Series
> 2000-1 Notes and Series 2001-1 Notes.

(Ex. 19 at 2.)

55.     On November 15, 2006, the FDIC Receiver's counsel sent a letter to

BONY's counsel, with a copy to the Noteholders' counsel, explaining that the Notice of Default

had no effect for reasons explained in *Bank of New York v. FDIC*, 453 F. Supp. 2d 82 (D.D.C.

2006).  (Ex. 20.)

56.     On November 16, 2006 (at 8:23 p.m.), the Noteholders issued their own

purported "Notice of Default under Master Indenture and Notice of Acceleration for Both Series

2000-1 Notes and Series 2001-1 Notes."  (Ex. 21.)

**The Case Before This Court**

57.     On November 17, 2006, the FDIC Receiver filed this lawsuit and sought a

temporary restraining order that would prevent improper distribution of funds in violation of the

settlement agreement and the orders and the judgment in the three-year-old litigation.  *See FDIC*

*v. Bank of New York*, No. 06-1975-ESH (D.D.C.) ("*NextBank II*").  That case was assigned to

this Court as a related case.  That afternoon, this Court scheduled a telephone conference with

counsel for 12:45 p.m. on November 20, 2006.  As this Court requested at that conference, the

FDIC Receiver's counsel sent the Noteholders' counsel notice by overnight courier that the suit

had been filed and a copy of the papers filed with that Court.

58.     On November 21, 2006, BONY stipulated that this Court had jurisdiction over the funds in question.  BONY signed a stipulation filed with the court that funds in BONY's "possession, custody, or control . . . will not be transferred or distributed in any way (other than payment of the fees and expenses of The First National Bank of Omaha as Servicer) pending an order from this Court regarding the distribution or transfer of such funds."  (Ex. 22)

59.     On November 28, 2006, this Court entered the following minute order:

> Because it appears that a substantial part of the evidence offered on
> [the FDIC Receiver's] application for a preliminary injunction will
> be relevant to the merits of this action, the Court hereby advises
> counsel of its intent to consolidate the preliminary injunction
> hearing and the merits trial pursuant to Federal Rule of Civil
> Procedure 65(a).

(Nov. 28, 2006 Order.)  Because the Noteholders would not consent to a stay of the New York litigation, this Court set the applicable briefing schedule.

**The New York Case**

60.     On November 16, 2006, Vedder Price suggested in an email to BONY's counsel that BONY "bring a [sic] interpleader action in New York—and only in New York." (BONY Opening Br. at 7-9.)

61.     On November 16, 2006 (at approximately 10:35 p.m.), BONY's counsel emailed the FDIC Receiver's counsel a "courtesy copy" of the interpleader complaint filed electronically by BONY in *Bank of New York v. First Millennium, Inc.*, No. 650234/2006 (N.Y. Sup. Ct.).  (Ex. 23.)

62.     BONY sought relief including that the FDIC Receiver and the Noteholders "be restrained by injunction from commencing or prosecuting any action or proceeding against" BONY "in relation to the Collateral" and that BONY's "costs and disbursements, including legal fees and expenses, be paid out of the Collateral."  (*Id.* at 4.)

63.     BONY also sought to redefine the technical term "Collateral" to include the Transferor Interest that BONY seized.  (Ex. 23 ¶ 9.)

64.     On November 21, 2006, the Millennium Noteholders moved for summary judgment in New York state court.  The Noteholders made no mention this action or the related action, *Bank of New York v. FDIC*, No. 03-1221, in their voluminous papers filed in the New York court.  In fact, the Noteholders, in a sworn affidavit in support of their motion for summary judgment stated that they "know of no defense of any other party that would entitle such party superior rights to the Noteholders in the assets that are the subject to this interpleader." (Schockling Aff. ¶ 39 (Ex. 24.))  That affidavit was signed by Philip Schockling, who participated in the mediation in *Bank of New York v. FDIC*, No. 03-1221 and signed the settlement agreement.  (Ex. 13.)

65.     On November 21, 2006, the FDIC Receiver removed the New York state action to federal court.  *Bank of New York v. First  Millennium Partners, Inc.*, No. 06-13388 (S.D.N.Y.).  (Ex. 25.)  That case is now pending before the Honorable Charles S. Haight, Jr. of the United States District Court for the Southern District of New York.  The FDIC Receiver's motion to stay that case is scheduled to be heard by Judge Haight on December 21, 2006. (Ex. 26)

66.     In spite of having told this Court that it would not oppose the FDIC Receiver's request for a stay, BONY filed an opposition to the FDIC Receiver's motion for a stay on December 14, 2006.  (Ex. 27.)  BONY stated in that opposition brief that Noteholders First Millennium, Inc., Millennium Partners, L.P. and RMK Advantage Fund "directed BNY to hold certain Trust assets, including credit card receivables and proceeds thereof (the 'Collateral'), which required that BNY cease making payments of proceeds of the Collateral to

22

the FDIC."  (*Id*. at 3.)  "BNY concluded that it was obligated by virtue of its fiduciary duties to the Directing Noteholders to heed their instructions with respect to the delivery of the notice of default and the taking control of the Collateral."  (*Id*. at 3-4.)

