## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Federal Deposit Insurance Corporation, in its Capacity as Receiver for NextBank, N.A., <br><br> Plaintiff, <br><br> -against- <br><br> The Bank of New York, as Indenture Trustee of the NextCard Credit Card Master Note Trust, <br><br> Defendant. | Case No. 06-1975-ESH |

## DEFENDANT BANK OF NEW YORK'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION TO DISMISS AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT

### I.    Introduction

Defendant The Bank of New York ("BNY") respectfully submits that it is Plaintiff Federal Deposit Insurance Corporation ("FDIC"), not BNY, that has engaged in forum shopping in an improper attempt to oust the United States District Court for the Southern District of New York (the "New York court") of jurisdiction over the current dispute. BNY further respectfully submits the accompanying statement of facts, which demonstrates that this case should be dismissed because:

- this Court lacks venue over this action;

- jurisdiction is improper in this Court because the first-filed case is the interpleader action pending in the New York court;

- all indispensable parties are not joined, and cannot be joined, in an action in this district;

- complete and final relief cannot be afforded to all interested persons in this action; and

- the New York court, not this Court, is the proper court to decide the current dispute, because it is the first-filed case.

The facts also demonstrate that the FDIC's motion for summary judgment should be denied because:

- BNY's filing of an interpleader action cannot, as a matter of law, be actionable;

- the FDIC has failed to carry its burden of proving (or even alleging with proper specificity) any actionable wrongdoing; and

- the FDIC has failed to carry its burden of proving an absence of material issues of fact, and indeed the FDIC's and the Directing Noteholders' filings in the New York interpleader action demonstrate that there are indeed material issues of fact, and material mixed questions of fact and law, that preclude summary judgment on the basis of this record.

## II.    Background

As Indenture Trustee, BNY has fiduciary obligations to the Noteholders who invested in the Notes issued by the NextCard Credit Card Master Note Trust ("Issuer"), which obligations are specified in the Master Indenture pursuant to which the Notes were issued.  BNY is also keenly aware of the Court's recent ruling in the previously filed case now on appeal, *Bank of New York v. FDIC*, 453 F. Supp. 2d 82 (D.D.C. 2006) (the "Prior Decision"), and has sought assiduously not to violate any proscriptions or directions in that order.

Under the Master Indenture, BNY has a fiduciary obligation to follow the instructions of the Noteholders, unless contrary to law.  When the Directing Noteholders (consisting of Millennium Partners, L.P., First Millennium, Inc., and RMK Advantage Income Fund) initially sent BNY the Instruction Letter on November 9, 2006 (attached as Ex. 17 to Dec. 15, 2006 Declaration of Scott Christensen ("Christensen Dec.")) to take control of the Collateral represented by the November collections from the payment of NextCard accounts and to file suit

in BNY's name against the Issuer itself, BNY declined to do so out of concern that such action could be contrary to this Court's Prior Decision. BNY demanded that the Noteholders demonstrate specifically that the conduct did not violate the Prior Decision. On November 13, 2006, Michael Edelman of the law firm Vedder, Price, Kaufman & Kammholz, P.C. provided the requested legal analysis, which BNY considered carefully in conjunction with the Prior Decision. *See* Christensen Dec. Ex. 16. On the basis of the analysis in that letter from Vedder Price, BNY concluded in good faith that the actions demanded were not prohibited by any language in the Prior Decision and thus delivered the notice in accordance with the Directing Noteholders' instructions and the terms of the Master Indenture.

The day after BNY served the Notice (including upon the FDIC), the FDIC contacted BNY and issued a threat to sue BNY, which was ultimately carried out in the form of this lawsuit. *See* Christensen Dec. Ex. 20 ("If BONY or the Noteholders attempt to take further action on the Notice of Default or otherwise take funds not due to them, the FDIC Receiver will seek judicial intervention, as well as attorneys' fees and costs for having to take such action."). The FDIC threatened litigation, and to seek sanctions, if BNY did not reverse its actions by close of business on November 16, 2006, immediately disgorge to the FDIC all collections amounts to the FDIC, send a notice withdrawing the earlier Notice, and provide the FDIC with written assurance that BNY would continue to pay funds collected on the NextCard accounts, less a servicing fee, to the FDIC. BNY repeatedly asked the FDIC's counsel to explain specifically how its conduct violates the Prior Decision, but the FDIC's counsel declined to do so.

That same day, BNY informed the Noteholders of the FDIC's threats of litigation and that BNY was considering acceding to the FDIC's demands. Directing Noteholders' counsel strenuously objected and threatened BNY with litigation for breach of fiduciary duty if BNY

failed to carry out the Directing Noteholders' instructions. *See* Nov. 16, 2006 Email from Michael J. Edelman to Steve Harris et al., attached as Exhibit 1 to Dec. 21, 2006 Declaration of H. Stephen Harris, Jr. ("Harris Dec.") ("As we also have discussed, if the Bank of New York fails to bring a law suit in New York (as required in the Instruction Letter) and/or decides to release any of the moneys that it is REQUIRED to hold pursuant to the express directions of the majority of the Noteholders, Millennium will seek to hold The Bank of New York liable.") (emphasis in original); *see also* Nov. 13, 2006 Letter at 14 ("If the Indenture Trustee fails to accelerate the Notes, take immediate control of the Collateral and use the proceeds to repay the Notes, the Indenture Trustee will be breaching its duties to the Noteholders and be causing the Noteholders damages in excess of $70 million.").

Counsel for BNY informed both counsel for the FDIC and counsel for the Directing Noteholders that BNY was being threatened with litigation by both parties and was considering filing an interpleader action. The Directing Noteholders' counsel continued to instruct BNY to file suit against the Trust (not an interpleader) but at the end of the message stated, "If you are truly concerned regarding [the FDIC's] contempt threat, then the Noteholders would understand that you may wish to bring a[n] interpleader action in New York – and only in New York." Harris Dec. Ex. 1. The interpleader, in short, was BNY's idea, not the Directing Noteholders' idea, and any suggestion that it was collusive is unfounded. Although Directing Noteholders' counsel suggested that the interpleader should be commenced in New York if BNY decided to file an interpleader instead of the lawsuit against the Trust as directed by the Directing Noteholders, BNY independently concluded that New York was the only appropriate forum, because it is the only forum in which all interested persons can be joined, and which can therefore afford complete and final relief and avoid further inconsistent litigation. Accordingly,

under strident threats of litigation from both the Directing Noteholders and the FDIC, late on November 16, 2006, BNY filed the New York interpleader action seeking resolution of the dispute by a court of competent jurisdiction with all interested persons being heard. BNY immediately notified counsel for the FDIC and counsel for the Noteholders of the filing of that action and provided copies of the complaint and summons to both via email.

As the foregoing sequence of events illustrates, the FDIC's accusation that BNY and the Directing Noteholders have somehow colluded in connection with the New York interpleader action is baseless. Moreover, BNY has no stake in the outcome of the dispute between the FDIC and the Directing Noteholders. BNY makes no claim to the funds at issue in this case. It is undisputed that BNY receives a fee, for its services as Indenture Trustee, of $5,000 per series of the NextBank Notes per year (i.e., currently, with two series outstanding, a grand total fee of $10,000 per year). BNY has no right, title, or interest in the approximately $100 million the Noteholders and the FDIC are claiming, other than its interest in maintaining the integrity of the funds until the interpleader action is resolved. These facts, together with the fact that BNY does not take any position on which claimant is correct on the merits of the case in the interpleader action, demonstrate clearly why BNY is not a proper representative of the Directing Noteholders in this action, and why it would be unfair to hold the Directing Noteholders bound by a decision in an action where BNY cannot litigate their claims.

On November 17, 2006, the day *after* BNY filed the New York interpleader action against the Directing Noteholders and the FDIC, the FDIC filed this subsequent action in an effort to make an end-run around the New York court's properly invoked jurisdiction. Two and one-half days after the FDIC filed this case, at approximately noon on Monday, November 20, 2006, BNY filed a motion to dismiss this action, asserting that a New York court is the only

court that has proper jurisdiction and venue, and the only court that can effect final and complete relief. That motion to dismiss and the initial supporting brief were filed before the first telephone conference with this Court at 12:45 p.m. on Monday, November 20, 2006. *See* Motion to Dismiss filed Nov. 20, 2006 (Docket No. 5). From the outset of this case through the present time, therefore, BNY has consistently maintained that the New York court, not this Court, is the proper forum in which to decide the current dispute.

In its complaint and initial motion in this action (filed November 17, 2006), the FDIC sought a temporary restraining order ("TRO"), a preliminary injunction, and a permanent injunction. *See* Docket Nos. 1 and 3. During a telephone hearing on November 20, BNY orally assured this Court that BNY had no intention of disbursing the funds, and, indeed, was already bound not to do so absent an order of the New York court, by virtue of BNY's filing the interpleader action. This Court asked BNY if, in order to obviate the need for the Court and the parties to deal with the TRO motion, BNY would stipulate in writing that it would not disburse the funds at issue absent an order of this Court. BNY's counsel agreed, and subsequently executed such a stipulation (the "Stipulation"). *See* Nov. 21, 2006 Stipulation, Docket No. 7.

The FDIC now seeks to mischaracterize this Stipulation, entered into in good faith to avoid the expense and time attendant to argument and decision of the TRO motion, as an "admission" by BNY that this Court has jurisdiction over the *res* and the New York court does not. As the Court is aware, BNY has never wavered in its consistent assertion that the New York court is the proper court to hear this dispute, and that this Court is not. The Stipulation was drafted by counsel for the FDIC, and any ambiguity therein should be construed against the FDIC. The FDIC's argument only demonstrates the FDIC's desperation to find a viable argument against the clearly proper jurisdiction of the New York court. As a matter of law, the

New York court took jurisdiction over the *res* on November 16, 2006, when the interpleader action was filed, one day before this *in personam* action was filed in this Court. The New York court continues to have jurisdiction over the *res*. On November 21, 2006, the FDIC removed the interpleader action in New York Supreme Court to the federal court. *See* Christensen Dec. Ex. 25.

At the suggestion of this Court during a telephone conference with counsel following the Court's denial of the FDIC's "emergency" motion for an All Writs Action to seek relief from having to file a brief in the New York interpleader action (despite the FDIC's failure to seek an extension of that deadline from any other party), on December 4, 2006, the FDIC filed a motion in the New York case to stay that case pending resolution of the instant case. *See* Harris Dec. Ex. 2. BNY filed its response opposing the request for a stay on December 14, 2006. *See* Christensen Dec. Ex. 27. The Directing Noteholders filed their response opposing the request for a stay also on December 14, 2006. Christensen Dec. Ex. 18.

The FDIC incorrectly asserts both to this Court and to the New York court that BNY indicated that it would not oppose the FDIC's motion to stay the New York action. No such statement was ever made. The very point of commencing the action in New York was to permit the dispute to be properly decided in the interpleader process in the New York forum. BNY's initial submission to this Court and every submission thereafter has reasserted consistently BNY's position that this Court lacks jurisdiction and venue to decide this dispute properly.

During the teleconference with the Court on the FDIC "emergency" motion, BNY certainly consented to an extension of time for the FDIC to file the brief that was the ostensible basis of the "emergency" (and with regard to which the FDIC had never sought an extension by simply asking the other parties). BNY also agreed with the Court that the proper procedural

means to decide whether the New York court should retain jurisdiction was a motion to stay in that court, not an All Writs Act motion in this Court. But, clearly, BNY never agreed that it would not oppose an attempt to stay the New York interpleader action, thereby depriving BNY of the forum it believes is the only appropriate forum to decide the conflicting claims to the *res*.[1] The absence of the Directing Noteholders in this case, as noted previously, precludes a proper development of the Directing Noteholders' arguments and supporting facts in this jurisdiction. In the New York forum, however, where the Directing Noteholders *are* parties, they have had the opportunity to file papers that have begun to explicate, in that forum, the arguments they first outlined in the November 13, 2006 letter and in the communications with BNY in which the Directing Noteholders demanded that BNY follow the Directing Noteholders' instructions. The Directing Noteholders will also have the opportunity to take any discovery necessary to develop facts related to the parties' course of dealings, the flows of funds related to the monies currently in dispute, and other pertinent issues. The Directing Noteholders cannot do that in this case, as they are not parties. As explained in greater detail below, BNY's interests are not sufficiently aligned with the Directing Noteholders' to permit BNY to serve as a proper representative of the Directing Noteholders in this action.

Though BNY has no views regarding whether the FDIC's or the Directing Noteholders' arguments are correct, it is plain that both parties' characterizations of the facts present material issues of fact that preclude entry of judgment in this case as a matter of law as requested by the FDIC. Those submissions in the New York litigation also highlight the complex legal arguments that cannot be fully or fairly litigated in this forum without joinder of the Noteholders, which is apparently not possible. Those assertions include the following arguments:

---

[1] The FDIC filed its reply in support of its motion to stay the New York action on December 19, 2006. A copy of that filing is submitted as Harris Dec. Ex. 3.

