UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FEDERAL DEPOSIT INSURANCE
CORPORATION, in its Capacity as
Receiver for NextBank, N.A.,

                                    Plaintiff,

                v.

THE BANK OF NEW YORK, as Indenture
Trustee of the NextCard Credit Card Master
Note Trust,

                                    Defendant.

Case No. 06-CV-1975-ESH

Hon. Ellen Segal Huvelle

## REPLY IN SUPPORT OF THE FDIC RECEIVER'S MOTION FOR JUDGMENT

Of Counsel:

Tom M. Reeves (KS Sup. Ct. No. 7259)
  Counsel
Federal Deposit Insurance Corporation
550 17th Street, N.W., Room VS-D-7068
Washington, D.C. 20429
Telephone:  (703) 562-2433
Facsimile:  (703) 562-2475
E-mail:  TReeves@FDIC.gov

Dennis S. Klein, D.C. Bar No. 361457
Scott H. Christensen, D.C. Bar No. 476439
HUGHES HUBBARD & REED LLP
1775 I Street, N.W.
Washington, D.C. 20006-2401
Telephone:  (202) 721-4600
Facsimile:  (202) 721-4646


Attorneys for Plaintiff Federal Deposit
Insurance Corporation, in its Capacity as
Receiver for NextBank, N.A.

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES .................................................................................. ii

INTRODUCTION ..............................................................................................1

ARGUMENT ....................................................................................................2

I.   BONY REPRESENTS THE NOTEHOLDERS.................................................2

II.  THIS COURT ALREADY DECIDED THE FUNDAMENTAL RIGHTS
     AT ISSUE .............................................................................................4

III. BONY AND THE NOTEHOLDERS HAVE NO RIGHT TO THE
     TRANSFEROR'S FUNDS ..........................................................................7

IV.  FILING AN INTERPLEADER ACTION DOES NOT GIVE BONY THE
     RIGHT TO THE TRANSFEROR'S FUNDS.....................................................8

CONCLUSION..................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Bank of New York v. FDIC*, 453 F. Supp. 2d 82 (D.D.C. 2006) .............................. *passim*

*Bank of New York v. First Millennium, Inc.*, No. 06-13388 (S.D.N.Y.) ...........................1

*Central of Georgia R.R. Co. v. United States*, 410 F. Supp. 354 (D.D.C.), *aff'd*, 429 U.S. 968 (1976) ....................................................................................................................7

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ...................................4

*Deering Milliken, Inc. v. FTC*, 647 F.2d 1124 (D.C. Cir. 1978) ......................................6

*Green v. Brophy*, 110 F.2d 539 (D.C. Cir. 1940) ............................................................3

*Hellenthal v. John Hancock Mut. Life Ins. Co.*, 31 F.2d 997 (W.D. Wash. 1929) ..........3

*Hirsch v. Stone*, 62 F.2d 120 (5th Cir. 1932).................................................................3

*M.R.S. Enterprises, Inc. v. Sheet Metal Workers' Int'l Ass'n, Local 40*, No. 05-1823-CKK, 2006 WL 2734270 (D.D.C. Aug. 22, 2006) ........................................................6

*Newton v. Bank of the West*, 51 P.3d 1281 (Or. Ct. App. 2002) ......................................8

*Only Collections v. County of Cochise*, 589 P.2d 1342 (Ariz. Ct. App. 1978)................3

*Powers v. Metropolitan Life Ins. Co.*, 439 F.2d 605 (D.C. Cir. 1971) .............................8

*In re Prudential Lines, Inc.*, 170 B.R. 222 (S.D.N.Y. 1994) ..........................................7

*Reed v. Robilio*, 376 F.2d 392 (6th Cir. 1967)................................................................3

*Stevenson v. First Nat'l Bank of Washington*, 395 A.2d 21 (D.C. 1978) .........................8

*United States v. York*, 909 F. Supp. 4 (D.D.C. 1995) ......................................................6

*Willis v. Willis*, No. 76-1225, 1980 U.S. Dist. LEXIS 12487 (D.D.C. July 23, 1980)....9

**RULES**

Fed. R. Civ. P. 65(d) .........................................................................................................4

N.Y. C.P.L.R. 1006(f)........................................................................................................9

**TABLE OF AUTHORITIES**
(continued)

Page(s)

**MISCELLANEOUS**

76 Am. Jur. 2d *Trusts* § 575 (2d ed. 2006) ........................................................................3

Restatement (Second) of Trusts § 169 cmt. b (2006) ......................................................3

## INTRODUCTION

1.     BONY opposes the FDIC Receiver's motion for judgment and request for a permanent injunction not with facts but with flimsy claims that it cannot represent the Noteholders and other misplaced assertions.  There is no question that BONY has represented and still represents the Noteholders.  BONY litigated on behalf of the Noteholders a dispute with the FDIC Receiver, *Bank of New York v. FDIC*, 453 F. Supp. 2d 82 (D.D.C. 2006) ("*NextBank I*"), that BONY is still litigating on appeal.  There is no question that this Court's orders and final judgment in *NextBank I* foreclose the claims that the Noteholders are attempting to assert in this case through BONY.  In particular, BONY and the Noteholders have no right to the funds owed to Transferor, as this Court decided over two years ago.  As a result, the FDIC Receiver's motion for judgment should be granted.

2.     BONY's motion to dismiss raises the same issues that were rejected on December 21, 2006 by Judge Charles S. Haight of the United States District Court for the Southern District of New York in *Bank of New York v. First Millennium, Inc.*, No. 06-13388 (S.D.N.Y.).  Judge Haight denied (1) BONY's contention that BONY does not adequately represent the Noteholders because of a purported conflict between the Noteholders and the FDIC Receiver; (2) BONY's assertion that this Court must defer to the case before him as the "first-filed" action; and (3) all parties' allegations of "forum shopping."[1]  BONY's motion to dismiss should thus be denied.

---

[1]     The parties ordered an expedited copy of the transcript of the proceedings at Judge Haight's request, and Judge Haight will provide a transcribed copy of his order directly to this Court when the transcript is finalized.

## ARGUMENT

### I.
### BONY REPRESENTS THE NOTEHOLDERS

In over three years of litigation, BONY never claimed that it was incapable of representing the Noteholders because of a conflict between the FDIC Receiver and the Noteholders. This Court issued orders on November 23, 2004 and September 27, 2006 that bound BONY and the Noteholders. Those orders are *res judicata* on any claims that BONY and the Noteholders seek to relitigate here or anywhere else. All of the holdings of *NextBank I* are binding on the Noteholders and BONY, so there is no party to this or the New York interpleader action who can litigate entitlement to the funds owed to the Transferor. And there is no question that this Court can enjoin the Noteholders and BONY from violating its orders.

None of BONY's excuses for being relieved of its obligation as Indenture Trustee holds any water. BONY asserts that: (1) BONY has "conflicting instructions from the Directing Noteholders and the FDIC" (BONY Opp. at 13); (2) BONY receives a fee of only "$5,000 per series of NextBank Notes per year" (*id.* at 5; *see id.* at 16 n.4); (3) BONY "makes no claim to the funds at issue in this case" (*id.* at 5); and (4) BONY "has no stake in the outcome of the dispute" between the Noteholders and the FDIC Receiver (*id.*).