       67.    In spite of BONY having assured this Court that it would not transfer or distribute the funds it seized "pending an order from this Court regarding the distribution or transfer of such funds," BONY stated that the New York court, not this Court, has jurisdiction over the funds and that this Court must merely distribute the funds as the New York court orders. According to BONY,

> in the Stipulation BNY did *not* concede that the DC Court has "jurisdiction over the funds in question." . . . Instead, at the suggestion of the DC Court, in order to avoid the need for the DC Court to hear arguments and rule on the application for a temporary restraining order, BNY agreed not to transfer or distribute funds associated with the Collateral pending further order from the DC Court.  In entering into the DC Stipulation, BNY contemplated that (and still contemplates that), once [the New York] Court (which has had jurisdiction over the funds as a matter of law since the commencement of this interpleader case, and hence prior to the execution of the Stipulation) decided the dispute between the Directing Noteholders and FDIC, the DC Court would simply order that the funds be distributed in a manner that comported with [the New York] Court's ruling.

(*Id*. at 5-6 (emphasis in original).)

       68.    In spite of appealing to its "fiduciary duties" to act on behalf of the Noteholders, BONY asserted that it "cannot fairly be expected to litigate the Directing Noteholders' claims" and that because the Noteholders are not parties before this Court, "their claim to the Collateral proceeds thus cannot be heard by the DC Court."  (Ex. 27 at 13.) Moreover, BONY claims that "a final judgment in the DC Court might not be binding upon the Directing Noteholders"  (*Id*.)

**The Funds Seized**

69.    On November 15, 2006, the FDIC Receiver should have received

$3,626,534.39 in Transferor Interest as shown in this statement prepared by BONY:

| (e) | Transferor Allocations/Distributions | |
|---|---|---|
| | Transferor share of Finance Charge Collections | 1,586,732.87 |
| | Interest earned on the Collections Account | 12,142.71 |
| | Transferor share of Principal Collections | 2,141,172.11 |
| | Transferor allocated Servicing Fees | (113,513.30) |
| | Net cash distributable to the Transferor on the Distribution Date | 3,626,534.39 |

(Ex. 28.)  The Series 2000-1 Noteholders would have received a total of $406,943.07 in interest:

| C | (1) | Interest | 228,822.24 |
|---|---|---|---|
| | (2) | Principal | (0.00) |
| | (3) | Total Distribution for Class C Notes | 228,822.24 |
| | | | |
| D | (1) | Interest | 178,120.83 |
| | (2) | Principal | - |
| | (3) | Total Distribution for Class D Notes | 178,120.83 |

(*Id.*)  And the Series 2001-1 Noteholders would have received a total of $436,954.54 in interest:

| C | (1) | Interest | 190,750.06 |
|---|---|---|---|
| | (2) | Principal | (0.00) |
| | (3) | Total Distribution for Class C Notes | 190,750.05 |
| | | | |
| D | (1) | Interest | 246,204.48 |
| | (2) | Principal | - |
| | (3) | Total Distribution for Class D Notes | 246,204.48 |

(*Id.*)

70.    For Series 2000-1, on November 15, 2006, the Servicer was to provide

30 days notice to BONY of the December 15, 2006 Distribution Date on which the Noteholders

may surrender their Notes for their final distribution and cancellation of the Notes.  (Ex. 3

§ 11.02.)  On or before December 5, 2006, BONY was to provide notice to the Noteholders of

the date for the final payment of the Notes and the amount of the final payment.  (*Id.*)  On

December 15, 2006, the Noteholders would have received their final scheduled distribution upon

surrender of the Notes.  (*Id.*)  As of October 31, 2006, the Series 2000-1 Spread Account was

$17,712,458.66.  (Ex. 28.)

71.    For Series 2000-1, on March 15, 2007, the Servicer is to provide notice to BONY that on April 15, 2007 the Noteholders may surrender their Notes for their final distribution and cancellation of the Notes.  (Ex. 3, § 11.02.)  On or before April 5, 2007, BONY is to provide notice to the Noteholders of the date for the final payment of the Notes and the amount of the final payment.  (*Id.*)  On April 15, 2007, the Noteholders will receive their final scheduled distribution upon surrender of the Notes.  (*Id.*)  As of October 31, 2006, the Series 2001-1 Spread Account was $5,121,435.78.  (Ex. 28.)

Dated:  December 15, 2006

Respectfully submitted,

Dennis S. Klein, D.C. Bar No. 361457
Scott H. Christensen, D.C. Bar No. 476439
HUGHES HUBBARD & REED LLP
1775 I Street, N.W.
Washington, D.C. 20006-2401
Telephone:  (202) 721-4600
Facsimile:  (202) 721-4646

Of Counsel:

Tom M. Reeves (KS Sup. Ct. No. 7259)
  Counsel
Federal Deposit Insurance Corporation
550 17th Street, N.W., Room VS-D-7068
Washington, D.C. 20429
Telephone:  (703) 562-2433
Facsimile:  (703) 562-2475
E-mail:  TReeves@FDIC.gov

Attorneys for Plaintiff Federal Deposit
Insurance Corporation, in its Capacity as
Receiver for NextBank, N.A.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on December 15, 2006, true and accurate

copies of foregoing Statement of Material Facts in Support of the FDIC Receiver's Motion for

Judgment were served by mail upon:

John L. Douglas
H. Stephen Harris, Jr.
Alston & Bird LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309-3424


Paul F. Brinkman
Alston & Bird LLP
601 Pennsylvania Avenue, N.W.
North Building, 10th Floor
Washington, D.C. 20004-2601


Scott H. Christensen