- "The [Trust] is not a party to the [former] FDIC Suit;"

- "The [former] FDIC suit does not address the liability of the [Trust] in any way;"

- "In the D.C. Opinion, the [C]ourt neither ruled that the [Trust] was not a separate legal entity, nor ruled that the separate existence of the [Trust] should be disregarded with respect to its obligations under the Indenture;"

- "Neither did the [C]ourt hold that an Early Amortization Event did not occur in February 2002;"

- "Nowhere in the D.C. Opinion did the [C]ourt rule that the Early Amortization Event in February 2002 was not enforceable against the [Trust];"

- "Nowhere in the D.C. Opinion did the [C]ourt rule that any of the provisions of the Indenture could not be enforced against the [Trust];"

- "At no point in the D.C. Opinion did the [C]ourt rule that remedies could not be taken against the Collateral;"

- "Nothing in the D.C. Opinion excused the [Trust] from making principal repayments under the Early Amortization waterfall starting in February 2002; and"

- "Nothing in the D.C. Opinion excuses the [Trust] from the Event of Default arising from the non-payment of principal caused by the delay in honoring the Early Amortization Period in February 2002."

Nov. 13, 2006 Letter, *quoted in* Memorandum of Points and Authorities in Support of the FDIC Receiver's Motion for Judgment and in Opposition to Defendant's Motion to Dismiss (Docket No. 15) at 12. The Directing Noteholders' argument regarding remedies against the Collateral highlights one dispute in which the Noteholders and the FDIC seem to talk past each other. The FDIC presumes the funds at issue in this case are part of the "Transferor Interest." The Directing

Noteholders presume that they are part of the "Collateral," not part of the "Transferor Interest." This is just one of various complex issues of mixed fact and law presented by the Noteholders in New York, and by the FDIC here and in New York that preclude entry of summary judgment on this barren record, as a matter of law.

As BNY argues in detail below, BNY's motion to dismiss should be granted because the proper forum for disposition of this dispute is in the New York interpleader action, for reasons of joinder, venue, and jurisdiction. The New York forum is also the sole forum (in light of the Noteholders' refusal to participate in litigation in the District of Columbia) in which all the real parties in interest, namely, the FDIC and the Noteholders, can obtain binding and final judgment between one another.

The FDIC's motion for summary judgment must be denied because: (a) as shown below, BNY's filing of the interpleader action, as a matter of law, cannot be actionable; (b) the FDIC has failed to carry its burden of demonstrating an absence of material issues of fact (and material mixed issues of fact and law), and indeed has admitted such issues exist in its filings in the New York interpleader action; and (c) the FDIC has failed to carry its burden of proof on (or even to allege with any specificity any facts supporting) any of its claims in this action.

### III.    Points and Authorities

A.    This Action Should Be Dismissed In Favor of the New York Action

a.    The First-Filed Rule Requires that this Action Be Dismissed

Tacitly acknowledging that, as between this action and the New York action, the New York action was the first-filed and must take precedence, the FDIC suggests that dismissal is not required because the *Bank of New York v. FDIC*, No. 03-1221-ESH case (the "Prior DC Action"), predates the New York action and this action. While that may be true, it does not change the fact that this action was the *last*-filed one. The FDIC commenced this litigation after

*both* the Prior DC Action and the New York action, and application of the well-settled first-filed rule thus requires that this case be dismissed. *See, e.g., Metropolitan Area Transit Auth. v. Ragonese*, 617 F.2d 828, 830 (D.C. Cir. 1980).[2]

The FDIC next suggests that the Court should decline to follow the first-filed rule because the New York action is merely a "preemptive strike" suit that has not progressed significantly in comparison to this case. The FDIC is in no position to accuse BNY of strategic forum-shopping. Prior to filing the New York action, BNY openly shared its intended course of action – commencement of an interpleader lawsuit in New York – with the FDIC. The FDIC took that information and used it to plan and prepare the complaint in the instant litigation, keeping secret from BNY its forum-shopping scheme, which culminated in the commencement of this action. The FDIC's secret scheming makes clear that it is the party guilty of engaging in procedural gamesmanship.

As for the progress of the two cases, both have proceeded to substantially similar stages, and it therefore cannot be said that deviation from the first-filed rule is warranted. In this case, BNY has filed the instant Motion to Dismiss, and the FDIC has responded with its own motion for judgment. In the New York action, however, two of the four defendants have already answered and filed a motion for summary judgment. The two cases thus stand in relatively similar states, and no deviation from the first-filed rule should be permitted. *See Brooks Trans. Co. v. McCutcheon*, 154 F.2d 841, 842 (D.C. Cir. 1946) (even where second-filed suit reached trial before the first-filed suit, holding that plaintiff in the first-filed suit has the "right to insist

---

[2] The FDIC's reliance on *United Trans. Union v. National Mediation Bd.*, No. 93-0428 (HHG), 1993 WL 764220 (D.D.C. June 8, 1993), is misplaced because the later-filed action involved the same subject matter and essentially the same parties as the earlier action being appealed. Here, there is no agreement that the New York action and the Prior DC Action involve identical subject matter and issues.

upon trial in the [first forum and that right is] unaffected by anything that ha[s] occurred [in the second forum]").

Nor is there any basis for the FDIC's cynical accusation of forum-shopping against BNY. In fact, New York was the most logical and, in BNY's view, the only possible, jurisdiction in which to commence its interpleader action. The assets at issue – the proceeds of the Collateral – are located in New York and have been located there since the beginning of this current dispute. The documents at issue are governed by New York law, and four of the five parties (including the FDIC) have permanent establishments in New York. Moreover, the New York court, unlike this Court, has jurisdiction over all parties with an interest in the Collateral. Given that New York lies at the center of this dispute, the only viable explanation for the FDIC's decision to try to force this dispute into this district is its own forum-shopping.

The FDIC's suggestion that BNY colluded with the Directing Noteholders to bring the New York action is demonstrably false. In fact, on the day BNY commenced the New York action, the Directing Noteholders sent a threatening letter demanding *not* that BNY commence an interpleader action against the Directing Noteholders and the FDIC, but rather that BNY commence litigation seeking damages against the Issuer of the notes (i.e., the Trust). BNY declined to heed this instruction and instead informed counsel for two of the Directing Noteholders that BNY was considering commencing an interpleader action. Michael Edelman of Vedder Price, counsel for two of the Directing Noteholders promptly responded in writing, threatening litigation against BNY if it did not heed the instruction to sue the Issuer. Only in passing did counsel acknowledge that, if BNY felt compelled to commence an interpleader action in the face of inconsistent demands made by the Directing Noteholders and the FDIC, that interpleader action should be filed in New York. Harris Dec. Ex. 1. The New York action

represents an entirely appropriate invocation of the interpleader form of action, and the FDIC's

claim of collusion is baseless. The first-filed rule should thus be honored, and this action should

be dismissed.

> b.    This Action Must Be Dismissed Because the Directing Noteholders are
> Indispensable Parties

The FDIC does not dispute that, if the Directing Noteholders are necessary parties, this

action must be dismissed pursuant to Fed. R. Civ. P. 19(b) because they are indispensable parties

over whom the Court does not have jurisdiction.[3] Instead, the FDIC argues only that the

Directing Noteholders are not necessary because BNY allegedly adequately represents their

interests in this action. BNY's refusal to follow the Directing Noteholders' instruction to sue the

issuer and its subsequent commencement of the New York action make clear that the FDIC's

position is untenable.

In commencing the New York action, BNY specifically acknowledged that it had

received conflicting instructions from the Directing Noteholders and the FDIC, and that it was

not prepared to heed the instructions of the Directing Noteholders without first receiving

guidance from the court. With respect to the dispute between the FDIC and Directing

Noteholders over the Collateral, BNY no longer acts simply as agent for the Directing

Noteholders; it is now an interpleading stakeholder. BNY takes no position on whether the

FDIC or the Directing Noteholders are correct on the merits. The authorities on which the FDIC

---

[3] Indeed, the FDIC frankly acknowledges that, because the Directing Noteholders cannot be made parties to this action, there is a very real risk of a "conflict" if this action is permitted to proceed and the New York action simultaneously proceeds. *See* FDIC's Memorandum of Points & Authorities at 30 n. 11. The FDIC's claim that this conflict is BNY's own fault and can be resolved simply by BNY dismissing the New York action is baffling in light of the FDIC's own acknowledgement that the Directing Noteholders are not subject to jurisdiction in this district. In any event, as the FDIC well knows (because BNY's counsel has already made this point to FDIC's counsel), BNY is not free to dismiss the New York action because two of the Directing Noteholders have already answered the complaint there and filed a motion for summary judgment. *See* Fed. R. Civ. P. 41(a). The Court should also decline the FDIC's improper suggestion (FDIC's Memorandum of Points & Authorities at 30 n. 11) that it simply assume that the FDIC will prevail on its motion to stay the New York action, which is being opposed by two of the Directing Noteholders and BNY.

relies are simply inapposite because none of those cases involved disputes in which the trustee or

agent had commenced legal action in order to have a court determine the lawfulness of the

beneficiary's or principal's directions. *See Corcoran v. Chesapeake & Ohio Canal Co.*, 94 U.S.

741, 745 (1877) (holding that where individual first sues in his capacity as trustee and later sues

in his capacity as bondholder, individual remains bound by the by the decree in the first suit);

*Elwell v. Fosdick*, 134 U.S. 500, 513 (1890) (holding that bondholders were bound by trustee's

decision not to take appeal, where trustee was litigating at bondholders' direction); *Kresh Lake*

*Drainage Dist. of Jefferson v. Johnson*, 309 U.S. 485, 490-91 (1940) (holding that where

commissioners had a statutory duty to protect and enforce certificate holders' rights, the holders

were bound by decrees in which the commissioners had asserted the lien for the benefit of the

holders); *Richter v. Jerome*, 123 U.S. 233, 246-27 (1887) (holding that bondholders who were

represented in a mortgage foreclosure by their trustee are bound by the decree where the

bondholders received the proceeds of the sale without complaint); *Ramah Navajo School Bd. v.*

*Babbitt*, 87 F. 3d 1338, 1351-52 (D.C. Cir. 1996) (holding that nonparty tribes were not

necessary parties under Fed. R. Civ. P. 19(a) because there was no conflict between the interest

of the United States and the tribes and the United States could therefore adequately represent

tribes' interests); *American Express Travel Related Servs., Co. v. Bank One-Dearborn, N.A.*, No.

05-1900, 2006 WL 2457067, at \*3 (6th Cir. 2006) (holding that joinder was not necessary under

Fed. R. Civ. P. 19 where the interests of the nonparty were "virtually identical" to the party's

interests); *Class Plaintiffs v. City of Seattle*, 955 F. 2d 1268, 1284 (9th Cir. 1992) (determining

that where there was a sharp divergence of interests between two classes of bondholders, bank

adequately represented the complaining bondholders' interest, as evidenced by its vigorous

opposition to result complained of by other classes of bondholders).

Where, as here, the interests of the trustee and beneficiary are no longer directly aligned (and, indeed, where the trustee takes no position on whether the beneficiary's legal position is correct and is adverse to the beneficiary in an interpleader action), the trustee cannot possibly be considered an adequate representative of the beneficiary's interests for purposes of Rule 19. *See Green v. Brophy*, 110 F.2d 539, 542 (D.C. Cir. 1940) ("Where [ ] the trustee may not be fairly said to represent the interests of his *cestui que* trusts, the latter are indispensable parties to litigation involving the trust."); *cf. Only Collections v. County of Cochise*, 589 P.2d 1342, 1343 (Ariz. Ct. App. 1978) ("A beneficiary must be made a party to any litigation involving his interest if the trustee or other beneficiaries are antagonistic to it.") (citations omitted).

A trustee's failure to heed the instructions of the beneficiary gives rise to a duty on the part of the court to take affirmative steps to protect the absent beneficiary. *See Hellenthal v. John Hancock Mut. Life Ins. Co.*, 31 F.2d 997, 998 (W.D. Wash. 1929) (where trustee, which was legally bound to protect the *cestui que trust*, refused to bring suit or to join with the plaintiff-beneficiary in the suit, the trustee "exposed an attitude and interest antagonistic" to the beneficiaries such that the court was obligated to "arrange the parties on the different sides of the controversy as their interests may appear"); *Reed v. Robilio*, 376 F.2d 392, 396 (6th Cir. 1967) (recognizing that where executor of an estate refused to bring suit on behalf of the estate and affirmatively disputed the existence of the plaintiff-heir's cause of action, the executor and the heir were "genuine adversaries" with a "collision of interests" or "bona fide 'controversy'" between them); *Hirsch v. Stone*, 62 F.2d 120, 121-122 (5th Cir. 1932) (reversing trial court ruling that trustee vested with legal title was a necessary party plaintiff to noteholders' foreclosure suit where trustee had refused to cooperate with the noteholders and "took a position really antagonistic to them"). Here, Rule 19(b) requires that the Court protect the interests of the

absent Noteholders by dismissing this action because BNY has declined to follow the Directing

Noteholders' instructions to sue the issuer and instead requested that the New York court

determine the rights of the respective parties in interest.

Indeed, the FDIC is already attempting to take advantage of the differing interests of

BNY and the Noteholders to bolster its arguments on the merits. Eager to convince the Court

that the Directing Noteholders' position on the merits constitutes an improper collateral attack,

the FDIC points to a letter from counsel for BNY to counsel for the Directing Noteholders, in

which BNY's counsel suggests that the instructions concerning the Collateral might conflict with

the Court's decisions and judgment in the Prior DC Action. *See* FDIC Statement of Facts at p.