First, BONY's situation vis-à-vis the Noteholders and the FDIC Receiver is the same now as it was in October 2002 when BONY filed claims on behalf of the Noteholders with the FDIC Receiver and in June 2003 when BONY filed a lawsuit on behalf of the Noteholders against the FDIC Receiver. BONY is still representing the Noteholders in litigation in this Courthouse in the appeal of *NextBank I*. BONY cannot be acting on its fiduciary duty to represent the Noteholders on one floor of this courthouse while disclaiming that same duty on another floor.

Second, the Noteholders have been in conflict with the FDIC Receiver almost since the inception of the receivership in February 2002. A conflict between the Noteholders and the FDIC Receiver does not excuse BONY of its fiduciary duty to represent the Noteholders now. Otherwise, BONY could not have filed claims in 2002 and the lawsuit in 2003.[2]

Third, BONY's fiduciary duty is not measured by the amount of money it is paid. *See* 76 Am. Jur. 2d *Trusts* § 575 (2006) ("One who accepts the office of trustee also accepts the trust instrument, and is bound by the terms of the instrument, including any provision designating the compensation to which the trustee is entitled, and in some instances even if the provision excludes compensation."); Restatement (Second) of Trusts § 169 cmt. b (1959 & Supp. 2006) ("Even though by the terms of the trust the trustee is to receive no compensation, he is under a duty if he has accepted the trust to administer it.").

Fourth, BONY's role as Indenture Trustee is to represent the Noteholders even though BONY does not have any stake in the outcome. BONY negotiated and agreed to this

---

[2] The cases BONY cites (BONY Opp. at 15) are inapposite. This is not a situation where there is dissention among the Noteholders. *See Green v. Brophy*, 110 F.2d 539, 542-44 (D.C. Cir. 1940) (trustee did not represent union under terms of the union's constitution where two rival factions of union claimed control of the union itself); *Only Collections v. County of Cochise*, 589 P.2d 1342, 1345 (Ariz. Ct. App. 1978) (trustee could not represent the conflicting interests of two beneficiaries). Nor is this a situation where BONY would not act on the Noteholders' instructions and represent their interests. *See Reed v. Robilio*, 376 F.2d 392, 396-97 (6th Cir. 1967) (diversity jurisdiction where executors of estate refused to bring suit on behalf of the estates and were made defendants in suit brought by heir); *Hirsch v. Stone*, 62 F.2d 120, 121-22 (5th Cir. 1932) (diversity jurisdiction where beneficiary sued trustee that failed to file suit on the beneficiary's behalf); *Hellenthal v. John Hancock Mut. Life Ins. Co.*, 31 F.2d 997, 997-98 (W.D. Wash. 1929) (loan association refused to sue insurance company to recover on insurance policy and cooperated with the insurance company in opposing plaintiff's claim).

arrangement.  Now that BONY finds the arrangement inconvenient, it wants this Court to relieve it of its obligations as Indenture Trustee.

       As a result of BONY representing the Noteholders, this Court's previous orders bind the Noteholders.  The FDIC Receiver moved for judgment on its claim for injunctive relief in Count One (*see* FDIC Receiver Br. at 21-22) contrary to BONY's assertion (BONY Opp. at 20 n.9).  This Court may enjoin the Noteholders because they are in privity with BONY.  This Court also has the power to enjoin the Noteholder as entities acting in concert with BONY.  *See* Fed. R. Civ. P. 65(d) (the Court may bind "the parties to the action, their officers, agents, servants, employees, and attorneys, and . . . those persons in active concert or participation with them").  BONY's claim that the Noteholders are "not subject to jurisdiction in this district" (BONY Opp. at 13, n.3; *see id.* at 13) is a red herring because the Noteholders are in privity with BONY.  *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1277 (9th Cir. 1992) ("a judgment can bind persons not parties to the litigation in question and not subject *in personam* to the jurisdiction of the court if the persons are in privity with parties to the litigation").

## II.
## THIS COURT ALREADY DECIDED THE FUNDAMENAL RIGHTS AT ISSUE

       BONY asserts that there are "complex legal arguments" that still need to be "fully [and] fairly litigated." (BONY Opp. at 8.)  The list of issues that BONY recites (*see id.*) were either decided by this Court or follow from this Court's decisions:

| Noteholders' Claims About *NextBank I* | *NextBank I* |
|---|---|
| "The [Trust] is not a party to the [former] FDIC Suit;" | BONY alleged in Count Six that the FDIC Receiver "converted the assets of the Trust ... in violation of ... the property rights of ... the Noteholders and [BONY], on their behalf." (Compl. ¶ 75.)  It makes no difference that the Trust was not a party to the lawsuit. |

| Noteholders' Claims About *NextBank I* | *NextBank I* |
|---|---|
| "The [former] FDIC suit does not address the liability of the [Trust] in any way;" | BONY alleged in Count Six that the FDIC Receiver "converted the assets of the Trust ... in violation of ... the property rights of ... the Noteholders and [BONY], on their behalf" and, as a result, "the FDIC [Receiver] owes the Trust." (Compl. ¶ 75.) |
| "In the D.C. Opinion, the [C]ourt neither ruled that the [Trust] was not a separate legal entity, nor ruled that the separate existence of the [Trust] should be disregarded with respect to its obligations under the Indenture;" | The Court rejected BONY's assertions about the Trust being a separate legal entity as dispositive. *See* 453 F. Supp. 2d at 97 (rejecting BONY's "legal isolation" contention and noting that the Trust Agreement provided that, "for income tax purposes, the [t]rust [would] be treated as a security device and disregarded as an entity"). |
| "Neither did the [C]ourt hold that an Early Amortization Event did not occur in February 2002;" | "[T]he Court concludes that the early amortization clause is unenforceable against the FDIC." 453 F. Supp. 2d at 85. There is no practical difference between an early amortization that was unenforceable and an early amortization that did not occur. |
| "Nowhere in the D.C. Opinion did the [C]ourt rule that the Early Amortization Event in February 2002 was not enforceable against the [Trust];" | "[T]he Court concludes that the early amortization clause is unenforceable against the FDIC." 453 F. Supp. 2d at 85. "The Trust Agreement designated NextBank the 'owner' of the trust and, as such, accorded NextBank an 'undivided beneficial interest' in the trust's assets." *Id.* at 87. "As receiver, the FDIC succeeded to 'all [NextBank's] rights, titles, powers, and privileges.' 12 U.S.C. § 1821(d)(2)(A)(I) (2006). Further, the FDIC's appointment obligated it to 'preserve and conserve [NextBank's] assets and property.' *Id.* § 1821(d)(2)(B)(iv)." *Id.* at 85. Because the early amortization clause is unenforceable against the FDIC Receiver, it is unenforceable against the Trust. |
| "Nowhere in the D.C. Opinion did the [C]ourt rule that any of the provisions of the Indenture could not be enforced against the [Trust];" | The Court granted judgment on Count Six in favor of the FDIC Receiver on BONY's claim that "the appointment of the FDIC as receiver for NextBank constituted a Trust Redemption Event" which triggered the commencement of an "Amortization Period" (Compl. ¶ 73) and, as a result, "the FDIC [Receiver] owes the Trust" (*id.* ¶ 75). |