17 (unnumbered paragraph). It would be patently unjust to permit the FDIC to prevail on its

argument that BNY adequately represents the interests of the Directing Noteholders when the

FDIC is attempting to use BNY's statements and conduct to undermine the Directing

Noteholders' positions.

BNY cannot be said to adequately represent the interests of the Directing Noteholders,

the Directing Noteholders are thus indispensable parties over whom the Court does not have

jurisdiction, and this action must be dismissed pursuant to Fed. R. Civ. P. 19.[4]

c.    This District Is Not the Proper Venue for this Dispute

The FDIC misplaces reliance on the FIRREA venue statute, 12 U.S.C. § 1821(d)(6)(A),

for its argument that venue lies in this district. That statute sets the time limit for "any claim

*against a depository institution*" (emphasis added). While that statute may have controlled

venue with respect to the Prior DC Action (and thus was cited by BNY in its complaint in that

---

[4] It bears noting that the Directing Noteholders claim to be owed tens of millions of dollars, and they thus have a significant pecuniary incentive in pressing their position aggressively in their dispute with the FDIC. BNY, which earns only $5,000 annually on each series of notes, cannot be said to operate under the same incentives as the Directing Noteholders or the FDIC. *See Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 346 (2d Cir. 1995) ("For purposes of claim preclusion, the requisite privity must be found in the substantial identity of the incentives of the earlier party with those of the party against whom res judicata is asserted.").

action), it has nothing to do with the instant dispute. The dispute in New York does not arise from a claim *against* a depository institution or the FDIC as receiver, but rather from the competing demands being made *by* the FDIC and the Directing Noteholders to assets in BNY's possession. These assets are present in New York, not in this district, and venue therefore does not lie here.[5]

Because the assets are located within the Southern District of New York, and because all parties are subject to jurisdiction in that district, venue under 28 U.S.C. § 1391(b) properly lies in the Southern District of New York. The FDIC argues that venue is proper in this district because the Prior DC Action, and the related mediation and settlement agreement, took place here. Prior judicial proceedings forming the basis of a *res judicata* argument cannot be the sole basis for venue in a subsequently filed action. If that were the rule, all cases involving *res judicata* arguments would have to be heard in the court in which the prior proceeding occurred, which clearly is not the case. The relevant events giving rise to the instant dispute did not occur in this district, did occur in the Southern District of New York, and this action should therefore be dismissed in favor of that jurisdiction.

     d.     The FDIC's Other Arguments Are Irrelevant and Do Not Warrant Denial of BNY's Motion to Dismiss

The FDIC suggests that BNY's Motion to Dismiss should be denied because it believes *res judicata* controls the outcome of the instant dispute. *Res judicata* does not bar a lawsuit in either forum. Rather, if the FDIC is correct, *res judicata* will entitle the FDIC to a judgment in its favor on the merits in any forum where jurisdiction and venue lie.

---

[5] The FDIC flagrantly distorts the Stipulation of November 21, 2006 in claiming that, through that document, BNY somehow made the Collateral subject to the jurisdiction of this Court. This action indisputably is *in personam*, not *in rem*, and in the Stipulation BNY did nothing more than agree, at the request of this Court, to await an order from the Court before doing anything with the Collateral, in order to avoid the need for briefing, argument, and consideration of the FDIC's motion for a TRO. While BNY will of course abide by the terms of the Stipulation, that document, which was drafted by the FDIC's counsel, did not change, and could not have changed, the nature of this action or this Court's relationship to the *res* that is the subject of the interpleader action in New York.

In any event, *res judicata* cannot be a basis for denying the motion to dismiss here. The FDIC essentially asks the Court to ignore the Motion to Dismiss and proceed directly to the merits, a patently improper request. Before the Court can proceed to the merits of the *res judicata* analysis, it must first determine whether this action must be dismissed because it violates the first-filed rule, the FDIC has failed to join an indispensable party, or venue does not lie in this district. Only after it has determined that this is the proper jurisdiction should the Court proceed to consider the FDIC's position that *res judicata* entitles it to the Collateral BNY holds.

The FDIC's argument that the statute of limitations has run also cannot be a basis upon which to deny BNY's motion to dismiss. Instead, the FDIC must put that argument to the New York court if it wishes to seek dismissal of that action on that basis. That the FDIC has declined thus far to make that argument in the New York action reflects the FDIC's lack of confidence in the correctness of its position.[6]

In fact, the FDIC's statute of limitations argument reflects another inappropriate invocation of FIRREA. As with its baseless venue argument, the statute upon which the FDIC relies, 12 U.S.C. § 1821(d)(13)(D), deals with judicial appeals from administrative claim determinations by the FDIC and has nothing to do with claims such as the ones pending in this Court and in the New York court. As the FDIC acknowledges, BNY complied with Section 1821(d)(13)(D) when it commenced the Prior DC Action in June of 2003. *See* FDIC's Memorandum of Points and Authorities at 27. The litigation in New York has nothing to do with a claim – administrative or otherwise – being made against the FDIC. Rather, that action seeks resolution of competing claims to the Collateral, one of which has been asserted *by* the FDIC.

---

[6] The fact that *res judicata* and statute of limitations are both grounds for *dismissal* of an action pursuant to Fed. R. Civ. P. 12(b)(6) reinforces the conclusion that these grounds cannot be a basis upon which to *deny* a motion to dismiss made pursuant to that rule.

The FDIC plainly cannot invoke the FIRREA statute of limitations to prevent judicial resolution of its own claim to assets.[7]

The FDIC's *res judicata* and statute of limitations arguments do not provide any basis for the Court to ignore BNY's Motion to Dismiss, which should be granted.

B.    The FDIC Is Not Entitled to Judgment

To prevail on its motion for summary judgment, the FDIC is required to show that there is "no genuine issue as to any material fact and that [it] . . . is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(b). The FDIC has failed to demonstrate the absence of dispute as to the material facts, and it is not entitled to judgment as a matter of law.

a.    The FDIC Has Failed to Carry its Burden of Proving That BNY Violated This Court's Prior Decisions, Breached Any Applicable Contract or Converted FDIC Assets, Because BNY Has Done Nothing More Than Commence an Interpleader Action

The law is well-settled that, where a stakeholder with assets subject to competing claims promptly commences an interpleader action, the stakeholder cannot be held liable to a claimant for failing to turn the assets over to the claimant upon demand. *See Stevenson v. First National Bank*, 395 A.2d 21, 24 (D.C. Ct. App. 1978) (holding that stakeholder bank could not be held liable for breach of contract or tort claims for holding funds until litigation was commenced to determine ownership); *Newton v. Bank of the West*, 51 P.3d 1281, 1284 (Or. Ct. App. 2002) (rejecting claims for breach of contract and conversion where bank was subjected to competing claims for funds and promptly commenced interpleader action);[8] *cf. Willis v. Willis*, Civ. Action

---

[7] The FDIC's attempt to wield FIRREA as a sword, not a shield, to foreclose judicial review of its claim to the assets held by BNY does not comport with Congress's intent in enacting that legislation. *Cf. Purcell v. Fed. Deposit Ins. Corp.*, 141 B.R. 480, 481 (Bankr. D. Vt. 1992) ("We will deny FDIC's motion to dismiss because we hold that FDIC is attempting to use FIRREA as a sword when Congress intended it only as a shield.").

[8] Although the *Newton* court suggested that the claimant might be able to assert a claim against the interpleading stakeholder if consequential damages resulted, the FDIC has asserted no claim for damages other than the proceeds that are the subject of the competing claims. It should be noted that the FDIC is not entitled to recover any interest

No. 76-1225, 1980 U.S. Dist. LEXIS 12487 (D.D.C. July 23, 1980), at *54 (holding that

defendant did not convert property where property was always in possession of non-party bank

or court hearing dispute as to ownership) (applying Ohio law).

The FDIC cannot recover on its claims for breach of contract and conversion because the

sole basis for its claims is BNY's refusal to turn over to the FDIC proceeds from the Collateral

claimed by both the FDIC and the Directing Noteholders, and its commencement of an

interpleader action seeking a judicial determination as to the rightful owner of that property.[9]

With respect to its breach of contract claim, the FDIC argues that BNY breached various

unidentified contractual obligations "in the transaction documents and the settlement agreement

among the FDIC Receiver, the Noteholders, and BONY" when it "refused to pay the Transferor

Interest to the FDIC Receiver." FDIC's Memorandum of Points and Authorities at 18.[10] For its

conversion claim, the FDIC argues that BNY converted FDIC property when BNY "seized the

money at the Noteholders' instructions." *Id.* at 20. While the FDIC carefully avoids drawing

attention to this fact, it cannot be disputed that BNY promptly commenced the interpleader

action in New York within one day of the FDIC's demand that the Collateral proceeds be turned

over. Because BNY specifically disavowed any ownership interest in the Collateral when it filed

its interpleader complaint in the New York Action (and continues to disavow any ownership

---

on the proceeds. *See Powers v. Metropolitan Life Ins. Co.*, 439 F.2d 605, 608 (D.C. Cir. 1971) (holding that claimant is not entitled to interest during pendency of the interpleader action).

[9] Although the FDIC's complaint purported to assert a claim for "Injunctive Relief for Statutory Violation" (Count I), the FDIC has declined to pursue a judgment on the basis of that claim. *See* FDIC's Memorandum of Points & Authorities at 16-22. Having failed to argue Count I as part of its moving papers, the FDIC should not be heard to argue that cause of action as a basis for relief in its reply papers or at oral argument. *See Corson and Gruman Co. v. Nat'l Labor Relations Bd.,* 899 F.2d 47, 50 n.4 (D.C.Cir. 1990) ("We require petitioners and appellants to raise all of their arguments in the opening brief to prevent 'sandbagging' of appellees and respondents and to provide opposing counsel the chance to respond."); *Canady v. Erbe Elektromedizin GmbH,* 307 F. Supp. 2d 2, 10-11 (D.D.C. 2004) (striking parties' briefing on summary judgment where parties' reply briefs presented new matters).

[10] The FDIC's continued inability to point to any specific contractual obligations that are allegedly violated by the filing of the interpleader action is another reason that the FDIC has failed to carry its burden of proof on its motion for judgment.

interest in the Collateral), there is no basis for the FDIC's reckless assertion that "BONY has acted to exclude the rights of the FDIC." *Id.*[11]

BNY's decision to seek a judicial determination of the claimants' respective rights (if any) to the disputed *res* simply cannot form the basis for liability. As the FDIC's own authority makes clear, a claim for conversion requires that the defendant "assum[e] or exercise[] control over personal property belonging to someone else, interfering with that person's right of possession." *Colavito v. New York Organ Donor Network, Inc.*, 2006 N.Y. slip. op. 09320 at 6, 2006 WL 3625060 (N.Y. Dec. 14, 2006) (cited by the FDIC in its Memorandum of Points and Authorities at 19-20). BNY has not "taken control" of the Collateral; it has submitted it to the jurisdiction of the New York court. If any entity is to "interfere" with the FDIC's possession of those assets, it will be the New York court, not BNY.

Because the facts on which the FDIC relies for recovery on its claims against BNY cannot support breach of contract or conversion claims, its motion for judgment should be denied.

      b.    The FDIC Has Failed to Address Material Factual Issues Raised by the Directing Noteholders

As an interpleading stakeholder, BNY takes no position as to the merits of the FDIC and Directing Noteholders' dispute concerning the Collateral. Christensen Dec. Ex. 23. A judgment in the FDIC's favor in this action, however, would leave BNY exposed to a risk of conflicting judgments in the event the Directing Noteholders prevail on their claims in the New York court. Those claims, and the facts and arguments supporting them, bear directly on the FDIC's claims

---

[11] The FDIC patently distorts BNY's position when it claims that BNY has engaged in "vexatious litigation" to obtain a ruling "contrary to this Court's earlier decisions." As an initial matter, BNY is not seeking such a ruling; it simply wants a judicial determination as to what to do with the assets it is holding. In all events, as the authorities cited above make clear, the FDIC is entitled to no damages for interest or costs associated with litigating the dispute over the Collateral, particularly since much of the expense has been incurred as a result of the FDIC's strategic decision to commence duplicative litigation and then manufacture excuses to file expensive "emergency" motions.

on the merits in this action.  Most importantly, in briefing the FDIC's motion for a stay in the

New York action, two of the Directing Noteholders have argued that the decisions and judgment

in the Prior DC Action are not controlling and they are entitled to the assets that are the subject

of the FDIC's claims here.  The Directing Noteholders' arguments are developed fully in their

opposition to the FDIC's stay motion filed in the New York action, see Christensen Dec. Ex. 18,

but they include the following:

- In the Prior DC Action, the Court interpreted the effect of the *ipso facto* clause on the FDIC, but not on the issuer.

- In the Prior DC Action, the Court determined the remedies that could be obtained from the FDIC, but not from the issuer or against the Collateral.

- In the Prior DC Action, the Court did not decide whether the FDIC was entitled to claim as Transferor Interest funds held by BNY, after the declaration of a default against the *issuer*.

*See* Christensen Dec. Ex. 18 at 28 (table).