| Noteholders' Claims About *NextBank I* | *NextBank I* |
|---|---|
| "At no point in the D.C. Opinion did the [C]ourt rule that remedies could not be taken against the Collateral;" | The Court dismissed Count Two, holding that the Transferor Interest belongs to the FDIC Receiver and the Collateral belongs to the Noteholders.  (11/23/04 Hr'g Tr. (Ex. 12) at 53.)  BONY and the Noteholders, however, are now redefining the term "Collateral" to include the Transferor Interest. |
| "Nothing in the D.C. Opinion excused the [Trust] from making principal repayments under the Early Amortization waterfall starting in February 2002; and" | The Court granted judgment on Count Six in favor of the FDIC Receiver, 453 F. Supp. 2d at 101, on BONY's claim that "the appointment of the FDIC as receiver for NextBank [in February 2002] constituted a Trust Redemption Event" which triggered the commencement of an "Amortization Period" (Compl. ¶ 73) and, as a result, "the FDIC [Receiver] owes the Trust" (*id.* ¶ 75).  The Trust is excused from making principal repayments because the FDIC Receiver was excused, as a matter of law, from making those payments to the Trust. |
| "Nothing in the D.C. Opinion excuses the [Trust] from the Event of Default arising from the non-payment of principal caused by the delay in honoring the Early Amortization Period in February 2002." | The Court granted judgment on Count Six in favor of the FDIC Receiver, 453 F. Supp. 2d at 101, on BONY's claim that "the appointment of the FDIC as receiver for NextBank constituted a Trust Redemption Event" which triggered the commencement of an "Amortization Period" (Compl. ¶ 73) and, as a result, "the FDIC owes the Trust" (*id.* ¶ 75). |

(*See* BONY Opp. at 9.)

        The straightforward application of this Court's orders disposes of BONY and the

Noteholders' baseless claims in opposition to the FDIC Receiver's motion for judgment.  This

Court has jurisdiction to enforce those orders even though the case is on appeal.  *See Deering*

*Milliken, Inc. v. FTC*, 647 F.2d 1124, 1129 & n.11 (D.C. Cir. 1978) (district court retains the

power to enforce its unstayed judgment throughout the pendancy of the appeal); *M.R.S.*

*Enterprises, Inc. v. Sheet Metal Workers' Int'l Ass'n, Local 40*, No. 05-1823-CKK, 2006 WL

2734270, at *8 (D.D.C. Aug. 22, 2006) ("[T]he District Court retains jurisdiction to enforce its

unstayed Order" on appeal.); *United States v. York*, 909 F. Supp. 4, 9 (D.D.C. 1995) ("The Court

has continuing jurisdiction to protect and enforce its judgments."); *In re Prudential Lines, Inc.*, 170 B.R. 222, 243 (S.D.N.Y. 1994) ("[W]hile an appeal of an order or judgment is pending, the court retains jurisdiction to implement or enforce the order or judgment."); *Central of Georgia R.R. Co. v. United States*, 410 F. Supp. 354, 357 (D.D.C.) ("Supreme Court authority leaves no doubt that federal courts have continuing jurisdiction to protect and enforce their judgments."), *aff'd*, 429 U.S. 968 (1976).

## III.
## BONY AND THE NOTEHOLDERS HAVE NO RIGHT TO THE TRANSFEROR'S FUNDS

The Master Indenture divides the funds received by the Trust as the Collateral and the Transferor Interest. The Trust granted BONY, "for the benefit of the Holders of the Notes," the Trust's "right, title and interest" to various funds defined as the "Collateral." (Ex. 3 at FDIC00140-41.) The Master Indenture distinguishes the Collateral from "Transferor Interest." (*Id.* at FDIC00141 (defining the elements of the Collateral "in each case, excluding the Transferor Interest and all amounts distributable to the Holders of any Certificates pursuant to the terms of any Transaction Document").) The Trust's obligations to "make payments of principal of, interest on and other amounts with respect to, the Notes is limited by recourse only to the Collateral." (*Id.*) Thus, the Trust's "right, title and interest" does not extend to the Transferor Interest and the Transferor Interest cannot be used to "make payments of principal of, interest on and other amounts with respect to, the Notes." This Court decided on November 23, 2004 that the FDIC Receiver is entitled to what is owed the Transferor and the Noteholders are entitled to the Collateral. (*See* Ex. 12 at 53.) BONY presents nothing to question this Court's decision.

The "Transferor Interest" section of the financial statements sent by BONY shows that the FDIC Receiver now has a right to over $62 million in receivables. (Christensen Supp.

Decl. Ex. 1.)  The receivables are not cash or an account; they are the right to payment on credit

card balances.  Each month, the receivables decrease as credit card account holders pay off their

credits cards balances, and at the end of the transactions, the FDIC Receiver is entitled to the

receivables.  The financial statements also highlight that on November 15, 2006, the FDIC

Receiver should have received $3,626,534.39 in funds owed to the Transferor (Ex. 28), and on

December 15, 2006, that amount increased by another $3,178,731.15 (Christensen Supp. Decl.,

Ex. 1).  In short, BONY now holds $6,805,265.54, plus interest, of the FDIC Receiver's funds.

There is nothing in the contract documents that entitles the Noteholders to transform funds owed

to the Transferor into Collateral.  On the contrary, the documents explain that they are mutually

exclusive.

## IV.
## FILING AN INTERPLEADER ACTION DOES NOT GIVE BONY THE RIGHT TO THE TRANSFEROR'S FUNDS

BONY mischaracterizes its actions and misapprehends the nature of the present

litigation.  BONY seems to think that "the wrong complained of" is "the commencement of an

interpleader lawsuit in New York."  (BONY Opp. at 23; *see id.* at 19 ("BNY Has Done Nothing

More than Commence an Interpleader Action").)  BONY is not absolved from conversion and

breach of contract by filing an interpleader action after seizing the FDIC Receiver's funds.[3]

---

[3]  The cases on which BONY relies (BONY Opp. at 19-20) are easily distinguishable.  BONY
is not the "innocent bank," *Stevenson v. First Nat'l Bank of Washington*, 395 A.2d 21, 23
(D.C. 1978) (applying District of Columbia statutory law), or a "mere stakeholder," *Powers
v. Metropolitan Life Ins. Co.*, 439 F.2d 605, 608 (D.C. Cir. 1971); BONY seized the funds on
their way to the FDIC Receiver based on BONY's alleged fiduciary duty to follow the
Noteholders' instructions.  Here the FDIC Receiver has suffered damages beyond the
Transferor's funds owed in contrast to *Newton v. Bank of the West*, 51 P.3d 1281, 1284 (Or.
Ct. App. 2002) (applying Oregon statutory law); the FDIC Receiver has incurred substantial
attorneys' fees and costs litigating here and in New York to recover what this Court has

(Footnote continued on next page)

BONY goes so far as to assert that it "has not 'taken control' of the Collateral; it has submitted it to the jurisdiction of the New York court." (BONY Opp. at 21.) The mere filing of an interpleader action, however, does not give a court jurisdiction over the funds interpleaded under New York law. Under New York law, an interpleader plaintiff "may move for an order discharging him from liability" only "[a]fter the time for all parties to plead has expired." N.Y. C.P.L.R. 1006(f). The interpleaded funds are not under the court's control until the court grants that motion and orders "payment into court, delivery to a person designated by the court or retention to the credit of the action, of the subject matter of the action to be disposed of in accordance with further order or the judgment." *Id.* As a result, the New York state court did not have jurisdiction over the funds when BONY filed its interpleader action. BONY stipulated[4] that this Court would decide the disposition of the funds in order to avoid a temporary restraining order; BONY cannot now claim that this Court never had control of the funds.