The FDIC cannot be awarded judgment because it has failed to address these, and many

other, material issues of fact raised by the Noteholders.  It cannot be gainsaid that these issues lie

at the heart of the merits of the instant dispute.  For example, the FDIC has asserted that the

Court in the Prior DC Action determined that the FDIC, as receiver for NextBank, is entitled to

the Transferor Interest.  The FDIC fails to address, however, the Directing Noteholders'

argument, summarized above, that a default was properly declared against the Issuer of the notes

(as opposed to the FDIC as receiver), requiring liquidation of Collateral for the benefit of the

Noteholders and leaving no assets for distribution to the FDIC as Transferor Interest.  The

Directing Noteholders thus contend that the *res* is Collateral that is not part of the Transferor

Interest, as asserted by the FDIC.  Further development of facts, including the course of dealings

of the parties, is needed for a court to decide which version of the facts, if either, is correct.

Indeed, the FDIC's own Statement of Material Facts in Support of the FDIC Receiver's Motion for Judgment, filed in support of its Motion, highlight certain factual issues disputed by the Directing Noteholders. *See* Defendant's Response to Plaintiff's Statement of Material Facts, filed simultaneously herewith. Moreover, in papers filed earlier this week in the New York action, the FDIC has explicitly acknowledged that disputes exist as to factual issues lying at the heart of the dispute between it and the Directing Noteholders. In its reply to the opposition of two Directing Noteholders to the FDIC's Stay Motion, the FDIC reproduced a table the Noteholders included in their opposition papers, and the FDIC altered the table to reflect those issues it disputed. *See* Harris Dec. Ex. 3. The FDIC's own identification of material facts in dispute requires that its motion be denied.[12]

c.     Because the FDIC Cannot Prevail on the Merits of Its Claims Against BNY, It Is Not Entitled to a Permanent Injunction

A permanent injunction may only be granted where a party has prevailed on the merits. *See, e.g., United States v. Baker Hughes, Inc.*, 731 F. Supp. 3, 4, 12 (D.D.C.), *aff'd*, 908 F.2d 981 (D.C. Cir. 1990) (denying application for permanent injunction where party seeking injunction did not prevail on the merits). As shown above, the FDIC cannot prevail on its causes of action against BNY because the wrong complained of – the commencement of an interpleader lawsuit in New York – is not actionable. The FDIC continues to be unable to point to any specific contractual obligations that were allegedly breached. The FDIC has also failed to demonstrate an absence of material factual disputes in the face of the many issues raised by the Directing

---

[12] The FDIC should not be heard to argue that the issues in dispute are purely legal. For example, one issue that the FDIC has raised in the New York action is the import of a notice of default served last month. The meaning and effect of such a notice is a mixed question of fact and law, a dispute which requires the denial of a motion for summary judgment. *See Indian Lake Estates, Inc. v. Lichtman*, 311 F.2d 776, 776 (D.C.Cir. 1962) (reversing grant of summary judgment where there were unresolved mixed questions of law and fact). Moreover, as noted above, the relationship between the Collateral and the Transferor Interest is a core issue presenting mixed questions of fact and law.

Noteholders in the New York action. For all these reasons, the FDIC cannot prevail on the merits, and its request for a permanent injunction should therefore be denied.[13]

## IV.    Conclusion

For the foregoing reasons, BNY's Motion to Dismiss should be granted, and the FDIC's Motion for Judgment should be denied.

---

[13] The FDIC's highly personal attack on "BONY's counsel," FDIC Mem. at 20-21 n. 8, is inappropriate and unsupportable. The December 18, 1989 FDIC Interpretative Letter signed by John L. Douglas, then-General Counsel to that agency, is irrelevant to the instant dispute because, on its face, the letter dealt with a question concerning creditors' rights to assets held by a failed depository institution, *not* assets held by a separate entity that the receiver to a failed depository institution claims. The PLI article authored by Mr. Douglas is equally inapplicable because it dealt only with "claims *against* the FDIC as receiver," not claims by the FDIC as receiver. John L. Douglas, *The Management and Liquidation of Failed Financial Institutions Under the Financial Reform, Recovery and Enforcement Act of 1989*, Practicing Law Institute, 625 PLI/Comm 399, 409 (June 8-9, 1992) (emphasis added). As explained above, the FDIC has distorted the terms of the Stipulation it drafted in trying to claim that that document somehow stripped the New York Court of jurisdiction over the Collateral held by BNY (over which it has jurisdiction as a matter of law, under the applicable interpleader statutes), and then somehow transformed this litigation from one *in personam* to *in rem*. Finally, the FDIC's cynical attempt to use the letter sent by counsel for BNY to counsel for the Noteholders to undermine the Noteholders' position in this dispute is, standing alone, proof that the Noteholders are indispensable parties.

Respectfully submitted this 21st day of December, 2006.

*H. Stephen Harris, Jr.*

H. Stephen Harris, Jr.
D.C. Bar No. 481092
John L. Douglas
D.C. Bar No. 479569
Paul F. Brinkman
D.C. Bar No. 441681

Alston & Bird LLP
1201 W. Peachtree St.
Atlanta, GA 30309
Tel.: (404) 881-7000
Fax: (404) 881-7777

Alston & Bird LLP
601 Pennsylvania Ave. NW
North Bldg., 10th Floor
Washington, DC 20004
Tel.: (202) 756-3300
Fax: (202) 756-3333

*Counsel for Defendant The Bank of New York,
as Indenture Trustee of the NextCard Credit Card
Master Note Trust*

**CERTIFICATE OF SERVICE**

I, Jack P. Smith, certify that a true and accurate copy of the foregoing documents were served by email and overnight courier on December 21, 2006, upon

Dennis S. Klein
Scott H. Christensen
HUGHES HUBBARD & REED LLP
1775 I Street, N.W.
Washington, DC 20006

<u>/s/ Jack P. Smith</u>

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Federal Deposit Insurance Corporation, in its Capacity as Receiver for NextBank, N.A., <br><br>            Plaintiff, <br><br>             -against- <br><br> The Bank of New York, as Indenture Trustee of the NextCard Credit Card Master Note Trust, <br><br>             Defendant. | Case No. 06-CV-1975-ESH |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF THE FDIC RECEIVER'S MOTION FOR JUDGMENT**

BNY disputes the following paragraphs contained in the Statement of Material

Facts in Support of the FDIC Receiver's Motion for Judgment ("FDIC's Material Fact

Statement"):

1. *Paragraphs "4" through "7."* As set forth in the accompanying

   Memorandum of Points and Authorities, BNY cannot be fairly considered to

   represent the interests of the Noteholders in the instant litigation. *See*

   Complaint in *Bank of New York v. First Millennium, Inc.*, No. 06-13388

   (S.D.N.Y.), attached as Exhibit 23 to Dec. 15, 2006 Declaration of Scott

   Christensen (hereinafter "Christensen Dec."); *see also* FDIC's Material Fact

   Statement at p. 17 (unnumbered paragraph) (attempting to use letter from

   counsel for BNY to undermine Noteholders' position on the merits in this

   litigation).

2.  *Paragraphs "8" through "11."* As the stakeholder/interpleader plaintiff in the action pending in New York, BNY does not take a position on the merits of the dispute between the FDIC and the Noteholders. BNY notes that the Noteholders dispute the FDIC's characterization of the relationship between the Transferor Interest and the Collateral under the relevant transaction documents. *See* Memorandum of Law of Interpleader Defendants First Millennium, Inc. and Millennium Partners, L.P. in Opposition to Motion of Interpleader Defendant Federal Deposit Insurance Corporation for a Stay of this Interpleader Case, Christensen Dec. Ex. 18.

3.  *Paragraph "37."* BNY disputes the legal conclusions, now on appeal, of the Court in denying its claims for conversion in the previous action.

4.  *Paragraph "51."* In this paragraph, the FDIC acknowledges that there is a material factual dispute as to the definition of the term "Collateral." *See* ¶ 2 *above*.

5.  *Paragraph "52."* In this paragraph, the FDIC acknowledges that there are material factual and legal disputes, as enumerated in the bulleted list contained in this paragraph.

6.  *Paragraph "57."* The FDIC commenced this litigation on the afternoon of November 17, 2006, the day *after* receiving notice of BNY's commencement of the interpleader action in New York. Prior to the commencement of the New York action, counsel for BNY candidly disclosed its plans to counsel for the FDIC and counsel for the Noteholders. The FDIC never disclosed to

- 2 -

counsel for BNY its plan to commence this litigation. Dec. 20, 2006
Declaration of H. Stephen Harris, Jr. (hereinafter "Harris Dec.") at ¶ 8.

7. *Paragraph "58."* The stipulation in this action was drafted by counsel for
FDIC. In executing the stipulation, counsel for BNY did not subject the assets
at issue to the jurisdiction of the Court. *See* Harris Dec. at ¶¶ 5-6.

8. *Paragraph "60."* Vedder Price, counsel to certain Noteholders, did not
"suggest" that BNY bring an interpleader action. BNY independently
determined that it needed to commence an interpleader action, after it received
conflicting demands from the FDIC and the Directing Noteholders. In the
communication on which the FDIC relies, counsel to the Noteholders
instructed BNY to commence suit against the Issuer, but, if BNY commenced
an interpleader action, to commence it in New York. *See* Nov. 16, 2006
Email from Michael Edelman to Steve Harris, Harris Dec. Ex. 1.

9. *Paragraph "63."* In this paragraph, the FDIC acknowledges that there is a
dispute as to the meaning of the term "Collateral" under the relevant
transaction documents. *See also* ¶ 5 *above.*

10. *Paragraph "66."* BNY never informed the Court that it would not oppose the
FDIC's motion to stay the New York Action. Harris Dec. ¶ 7.

11. *Paragraph "68." See* ¶ 1 *above.*

Respectfully submitted this 21st day of December, 2006.

H. Stephen Harris, Jr.

H. Stephen Harris, Jr.
D.C. Bar No. 481092
John L. Douglas
D.C. Bar No. 479569
Paul F. Brinkman
D.C. Bar No. 441681

Alston & Bird LLP
1201 W. Peachtree St.
Atlanta, GA 30309
Tel.: (404) 881-7000
Fax: (404) 881-7777

Alston & Bird LLP
601 Pennsylvania Ave. NW
North Bldg., 10th Floor
Washington, DC 20004
Tel.: (202) 756-3300
Fax: (202) 756-3333

Counsel for Defendant The Bank of New York,
as Indenture Trustee of the NextCard Credit Card
Master Note Trust

## CERTIFICATE OF SERVICE

I, Jack P. Smith, certify that a true and accurate copy of the foregoing documents were served by email and overnight courier on December 21, 2006, upon

Dennis S. Klein
Scott H. Christensen
HUGHES HUBBARD & REED LLP
1775 I Street, N.W.
Washington, DC  20006

/s/ Jack P. Smith

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Federal Deposit Insurance Corporation, in its Capacity as Receiver for NextBank, N.A.,<br><br>            Plaintiff,<br><br>          -against-<br><br>The Bank of New York, as Indenture Trustee of the NextCard Credit Card Master Note Trust,<br><br>           Defendant. | Case No. 06-CV-1975-ESH |

**DECLARATION OF H. STEPHEN HARRIS, JR.**

I, H. Stephen Harris, Jr., hereby declare as follows:

1.      I am a partner of the firm Alston & Bird LLP, attorneys for Defendant The Bank of New York, in its capacity as Indenture Trustee of the NextCard Credit Card Master Note Trust ("BNY"), in this action. I submit this Declaration in support of BNY's Reply Memorandum of Points and Authorities in Further Support of Motion to Dismiss and in Opposition to Plaintiff's Motion for Judgment. I have personal knowledge of the information contained in this Declaration.

2.      Attached hereto as Exhibit 1 is a true and correct copy of an email I received from Michael J. Edelman on November 16, 2006.

3.      Attached hereto as Exhibit 2 is a true and correct copy of the Memorandum in Support of the FDIC Receiver's Motion For a Stay, filed December 4, 2006 in *The Bank of New York v. First Millennium, Inc. et al.*, No. 06-CIV-13388-CSH, in the U.S. District Court for the Southern District of New York.

4.    Attached hereto as Exhibit 3 is a true and correct copy of the Reply in Support of Receiver's Motion For a Stay, filed on December 19, 2006 in *The Bank of New York v. First Millennium, Inc. et al.*, No. 06-CIV-13388-CSH, in the U.S. District Court for the Southern District of New York.

5.    The stipulation entered into on November 21, 2006, which was drafted by counsel for Plaintiff, does not on its face grant the Court jurisdiction over the property in dispute in the New York interpleader action, nor did I understand the stipulation to have that effect.

6.    The intention of the stipulation was to save the Court time and effort associated with adjudicating Plaintiff's motion for a temporary restraining order, when The Bank of New York already had no intention of disbursing the funds subject to resolution of the dispute between Plaintiff and the Noteholders.

7.    Neither I, nor any counsel for The Bank of New York, ever stated to the Court (or to anyone else) that The Bank of New York would not oppose a motion by Plaintiff to stay the proceedings in New York.

8.    Prior to commencing the interpleader action in New York, I disclosed to counsel for Plaintiff that BNY intended to commence that action.  Plaintiff's counsel did not disclose to me their plans to commence the instant action before doing so.

I declare under penalty of perjury that the foregoing is true and correct.

This 21st day of December, 2006.