BONY claims that it "simply wants a judicial determination as to what to do with

_____

(Footnote continued from previous page)

already judged to be owed to the FDIC Receiver (*see* FDIC Receiver Br. at 20). And while "[t]he Bank's possession . . . cannot be construed as possession on behalf of any of the defendants" in *Willis v. Willis*, No. 76-1225, 1980 U.S. Dist. LEXIS 12487, at *54 (D.D.C. July 23, 1980) (applying Ohio law), in this case the bank is the defendant acting on the instructions of the Noteholders.

[4]    BONY's claim that "the Stipulation was drafted by counsel for the FDIC" (BONY Opp. at 6) is a half-truth, because the stipulation incorporates the edits negotiated with BONY's counsel. In the course of negotiations, BONY's counsel stated that: "We propose to expand the temporal scope of the Stipulation so that it obligates BNY to maintain possession of not only the monies in the current Collections Account, but also amounts that come into that account until issuance of a Court order directing the disposition of the funds." (Christensen Supp. Decl. Ex. 2.) BONY's counsel explained that "[t]he intent is to cover all collections periods until a Court order directs BNY to do something with the funds." (*Id.* Ex. 3.)

the assets it is holding." (BONY Opp. at 21 n.11.) This Court has already provided a judicial determination of that BONY is to do with the FDIC Receiver's funds. The FDIC Receiver respectfully requests that this Court grant its motion for judgment and provide the detailed determination that BONY claims it needs.

## CONCLUSION

For the foregoing reasons, BONY's motion to dismiss should be denied and judgment should be entered in favor of the FDIC Receiver and against BONY. In particular, the FDIC Receiver requests an order that (1) BONY distribute to the FDIC Receiver the funds owed to the Transferor within five calendar days of this Court's order; (2) BONY pay the FDIC Receiver's attorneys' fees and costs incurred in this action and the interpleader action, in an amount to be determined; (3) BONY be enjoined from distributing the Transferor's funds to anyone but the FDIC Receiver and from interfering with the FDIC Receiver's rights to the Receivables; (4) BONY be enjoined from distributing to the Noteholders any funds from the Trust except the interest owed monthly, as drawn on the Spread Accounts, and the amounts in the Spread Account when they surrender their Notes upon termination of the transaction.

Dated: December 28, 2006

Respectfully submitted,

Of Counsel:

Tom M. Reeves (KS Sup. Ct. No. 7259)
  Counsel
Federal Deposit Insurance Corporation
550 17th Street, N.W., Room VS-D-7068
Washington, D.C. 20429
Telephone: (703) 562-2433
Facsimile: (703) 562-2475
E-mail: TReeves@FDIC.gov

Dennis S. Klein, D.C. Bar No. 361457
Scott H. Christensen, D.C. Bar No. 476439
HUGHES HUBBARD & REED LLP
1775 I Street, N.W.
Washington, D.C. 20006-2401
Telephone: (202) 721-4600
Facsimile: (202) 721-4646

Attorneys for Plaintiff Federal Deposit
Insurance Corporation, in its Capacity as
Receiver for NextBank, N.A.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, on December 28, 2006, true and accurate

copies of foregoing Reply in Support of the FDIC Receiver's Motion for Judgment were served

by mail upon:

> John L. Douglas
> H. Stephen Harris, Jr.
> Alston & Bird LLP
> One Atlantic Center
> 1201 West Peachtree Street
> Atlanta, Georgia 30309-3424
>
>
> Paul F. Brinkman
> Alston & Bird LLP
> 601 Pennsylvania Avenue, N.W.
> North Building, 10th Floor
> Washington, D.C.  20004-2601

Scott H. Christensen

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FEDERAL DEPOSIT INSURANCE
CORPORATION, in its Capacity as
Receiver for NextBank, N.A.,

                              Plaintiff,

                v.

THE BANK OF NEW YORK, as Indenture
Trustee of the NextCard Credit Card Master
Note Trust,

                              Defendant.

Case No. 06-CV-1975-ESH

Hon. Ellen Segal Huvelle

**SUPPLEMENTAL DECLARATION OF SCOTT H. CHRISTENSEN
IN SUPPORT OF THE FDIC RECEIVER'S MOTION FOR JUDGMENT**

I, Scott H. Christensen, hereby declare as follows:

1.      I am an attorney admitted to practice before this Court.  I am an associate

of the firm Hughes Hubbard & Reed LLP, attorneys representing Plaintiff Federal Deposit

Insurance Corporation, in its Capacity as Receiver for NextBank, N.A. (the "FDIC Receiver") in

the civil action entitled *FDIC v. Bank of New York*, No. 06-1975-ESH.  I have personal

knowledge of the information contained in this Declaration and, if called as a witness, could and

would competently testify thereto.

2.      Attached hereto as Exhibit 1 is true and correct copy of the Monthly

Noteholder Statement from The Bank of New York for Series 2001-1 Notes for December 15,

2006.

3.      Attached hereto as Exhibit 2 is a true and correct copy of a November 21,

2006 email from H. Stephen Harris, Jr. to Scott H. Christensen.

DC 562468_1.DOC

4.      Attached hereto as Exhibit 3 is a true and correct copy of a November 21, 2006 email from H. Stephen Harris, Jr. to Scott H. Christensen.

I declare under penalty of perjury that the foregoing is true and correct and that this Declaration was executed at Los Angeles, California on December 28, 2006.

Scott H. Christensen

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that, on December 28, 2006, true and accurate

copies of foregoing Supplemental Declaration of Scott H. Christensen in Support of the FDIC

Receiver's Motion for Judgment were served by mail upon:

> John L. Douglas
> H. Stephen Harris, Jr.
> Jack P. Smith, III
> Alston & Bird LLP
> One Atlantic Center
> 1201 West Peachtree Street
> Atlanta, Georgia 30309-3424

> Paul F. Brinkman
> Alston & Bird LLP
> 601 Pennsylvania Avenue, N.W.
> North Building, 10th Floor
> Washington, D.C.  20004-2601

Scott H. Christensen

**NextBank, N. A.**
**NextCard Credit Card Master Note Trust - Series 2001-1**
**Monthly Noteholders Statement**
**Monthly Period Ended November 30, 2006**

| Distribution Date: | December 15, 2006 |
|---|---|
| LIBOR Determination Date: | November 13, 2006 |

Pursuant to the Master Indenture, dated as of April 20, 2001 (as amended and supplemented, the "Master Indenture"), between NextCard Credit Card Master Note Trust (the "Trust") and The Bank of New York, as indenture trustee (the "Indenture Trustee"), as supplemented by the Series 2001-1 Indenture Supplement, dated as of May 8, 2001 (the "Indenture Supplement"), between the Trust and the Indenture Trustee, NextBank, N.A., as Servicer (the "Servicer") under the Transfer and Servicing Agreement, dated as of April 20, 2001 (the "Transfer and Servicing Agreement") among NextBank, N.A., as Transferor and Servicer, and the Trust, is required to prepare certain information each month regarding current distributions to the Series 2001-1 Noteholders and the performance of the Trust during the previous month.  The information which is required to be prepared with respect to this Distribution Date, and with respect to the performance of the Trust during the above month is set forth below. Capitalized terms used in this Monthly Statement have their respective meanings set forth in the Master Indenture and the Indenture Supplement.