H. Stephen Harris, Jr.

EXHIBIT 1

| From: | MICHAEL J. EDELMAN [mjedelman@vedderprice.com] |
| --- | --- |
| Sent: | Thursday, November 16, 2006 3:19 PM |
| To: | Harris, Steve |
| Cc: | Roth, Gary; Douglas, John; fstone@mlp.com; mscheckman@mlp.com; Philip Schockling; Jim.Kelsoe@morgankeegan.com |
| Subject: | NextCard * Threat of Irreparable Harm to Noteholders' Interests |

| Importance: | High |
| --- | --- |

| Follow Up Flag: | Follow up |
| --- | --- |
| Flag Status: | Green |

| Attachments: | MJE.VCF |
| --- | --- |



MJE.VCF (770 B)


** High Priority **

Steve:

Millennium is very distressed to learn that The Bank of New York, as Indenture Trustee, is contemplating violating the instruction letter and directions that the Indenture Trustee started to carry out due to a unsubstantiated threat from the FDIC regarding contempt.

We have reviewed the D.C. decision again and, again, there is nothing whatsoever in the D.C. decision that there has been violated. Nor have any of the matters so directed in the Instruction Letter been addressed in the D.C. Suit. The D.C. action was a conversion action against the FDIC for the abuse of its status as servicer. The FDIC was not a plaintiff in the DC Suit, and did not obtain a decalratory judgement or injunction , but merely obtained a judgment that denied the Bank of New York's claim of liablity and damages for conversion. It also did not deal with the Issuer's liability whatsoever. It did not say that there was no event of default. It did not say that the principal on the Notes should not have been paid by the issuer in accordance with their express terms. It did not says the Notes were not now due or that the Notes shouldn't be accelerated as against the Issuer. It had nothing to do with the rights of the Indenture Trustee or the Noteholders against the collateral or the Issuer. In sum, there is nothing there that could even remotely give rise to contempt.

As we also have discussed, if the Bank of New York fails to bring a law suit in New York (as required in the Instruction Letter) and/or decides to release any of the moneys that it is REQUIRED to hold pursuant to the express directions of the majority of the Noteholders, Millennium will seek to hold The Bank of New York liable. There is no basis or justification for the release of the collateral. If The Bank of New York releases any moneys from the Collection account or any other collateral to the FDIC, such actions are in express violation of Noteholders' instruction letter and Millennium will hold The Bank of New York responsible for such. As you know, the Indenture Trustee and the Noteholders only have redress against the collateral and the Issuer.
These are non-recourse obligations and there is a decision (pending appeal) barring suit against the FDIC. As you also know, the Issuer doesn't have sufficient assets to satisfy the unpaid principal - which are now due and owing - on the Notes. So any action to release moneys/collateral to the FDIC will cause the Noteholders irreparable harm that will be caused solely by the actions of the Indenture Trustee.
  In addition, such a release of collateral when there are insufficient assets to repay all unpaid principal is a fundamental breach of the Indenture Trustee's duties to the Noteholders. See section 5.06 of the Master Indenture. Such breach is further heightened when you have an express direction from the majority of the Noteholders barring such action.

In addition, once an event of default has been declared, the Indenture Trustee has no authority to rescind the acceleration. Only a majority of the Noteholders may rescind an acceleration. See Master Indenture section 5.03. Millennium would also hold the Indenture Trustee accountable for rescinding the notice of acceleration.

If you are truly concerned regarding a contempt threat, then the Noteholders would understand that you may wish to bring a interpleader action in New York - and only in New York.

Michael


Michael J. Edelman
Vedder, Price, Kaufman & Kammholz, P.C.
805 Third Avenue
New York, NY 10022
Work Tel.: (212) 407-6970
Work Fax: (212) 407-7799
Cell No.:  (917) 478-6543
e-mail: MJEdelman@VedderPrice.com


FEDERAL TAX NOTICE:
Treasury Regulations require us to inform you that any federal tax advice contained herein (including in any attachments and enclosures) is not intended or written to be used, and cannot be used by any person or entity, for the purpose of avoiding penalties that may be imposed by the Internal Revenue Service. In addition, we do not impose upon any person or entity to whom this is addressed any limitation on the disclosure of the tax treatment or tax structure of any transaction discussed herein (including in any attachments and enclosures).

# EXHIBIT 2

George A. Davidson (GD3422)
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York  10004-1482
Telephone:  (212) 837-6000
Facsimile:  (212) 422-4726

Tom M. Reeves (KS Sup. Ct. No. 7259)
Federal Deposit Insurance Corporation
550 17th Street, N.W., Room VS-D-7068
Washington, D.C.  20429
Telephone:  (703) 562-2433
Facsimile:  (703) 562-2475

Attorneys for Interpleader Defendant Federal Deposit Insurance
Corporation, in its Capacity as Receiver for NextBank, N.A.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - x

THE BANK OF NEW YORK, in its capacity as
Indenture Trustee of the NextCard Credit Card
Master Note Trust,

                Interpleader Plaintiff,

          -against-

FIRST MILLENNIUM, INC., MILLENNIUM
PARTNERS, L.P., RMK ADVANTAGE FUND,
and FEDERAL DEPOSIT INSURANCE
CORPORATION,

              Interpleader Defendants.

- - - - - - - - - - - - - - - - - - - - - - - x

No.: 06-CIV-13388-CSH

**MEMORANDUM IN SUPPORT
OF THE FDIC RECEIVER'S
MOTION FOR A STAY**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ......................................................................................................... ii

INTRODUCTION .......................................................................................................................... 1

BACKGROUND ............................................................................................................................ 2

    The NextBank Receivership ...................................................................................................... 2

    The Noteholders' Claims and Lawsuit ..................................................................................... 3

    BONY Seizes the FDIC Receiver's Funds ............................................................................... 4

    The Case Before This Court ...................................................................................................... 7

ARGUMENT .................................................................................................................................. 8

THE CASE SHOULD BE STAYED PENDING A DECISION IN THE
    RELATED CASES ..................................................................................................................... 8

        A.    A Stay Will Prevent An End Run Around Another Federal Court ........................... 8

        B.    A Stay Will Not Prejudice BONY ......................................................................... 9

        C.    A Stay Will Not Burden Defendants ..................................................................... 10

        D.    The Courts' Interests Supports a Stay .................................................................... 11

        E.    Public Interest Supports A Stay ............................................................................. 11

CONCLUSION ............................................................................................................................. 12

## TABLE OF AUTHORITIES

Page

### CASES

*Bank of New York v. FDIC*, ___ F. Supp. 2d ___, No. 03-1221-ESH, 2006 WL 2772860, 2006 U.S. Dist. LEXIS 69130 (D.D.C. Sept. 27, 2006), *appeal docketed*, No. 06-5358 (D.C. Cir. Nov. 3, 2006) ................................................................................ *passim*

*Broadcast Music, Inc. v. CBS Inc.*, 424 F. Supp. 799 (S.D.N.Y. 1976) .................................. 10-11

*Kappel v. Comfort*, 914 F. Supp. 1056 (S.D.N.Y. 1996) ........................................................... 9-11

*Volmar Distributors v. New York Post Co.*, 152 F.R.D. 36 (S.D.N.Y. 1993) .................................9

### STATUTES AND REGULATIONS

12 U.S.C. § 1821(d)(6) ...........................................................................................................3, 7

12 U.S.C. § 1821(d)(13)(D) .........................................................................................................7

12 U.S.C. § 1821(e)(13)(A) ..........................................................................................................3

28 U.S.C. § 1651(a) ......................................................................................................................6

### MISCELLANEOUS

Fed. R. Civ. P. 65(a) ....................................................................................................................6

Office of the Comptroller of the Currency, "OCC Closes NextBank and Appoints FDIC Receiver," (Feb. 7, 2002) .............................................................................................................2

**INTRODUCTION**

Plaintiff Bank of New York ("BONY") and Interpleader Defendants First Millennium, Inc. and Millennium Partners, L.P. (collectively "Millennium") brought this action as a collusive attempt to end run the orders and judgment of the Honorable Ellen Segal Huvelle of the United States District Court for the District of the District of Columbia.[1] Pending their appeal to the United States Court of Appeals for the D.C. Circuit,[2] they want to convince a different court in a different jurisdiction to reach a different result. There is no reason for this Court to give them that opportunity.

In response to the efforts of BONY and Millennium to end run Judge Huvelle's rulings, the FDIC Receiver brought suit for injunction before Judge Huvelle. As part of that proceeding, BONY agreed that Judge Huvelle would control the *res* in this interpleader action. BONY stipulated that it will not distribute the interpleaded funds to the Noteholders or the FDIC Receiver until she orders it. So there is nothing for this Court to decide until then.

Judge Huvelle has consolidated the FDIC Receiver's request for preliminary injunction with a merits trial.[3] That briefing is on an expedited schedule, and Judge Huvelle stated that she will schedule a hearing in the first week of January and resolve the issues before

---

[1] *Bank of New York v. FDIC*, ___ F. Supp. 2d ___, No. 03-1221-ESH, 2006 WL 2772860, 2006 U.S. Dist. LEXIS 69130 (D.D.C. Sept. 27, 2006). (Attached hereto as Exhibit 1 to the Declaration of Scott H. Christensen in Support of the FDIC Receiver's Motion For a Stay ("Christensen Decl.").

[2] *Bank of New York v. FDIC*, No. 06-5358 (D.C. Cir.) (appeal docketed Nov. 3, 2006).

[3] *FDIC v. Bank of New York*, No. 06-1975-ESH (D.D.C.).

1

the end of the month.[4]  Therefore, this interpleader action should be stayed until after Judge

Huvelle rules.

## BACKGROUND[5]

**The NextBank Receivership**

1.      NextBank, N.A. ("NextBank") was a national banking association having

as its sole business the issuance of consumer credit cards, primarily through the internet.

NextBank funded its business by selling notes in a complex securitization transaction pursuant to

which The Bank of New York, in its capacity as Indenture Trustee of the NextCard Credit Card

Master Note Trust ("BONY"), served as the Trustee for First Millennium, Inc., Millennium

Partners, L.P., and RMK Advantage Fund (the "Noteholders"), among others.[6]

2.      NextBank failed.  On February 7, 2002, the Office of the Comptroller of

the Currency appointed the FDIC as receiver for NextBank.  *See* Office of the Comptroller of the

Currency, "OCC Closes NextBank and Appoints FDIC Receiver," (Feb. 7, 2002) (available at

http://www.occ.treas.gov/ftp/release/2002-09.txt).

---

[4]    On November 30, 2006, the FDIC Receiver also filed in the District for the District of
Columbia a motion for a stay of all other actions pursuant to the All Writs Act, 28 U.S.C.
§ 1651(a) (2006).  On December 1, 2006, Judge Huvelle stated that she would consider that
motion if the Noteholders would not consent to a stay before this Court (they subsequently
did not consent) and if the FDIC Receiver's motion for a stay herein were not granted.

[5]    A more comprehensive recitation of the background and procedural history of this matter
may be found at *Bank of New York v. FDIC*, ___ F. Supp. 2d ___, No. 03-1221-ESH, 2006
WL 2772860, at *1-*8, 2006 U.S. Dist. LEXIS 69130, at *4-*24 (D.D.C. Sept. 27, 2006).

[6]    On information and belief, the Noteholders purchased their notes after the litigation in *Bank
of New York v. FDIC*, No. 03-1221-ESH (D.D.C.), commenced.

2

**The Noteholders' Claims and Lawsuit**

3.     In October 2002, BONY filed claims on behalf of the Noteholders seeking recovery of funds from the FDIC Receiver as a result of actions taken in the receivership. Among other claims, BONY asserted (a) in Count Two that the FDIC Receiver had no right to the "Transferor Interest," as defined in the transaction documents and (b) in Count Six that the FDIC Receiver improperly prevented the accelerated repayment of principal to the Trust.

4.     The FDIC Receiver denied those claims because (a) the contracts at issue give the Transferor Interest to NextBank and (b) a federal statute (12 U.S.C. § 1821(e)(13)(A)) permits the FDIC Receiver to enforce the contract without giving effect to the clause that would have accelerated repayment of the principal to the Noteholders.

5.     BONY, on behalf of all noteholders, filed the first lawsuit in this matter on June 5, 2003 in the United States District Court for the District of Columbia. *Bank of New York v. FDIC*, No. 03-1221-ESH (D.D.C.). (*See* Christensen Decl. Ex. 2.) BONY sought the right to the Transferor Interest (Count Two) and payment of principal to the Trust for not permitting the transaction to go into early amortization in February 2002 (Count Six).

6.     BONY sued on the Noteholders' behalf because BONY and the Noteholders agreed in the Master Indenture (1) that BONY would represent the Noteholders in any legal action, (2) that the Noteholders need not be parties to any such action, and (3) that the Noteholders could not file an action unless they satisfied very specific requirements that are not satisfied here. (Master Indenture §§ 5.04, 5.07 (attached as an exhibit to the Noteholders' Answer).)

7.     BONY filed in federal court for the District of Columbia, because it was one of only two federal courts that could entertain a case against the FDIC Receiver under 12

3

U.S.C. § 1821(d)(6),[7] which BONY cited as the basis for the jurisdiction in its Complaint filed in the District of Columbia.

8.    On November 23, 2004, Judge Huvelle dismissed Count Two, concluding that under the contract documents at issue the Transferor Interest unequivocally belongs to the FDIC Receiver and the Noteholders have no right to those funds.