**I    SUMMARY DISTRIBUTION INFORMATION**

| | | | |
|---|---|---|---:|
| A | (1) | Interest | 0.00 |
| | (2) | Principal | - |
| | (3) | Total Distribution for Class A Notes | 0.00 |
| | | | |
| B | (1) | Interest | 0.00 |
| | (2) | Principal | - |
| | (3) | Total Distribution for Class B Notes | 0.00 |
| | | | |
| C | (1) | Interest | 369,193.66 |
| | (2) | Principal | (0.00) |
| | (3) | Total Distribution for Class C Notes | 369,193.66 |
| | | | |
| D | (1) | Interest | 476,525.00 |
| | (2) | Principal | - |
| | (3) | Total Distribution for Class D Notes | 476,525.00 |

**II    RECEIVABLES IN THE TRUST**

| | | | |
|---|---|---|---:|
| A | Beginning of the Period Principal Receivables: | $ | 65,259,884.79 |
| B | Beginning of the Period Finance Charge Receivables: | $ | 3,735,321.12 |
| C | Beginning of the Period Discounted Receivables: | | N/A |
| D | Beginning of the Period Total Receivables: | | 68,995,205.91 |
| | | | |
| E | Removed Principal Receivables: | | - |
| F | Removed Finance Charge Receivables: | | - |
| G | Removed Total Receivables: | | - |
| | | | |
| H | Additional Principal Receivables: | | - |
| I | Additional Finance Charge Receivables: | | - |
| J | Additional Total Receivables: | | - |
| | | | |
| K | Discounted Receivables Generated this Period: | | N/A |
| L | End of the Month Principal Receivables: | | 62,741,530.93 |
| M | End of the Month Finance Charge Receivables: | | 3,677,890.25 |
| N | End of the Month Discounted Receivables: | | N/A |
| O | End of the Month Total Receivables: | | 66,419,421.18 |

**NextBank, N. A.**
**NextCard Credit Card Master Note Trust - Series 2001-1**
**Monthly Noteholders Statement**
**Monthly Period Ended November 30, 2006**

| | |
|---|---|
| Distribution Date: | December 15, 2006 |
| LIBOR Determination Date: | November 13, 2006 |

| | | | |
|---|---|---|---|
| P | (a) | Transferor Interest | |
| | | + Principal Receivables | 62,741,530.93 |
| | | + Special Funding Account (SFA) | - |
| | | - Aggregate Invested Amounts in the trust | (0.00) |
| | | Ending Transferor Interest | 62,741,530.93 |
| | | | |
| | (b) | Required Transferor Interest (9% x Principal Receivables) | 5,646,737.78 |
| | | | |
| | (c) | (Shortfall) if applicable in Transferor Interest | N/A |
| | | - principal collections will be trapped in the SFA until shortfall eliminated | |
| | | | |
| | (d) | Transferor Percentage (for information only) | 100.0% |
| | | | |
| | (e) | Transferor Allocations/Distributions | |
| | | Transferor share of Finance Charge Collections | 1,477,971.37 |
| | | Interest earned on the Collections Account | 10,875.51 |
| | | Transferor share of Principal Collections | 1,798,650.72 |
| | | Transferor allocated Servicing Fees | (108,766.45) |
| | | Net cash distributable to the Transferor on the Distribution Date | 3,178,731.15 |

**III PERFORMANCE SUMMARY**
**A COLLECTIONS**

| | | | | |
|---|---|---|---|---|
| (1) | Total Collections | $ | 2,809,546.63 | |
| (2) | Total Principal Collections | | 1,798,650.72 | |
| (3) | Total Finance Charge Collections (including interchange) | $ | 1,010,895.91 | |
| | | | | |
| (4) | Principal Payment Rate | | 2.8% | |

**B. DELINQUENCIES AND LOSSES**

| | NUMBER OF ACCOUNTS | Number | % of Total |
|---|---|---|---|
| (1) | Current Accounts | 263,901 | 99.3% |
| (2) | End of month delinquencies: | | |
| | 30-59 Days | 545 | 0.2% |
| | 60-89 Days | 396 | 0.1% |
| | 90-119 Days | 313 | 0.1% |
| | 120-149 Days | 288 | 0.1% |
| | 150-179 Days | 282 | 0.1% |
| | 180-209 Days | 1 | 0.0% |
| | Over 209 Days | - | 0.0% |
| | SubTotal -- 30+ Days Delinquent | 1,825 | 0.7% |
| (3) | Total Accounts | 265,726 | 100.0% |

| | OUTSTANDING BALANCES | Amount | % of Total |
|---|---|---|---|
| (1) | Current Balances | $ 60,504,761.36 | 91.1% |
| (2) | End of month delinquencies: | | |
| | 30-59 Days | 1,611,370.11 | 2.4% |
| | 60-89 Days | 1,252,241.29 | 1.9% |
| | 90-119 Days | 1,031,017.74 | 1.6% |

**NextBank, N. A.**
**NextCard Credit Card Master Note Trust - Series 2001-1**
**Monthly Noteholders Statement**
**Monthly Period Ended November 30, 2006**

| | Distribution Date: | December 15, 2006 |
|---|---|---|
| | LIBOR Determination Date: | November 13, 2006 |

| | | | |
|---|---|---:|---:|
| | 120-149 Days | 995,288.99 | 1.5% |
| | 150-179 Days | 1,021,164.18 | 1.5% |
| | 180-209 Days | 3,577.51 | 0.0% |
| | Over 209 Days | - | 0.0% |
| | SubTotal -- 30+ Days Delinquent | 5,914,659.82 | 8.9% |
| (3) | Total Balances | $ 66,419,421.18 | 100.0% |