9.    On July 27, 2005, the parties settled all of BONY's claims and the FDIC Receiver's counterclaims except for BONY's Count Six. The Millennium Noteholders participated in the mediation at the federal court in the District of Columbia that lead to settlement and signed the settlement agreement. Based on this settlement, Judge Huvelle dismissed all but Count Six on September 6, 2005.

10.    On September 27, 2006, Judge Huvelle granted judgment on Count Six in favor of the FDIC and against BONY. *Bank of New York v. FDIC*, ___ F. Supp. 2d ___, No. 03-1221-ESH, 2006 WL 2772860, 2006 U.S. Dist. LEXIS 69130 (D.D.C. Sept. 27, 2006).

11.    On October 27, 2006, BONY filed a notice of appeal. *Bank of New York v. FDIC*, No. 06-5358 (D.C. Cir.).

**BONY Seizes the FDIC Receiver's Funds**

12.    On November 9, 2006, the Noteholders instructed BONY to issue a notice of default on the securitization transaction on or before November 14, 2006, to seize the assets that would otherwise be distributed to the FDIC Receiver pending further orders from the Noteholders, to file a lawsuit against the FDIC Receiver on or before November 17, 2006, and to

---

[7]    The only other federal court with jurisdiction is the District of Arizona, where NextBank had its principal place of business.

4

retain the Noteholders' counsel as co-counsel for BONY.  (Attached as an exhibit to the
Noteholders' Answer.)

       13.     On November 14, 2006, BONY sent the FDIC Receiver the "Notice of
Default under Master Indenture and Notice of Acceleration for Both Series 2000-1 Notes and
Series 2001-1 Notes." The alleged default was triggered by actions taken by the FDIC Receiver
when it was appointed receiver on February 7, 2002 — the same action that BONY sued over in
federal court in *Bank of New York v. FDIC*, No. 03-1221-ESH (D.D.C.).

       14.     On November 15, 2006, the FDIC Receiver's counsel sent a letter to
BONY's counsel explaining that the Notice of Default had no effect for reasons explained in
*Bank of New York v. FDIC*, ___ F. Supp. 2d ___, No. 03-1221-ESH, 2006 WL 2772860, 2006
U.S. Dist. LEXIS 69130 (D.D.C. Sept. 27, 2006).

       15.     In response, on November 16, 2006 (at 8:23 p.m.), the Noteholders issued
their own purported "Notice of Default under Master Indenture and Notice of Acceleration for
Both Series 2000-1 Notes and Series 2001-1 Notes."

       16.     On November 16, 2006 (at approximately 10:35 p.m.), BONY's counsel
emailed the FDIC Receiver's counsel a "courtesy copy" of the interpleader complaint filed by
BONY in *Bank of New York v. First Millennium, Inc.*, No. 650234/2006 (N.Y. Sup. Ct.).

       17.     On November 17, 2006, the FDIC Receiver filed a lawsuit and sought a
temporary restraining order that would prevent improper distribution of funds subject to orders
and the judgment in the three-year-old litigation. *See FDIC v. Bank of New York*, No. 06-1975-
ESH (D.D.C.). (*See* Christensen Decl. Ex. 3.)  That case was assigned to Judge Huvelle as a
related case.  That afternoon, she scheduled a telephone conference with counsel for 12:45 p.m.
on November 20, 2006. As Judge Huvelle requested at that conference, the FDIC Receiver's

counsel sent the Noteholders' counsel notice by Federal Express that the suit had been filed and a copy of the papers filed with that Court.

18.     On November 21, 2006, BONY stipulated that Judge Huvelle had jurisdiction over the funds in question in this action and that nothing shall happen to them unless and until Judge Huvelle rules on their disposition. BONY signed a stipulation filed with the court that "funds in the possession, custody, or control of BNY as Indenture Trustee of the Trust will not be transferred or distributed in any way (other than payment of the fees and expenses of The First National Bank of Omaha as Servicer) pending an order from this Court regarding the distribution or transfer of such funds." (*See* Christensen Decl. Ex. 4.)

19.     On November 28, 2006, Judge Huvelle entered the following minute order:

> Because it appears that a substantial part of the evidence offered on [the FDIC Receiver's] application for a preliminary injunction will be relevant to the merits of this action, the Court hereby advises counsel of its intent to consolidate the preliminary injunction hearing and the merits trial pursuant to Federal Rule of Civil Procedure 65(a).

(Christensen Decl. Ex. 3.)

20.     On November 30, 2006, the FDIC Receiver filed a motion for a stay of all other actions pursuant to the All Writs Act, 28 U.S.C. § 1651 (2006). (*See* Christensen Decl. Ex. 5.) On December 1, 2006, Judge Huvelle requested that the FDIC Receiver first request the other parties consent to a stay (BONY consented, the Noteholders did not) and file a motion for a stay with this Court.

21.     On December 1, 2006, Judge Huvelle set the schedule for briefing the FDIC Receiver's request for a permanent injunction and BONY's motion to dismiss: BONY must file any supplemental papers on December 6, 2006; the FDIC Receiver may file a response

6

on December 15, 2006; and BONY may file a reply by 12 noon on December 21, 2006. Judge Huvelle intends to schedule oral argument during the week of January 8, 2007.

**The Case Before This Court**

22.     On or about November 20, 2006, the Noteholders filed over 400 pages of an answer to the interpleader complaint and a motion for summary judgment in the New York state court. The Noteholders did not serve copies of the papers on counsel for the FDIC Receiver herein or otherwise provide notice that the motion had been filed. Instead, the motion was sent only to the New York branch office of the FDIC, which has had nothing to do with the FDIC's work on the NextBank matter over the past five years.

23.     The Noteholders's papers nowhere mention the actions pending in the District of Columbia. In fact, the Noteholders, in a sworn affidavit in support of their motion for summary judgment — which was signed by their portfolio manager who participated in the mediation in *Bank of New York v. FDIC*, No. 03-1221-ESH, and who signed the settlement agreement — stated that they "know of no defense of any other party that would entitle such party superior rights to the Noteholders in the assets that are the subject to this interpleader." (Schockling Aff. ¶ 39 (attached in support of the Noteholders' Motion for Summary Judgment)).)

24.     On November 21, 2006, the FDIC Receiver removed the New York state action to this court.[8] According to the FDIC Receiver's conservative calculation, under the

---

[8]   The FDIC Receiver believes that this Court and the state court do not have jurisdiction to consider the merits of this case, 12 U.S.C. § 1821(d)(13)(D), and that venue is not proper before any court in New York, 12 U.S.C. § 1821(d)(6). At the moment, however, the FDIC Receiver is most concerned about the prejudice of having to relitigate what has already been

(Footnote continued on next page)

DC FDIC motion to stay (SDNY) (3).DOC

Federal Rules of Civil Procedure and the Local Rules of the Southern District of New York, the

FDIC Receiver must oppose the Noteholders' motion for summary judgment on or before

December 5, 2006 and must answer or file a motion to dismiss the complaint on or before

December 11, 2006.

      25.    On November 29, 2006, Hughes Hubbard first received copies of the

Noteholders' voluminous motion papers from the FDIC, after they had been routed from the

FDIC's New York office to the FDIC's Washington, D.C. office over the Thanksgiving holiday.

      26.    On November 29, 2006, the FDIC Receiver asked BONY to dismiss this

interpleader action because BONY had stipulated that it would not transfer or distribute the

interpleaded funds to the Noteholders or the FDIC Receiver until Judge Huvelle enters an order

"regarding the distribution or transfer of such funds." On November 30, 2006, BONY's counsel

reported that the Noteholders have instructed BONY to proceed with the litigation in New York

and that BONY intends to follow that instruction.

## ARGUMENT

### THIS CASE SHOULD BE STAYED PENDING
### A DECISION IN THE RELATED CASES

**A.**    **A Stay Will Prevent An End Run Around Another Federal Court**

      A stay will prevent BONY and the Noteholders from an end run around Judge

Huvelle's orders and judgment. The Noteholders are angry that they lost in litigation against the

---

(Footnote continued from previous page)

decided and is merely asking the Court to stay this case to avoid the substantial briefing that
would otherwise be required on these issues.

DC FDIC motion to stay (SDNY) (3).DOC

FDIC Receiver in *Bank of New York v. FDIC*, ___ F. Supp. 2d ___, No. 03-1221-ESH, 2006 WL

2772860, 2006 U.S. Dist. LEXIS 69130 (D.D.C. Sept. 27, 2006), *appeal docketed*, No. 06-5358

(D.C. Cir. Nov. 3, 2006). Because the Noteholders have no right under the contracts to file a suit

in their own name, they instructed their Trustee (BONY) to sue them in this interpleader action

in order to allow them to litigate directly against the FDIC Receiver. They chose New York state

court to avoid the jurisdiction where they already litigated and lost. Allowing this case to go

forward now would reward their efforts to circumvent another federal court's rulings.

**B.    A Stay Will Not Prejudice BONY**

                BONY will suffer no prejudice by staying this case. *See Kappel v. Comfort*, 914

F. Supp. 1056, 1058 (S.D.N.Y. 1996).[9] The issues raised in the suit removed to this Court are

proceeding expeditiously before Judge Huvelle. She is already exceedingly familiar with the

complicated transaction at the heart of these matters. The general issue before her is whether

BONY's recent seizure of funds that BONY attempted to interplead violates the voluminous and

complex transaction documents, the settlement agreement among the parties before Judge

Huvelle, and her orders and final judgment. Judge Huvelle has consolidated the FDIC

---

[9]  When deciding whether to grant a stay, courts in this district consider five factors:

> (1) the private interests of the plaintiffs in proceeding
> expeditiously with the civil litigation as balanced against the
> prejudice to the plaintiffs if delayed; (2) the private interests of and
> burden on the defendants; (3) the interests of the courts; (4) the
> interests of persons not parties to the civil litigation; and (5) the
> public interest.

*Kappel v. Comfort*, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996) (quoting *Volmar Distributors v. New York Post Co.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993)). "Balancing these factors is a case-by-case determination, with the basic goal being to avoid prejudice." *Id.*

DC FDIC motion to stay (SDNY) (3).DOC

Receiver's request for a preliminary injunction with the hearing on a permanent injunction and set a briefing schedule. Briefing will be completed on December 21, 2006, and Judge Huvelle intends to schedule oral argument during the week of January 8, 2007. Judge Huvelle stated repeatedly that she intends to resolve the issue by the end of the January 2007.

A stay of this case will not prejudice BONY since it has relinquished control over the interpleaded funds to Judge Huvelle. *FDIC v. Bank of New York*, No. 06-1975-ESH. That court's ruling should dispose of the issues presented to this Court. In the meantime, however, there is nothing for the parties to litigate before this Court.

## C.    A Stay Will Not Burden Defendants

The private interests of and burdens on Interpleader Defendants supports granting a stay. *See Kappel*, 914 F. Supp. at 1058. The Noteholders will suffer no burden by granting a stay. A stay would maintain the status quo following BONY's seizure of funds on the Noteholders' instruction. Those funds may not be distributed to the Noteholders or the FDIC Receiver until Judge Huvelle enters an order "regarding the distribution or transfer of such funds." All parties will have relief next month. The Noteholders can gain nothing by pursuing the litigation here before Judge Huvelle rules. If the stay were denied, however, the FDIC Receiver would suffer the burden of relitigating what has already been decided after three years of litigation. *See Broadcast Music, Inc. v. CBS Inc.*, 424 F. Supp. 799, 802 (S.D.N.Y. 1976) ("The waste inherent in the enormously expensive relitigation of matters which have been definitively determined constitutes irreparable injury in itself.") The FDIC Receiver should not be put to the burden of defending itself against duplicative lawsuits seeking conflicting results.

10

**D.    The Courts' Interests Support a Stay**

       The interest of the judiciary support granting a stay. *See Kappel*, 914 F. Supp. at 1058. This Court has an "obligation to assure that this court's exercise of its jurisdiction does not have an avoidably harmful impact on cases already pending before another court." *Id.* at 1059. This case is an end run around the orders and judgment entered in *Bank of New York v. FDIC*, ___ F. Supp. 2d ___, No. 03-1221-ESH, 2006 WL 2772860, 2006 U.S. Dist. LEXIS 69130 (D.D.C. Sept. 27, 2006). The courts have no interest in indulging the Noteholders' efforts to game the judicial system. *See Broadcast Music, Inc.*, 424 F. Supp. at 802 ("[T]he courts, both federal and state, are burdened enough without having their calendars cluttered by the redetermination of matters already decided or being used as tactical mechanisms in the wars between economic giants.").

**E.    Public Interest Supports A Stay**

       A stay of this litigation will not affect others beyond the interest of the general public, which supports a stay. *See Kappel*, 914 F. Supp. at 1058. The FDIC Receiver's mission is to act in the public interest to preserve and promote confidence in the U.S. financial system by insuring bank deposits, by identifying, monitoring and addressing risks to the deposit insurance funds, and by limiting the effect on the economy and the financial system when a bank fails. That interest is frustrated when the FDIC Receiver is required to spend taxpayer money defending itself in an improperly filed suit that is attempting to relitigate what has already been decided and is on appeal. Judge Huvelle has made it very clear that the taxpayers should be spared the expense of having the FDIC Receiver litigate in New York when the issue are properly before her and will be resolved shortly.