**NextBank, N. A.**
**NextCard Credit Card Master Note Trust - Series 2001-1**
**Monthly Noteholders Statement**
**Monthly Period Ended November 30, 2006**

| | |
|---|---|
| Distribution Date: | December 15, 2006 |
| LIBOR Determination Date: | November 13, 2006 |

| | | Series Total | Class A | Class B | Class C | Class D |
|---|---|---|---|---|---|---|
| IV | **SERIES 2001-1 INFORMATION** | | | | | |
| A | Note Principal Balance | $ 700,000,000.00 | $ 521,500,000.00 | $ 87,500,000.00 | $ 66,500,000.00 | $ 24,500,000.00 |
| B | Initial Invested Amount | 700,000,000.00 | 521,500,000.00 | 87,500,000.00 | 66,500,000.00 | 24,500,000.00 |
| C | Beginning of Month Invested Amount | 0.00 | 0.00 | 0.00 | (0.00) | 0.00 |
| D | Month End Invested Amount | 0.00 | 0.00 | 0.00 | (0.00) | 0.00 |
| E | Invested Amount after giving effect to Distributions on this Distribution Date | 0.00 | 0.00 | 0.00 | (0.00) | 0.00 |
| F | The Note Rate with respect to the Interest Period preceeding such Distribution Date | | 5.62000% | 6.20000% | 6.92000% | 11.67000% |
| G | The Series 2001-1 Floating Allocation Percentage with respect to the Monthly Period preceding such Distribution Date was equal to  (Average Investor %) | 0.00% | | | | |
| H | The Series 2001-1 Fixed Allocation Percentage with respect to the Monthly Period preceding such Distribution Date was equal to (If Applicable) | 0.00% | | | | |
| I | Series 2000-1 Allocable Finance Charge Collections: | | | | | |
| | (1)   Allocable Finance Charge Collections for such Distribution Date | - | | | | |
| | (2)   Shared Finance Charge Collections for such Distribution Date | - | | | | |
| | (3)   Total Series 2000-1 Finance Charge Collections for such Distribution Date | - | | | | |
| J | Series 2000-1 Allocable Principal Collections: | | | | | |
| | (1)   Allocable Principal Collections for such Distribution Date | - | | | | |
| | (2)   Shared Principal Collections for such Distribution Date | - | | | | |
| | (3)   Total Series 2000-1 Principal Collections for such Distribution Date | - | | | | |
| K | Series 2001-1 Allocable Principal Defaults for such Distribution Date | - | | | | |
| L | The Monthly Servicing Fee allocable to Series 2000-1 Notes | - | | | | |

| | | Senior | Junior | Total |
|---|---|---|---|---|
| V | **SPREAD ACCOUNT** | | | |
| A | Required Spread Account Percentage (see Note: below) | 3% | 4% | 7% |
| B | Required Spread Account Amount | 21,000,000.00 | 28,000,000.00 | 49,000,000.00 |
| C | Amount on Deposit in the Spread Account at month-end | (0.00) | 5,141,626.99 | 5,141,626.99 |
| D | Spread Account Shortfall | 21,000,000.00 | 22,858,373.01 | 43,858,373.01 |
| E | Interest earnings on the Spread Account | - | 19,010.57 | 19,010.57 |
| F | Withdrawals from Spread Account on this Distribution Date | - | (845,718.66) | (845,718.66) |
| G | Amount on Deposit in the Spread Account after Witdrawals on this Distribution Date | (0.00) | 4,314,918.89 | 4,314,918.89 |

**Note: the Junior Note Spread Account Percentage is:**
   1.0% if the Quarterly Excess Spread Percentage is >= 4.0%

**NextBank, N. A.**
**NextCard Credit Card Master Note Trust - Series 2001-1**
**Monthly Noteholders Statement**
**Monthly Period Ended November 30, 2006**

| | |
|---|---|
| Distribution Date: | December 15, 2006 |
| LIBOR Determination Date: | November 13, 2006 |

1.5% if the Quarterly Excess Spread Percentage is <4.0% and >=3.5%
2.0% if the Quarterly Excess Spread Percentage is <3.5% and >=3.0%
2.5% if the Quarterly Excess Spread Percentage is <3.0% and >=2.5%
3.0% if the Quarterly Excess Spread Percentage is <2.5% and >=2.0%
4.0% if the Quarterly Excess Spread Percentage is <2.0%
provided, that if a Redemption Event with respect to Series 2001-1 has occurred,
the Spread Account Percentage shall be 4.0% and shall not be subject to reduction.

**VI  APPLICATION OF FUNDS**

**A  Distribution of Available Finance Charge Collections:**

(i)    Series 2001-1 Allocable Finance Charge Collections for such
       Distribution Date                                                                              -

(ia)   Series 2001-1 Allocable Finance Charge Collections for prior
       Distribution Date                                                                              -

(ii)   **Monthly Servicing Fee, plus any Monthly Servicing Fee previously due but**
       not distributed to the Servicer on a prior Distribution Date (unless such amount
       has been netted against deposits to the Collection Account)                                    -

(iii)  **Class A Monthly Interest, plus Class A Monthly Interest previously due but**
       not distributed on a prior Distribution Date, plus Class A Additional Interest, plus
       Class A Additional Interest previously due but not distributed on a prior
       Distribution Date                                                                           (0.00)

(iv)   **Class B Monthly Interest, plus Class B Monthly Interest previously due but**
       not distributed on a prior Distribution Date, plus Class B Additional Interest, plus
       Class B Additional Interest previously due but not distributed on a prior
       Distribution Date                                                                           (0.00)

(v)    **Class C Monthly Interest, plus Class C Monthly Interest previously due but**
       not distributed on a prior Distribution Date, plus Class C Additional Interest, plus
       Class B Additional Interest previously due but not distributed on a prior
       Distribution Date, provided, however, that if the Class C Monthly Interest exceeds
       Available Finance Charge Collections available after (i), (ii) and (iii), then the Spread
       Account will be drawn.                                                     (369,193.66)  see (x) below

(vi)   **Investor Default Amount, if any, shall be treated as a portion of Available**
       Principal Collections                                                                          -

(vii)  Aggregate amount of Investor Charge-Offs and the amount of Reallocated
       **Principal Collections not previously reimbursed shall be treated as a portion of**
       Available Principal Collections                                                                -

(viii) **Class D Monthly Interest, plus Class D Monthly Interest previously due but**
       not distributed on a prior Distribution Date, plus Class D Additional Interest, plus

| Distribution Date: | December 15, 2006 |
| LIBOR Determination Date: | November 13, 2006 |

|  | Class D Additional Interest previously due but not distributed on a prior Distribution Date, provided, however, that if the Class D Monthly Interest exceeds Available Finance Charge Collections available after (i) through (vi), then the Spread Account will be drawn. | (476,525.00)  see (x) below |
|---|---|---|
| (ix) | upon an Event of Default w/r/t Series 2001-1 and acceleration of the maturity of the Series 2001-1 Notes, the balance, if any, up to the outstanding Note Principal Balance shall be treated as a portion of Available Principal Collections | - |
| (x) | after the Reserve Account Funding Date, but prior to the date the Reserve Account terminates, an amount up to the excess, if any, of the Required Reserve Account over the Available Reserve Account shall be deposited in the Reserve Account | - |

NextBank, N. A.
**NextCard Credit Card Master Note Trust - Series 2001-1**
**Monthly Noteholders Statement**
**Monthly Period Ended November 30, 2006**

| Distribution Date: | December 15, 2006 |
|---|---|
| LIBOR Determination Date: | November 13, 2006 |

| | | |
|---|---|---|
| (xi) | amounts required to be deposited in the Spread Account | - |
| (xii) | any other amounts the Trust may be liable for not referred to above | - |
| (xiii) | any balance will be Excess Finance Charge Collections and will be available for allocation to other Series in Group One or to the Holders of Transferor Certificates | (845,718.66) |
| (xiv) | Withdrawal from Spread Account to cover 4.04a(ii) - 4.04a(vii) | - |
| | Withdrawal from Spread Account to cover 4.04a(iv), 4.04a(vii) | 845,718.66 |
| (xv) | Investor Default Amount to be released on distribution | (0.00) |
| (xvi) | Net Excess Spread due back to Nextbank | - |