DC FDIC motion to stay (SDNY) (3).DOC

## CONCLUSION

For these reasons, the FDIC Receiver requests that this Court enter an order

staying this action pending further order of this Court following resolution of the issues before

Judge Huvelle.

Dated: December 4, 2006

HUGHES HUBBARD & REED LLP,

By: _____

George A. Davidson (GD3422)
One Battery Park Plaza
New York, New York 10004-1482
Telephone: (212) 837-6000
Facsimile: (212) 422-4726

Of Counsel:

Tom M. Reeves (KS Sup. Ct. No. 7259)
    Counsel
Federal Deposit Insurance Corporation
550 17th Street, N.W., Room VS-D-7068
Washington, D.C. 20429
Telephone: (703) 562-2433
Facsimile: (703) 562-2475
E-mail: TReeves@FDIC.gov

*Attorneys for Interpleader Defendant Federal
Deposit Insurance Corporation, in its Capacity
as Receiver for NextBank, N.A.*

12

EXHIBIT 3

George A. Davidson (GD3422)
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004-1482
Telephone: (212) 837-6000
Facsimile: (212) 422-4726

Scott H. Christensen (SC1279)
HUGHES HUBBARD & REED LLP
1775 I Street, N.W.
Washington, D.C. 20006-2401
Telephone: (202) 721-4600
Facsimile: (202) 721-4646

Tom M. Reeves (KS Sup. Ct. No. 7259)
Federal Deposit Insurance Corporation
550 17th Street, N.W., Room VS-D-7068
Washington, D.C. 20429
Telephone: (703) 562-2433
Facsimile: (703) 562-2475

Attorneys for Interpleader Defendant Federal Deposit Insurance
Corporation, in its Capacity as Receiver for NextBank, N.A.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - -x
                                                 :
THE BANK OF NEW YORK, in its capacity as         :
Indenture Trustee of the NextCard Credit Card    :
Master Note Trust,                               :
                                                 :
                        Interpleader Plaintiff,  :    No.: 06-CIV-13388-CSH
                                                 :
            -against-                            :
                                                 :    **REPLY IN SUPPORT OF THE**
FIRST MILLENNIUM, INC., MILLENNIUM              :    **FDIC RECEIVER'S MOTION**
PARTNERS, L.P., RMK ADVANTAGE FUND,             :    **FOR A STAY**
and FEDERAL DEPOSIT INSURANCE                    :
CORPORATION,                                     :
                                                 :
                        Interpleader Defendants. :
                                                 :
- - - - - - - - - - - - - - - - - - - - - - - - -x

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION ...................................................................................................... 1

ARGUMENT ............................................................................................................ 1

I.    BONY SUED ON THE NOTEHOLDERS' BEHALF IN THE DISTRICT
      OF COLUMBIA ................................................................................................ 1

      A.    BONY Filed the "First-Filed" Case on June 5, 2003 in the District of
            Columbia........................................................................................... 1

      B.    The Interests of Justice Warrant Deferring to the D.C. Court .................. 4

II.   BONY REPRESENTS THE NOTEHOLDERS................................................... 6

III.  THIS CASE SHOULD BE STAYED ................................................................. 7

      A.    This Court Lacks Jurisdiction .............................................................. 7

      B.    No Prejudice to BONY ....................................................................... 9

      C.    No Prejudice to the Noteholders........................................................... 9

      E.    No Prejudice to the Public Interest ....................................................... 9

CONCLUSION........................................................................................................ 10

## TABLE OF AUTHORITIES

Page

### CASES

*Bank of New York v. FDIC*, 453 F. Supp. 2d 82 (D.D.C. 2006), *appeal docketed*, No. 06-5358 (D.C. Cir. Oct. 27, 2006) ........................................................................................ *passim*

*Broadcast Music, Inc. v. CBS Inc.*, 424 F. Supp. 799 (S.D.N.Y. 1976) .......................................1

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ...............................................6

*Columbia Pictures Industries, Inc. v. Schneider*, 435 F. Supp. 742 (S.D.N.Y. 1977)................4, 5

*Corcoran v. Chesapeake & Ohio Canal Co.*, 94 U. S. 741 (1876)................................................6

*Donaldson, Lufkin & Jenrette, Inc. v. Los Angeles County*, 542 F. Supp. 1317 (S.D.N.Y. 1982) ........................................................................................................................................2

*Elwell v. Fosdick*, 134 U.S. 500 (1890) ........................................................................................6

*Kersh Lake Drainage Dist. v. Johnson*, 309 U.S. 485 (1940) .......................................................7

*National Patent Development Corp. v. American Hospital Supply Corp.*, 616 F. Supp. 114 (S.D.N.Y. 1984) ..................................................................................................................4

*Ontel Products, Inc. v. Project Strategies Corp.*, 899 F. Supp. 1144 (S.D.N.Y. 1995) .................1

*Raytheon Co. v. National Union Fire Insurance Co.*, 306 F. Supp. 2d 346 (S.D.N.Y. 2004) ......................................................................................................................................4,5

*Richter v. Jerome*, 123 U.S. 233 (1887) .......................................................................................6

*Sotheby's Inc. v. Garcia*, 802 F. Supp. 1058 (S.D.N.Y. 1992)......................................................7

*William Gluckin & Co. v. International Playtex Corp.*, 407 F.2d 177 (2d Cir. 1969) ....................4

### STATUTES AND REGULATIONS

12 U.S.C. § 1821(d)(6) .............................................................................................................5, 8

12 U.S.C. § 1821(d)(13)(D).......................................................................................................7, 8

### MISCELLANEOUS

Restatement (Second) of Judgments § 41(1)(a) (2006) ..................................................................7

1 Jason H.P. Kravitt, ed., *Securitization of Financial Assets* § 5.06[A][4] (2d ed. Supp. 2005) .........................................................................................................................................9

DC 562242_1

**INTRODUCTION**

In this case, the same parties are going after the same money from the same pocket on the same theory as a case filed over three years ago, decided three months ago, and now on appeal in the District of Columbia. *Bank of New York v. FDIC*, 453 F. Supp. 2d 82 (D.D.C. 2006), *appeal docketed*, No. 06-5358 (D.C. Cir. Oct. 27, 2006). As the D.C. Court has already found, BONY served as the "indenture trustee for the interests of investors" who purchased notes issued by the NextBank trust and the BONY "represented the interests" of these noteholders 453 F. Supp. 2d at 84, 86; *see id.* at 89. A stay of this case is the most efficient way to avoid prejudice to any party. In contrast, if this case were not stayed, the FDIC Receiver would be prejudiced by having to relitigate what has already been decided. *See Broadcast Music, Inc. v. CBS Inc.*, 424 F. Supp. 799, 802 (S.D.N.Y. 1976). Judge Huvelle, who worked on the case for over two years, has scheduled a hearing on the merits of the FDIC Receiver's request to permanently enjoin BONY from relitigating court orders, the settlement agreement, and contract documents. This case should be stayed pending that outcome.

**ARGUMENT**

**I.**

**BONY SUED ON THE NOTEHOLDERS' BEHALF IN THE DISTRICT OF COLUMBIA**

**A.     BONY Filed the "First-Filed" Case on June 5, 2003 in the District of Columbia**

The "first-filed" case on these issues was filed by BONY itself in the District of Columbia in June 2003, *Bank of New York v. FDIC*, 03-1221-ESH (D.D.C.). As a result, Judge Huvelle should decide BONY and the Noteholders' "first-filed" contention that BONY has now briefed for her. *See Ontel Products, Inc. v. Project Strategies Corp.*, 899 F. Supp. 1144, 1150 n.9 (S.D.N.Y. 1995) ("[T]he court in which the first-filed case was brought decides the question of whether or not the first-filed rule, or alternatively, an exception to the first-filed rule,

applies."); *Donaldson, Lufkin & Jenrette, Inc. v. Los Angeles County*, 542 F. Supp. 1317, 1321

(S.D.N.Y. 1982) ("[T]he district court hearing the first-filed action should determine whether

special circumstances dictate that the first action be dismissed in favor of a later-filed action.").

The Noteholders' attempt to distinguish the case first filed in June 2003 from the

interpleader action misrepresents the nature of the two suits and lacks citations to support their

baseless contentions.  Setting aside whether the Noteholders questions are even the right ones for

the Court to consider, the Noteholders' chart should be corrected as follows:

| ISSUE | 2003 FDIC CONVERSION SUIT | 2006 INTERPLEADER ACTION |
|---|---|---|
| Involvement of Issuer in Suit | ~~Neither the Issuer, nor the Issuer's Collateral, were involved in the 2003 FDIC Conversion Suit~~ BONY alleged that the FDIC Receiver "converted the assets of the Trust [i.e., Issuer] ... in violation of ... the property rights of ... the Noteholders and [BONY], on their behalf." (Compl. ¶ 75.) | ~~This is an *in rem* action solely involving Collateral granted by the Issuer for benefit of Noteholders~~ This is an "action seeking a determination of rights with respect to" the assets of a failed bank for which the FDIC has been appointed receiver and "relating to [an] act ... of ... the [FDIC] as receiver." 12 U.S.C. § 1821(d)(13)(D). |
| Does Suit involve Liability/Obligations of Issuer | ~~No~~ Yes. BONY alleged that the FDIC Receiver "converted the assets of the Trust [i.e., Issuer] ... in violation of ... the property rights of ... the Noteholders and [BONY], on their behalf." (Compl. ¶ 75.) | Yes |
| Does Suit Involve Effect of Early Amortization Period/*Ipso Facto* Clause upon NextBank Receiver | Yes BONY alleged that "the appointment of the FDIC as receiver for NextBank [on February 7, 2002] constituted a Trust Redemption Event" which triggered the commencement of an "Amortization Period." (Compl. ¶ 73.) | ~~No~~ Yes. The recent Notice of Default stated "NextBank, N.A.'s entry into receivership on February 7, 2002 constituted a Trust Redemption Event which triggered the commencement of the Early Amortization Period." (BONY Ex. 4 at 2; Noteholders Ex. H at 2.) |
| Does Suit Involve Effect of Early Amortization Period/*Ipso Facto* Clause upon Issuer (Who is Not in Receivership or bankruptcy) | ~~No~~ Yes. BONY alleged that "the appointment of the FDIC as receiver for NextBank [on February 7, 2002] constituted a Trust Redemption Event" which triggered the commencement of an "Amortization Period" (Compl. ¶ 73), and "the FDIC owes the Trust" [i.e., Issuer] as a result (*id.* ¶ 75). | Yes |
| Did Court rule that NextCard Receivership was not an Early Amortization Event | ~~Occurrence of Early Amortization Event not an issue; effect of such Event upon NextBank Receiver is issue~~ "[T]he Court concludes that the early amortization clause is unenforceable against the FDIC." 453 F. Supp. 2d at 85. | ~~Occurrence of Early Amortization Event not an issue; effect of such Event upon Issuer is issue~~ Not applicable. |

2

| ISSUE | 2003 FDIC CONVERSION SUIT | 2006 INTERPLEADER ACTION |
|---|---|---|
| Does Suit Involve Remedies that Are Available Against Issuer or its Collateral | ~~No~~ Yes. The Court granted judgment in favor of the FDIC Receiver on BONY's claim that "the appointment of the FDIC as receiver for NextBank constituted a Trust Redemption Event" which triggered the commencement of an "Amortization Period" (Compl. ¶ 73), and on the claim that "the FDIC owes the Trust" [i.e., Issuer] as a result (*id.* ¶ 75). | Yes |
| Does Suit Involve Conversion Claims against NextBank Receiver | Yes | No  BONY and the Noteholders lost on their conversion claims before the D.C. Court and are asserting superficially different claims here. |
| Does Suit Involve Entitlement of NextBank Receiver to Past Transferor Interest that Accrued Before Event of Default & Acceleration | Yes | ~~No~~ Yes. The Noteholders seek over $112 million in principal not paid between February and July 2002, which involves the funds distributed to and losses incurred by the FDIC Receiver. |
| Does Suit Involve the Effect of NextBank Receiver's Repudiation of a Contract upon Entitlements Granted to NextBank Receiver under Such Contract | Yes | ~~No~~ Yes. The Noteholders seek over $112 million in principal not paid between February and July 2002, when the FDIC Receiver repudiated contracts pursuant to 12 U.S.C. § 1821(e)(1), which inevitably involves the funds distributed to and losses incurred by the FDIC Receiver. |
| Does Suit Involve Entitlement of NextBank Receiver to Transferor Interest that Would Have Accrued in Future But For Event of Default & Acceleration and Enforcement of Remedies Against Collateral | ~~No~~ Yes. Judge Huvelle dismissed BONY and the Noteholders' claim to the Transferor Interest on November 23, 2004; the parties released all claims other than Count Six in the July 27, 2005 Settlement Agreement; and Judge Huvelle held that "the early amortization clause is unenforceable against the FDIC," 453 F. Supp. 2d at 85. | Yes |
| Does Suit Involve What Remedies Are Available Against Issuer | ~~No~~ Yes. "The Trust Agreement designated NextBank the 'owner' of the trust [i.e., Issuer] and, as such, accorded NextBank an 'undivided beneficial interest' in the trust's [i.e., Issuer's] assets." 453 F. Supp. 2d at 87. "As receiver, the FDIC succeeded to 'all [NextBank's] rights, titles, powers, and privileges.' 12 U.S.C. § 1821(d)(2)(A)(I) (2006). Further, the FDIC's appointment obligated it to 'preserve and conserve [NextBank's] assets and property." *Id.* § 1821(d)(2)(B)(iv)." 453 F. Supp. 2d at 85. | Yes |

| ISSUE | 2003 FDIC CONVERSION SUIT | 2006 INTERPLEADER ACTION |
|---|---|---|
| Are the Noteholders Indispensable Parties to Such Suit | No BONY filed the suit on behalf of the Noteholders as their trustee. | ~~Yes~~ No. This suit is an effort to circumvent the Noteholders' failure to satisfy the contractual requirements that would allow them to sue in their own name. (Master Indenture §§ 5.04(f)&(g), 5.07.) |
| Could the Suit Have Been Brought in New York | No | ~~Yes~~ No. The suit is barred by the statute of limitations, 12 U.S.C. §§ 1821(d)(6), 1821(d)(13)(D), and other jurisdictional bars. |
| Could the Suit Have Been Brought in the D.C. Court | Yes | No ~~(Neither Noteholders nor Issuer are Subject to Jurisdiction in D.C.)~~ The suit is barred by the statute of limitations, 12 U.S.C. §§ 1821(d)(6), 1821(d)(13)(D). |

(*See* Noteholders' Opp. at 28.)