**B  Distribution of Available Principal Collections - during the Controlled Accumulation Period or the Early Amortization Period:**

| | | |
|---|---|---|
| (i) | during the Controlled Accumulation Period, Monthly Principal shall be deposited in the Principal Funding Account | N/A |
| (ii) | during the Early Amortization Period, Montly Principal shall be paid to Class A Noteholders until the Class A Note Principal Balance has been paid in full (Includes Investor Defaults) | $ - |
| | Funds in the Special Funding Account to be used to pay Class A Note Principal Balance | $ - |
| (iii) | after (ii) during the Early Amortization Period, any remaining Monthly Principal shall be paid to Class B Noteholders until the Class B Note Principal Balance has been paid in full | $ - |
| | Class B Special Funding Principal Balance Allocation | $ - |
| (iv) | after (ii) and (iii) during the Early Amortization Period, any remaining Monthly Principal shall be paid to Class C Noteholders until the Class C Note Principal Balance has been paid in full | $ (0.00) |
| | Class C Special Funding Principal Balance Allocation | $ - |
| (v) | after (ii), (iii) and (iv) during the Early Amortization Period, any remaining Monthly Principal shall be paid to Class D Noteholders until the Class D Note Principal Balance has been paid in full | $ - |
| | Class D Special Funding Principal Balance Allocation | $ - |
| (vi) | for either period, after (i) through (v), the balance of Available Principal Collections remaining shall be treated as Shared Principal Collections and applied in accordance with Section 8.05 of the Indenture | $ - |

**VII  PRINCIPAL COLLECTIONS**

**NextBank, N. A.**
**NextCard Credit Card Master Note Trust - Series 2001-1**
**Monthly Noteholders Statement**
**Monthly Period Ended November 30, 2006**

| | |
|---|---|
| Distribution Date: | December 15, 2006 |
| LIBOR Determination Date: | November 13, 2006 |

| | | | |
|---|---|---|---|
| A | Monthly Principal (Includes Investor Defaults) | $ | (0.00) |
| B | Series 2001-1 Principal Shortfall | $ | 0.00 |
| C | Shared Principal Collections allocable from other principal sharing series | $ | - |

**VIII  INVESTOR CHARGE-OFFS AND REDUCTIONS**

| | | | |
|---|---|---|---|
| A | Investor Charge-Offs | $ | 56,511,010.54 |
| B | Reductions in Invested Amount (other than by principal payments) | | - |
| C | Previous reductions in Invested Amount reimbursed | $ | - |

**IX  Portfolio Yield**

| | | | |
|---|---|---|---|
| A | Portfolio Yield for the current Monthly Period | | |
| | (i) | Current Portfolio Yield | **0.00%** | Includes draw from Reserve Account; |
| | (ii) | Portfolio Yield (prior month) | 0.00% | should also include investment earnings |
| | (iii) | Portfolio Yield (2 months prior) | 0.00% | |
| | (iv) | 3 Month Average | 0.00% | |

| | | | |
|---|---|---|---|
| B | Base Rate for the current Monthly Period | | |
| | (i) | Current Base Rate | **272540369187.42%** |
| | (ii) | Base Rate (prior month) | 140812490032.91% |
| | (iii) | Base Rate (2 months prior) | 140969340881.52% |
| | (iv) | 3 Month Average | 184774066700.62% |

| | | | |
|---|---|---|---|
| C | Excess Spread | | |
| | (i) | Current Excess Spread | **-272540369187.42%** |
| | (ii) | Modified Excess Spread (prior month) | -140812490032.91% |
| | (iii) | Excess Spread (2 months prior) | -140969340881.52% |
| | (iv) | 3 Month Average | -184774066700.62% |

(x)  Cumulative balance includes previous Class C interest of 190,750.06 and Class D interest of 246,204.48 billed but not paid.

_____

Karlyn M. Knieriem
Finance Officer

## Christensen, Scott

**From:**    Harris, Steve [Steve.Harris@alston.com]
**Sent:**    Tuesday, November 21, 2006 8:24 AM
**To:**      Christensen, Scott
**Subject:** RE: NextCard DC proceedings

I'll send your revision to BNY. BNY and I have been discussing an additional thought, designed to avoid another fire drill in December:

We propose to expand the temporal scope of the Stipulation so that it obligates BNY to maintain possession of not only the monies in the current Collections Account, but also amounts that come into that account until issuance of a Court order directing the disposition of the funds.

BNY would also like to propose that it be able to pay the Servicing Fee, but only the Servicing Fee, as it comes due each month, notwithstanding the Stipulation.

We are drafting some proposed language on this point and will get it to you asap. Please let me know if the FDIC-Receiver is agreeable to that approach.

Regards,
Steve

H. Stephen Harris, Jr.
ALSTON+BIRDLLP
Email:    steve.harris@alston.com
Website:   www.alston.com

Atlanta Office:
1201 West Peachtree St.
Atlanta, GA  30309-3424
USA
Direct Dial: 404.881.7197
Mobile:    404.966.7197
Switchboard: 404.881.7000
Fax:      404.881.7777

Washington, DC Office:
The Atlantic Building
950 F Street, N.W.
Washington, DC  20004-1404
USA
Direct Dial: 202.756.3059
Mobile:    404.966.7197
Switchboard: 202.756.3300
Fax:      202.756.3333

Admitted in:
The District of Columbia, Georgia and New York

---

**From:** Christensen, Scott [mailto:christen@HughesHubbard.COM]
**Sent:** Tuesday, November 21, 2006 11:20 AM
**To:** Harris, Steve
**Subject:** RE: NextCard DC proceedings

Steve,

For (4) below, can't we just say "as Indenture Trustee for the Trust," as in the caption, instead of "pursuant to its role as . . .."?  I highlighted that edit in the attachment.  If you agree, you can sign and I will file an unhighlighted version with the same text with the Court.

Scott

---

**From:** Harris, Steve [mailto:Steve.Harris@alston.com]
**Sent:** Tuesday, November 21, 2006 10:41 AM
**To:** Christensen, Scott
**Subject:** NextCard DC proceedings

Scott,

BNY, as Indenture Trustee, has reviewed the FDIC-Receiver's draft Stipulation that you emailed to me last night.  BNY is agreeable to the Stipulation, with the following changes, which I believe you will agree are not substantive.

1)  Global Change:  "BONY" to "BNY";
2)  Par. 1, line 3:  Add "The" before "Bank of New York" and add "("BNY")" after "Bank of New York";
3)  Par. 1, line 4:  Add "(the "Trust")" after "Credit Card Master Note Trust" and delete "("BONY")" after it;
4)  Par. 1, line 5 AND Par. 1 line 2:  For each, add "pursuant to its role as Indenture Trustee of the Trust" after "BNY".

Assuming these changes are acceptable to the FDIC-Receiver, please make these changes and email me a copy for execution.