**B.    The Interests of Justice Warrant Deferring to the D.C. Court**

Even if the question were between the case that BONY filed in New York

Supreme Court in the middle of the night on November 16 and the case the FDIC Receiver filed

with Judge Huvelle on the afternoon of November 17, the "first-filed" rule should not be a "rigid

mechanical solution." *William Gluckin & Co. v. International Playtex Corp.*, 407 F.2d 177, 179

(2d Cir. 1969); *see National Patent Development Corp. v. American Hospital Supply Corp.*, 616

F. Supp. 114, 118 (S.D.N.Y. 1984) ("the courts should be concerned with what the interests of

justice require and not with who won the race"). This Court recognizes several exceptions that

warrant deferring to the second-filed case: (1) "when the first suit constitutes an improper

anticipatory filing"; (2) "where the first suit was filed as a result of forum shopping"; (3) "where

the two actions were filed within a short span of time, the court may afford a diminished degree

of deference to the forum of the first filing"; and (4) where "the balance of convenience favors

proceeding in the second forum." *Raytheon Co. v. National Union Fire Insurance Co.*, 306 F.

Supp. 2d 346, 352-53 (S.D.N.Y. 2004); *Columbia Pictures Industries, Inc. v. Schneider*, 435 F.

Supp. 742, 751 (S.D.N.Y. 1977).

First, this suit is an improper anticipatory filing by BONY. On November 15, 2006, the FDIC Receiver "indicated that it is considering legal action" (Interpleader Compl. ¶ 12 (BONY Ex. 1)). On November 16, 2006, the FDIC Receiver requested return of its funds by close of business. In response, the Noteholders suggested that BONY file an interpleader action. (*See* 11/20/06 BONY DC Br. at 9). BONY filed such a lawsuit late that night in anticipation of legal action by the FDIC Receiver.

Second, this suit was filed as a result of forum shopping by BONY and the Noteholders. BONY knew that only a federal court in either the District of Columbia or where NextBank, N.A. had its principal place of business (Arizona) could have jurisdiction over this matter, *see* 12 U.S.C. § 1821(d)(6)(A), because it relied on this statute in its original complaint in the District of Columbia (Noteholders Ex. E ¶¶ 2, 3, 41.) On November 16, 2006, the Noteholders suggested that BONY "bring a [sic] interpleader action in New York—and only in New York" (11/20/06 BONY DC Br. at 9), and BONY complied.

Third, the two actions were filed less than 24 hours apart, so the Court may defer to the D.C. case. *See, e.g., Raytheon Co.*, 306 F. Supp. 2d at 354 ("the Massachusetts action was filed only two days before the New York action"); *Columbia Pictures*, 435 F. Supp. at 748 ("only six days elapsed between the filing of the two complaints; no discovery or other pretrial proceedings have occurred in either district").

Fourth, the balance of convenience favors proceeding in the second forum. Judge Huvelle has already waded through the complicated transaction documents and applicable law. She has reviewed and decided issues relating to: the relationship among NextBank, BONY, the Noteholders, and the FDIC Receiver (*see Bank of New York v. FDIC*, 453 F. Supp. 2d at 85-86); the principles of securitization (*see id.* at 86); the transaction documents, including the Trust

5

Agreement, the Transfer and Servicing Agreement, the Master Indenture, the Indenture

Supplements, the Administration Agreement (*see id.* at 86-88); the marketing of NextBank's

securitized assets, including the offering memoranda and opinion letters (*see id.* at 88-89);

NextBank's receivership (*see id.* at 89-91); the statutory framework, regulations, and legislative

history (*see id.* at 92-99); and related issues of New York contract law (*see id.* at 99-101).

## II.
## BONY REPRESENTS THE NOTEHOLDERS

Notwithstanding their baseless claim that the Noteholders are not represented in

the District of Columbia, BONY has represented and continues to represent the Noteholders

there. As Judge Huvelle found, BONY "represents the interests of the Noteholders." *Bank of*

*New York v. FDIC*, 453 F. Supp. 2d 82, 88 (D.D.C. 2006); *see id.* at 84, 89.

There is no question that the Noteholders are bound by the District of Columbia

decision in the case that BONY represented them. *See, e.g., Class Plaintiffs v. City of Seattle*,

955 F.2d 1268, 1284 (9th Cir. 1992) (Chemical Bank was in privity with bondholders because it

was authorized to litigate claims on behalf of the bondholders and acted as a representative of

their interests). Indeed, the relationship between a trustee and the bondholders it represents is a

classic example of privity in American law. *See Elwell v. Fosdick*, 134 U.S. 500, 512 (1890)

("The trustee represented the bond-holders, not only in the proceedings which resulted in the

entry of the decree, so that the bondholders were not necessary parties, but he also bound them

by his release of errors."); *Richter v. Jerome*, 123 U.S. 233, 246 (1887) ("Whatever forecloses

the trustee, in the absence of fraud or bad faith, forecloses them. This is the undoubted rule.");

*Corcoran v. Chesapeake & Ohio Canal Co.*, 94 U. S. 741, 745 (1876) ("It would be a new and

very dangerous doctrine in the equity practice to hold that the *cestui que trust* is not bound by the

decree against his trustee in the very matter of the trust for which he was appointed.");

6

Restatement (Second) of Judgments § 41(1)(a) (2006) ("A person who is not a party to an action but who is represented by a party is bound by and entitled to the benefits of a judgment as though he were a party. A person is represented by a party who is . . . [t]he trustee of an . . . interest of which the person is a beneficiary."); *see also Kersh Lake Drainage Dist. v. Johnson*, 309 U.S. 485, 491 (1940) ("It has been held that bondholders are not necessary parties to and are bound by the decree—even if adverse to their interests—in litigation wherein an indenture trustee under a bond issue is a party and exercises in good faith and without neglect his contractual authority to represent and assert the lien securing the issue.").

BONY relies on *Sotheby's Inc. v. Garcia*, 802 F. Supp. 1058 (S.D.N.Y. 1992), which could not be further from the facts of this case. (BONY Opp. at 8-10.) Sotheby's did not have a fiduciary duty to represent either Garcia or the Republic of the Philippines in litigation and was not following their directions in litigation. Here, BONY is contractually obligated to act on behalf of the Noteholders in any litigation involving the Trust. (Noteholders Ex. A, § 5.04(g).) BONY and the Noteholders agreed that BONY would represent the Noteholders in any legal action and the Noteholders need not be parties to any such action. (*Id.* § 5.04(f) & (g).) As a result, complete relief was already granted to the FDIC Receiver, *Bank of New York v. FDIC*, 453 F. Supp. 2d 82 (D.D.C. 2006), and may be granted in the recently-filed related litigation filed in the District of Columbia.

**III.**
**THIS CASE SHOULD BE STAYED**

**A.     This Court Lacks Jurisdiction**

The assertion by BONY and the Noteholders that this Court is the only one with jurisdiction over this matter is incorrect; no court has jurisdiction because the statute of limitations on the interpleader action ran over three years ago. *See* 12 U.S.C. § 1821(d)(13)(D) (2006).

7

BONY's interpleader action seeks a determination of rights with respect to the assets of a failed bank based on actions by the FDIC Receiver. BONY is suing the FDIC Receiver in its capacity as "receiver for . . . NextBank, N.A." (Interpleader Compl. ¶ 7) and is seeking determination of the FDIC Receiver's rights to funds as a result of the FDIC Receiver's actions in February 2002. Congress has expressly limited the jurisdiction of the federal courts to judicial review of the FDIC Receiver's determination of claims. *See* 12 U.S.C. § 1821(d)(6)(B). If a claimant fails to file suit before the 60-day statute of limitations runs, § 1821(d)(6)(A), "the claim shall be deemed to be disallowed . . ., such disallowance shall be final, and the claimant shall have no further rights or remedies with respect to such claim." § 1821(d)(6)(B). Unless a claim has gone through the claims procedure, "no court shall have jurisdiction over" (i) "<u>any action seeking a determination of rights with respect to</u>" the assets of a failed bank for which the FDIC has been appointed receiver or (ii) "any claim relating to <u>any act or omission of . . . the [FDIC] as receiver</u>." § 1821(d)(13)(D)(i) (emphasis added). Here, the claims period ended on October 8, 2002, as BONY recognized when it filed claims with the FDIC Receiver. (*See* Noteholders Ex. E ¶ 38.) The FDIC Receiver disallowed most of those claims on April 11, 2003, and BONY filed suit in the District of Columbia less than 60 days later, on June 5, 2003.

Even if the interpleader action could have been brought at this late date, it could only have been filed in a federal court in either the District of Columbia or Arizona, the state where NextBank had its principal place of business. *See* 12 U.S.C. § 1821(d)(6)(A). BONY is fully aware of this because it relied on this statute in its original Complaint. (Noteholders Ex. E ¶¶ 2, 3, 41.) Litigating in the District of Columbia is not "forum shopping"; it is the law.

Finally, Judge Huvelle has jurisdiction over the funds seized by BONY on the Noteholders' instruction—the *res* at issue in this case. (Christensen Decl. Ex. 4.) BONY tells

this Court that, in order to avoid "a temporary restraining order, BNY agreed not to transfer or distribute funds" at issue in this case "pending further order from the DC Court." (BONY Opp. at 5-6.) BONY's effort now to disavow its stipulation and representations to another federal court (*see id.*) should be ignored.

**B.    No Prejudice to BONY**

BONY is not prejudiced by having to comply with its fiduciary duties to represent the Noteholders in the District of Columbia. (BONY Opp. at 12-13.) BONY admits that it is bound by its fiduciary duties to comply with the Noteholders instructions and has been following their instructions in this action and in the original action in the District of Columbia. BONY is equally obligated to do so in action presently pending in the D.C. Court.

**C.    No Prejudice to the Noteholders**

The Noteholders are not prejudiced by BONY representing them (Noteholders Opp. at 33-37); that is what they bargained for when they purchased notes subject to the transaction documents.

**E.    No Prejudice to the Public Interest**

The Noteholders' claims about FIRREA (*see* Noteholders Opp. at 39-40) and the securitization industry (*see id.* at 40-41) were asserted by a so called "expert" witness in the original District of Columbia litigation, and disregarded by Judge Huvelle as testimony of "a professional lobbyist." 453 F. Supp. 2d at 99. Moreover, in his book, the witness explained that the securitization industry has already found ways around the triggers in the NextBank matter, so that the resolution of the NextBank situation has no consequences for the industry going forward. *See* 1 Jason H.P. Kravitt, ed., *Securitization of Financial Assets* § 5.06[A][4] (2d ed. Supp. 2005). In any event, the pecuniary interests of the securitization industry to avoid government regulation is not the interest of the public represented by the FDIC Receiver.

DC 562242_1

## CONCLUSION

For these reasons, the FDIC Receiver requests that this Court enter an order

staying this action pending further order of this Court following resolution of the issues before

Judge Huvelle.

Dated:  December 19, 2006

HUGHES HUBBARD & REED LLP,

By: _____
George A. Davidson (GD3422)
One Battery Park Plaza
New York, New York 10004-1482
Telephone:  (212) 837-6000
Facsimile:  (212) 422-4726

Of Counsel:

Tom M. Reeves (KS Sup. Ct. No. 7259)
   Counsel
Federal Deposit Insurance Corporation
550 17th Street, N.W., Room VS-D-7068
Washington, D.C. 20429
Telephone:  (703) 562-2433
Facsimile:  (703) 562-2475
E-mail:  TReeves@FDIC.gov

Scott H. Christensen (SC1279)
HUGHES HUBBARD & REED LLP
1775 I Street, N.W.
Washington, D.C.  20006-2401
Telephone:  (202) 721-4600
Facsimile:  (202) 721-4646

*Attorneys for Interpleader Defendant Federal
Deposit Insurance Corporation, in its Capacity
as Receiver for NextBank, N.A.*

DC 562273_1