Thanks, best regards and best wishes for the Thanksgiving holiday,

Steve


H. Stephen Harris, Jr.
ALSTON+BIRD LLP
Email:     steve.harris@alston.com
Website:   www.alston.com

Atlanta Office:
1201 West Peachtree St.
Atlanta, GA  30309-3424

USA
Direct Dial: 404.881.7197
Mobile:    404.966.7197
Switchboard: 404.881.7000
Fax:       404.881.7777

Washington, DC Office:
The Atlantic Building
950 F Street, N.W.
Washington, DC  20004-1404
USA
Direct Dial: 202.756.3059
Mobile:    404.966.7197
Switchboard: 202.756.3300
Fax:       202.756.3333

Admitted in:
The District of Columbia, Georgia and New York

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the IRS and other
taxing authorities, we inform you that any tax advice contained in this communication (including any
attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding
penalties that may be imposed on any taxpayer or (ii) promoting, marketing or recommending to another
party any transaction or matter addressed herein.

---

NOTICE: This e-mail message and all attachments transmitted with it
may contain legally privileged and confidential information intended
solely for the use of the addressee. If the reader of this message is not
the intended recipient, you are hereby notified that any reading,
dissemination, distribution, copying, or other use of this message or its
attachments is strictly prohibited. If you have received this message in
error, please notify the sender immediately by telephone
(404-881-7000) or by electronic mail (postmaster@alston.com), and
delete this message and all copies and backups thereof. Thank you.

---

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
This email and any files transmitted with it may contain privileged or confidential information. Use,
disclosure, copying or distribution of this message by anyone other than the intended recipient is strictly
prohibited. If you have received this email in error please notify the sender by reply email and destroy
all copies of this message in your possession, custody or control.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the IRS and other taxing authorities, we inform you that any tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties that may be imposed on any taxpayer or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

---

NOTICE: This e-mail message and all attachments transmitted with it may contain legally privileged and confidential information intended solely for the use of the addressee. If the reader of this message is not the intended recipient, you are hereby notified that any reading, dissemination, distribution, copying, or other use of this message or its attachments is strictly prohibited. If you have received this message in error, please notify the sender immediately by telephone (404-881-7000) or by electronic mail (postmaster@alston.com), and delete this message and all copies and backups thereof. Thank you.

---

## Christensen, Scott

**From:**    Harris, Steve [Steve.Harris@alston.com]
**Sent:**    Tuesday, November 21, 2006 10:33 AM
**To:**    Christensen, Scott
**Cc:**    Roth, Gary
**Subject:** RE: NextCard DC proceedings

The intent is to cover all collections periods until a Court order directs BNY to do something with the funds.  If you want to propose language that makes that clearer, please do.

Thanks.

Steve


H. Stephen Harris, Jr.
ALSTON+BIRD LLP
Email:    steve.harris@alston.com
Website:    www.alston.com

Atlanta Office:
1201 West Peachtree St.
Atlanta, GA  30309-3424
USA
Direct Dial: 404.881.7197
Mobile:    404.966.7197
Switchboard: 404.881.7000
Fax:    404.881.7777

Washington, DC Office:
The Atlantic Building
950 F Street, N.W.
Washington, DC  20004-1404
USA
Direct Dial: 202.756.3059
Mobile:    404.966.7197
Switchboard: 202.756.3300
Fax:    202.756.3333

Admitted in:
The District of Columbia, Georgia and New York

**From:** Christensen, Scott [mailto:christen@HughesHubbard.COM]
**Sent:** Tuesday, November 21, 2006 1:29 PM
**To:** Harris, Steve
**Subject:** RE: NextCard DC proceedings

Is the only addition the parenthetical "(other than payment of the fees and expenses of the Servicer)" in two places?  Nothing about temporal scope?  You agree that this applies to not only the funds BNY holds not but any it receives in the future until the Court rules?

---

**From:** Harris, Steve [mailto:Steve.Harris@alston.com]
**Sent:** Tuesday, November 21, 2006 1:21 PM
**To:** Christensen, Scott
**Subject:** NextCard DC proceedings

Scott,
BNY, as Indenture Trustee, is fine with the revision you highlighted in the previous draft.  Below is language BNY proposes to expand the Stipulation to cover any additional collection periods that may take place prior to a court order, and the payment of Servicing Fees during that period.

"Paragraph 1
and BNY having assured the Court and the FDIC Receiver that funds in the possession, custody, or control of BNY in its capacity as Indenture Trustee of the NextCard Credit Card Master Note Trust will not be transferred or distributed in any way (other than payment of the fees and expenses of the Servicer) pending an order from this Court regarding the transfer or distribution of such assets; and based...

IT IS HEREBY ORDERED, that funds in the possession, custody, or control of BNY in its capacity as Indenture Trustee of the NextCard Credit Card Master Note Trust will not be transferred or distributed in any way (other than payment of the fees and expenses of the Servicer) pending an order from this Court regarding the transfer or distribution of such assets "

The term "Servicer" is not defined here, but we feel comfortable that it would be interpreted consistent with the definition in the Transferor and Servicing Agreement, if there were ever any question.

If this language is acceptable to the FDIC-Receiver, please incorporate it into the draft and send me a copy for execution.

Regards,
Steve

H. Stephen Harris, Jr.
ALSTON+BIRD LLP
Email:     steve.harris@alston.com
Website:     www.alston.com

Atlanta Office:
1201 West Peachtree St.
Atlanta, GA  30309-3424
USA
Direct Dial: 404.881.7197
Mobile:     404.966.7197
Switchboard: 404.881.7000
Fax:     404.881.7777

Washington, DC Office:
The Atlantic Building
950 F Street, N.W.
Washington, DC  20004-1404
USA
Direct Dial: 202.756.3059
Mobile:    404.966.7197
Switchboard: 202.756.3300
Fax:       202.756.3333

Admitted in:
The District of Columbia, Georgia and New York

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the IRS and other
taxing authorities, we inform you that any tax advice contained in this communication (including any
attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding
penalties that may be imposed on any taxpayer or (ii) promoting, marketing or recommending to another
party any transaction or matter addressed herein.

NOTICE: This e-mail message and all attachments transmitted with it
may contain legally privileged and confidential information intended
solely for the use of the addressee. If the reader of this message is not
the intended recipient, you are hereby notified that any reading,
dissemination, distribution, copying, or other use of this message or its
attachments is strictly prohibited. If you have received this message in
error, please notify the sender immediately by telephone
(404-881-7000) or by electronic mail (postmaster@alston.com), and
delete this message and all copies and backups thereof. Thank you.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
This email and any files transmitted with it may contain privileged or confidential information. Use,
disclosure, copying or distribution of this message by anyone other than the intended recipient is strictly
prohibited. If you have received this email in error please notify the sender by reply email and destroy
all copies of this message in your possession, custody or control.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the IRS and other
taxing authorities, we inform you that any tax advice contained in this communication (including any
attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding
penalties that may be imposed on any taxpayer or (ii) promoting, marketing or recommending to another
party any transaction or matter addressed herein.

NOTICE: This e-mail message and all attachments transmitted with it may contain legally privileged and confidential information intended solely for the use of the addressee. If the reader of this message is not the intended recipient, you are hereby notified that any reading, dissemination, distribution, copying, or other use of this message or its attachments is strictly prohibited. If you have received this message in error, please notify the sender immediately by telephone (404-881-7000) or by electronic mail (postmaster@alston.com), and delete this message and all copies and backups thereof. Thank you.